## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, and Brian Keith Hausfeld, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Nancy Johnston, Executive Director, Minnesota Sex Offender Program; and Jodi Harpstead, Department of Human Services Commissioner, *in their official capacities,*<br><br>Defendants. | Court File No. 0:23-cv-00486-JRT-LIB<br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Plaintiff James John Rud and members of the Awaiting Transfer Class[1] seek a Temporary Restraining Order ("TRO"), pursuant to Fed. R. Civ. P. 65(b) or, in the alternative, a preliminary injunction pursuant to Rule 65(a) enjoining Defendants from ignoring their statutory duties and compelling Defendants to effectuate CAP Transfer Orders. Because Plaintiff Rud and Awaiting Transfer Class Members have no adequate legal remedy, will suffer irreparable harm without a TRO, and are likely to succeed on the merits, this Court should grant the TRO.

---

[1] Plaintiffs' Class Action Complaint contains two proposed classes: the Awaiting Transfer Class and the Delayed Transfer Class. [Class Action Compl., ECF No. 1-1, at ¶ 26 (hereinafter, the "CAC")]. This Motion is brought only on behalf of the Awaiting Transfer Class. Accordingly, any reference to "the Class" or "Class Members" in this memorandum refers only to the Awaiting Transfer Class.

## BACKGROUND

Plaintiff Rud and Awaiting Transfer Class Members are individuals who are civilly committed to the Minnesota Sex Offender Program ("MSOP") in the care and custody of the Department of Human Services ("DHS") under Minn. Stat. §§ 253D.01-.36. According to Minnesota statute, the Commissioner and MSOP Executive Director have exclusive authority over general operational decisions and treatment decisions and are required to "provide specialized sex offender . . . treatment," including "community-based services and programs, [and] transition services." Minn. Stat. §§ 246B.01-4.

Per the policies of MSOP, all MSOP patients must complete three phases of treatment in order to be eligible for provisional or total discharge. The first two phases take place at the high-security facilities, typically at Moose Lake. After patients have completed Phase II, they are eligible for transfer to Community Preparation Services ("CPS"), which is a less restrictive environment outside of the secured perimeter in St. Peter, Minnesota. Although MSOP patients are eligible for transfer to either facility, Phase III treatment, which includes reintegration treatment, is typically only available at CPS. Transfer to CPS is statutorily designated as a "reduction in custody." Minn. Stat. § 253D.27, subd. 1(b).

MSOP patients may petition for a reduction in custody, which is heard by the Special Review Board ("SRB"). The SRB makes recommendations on whether transfer is appropriate and issues a report to the Commitment Appeal Panel ("CAP") recommending approval or denial of the petition. Minn. Stat. § 253D.29, subd. 1. The CAP has exclusive authority to authorize reductions in custody. Minn. Stat. § 253D.27, subd. 4. An aggrieved party may petition CAP for reconsideration of a SRB recommendation. Minn. Stat. §

253D.28, subd. 1(a). If no petition for reconsideration is filed, the CAP must issue an order adopting the SRB recommendations or set the matter for hearing. Minn. Stat. § 253D.28, subd. 2(e). The final decision of the CAP may be appealed to the Minnesota Court of Appeals. Minn. Stat. § 253B.19, subd. 5.

If a CAP transfer order is not appealed, it becomes mandatory after 15 days. Minn. Stat. § 253D.28, subd. 3. According to the plain language of the statute, as well as Minnesota courts, the Commissioner and MSOP Executive Director have no discretion in determining if or when CAP transfer orders for reduction are effective and operational. *See McDeid v. Johnston,* No. A21-0042, 2023 WL 1425674, at \*9-10 (Minn. Feb. 1, 2023) (reversing lower courts' finding of qualified immunity for failure to effectuate CPS transfers, finding "under the plain terms of the statute, if (as here) a CAP transfer order was not appealed, it became effective and operational after 15 days following the issuance); *see also In the Matter of the Civil Commitment of Steven Loren Edwards,* Dakota County File No. 19HA-PR-10-32; Appeal Panel File No. AP21-9015 (Dakota County, October 31, 2022) ("*Edwards*") (finding prima facie evidence of Defendant Johnston's contempt of court where "The Commissioner was aware of the obligation to transfer Mr. Edwards to CPS within a reasonable time," but failed to do so for nearly a year), (Exhibit A to Declaration of Daniel E. Gustafson in Support of Plaintiffs' Motion for Temporary Restraining Order ("Gustafson Decl.")); *In the Matter of the Civil Commitment of Al Stone Folson*, County File No. 62-MN-PR-06-267; Appeal Panel File No. AP19-9153 (Ramsey County, Dec. 2, 2021) ("*Folson*") ("[t]he [Commitment Appeal] Panel noted in the April 2020 Order for Transfer that the 'Panel's transfer order becomes effective 15 days after the

statutorily prescribed stay," and stating "[t]hat transfer shall occur within a reasonable time frame was not a suggestion or an authorization that it is now okay for the Commissioner to someday comply with the Panel's Order granting a reduction in custody.") (Exhibit B to Gustafson Decl.).

## **FACTS**

Plaintiff Rud was civilly committed to MSOP on July 2, 2009. Following the procedures set forth in Minn. Stat. § 253B.22, Plaintiff Rud petitioned for reduction in custody on June 26, 2020. The SRB issued an order recommending his transfer to CPS on July 12, 2021. The Commissioner did not petition the CAP for reconsideration of the transfer recommendation, and the CAP adopted the SRB recommendation. The Commissioner did not appeal the CAP order to the Minnesota Court of Appeals, and the CAP transfer order was effective as of June 6, 2022. As of this filing, Plaintiff Rud remains at the high-security Moose Lake facility, over eight months after his order for transfer to CPS was made effective. He has received no information on when, if ever, he will actually be transferred despite the CAP order requiring his transfer.

Plaintiff Rud now bring a class action on behalf of all patients committed to the Minnesota Sex Offender Program who have received transfer orders to less restrictive facilities but who have yet to be transferred. Plaintiff and Class Members seek equitable, injunctive, and declaratory relief, and damages.

## ARGUMENT

**I.     PLAINTIFF AND CLASS MEMBERS WILL SUFFER IRREPARABLE HARM IF A TEMPORARY RESTRAINING ORDER IS NOT GRANTED**

"The same legal standard applies to both a request for a temporary restraining order and a request for a preliminary injunction." *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921, n.1 (D. Minn. 2016). When evaluating the propriety of either a temporary restraining order ("TRO") or a preliminary injunction, a district court considers the four "*Dataphase* factors": "(1) the threat of irreparable harm to the movant, (2) the balance between this harm and the injury that the injunction will inflict on other parties, (3) the probability that the movant will succeed on the merits and (4) the public interest." *Id.* at 921 (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). The third factor—the probability of success on the merits—is the predominate factor. *Id.*

Plaintiff and the Class will suffer irreparable harm from violations of their due process rights if a TRO is not ordered. First, Plaintiff and Class Members have a protected liberty interest in being transferred to a less-restrictive environment after receiving a judicial order for transfer. Defendants have substantially deprived Plaintiff and Class Members of this protected interest by refusing to transfer Plaintiff and Class Members for months or years. *See McDeid v. Johnston*, Case No. 62-CV-19-8232, Order Granting Motion to Dismiss (September 18, 2020) ("McDeid MTD Order") (finding that plaintiff sufficiently alleged a protected liberty and property interest in transfer to CPS which was violated by Defendants' refusal to effectuate transfer for 796 days) (Exhibit C to Gustafson Decl.); *Garry v. Johnston*, Case No. 62-CV-19-8234, Order Granting in Part and Denying

5

in Part Motion to Dismiss (September 18, 2020) ("Garry MTD Order") (same where petitioner was not transferred for 758 days) (Exhibit D to Gustafson Decl.). Second, under 253D.01 *et seq.*, MSOP patients are entitled to treatment so as to "render further supervision unnecessary," which includes reintegration treatment only offered at CPS. Because discharge from commitment—that is, determination that further supervision is unnecessary—is conditioned upon completion of reintegration treatment, Plaintiff and Class Members have a protected property and liberty interest in the effectuation of the CAP transfer orders, which would provide them access to such treatment. Defendants have similarly deprived Plaintiff and Class Members of this protected interest by refusing to transfer Plaintiff after judicial order. *See Brown v. Hammer*, No. 16-CV-0366 (SRN/HB), 2016 WL 4154254, at *4 (D. Minn. July 5, 2016) ("A state may create a liberty interest, protected by the federal due process clause, in an entitlement to detention at a particular facility (or type of facility) [through enactment of statutes or regulatory measures] . . . ." (citing *Inmate 115235 v. Erickson*, No. C5-92-1117, 1992 WL 366017, at *1 (Minn. Ct. App. Dec. 15, 1992))); *see also Folson* ¶ 24 (noting that if the CAP adopted Defendant Johnston's interpretation that she had no obligation to effectuate CAP transfer orders, "the entire constitutionality of indeterminate civil commitment would be suspect") (Exhibit B to Gustafson Decl.).

Additionally, Plaintiff's legal remedies are inadequate. As described *supra*, Plaintiff and Class Members followed all statutory requirements in petitioning for reduction in custody. Once CPS has ordered transfer of MSOP patients, there are no additional statutory mechanisms to compel Defendants to actually effectuate the transfers. *Garry*, MTD Order

6

at 11 ("The SRB/CAP process has no protocol for contesting a slow, or never-ending implementation. It does not make sense that a successful MSOP client would have to further litigate his success, through a statutory process which does not yet exist.") (Exhibit D to Gustafson Decl.). The Minnesota Supreme Court has held that "once a person is committed, his or her due process rights are protected through procedural safeguards that include...the opportunity to petition for transfer to an open hospital." *Call v. Gomez*, 535 N.W.2d 312, 318 (Minn. 1995) (citing *In re Blodgett,* 510 N.W.2d 910, 916 (Minn. 1994)). But when that opportunity to petition for transfer is merely window-dressing – that is, when there is not a realistic chance to actually be transferred after judicial order – there exist no procedural safeguards to protect MSOP patients' due process rights. Finally, to the extent that Defendants might suggest that a contempt proceeding is the proper remedy for Plaintiff and Class Members, Minnesota courts considering this issue have found the notion "absurd." *McDeid*, MTD Order at 10 ("It seems absurd to allow a litigant, who fails to take advantage of an appeal to challenge a court order that aggrieved it, to ignore or slow-walk implementing the court order for more than two years, in order to force the beneficiary of the court order to bring a contempt proceeding against it.") (Exhibit C to Gustafson Decl.).

Plaintiff and Class Members are being continuously injured and will continue to be injured unless the Court orders a TRO. As detailed in the CAC, Defendants have repeatedly flaunted court orders, and have continued to refuse to transfer Plaintiff and Class Members even under the threat of contempt. *See generally, Edwards* (finding *prima facie* evidence of Defendant Johnston's contempt of court) (Exhibit A to Gustafson Decl.). Moreover, to the extent that Defendants are taking *any* action to alleviate the conditions they allege

justifies a years-long wait for transfer (alternatively: lack of beds, lack of staff, lack of funding from the legislature), those actions are *de minimus*. In an affidavit filed in the *Edwards* case (ordered by the *Edwards* court to describe efforts by DHS to transfer petitioner), Defendant Johnston stated "DHS is still in the process of opening what will ultimately be 36 CPS beds," and "[b]ased on current staffing levels, the building can only accommodate 20 additional MSOP clients." (Exhibit E to Gustafson Decl.).  This is the same song and dance that DHS and MSOP have been performing for the last 13 years. *See Karsjens v. Jesson,* 109 F. Supp. 3d 1139, 1150-51 (D. Minn. 2015) (at the time of trial, CPS had thirty-eight beds, and MSOP announced plans to expand CPS to include an additional thirty beds; as of this filing, that construction is still not complete); *Id.* at 1152 (describing DHS' failed 2013 attempt to expand CPS to a facility in Cambridge, Minnesota); *Folson* at ¶ 8 ("[t]he only good faith efforts toward transfer proffered by the Commissioner and the MSOP Executive Director were that bonding requests were made by the Governor to the Legislature in 2016, 2017, 2018, 2019, 2020, and 2021. Meanwhile, Petitioner's life and the lives of 55+ additional clients, have been on pause for two years or more.") (Exhibit B to Gustafson Decl.). There is no reason to believe that Defendants will take the necessary steps to end their ongoing violations of Plaintiff's and Class Members' rights.

In short, the evidence is overwhelming that, absent a TRO, Defendants will continue to delay transferring Plaintiff and Class Members, for indeterminate periods of time, which irreparably deprives the Class Members of their due process rights.

## II.   THE REMAINING *DATAPHASE* FACTORS WEIGH IN FAVOR OF A TEMPORARY RESTRAINING ORDER

Plaintiff seeks a TRO or, in the alternative, a temporary injunction. Rules 65(a) and (b) govern the issuance of each, respectively, and the law and analysis for the Court are identical. *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921, n.1 (D. Minn. 2016) ("The same legal standard applies to both a request for a temporary restraining order and a request for a preliminary injunction.").

The Court may grant a TRO or preliminary injunction where the moving party will suffer irreparable harm. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Erickson v. Hutchinson Tech. Inc.*, 158 F. Supp. 3d 751, 760 (D. Minn. 2016) (quotation omitted). A temporary injunction should be granted to maintain the status quo of the parties until the case can be decided on the merits where the rights of one party will be irreparably injured or where relief sought in the main action will be ineffectual or impossible to grant. *Id.* at 756. A district court "has the power to shape [injunctive] relief in a manner which protects the basic rights of the parties, even if in some cases it requires disturbing the status quo." *Cox v. Nw. Airlines, Inc.*, 319 F. Supp. 92, 95 (D. Minn. 1970).

The Court must weigh four factors in determining whether to issue a temporary restraining order (the "*Dataphase* factors"): "(1) the threat of irreparable harm to the movant, (2) the balance between this harm and the injury that the injunction will inflict on other parties, (3) the probability that the movant will succeed on the merits and (4) the public interest.". *Jackson*, 169 F. Supp. 3d at 921. Plaintiff has already discussed how he

and Class Members will suffer irreparable harm in the absence of a TRO, and the remaining *Dataphase* factors also weigh strongly in favor of granting Plaintiff's Motion.

### A.    Balancing the Relative Harm Between the Parties

The second *Dataphase* factor requires the Court to weigh the harm to be suffered by the plaintiff if the temporary relief is denied against "the harm that a preliminary injunction would cause to other parties, and the public interest." *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 372 (8th Cir. 1991). However, irreparable harm is not always "susceptible of precise proof." *Thermorama, Inc. v. Buckwold*, 267 Minn. 551, 552 (Minn. 1964).

As described fully *supra*, Plaintiff and the Class are suffering and will continue to suffer irreparable harm if a TRO is not issued. Plaintiff and Class Members have procedural and substantive due process rights to transfer after judicial order and access to Phase III reintegration treatment, all of which have been and continue to be substantially and inexcusably deprived by Defendants' actions. Plaintiff and Class Members have also demonstrated that, absent a TRO, Defendants' violations will assuredly continue unabated.

On the other hand, there is no harm whatsoever to Defendants if a TRO is granted. Plaintiff and Class Members are attempting to compel Defendants to follow statute and judicial orders requiring effectuation of CPS transfer orders. The Minnesota Supreme Court has recognized that this is not discretionary, and "bedrock principles of law concerning the duty of public officials to follow court orders . . . in combination with the Minnesota statutes governing reductions in custody" make Defendants' compliance "clearly established." *McDeid v. Johnston,* 2023 WL 1425674, at *10. Thus, this factor

weighs strongly in favor of the issuance of a TRO. For the same reasons, it is in the public's interest for Defendants to comply with the law.

### B.   Likelihood of Success on the Merits

The third *Dataphase* factor asks the Court to evaluate the probability that the plaintiffs will succeed on the merits. "[T]he probability of success on the merits has been referred to as the most important of the four factors." *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir.2013). "To obtain a preliminary injunction, Plaintiff must demonstrate that it has a fair chance of prevailing on its claims." *Marvin Lumber & Cedar Co. v. Severson*, No. CV 15-1869 (MJD/LIB), 2015 WL 5719502, at *7 (D. Minn. Sept. 28, 2015) (quotation omitted).

Plaintiff and Class Members have a strong likelihood of success on the merits. First, the existing caselaw on this exact question supports Plaintiff's § 1983 claims. In *Garry* and *McDeid*, plaintiffs sued defendants under 42 U.S.C. § 1983 for violations of their due process rights stemming from defendants' refusal to effectuate CAP transfer orders after judicial order. *See McDeid v. Johnston*, Case No. 62-CV-8232, Dkt. No. 1, Petition for Writ of Mandamus and Complaint (November 11, 2019) ("McDeid Compl.") at ¶¶ 33-44 (Exhibit F to Gustafson Decl.); *Garry v. Johnston*, Case No. 62-CV-19-8234, Dkt. No. 1, Petition for Writ of Mandamus and Complaint (November 20, 2019) ("Garry Compl.") at ¶¶ 33-44 (Exhibit G to Gustafson Decl.). McDeid and Garry both alleged, as do Plaintiff and Class Members in the present case, that they have a protected property and liberty interest in the effectuation of CAP Orders and access to Phase III reintegration treatment, which defendants substantially deprived without due process by refusing to effectuate the

CAP transfer orders. *Compare* McDeid Compl. ¶¶ 38-39 (Exhibit F to Gustafson Decl.) and *Garry* Compl. ¶¶ 38-39 *with* CAC ¶¶49-50, 60-61 (Exhibit G to Gustafson Decl.). On separate motions to dismiss, the district courts in *McDeid* and *Garry* both found that the plaintiffs had adequately alleged deprivation of a protected interest and that the procedures attendant upon that deprivation were not constitutionally sufficient—rejecting defendants' arguments that the plaintiffs do not have a property or liberty interest in the CAP transfer order and that there are other available remedies. *McDeid*, MTD Order at 8-9 (Exhibit F to Gustafson Decl.); *Garry*, MTD Order at 13-15 (Exhibit G to Gustafson Decl.).

The district courts, however, did dismiss McDeid's and Garry's complaints, finding that defendants were entitled to qualified immunity because the right to transfer within a reasonable amount of time was not clearly established. *McDeid*, MTD Order at 13-14; *Garry*, MTD Order at 18. The Court of Appeals, on a consolidated appeal, affirmed the district courts' finding of qualified immunity but did not disturb the findings that McDeid and Garry adequately alleged that they had a protected liberty or property interest in the timely effectuation of a CAP transfer order. *McDeid v. Johnston,* Nos. A21-0042, A21-0043, 2021 WL 3277218, (Minn. Ct. App. Aug. 2, 2021). The Minnesota Supreme Court has now reversed the lower courts' finding of qualified immunity and "remand[ed] to the court of appeals to address whether the State Officials' clear obligation to transfer the Patients to CPS within a reasonable time following a CAP transfer order gives rise to a federal due process right and, accordingly, whether the State Officials' failure to do so (assuming, as we must at this state, that the Patients can ultimately prove that failure) is a

12

violation of the Patients' federal constitutional rights sufficient to support a section 1983 claim." *McDeid v. Johnston,* 2023 WL 1425674, at *10.

The questions remaining for the lower courts to answer on remand in the *McDeid* and *Garry* cases – whether plaintiffs had a protected liberty interest in timely effectuation of a CAP transfer order gives rise to a due process right and whether State Officials' failure to effectuate transfer is a violation sufficient to support a § 1983 claim – are likely to be answered in the plaintiffs' favor based on well-established caselaw. *See, e.g.*, *Parker v. Corrothers*, 750 F.2d 653, 655 (8th Cir. 1984) ("[T]he Court held that [state statute] created an expectancy of release entitled to some measure of constitutional protection because its unique structure and language provided that a committed offender who is eligible for release on parole "shall" be paroled." (quotation omitted)).

Thus, Plaintiff and Class Members in this case are also likely to prevail on the merits and this "primary factor" weighs heavily in favor of granting a TRO.

## C.   The Public Interest

The fourth *Dataphase* factor asks to Court to consider whether granting the injunctive relief would be in the public's interest. This factor weighs heavily in favor of Plaintiff and Class Members. The legislature established the *exclusive* method by which MSOP patients can petition for reduction in custody, provisional discharge, or total discharge. CAC ¶¶ 14-18. In doing so, the legislature provided express public policy considerations. It is clear that there is a public policy interest in seeing statutes observed by state officials. *See Apex Tech. Sales, Inc. v. Leviton Mfg., Inc.*, No. CV 17-2019 SRN/HB, 2017 WL 2731312, at *7 (D. Minn. June 26, 2017) (finding the public interest

is served by a TRO that enforces public policies of legislation); *Olson v. Robbinsdale Area Sch.*, No. CIV.04-2707 RHK/AJB, 2004 WL 1212081, at \*4 (D. Minn. May 28, 2004) (same). This factor therefore weighs heavily in favor of Plaintiff and Class Members.

## CONCLUSION

Plaintiff Rud and Class Members have met their burden to prove the need for a temporary restraining order or, in the alternative, a preliminary injunction. Accordingly, Plaintiff's and Class Members' motion for a temporary restraining order should be granted.

Dated: March 6, 2023

*/s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
David A. Goodwin (#386715)
Anthony J. Stauber (#401093)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-333-8844
Fax: 612-339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstabuer@gustafsongluek.com

***Attorneys for Plaintiffs and the Proposed Classes***