# EXHIBIT A

**STATE OF MINNESOTA**
**COMMITMENT APPEAL PANEL**

COUNTY OF DAKOTA

Appeal Panel File No.: AP21-9015

Dakota County File No.: 19HA-PR-10-32



October 31, 2022

**OFFICE OF**
**APPELLATE COURTS**

In the Matter of the Civil Commitment of:

Steven Loren Edwards.

**FINDINGS AND ORDER SETTING AN**
**EVIDENTIARY HEARING ON**
**CONTEMPT**

This matter came on for hearing before the Panel on a Motion for Contempt filed August 22, 2022.  The Commissioner field a response to the motion on September 23, 2022, and the matter was set for hearing on October 10, 2022.   The hearing was held from the Hennepin County Government Center, in Minneapolis Minnesota.  The Panel was composed of the Hon. Jay M. Quam, the Hon. Gail Chang Bohr, and the Hon. Lawrence Clark.

The following remote appearances[1] were made at the hearing on October 10, 2022:

> Steven Edwards, movant
> Daniel Kufus, counsel for Mr. Edwards
> Leonard Schweich, Asst Atty General and counsel for the Commissioner
> Jessica Bierwerth, Asst Dakota County Attorney

---

[1] All appearances were remote pursuant to a Minnesota Supreme Court Administrative Order.  *See Continuing Operations of the Minnesota Judicial Branch*, No. ADM 20-8001 (Minn. filed April 19, 2022) (providing that "The panel may conduct any proceedings or hearings using remote technology.")  The Chief Judge was in the courtroom in Minneapolis.  All others, including two Panel Judges, were remote via ITV/Zoom.

Also in attendance at the hearing were Sarah Steenhoek, Department of Human Services (DHS) counsel, and Nancy Johnston, Executive Director of the Minnesota Sex Offender Program (MSOP).

Based on the motion and response filed, the arguments of counsel, the affidavits on file, and the file, records, and proceedings thus far, the Panel make the following:

## FINDINGS OF FACT

1. A strong prima facie showing of contempt has been made for failure to transfer in accordance with the Panel Order dated March 23, 2022. There is no factual dispute that Mr. Edwards has not transferred and remains in the secure perimeter at the Minnesota Sex Offender Program (MSOP).

2. The Panel Order dated March 23, 2022, granted Mr. Edwards' petition for transfer and stayed the Panel Order for 15 days, pursuant to Minn. Stat. § 253D.28, subd. 3. The Panel Order further stated that "The transfer shall occur within a reasonable time after the expiration of the statutory stay."

3. It has now been 219 days since the expiration of the statutory stay.

4. The Panel does not lose sight of the fact that, in this matter, Mr. Edwards initially petitioned for a reduction in custody on January 26, 2020, over two and a half years ago. The Special Review Board recommended granting transfer on January 14, 2021, over one and a half years ago. The Order for Transfer was issued on March 23, 2022. Nevertheless, Mr. Edwards still sits behind the razor wire at MSOP, with no anticipated transfer date communicated to him. After all this time Mr. Edwards could

justifiably believe the reduction in custody he worked so hard toward is essentially
meaningless.

5.  The Panel finds that the requirements for contempt are satisfied. *See Mower Cty.*
    *Human Servs. on Behalf of Swancutt v. Swancutt,* 551 N.W.2d 219, 223 (Minn. 1996)
    *(citing Hopp v. Hopp,* 156 N.W.2d 212, 216–17 (Minn. 1968)).

    a.  The Panel finds that the Panel, as the ordering court, had jurisdiction and
        subject matter over the person.

    b.  The Panel finds that the March 23, 2022, Order for Transfer clearly defined
        the acts to be performed by the Commissioner.[2]

    c.  The Commissioner is a party to these proceedings.

    d.  The Commissioner had notice of the Panel's March 23, 2022, Order for
        Transfer and a reasonable time within which to comply.  Given the interests at
        stake, (90) days at most is a reasonable time.

    e.  Mr. Edwards was adversely affected by failure to comply with the March 23,
        2022 Order for Transfer and has applied to the court for aid in compelling
        performance giving specific grounds for the complaint, namely that the

---

[2] The Commissioner was aware of the obligation to transfer Mr. Edwards to CPS within a reasonable
time.  This matter is not akin to *Mr. Streak, Inc. v. Sandquist Steaks, Inc.*, 245 N.W.2d 837, 838 (Minn.
1976), wherein a court order merely acknowledged the parties' privately negotiated breach of contract
compromise and was not sufficiently directive to support contempt proceedings.  In this matter
specifically the Commissioner had asked the Panel to reconsider and remove the directive that transfer
"shall occur within a reasonable time."  The Panel declined by Order dated May 26, 2022.

Commissioner has filed to transfer Mr. Edwards to Community Preparation Services (CPS) as ordered.

6.   The Panel shall set this matter for an Evidentiary Hearing on the motion for contempt for failure to transfer Mr. Edwards pursuant to the March 23, 2022, Order for Transfer, so that the party charged with nonperformance will be given an opportunity to show compliance or inability to comply despite a good faith effort.

7.   The Evidentiary Hearing shall take place on a date and time scheduled by the Clerk of Appellate Court's Office.  Pending the Evidentiary Hearing, the Commissioner through counsel shall  inform the Panel as to the status of the transfer as ordered below.

8.   Although the Commissioner points to the Legislature as the roadblock to transfer and has made attempts to secure additional Legislative funding, the Commissioner is a party to the proceedings and statutorily required to effectuate the reduction in custody.  Unlike prior contempt motions, the Commissioner is making more efforts to reduce the waitlist for transfer, but by their own admission these efforts will be insufficient to eliminate the waitlist for transfer.

9.   There are currently only 139 transfer beds available, which are all filled.  Based on the availability of beds and the current staffing levels, there are at least 24 clients awaiting transfer to CPS, which directly impacts clients' ability to remain motivated for treatment and move successfully toward provisional discharge.  Mr. Edwards is 7th on the waiting list for transfer.  Even once full staffing is achieved and all beds are

open, there will still be at minimum four (4) MSOP clients on the waiting list for
transfer to CPS.

10. Whether good faith efforts were made will inform the Panel's determination as to
what sanction is necessary to secure compliance with the Order. *See Hopp, supra,* at
173. The burden of proving good faith efforts and the inability to comply is on the
Commissioner, not a threshold showing to be made by the civilly committed client
with a valid transfer order in hand. *Id.* at 175. *Accord Schubel v. Schubel,* 584
N.W.2d 434, 436 (Minn. Ct. App. 1998) ("At the second stage of contempt
proceedings, the contemnor has the opportunity to show compliance or a good faith
effort to comply when contempt was first adjudicated.") (*citing Mahady v. Mahady,*
448 N.W.2d 888, 891 (Minn. Ct. App. 1989)).

Based on the above Findings of Fact, the Panel makes the following Order:

**IT IS HEREBY ORDERED:**

1.     That an Evidentiary Hearing on the Motion for Contempt (Second Stage
Contempt Hearing) shall be held on a date and time scheduled by the Clerk of Appellate Court's
Office. The Clerk of Appellate Court's Office shall hold a scheduling conference and set the
matter for hearing before a Panel consisting of the Hon. Jay Quam, the Hon. Gail Chang Bohr,
and the Hon. Lawrence Clark.

2.     The Commissioner through counsel shall file status updates with the Panel on the
following schedule, indicating the progress made on transferring Mr. Edwards to CPS. The
updates shall consist of a signed affidavit by the Commissioner, a Deputy Commissioner, or the

MSOP Executive Director as to the anticipated date of transfer for Mr. Edwards, including the status of staffing for the additional 20 beds and any other impediments to the transfer.  Counsel shall file the status updates on the following dates:

    a.   November 14, 2022

    b.   November 28, 2022

    c.   December 12, 2022

    d.   December 27, 2022

    e.   January 9, 2023

    f.   And every two weeks thereafter until the Evidentiary Hearing is held.

3.    Failure to comply with this order may result in additional sanctions.

**BY THE PANEL**:

_____
Hon. Jay M. Quam
Judge of District Court and Panel Chief

_____
Gail Chang Bohr
Senior Judge of District Court

Clark, Lawrence
2022.10.28
12:12:58 -05'00'
_____
Hon. Lawrence Clark
Senior Judge of District Court

STATE OF MINNESOTA

COUNTY OF DAKOTA

In the Matter of the Civil Commitment of:

Steven Edwards.

COMMITMENT APPEAL PANEL
Appeal Panel File No. AP21-9015
Court File No. 19HA-PR-10-32

**AFFIDAVIT OF
NANCY A. JOHNSTON**

STATE OF MINNESOTA   )
                           ) SS.
COUNTY OF RAMSEY    )

I, NANCY A. JOHNSTON, declare and state as follows:

1.      I am currently employed as the Executive Director of the Minnesota Sex Offender Program ("MSOP"). I have personal knowledge of the facts in this affidavit.

2.      In my capacity as Executive Director of MSOP, I am responsible for the oversight, operation, and programming of MSOP.

3.      MSOP is a program of the Minnesota Department of Human Services ("DHS"). I have been employed by DHS since 2003. I have held several different positions at MSOP, both clinical and operational, including Social Work Specialist, Clinical Supervisor, Facility Director, and Executive Director. I have been Executive Director of MSOP since June of 2012, except for an approximate seven-month period in 2016 when I was a Deputy Commissioner of DHS.

4.      Community Preparation Services ("CPS") is a less restrictive, unlocked residential setting on the grounds of MSOP's St. Peter campus located outside of the secure perimeter.

5.      I approved the process MSOP uses to determine the order in which clients are transferred to CPS after the Commitment Appeal Panel grants a client's petition for transfer to CPS. When there are more clients with orders granting their transfer than there are available CPS beds, MSOP assigns the next open CPS bed to the client who has an order granting their transfer with the earliest effective transfer order date (15 days after the order's issuance). That is the fairest method

1

of making such assignments when there are multiple clients with orders granting their transfer. For CAP orders granting transfer that were appealed and subsequently affirmed on appeal, MSOP had previously used the date of entry of judgment by the Clerk of Appellate Courts, instead of the effective transfer order date, to determine waitlist position. MSOP changed this practice in early 2019 to instead use effective transfer order date to determine waitlist position, including for CAP transfer orders appealed and subsequently affirmed on appeal. Absent any unknown clerical errors, when an open bed has become available at CPS, MSOP has always transferred the next person on the waiting list, consistent with the applicable process described above.

6.      MSOP placed Mr. Edwards on the CPS waiting list in a manner consistent with the process MSOP uses to determine waiting list order, as explained above. The date MSOP used for Steven Edwards' placement on the waiting list for transfer to CPS is April 7, 2022, fifteen days after the CAP granted Mr. Edwards' petition for transfer to CPS.

7.      No MSOP client with an effective transfer date later than April 7, 2022—as determined under the process outlined above—has been transferred to CPS.

8.      As of the date of this affidavit, Mr. Edwards is number 7 on the waiting list for transfer to CPS, meaning there are 6 clients on the list who have transfer orders with effective dates earlier than April 7, 2022. At this time, a bed is not available at CPS for Mr. Edwards due to Mr. Edwards' place on the CPS waiting list. As a result, it is not currently possible for the Commissioner or MSOP to transfer Mr. Edwards to CPS.

9.      DHS and the Executive Branch have made good-faith efforts to obtain funding for additional CPS bed space for clients such as Mr. Edwards.

10.      CPS's population has expanded substantially over the last decade. At the beginning of 2011, only 6 clients were living at CPS, and by the end of the year MSOP had begun construction to expand CPS from 8 to 23 beds. By 2013, the CPS population had increased to 18 clients, and

MSOP was seeking funding to further expand capacity. Additional beds were added following approval of a bonding request to the 2014 legislative session. From 2014 to 2015, CPS's population increased from 27 to 51 clients. In 2016, MSOP opened a new 30-bed wing construction pursuant to the 2014 bonding request, increasing capacity to 89 beds. A "phase 2" bonding request to further expand capacity was presented to the 2016 legislature but did not pass.

11.     In early 2017, DHS reported to the legislature that its new wing was already filled to capacity and noted that the Governor's budget for the 2017 legislative session again included bonding to further expand CPS as the Judicial Appeal Panel (now the "Commitment Appeal Panel") continued to grant transfer petitions. This bonding request did not pass.

12.     In early 2018, DHS reported to the legislature that it was unable to transfer all clients with transfer orders and had a waitlist of approximately 30 clients. DHS noted that the previous bonding request would be brought forward at the 2018 legislative session. This bonding request did not pass.

13.     In early 2019, DHS advised the legislature that the CPS waitlist had grown to 36 clients and that additional funding was necessary to accommodate clients with active transfer orders. DHS also advised the legislature that staffing levels throughout MSOP had been negatively impacted by budget pressures, resulting in a decrease in services. The Governor submitted a bonding request to the 2019 legislative session for funds to expand capacity at CPS. This bonding request did not pass.

14.     In early 2020, DHS advised the legislature that the CPS waitlist had grown to 42 clients, that additional bed space was necessary to accommodate clients with active transfer orders, and that the Governor would again seek funding to resolve the issue. The Governor submitted a bonding request to the 2020 legislative session for funds to expand capacity at CPS.

3

15.     In 2020, the legislature approved $1.8 million to expand CPS.  DHS used this funding to expand CPS's capacity by an additional 20 beds.  Primary construction on this expansion was completed on December 22, 2021.  On January 10, 2022, clients began moving into the CPS expansion, which is now filled to capacity.

16.     In early 2021, DHS reported to the legislature that 49 clients were now on the CPS waitlist and that additional funding was necessary to add beds and basic infrastructure.  The legislature did not approve a 2021 bonding request, which was intended to fund an additional 30 CPS beds.

17.     In early 2022, DHS reported to the legislature that additional funding was necessary to add beds and basic infrastructure.  The legislature did not approve a 2022 bonding request, which was intended to fund an additional 30 CPS beds.  DHS cannot complete additional construction to expand CPS without a legislative appropriation.

18.     DHS is in the process of opening an additional 36 CPS beds by taking over another building on the St. Peter campus that was recently vacated by the Forensic Mental Health Program.  Because this expansion did not require further construction, DHS has determined that it can be completed without a legislative appropriation.  However, this expansion has been contingent on staffing, regulatory approval (which has now been obtained) and other factors.  Based on current staffing levels, the building can only accommodate 20 additional MSOP clients, which have been filled by recently transferred CPS clients.  Upon being fully staffed, DHS will fill the remaining 16 licensed beds at this building, which will allow 16 additional CPS clients on the waiting list to be transferred, including Mr. Edwards.  Upon being fully staffed, only 4 MSOP clients would be on the *current* CPS waiting list.

19.     MSOP intends to transfer Mr. Edwards to CPS when a bed becomes available for him in accordance with his place on the waiting list.

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN

THIS DOCUMENT IS TRUE AND CORRECT.

Nancy Johnston
Digitally signed by Nancy
Johnston
Date: 2022.09.23 13:16:16 -05'00'

NANCY JOHNSTON

September 23, 2022
Ramsey County, Minnesota

# EXHIBIT B



**STATE OF MINNESOTA**
**COUNTY OF RAMSEY**

**COMMITMENT APPEAL PANEL**

December 2, 2021

Office of
Appellate Courts

Appeal Panel File No. AP19-9153
County File No. 62-MN-PR-06-267

In the Matter of the Civil Commitment of:

Al Stone Folson.

**CONTEMPT ORDER**

---

The matter came before the Commitment Appeal Panel at the Dakota County Northern Service Center, West St. Paul, Minnesota, upon a motion for contempt filed February 22, 2021, for failure to comply with the Panel Order for Transfer dated April 10, 2020. The Panel heard the matter concerning contempt by remote hearing on May 14, 2021, and September 29, 2021. At the hearings, the following appearances were made:

    Al Stone Folson, Petitioner
    Richard Mattox, counsel for Petitioner
    Aaron Winter, Assistant Attorney General, counsel for Commissioner of Human Services
    Margaret Galvin, Assistant County Attorney, counsel for Ramsey County

    At the motion hearing on May 14, 2021, the Commissioner asked the Panel to forgo making a finding of contempt and setting purge conditions and requested instead that the matter be set for an evidentiary hearing.

    At the evidentiary hearing on September 29, 2021, the Commissioner called one witness to testify, Nancy Johnston, Executive Director of the Minnesota Sex Offender Program (MSOP). The Commissioner did not appear personally. The Commissioner offered two exhibits: Exhibit 1 – a Satellite view of St. Peter Regional Treatment Center and Exhibit 2 – State of Minnesota

2022 Preliminary Capital Budget Requests Human Services Projects Summary and Project Narrative.  Exhibits 1 and 2 were received by the Panel.

At the close of the September 29, 2021, hearing, the parties asked for a briefing schedule, with final submissions due November 19, 2021.  The Panel received the Commissioner's Supplemental Response to Notice of Motion and Motion filed on October 29, 2021, and the Petitioner's Motion for Contempt of Court Response filed on November 5, 2021.

The Panel had previously received the Commissioner's Response to the Notice of Motion and Motion for Contempt of Court, the Declaration of Aaron Winter o/b/o the Commissioner of Human Services, and the Declaration of Nancy Johnston, filed on April 30, 2021.  The Panel also received correspondence regarding Supplemental Authority Regarding Motion for Contempt, an unpublished opinion filed by the Commissioner on August 5, 2021.  *See Ricky Lee McDeid, Appellant (A21-0042), Shane P. Garry, Appellant (A21-0043), v. Nancy Johnston, CEO/Dir., Minnesota Sex Offender Program, et al., Respondents*, 2021 WL 3277218 (Minn. App. Aug. 2, 2021) (unpublished) (certiorari granted Oct. 27, 2021).

Based upon the Panel's April 2020 Order for Transfer, the motion for contempt filed February 2021, the evidence adduced, the arguments and submissions of counsel, and the entire file, records, and proceedings in this matter, the Panel makes the following:

## FINDINGS OF CONTEMPT

***Order for Transfer***

1.  The Commitment Appeal Panel issued a Findings of Fact, Conclusions of Law, and Order for Transfer dated April 10, 2020, and docketed April 13, 2020 ("April 2020 Order for Transfer") finding that Petitioner satisfied the statutory criteria for a transfer and ordered that Petitioner receive the reduction in custody as provided for by statute.

2.  The April 2020 Order for Transfer ordered that "Petitioner's petition for transfer to Community Preparation Services (CPS) is hereby **GRANTED**.  The entry of this order granting Petitioner's petition for transfer to a less restrictive facility is hereby **STAYED** for 15 days, pursuant to Minn. Stat. § 253D.28, subd. 3."

3.  In the April 2020 Order for Transfer, the Panel noted that the statute does not require transfer to CPS per se, but that CPS was on the only transfer option that the Department of Human Services (DHS) has created for those civilly committed to MSOP as Sexually Dangerous Persons (SDP) and/or Sexual Psychopathic Personalities (SPP), such as Petitioner.  *See Commitment of Ince,* 847 N.W.2d 13, 28 (Minn. 2014) (Justice Page, concurring) (recognizing that DHS has chosen to make MSOP the only option available for those indeterminately civilly committed as SDP and/or SPP).

4.  By its express terms and in accordance with the statute, the Panel's April 2020 Order for Transfer became a final order on April 28, 2020.  *See* Minn. Stat. § 253B.19, subd. 3.

***Reasonable time to comply with the Order for Transfer***

5.  It is reasonable that the Panel's April 2020 Order for Transfer would have been effectuated within 90 days of the effective date of the Order for Transfer, which would have provided the Commissioner 105 days to effectuate the transfer.

6.  At present, 611 days have passed since the April 2020 Order for Transfer became effective and the Commissioner has not complied with the April 2020 Order for Transfer.  There is no factual dispute that Petitioner has not been transferred to CPS or its equivalent and that he remains inside the secure perimeter of MSOP.

7.  At present, the Commissioner has not provided Petitioner a specific date when the transfer to CPS is anticipated.  Nancy Johnston, MSOP Executive Director, testified that MSOP

3

anticipates opening another 20 CPS beds no later than January 1, 2022, and that they anticipate another 79 beds will be habitable in a renovated Bartlett Hall by April 2022, but Ms. Johnston made no assurances that Petitioner would be transferred even by April 2022, two years after the April 2020 Order for Transfer.

***Lack of good faith efforts to comply with the Order for Transfer***

8.  The only good faith efforts toward transfer proffered by the Commissioner and the MSOP Executive Director were that bonding requests were made by the Governor to the Legislature in 2016, 2017, 2018, 2019, 2020, and 2021.  Meanwhile, Petitioner's life, and the lives of 55+ additional clients, have been on pause for two years or more.   The only thing that has changed for them since their respective orders for transfer is that their names were added to a waiting list.  The Commissioner's failure to transfer has rendered these clients, who were statutorily entitled to a reduction in custody, unable to progress toward community placement.  For Petitioner, this means his initial petition for a reduction in custody from 2018 is still in limbo after five years, even after the Special Review Board recommended granting transfer in October 2019 and the Panel granted transfer in April 2020.

9.  MSOP indicated that it intends to transfer Petitioner to CPS when a bed become available for him in accordance with his place on the waiting list. [1]

10. There is no other situation known to the Panel where a party gets to decide when they will comply with a court order.  The April 2020 Order for Transfer was not vague or unclear.

---

[1] The District Court also noted the Commissioner's attempt to read the words "when a bed becomes available" into the Panel Order.  *See* The Hon. Leslie Ott Marek's Ramsey County District Court Order Dismissing Petition for Writ of Mandemus in *Folson v. Johnston*, 62-CV-20-5770 (Mar. 1, 2021) (finding the Commissioner's arguments unreasonable and unpersuasive and would vest the Commissioner with unfettered discretion over when, if ever, to transfer a client).

The April 2020 Order for Transfer was not confusing.  The Commissioner made no request for clarification of the April 2020 Order for Transfer.  The Commissioner provided no communication to the Panel that the April 2020 Order for Transfer would not be followed and the reasons therefor until the contempt motion was filed.  It was left to the Petitioner, a civilly committed individual within the custody and control of the Commissioner, who had a valid court order for a reduction in custody in hand, to bring a motion for contempt to vindicate his rights.

*Contempt findings regarding the Order for Transfer*

11. The Panel, as the ordering court, had jurisdiction and subject matter over the person.

12. The Panel's April 2020 Order for Transfer clearly defined the acts to be performed by a party to the proceedings.

13. The Commissioner is a party to these proceedings.

14. The Commissioner had notice of the Panel's April 2020 Order for Transfer and a reasonable time within which to comply.  As stated before, 90 days at most was a reasonable time within which to comply.  The Commissioner is making no argument that two years or more is a reasonable time.

15. The Petitioner was adversely affected by the failure to comply with the April 2020 Order for Transfer and has applied to the court for aid in compelling performance giving specific grounds for the complaint, namely that the Commissioner and the MSOP Executive Director have failed to transfer Petitioner to CPS.

16. That upon due notice a hearing was conducted and at such hearing the party charged with nonperformance was given an opportunity to show compliance or the reason for the failure to comply. This hearing took place on September 29, 2021.[2]

17. The Panel is hereby determining formally that there was a failure to comply with the April 2020 Order for Transfer. The Commissioner and the MSOP Executive Director have the ability to comply and are not being compelled to do something they are wholly unable to do.

***Bad faith in failure to comply with the Order for Transfer***

18. The Panel finds bad faith on the part of the Commissioner and the MSOP Executive Director in failing to transfer Petitioner to CPS. The Commissioner and the MSOP Executive Director have exhibited a brazen disregard for the statutory civil commitment process, evident from the initial hearing where the client rightfully expressed concern that the reduction is custody, even if ordered, was not going to occur. Once the April 2020 Order for Transfer was issued, the Commissioner and the MSOP Executive Director made no efforts, aside from annual bonding requests, to effectuate transfer, essentially ignoring the Panel's Order.

19. The Panel noted in the April 2020 Order for Transfer that the "Panel's transfer order becomes effective 15 days after the statutorily prescribed stay." Additionally, the Panel warned DHS in the April 2020 Order for Transfer that "DHS cannot merely assume the failure of the Legislature to appropriate new funds somehow obviates its obligation to follow court orders for transfer." Furthermore, in the April 2020 Order for Transfer, the

---

[2] The evidentiary hearing in this matter was originally set for August 9, 2021. Due to a failure to docket the order as signed on May 24, 2021, until July 27, 2021, the matter was reset for September 29, 2021, the only date the Commissioner was available, providing ample notice and opportunity for the Commissioner to be heard.

Panel found that DHS's "lack of candor with the Panel as to the situation at CPS was deeply concerning."

20. It is apparent that the Commissioner and the MSOP Executive Director do not intend to follow the statute and the Panel's April 2020 Transfer Order and contempt is necessary to secure compliance with the Panel's Order to vindicate Petitioner's rights.  *See Hopp v. Hopp*, 156 N.W.2d 212, 214 (Minn. 1968) (explaining that the purpose of civil contempt is to "make the rights of one individual as against another meaningful" so that court orders are not "an exercise in futility").

21.  DHS's failure to transfer is resulting in de facto incarceration and is close to rendering the entire statutory civil commitment structure as applied a "sham." *See Foucha v. Louisiana*, 504 U.S. 71, 115 (1992) ("Foucha has not argued that the State's procedures, as applied, are a sham. This would be a different case if Foucha had established that the statutory mechanisms for release were nothing more than window dressing, and that the State in fact confined [civilly committed individuals] indefinitely without meaningful opportunity for review and release.")

22. That transfer shall occur within a reasonable time frame was not a suggestion or an authorization that it is now okay for the Commissioner to someday comply with the Panel's Order granting a reduction in custody.

23. The Commissioner's argument that the Panel's authority is limited to merely telling DHS that the Commissioner and the MSOP Executive Director now have full discretion to determine when to transfer a client is absurd and harkens back to other matters where the Commissioner and MSOP Executive Director have attempted to circumvent the reduction in custody process.  *See Matter of Civil Commitment of Kropp*, 895 N.W.2d 647, 652

(Minn. App. 2017) (prohibiting the MSOP Executive Director from unilaterally preventing provisional discharge despite the Panel's grant and providing that the Panel may grant a reduction in custody even to a "nonexistent placement").  The failure to transfer as provided for by statute implicates not only Petitioner's liberty interests but also undermines the constitutionality and validity of the entire indeterminate civil commitment process.

24. If the Commissioner's interpretation of its obligation under the statute and the Panel's Order for Transfer is correct, the entire constitutionality of the indeterminate civil commitment would be suspect.  Transfer to an open facility is a statutory provision specifically enumerated by the Minnesota Supreme Court as essential to constitutional due process.  *See Call v. Gomez*, 535 N.W.2d 312, 318-19 (Minn. 1995).  *See also In re Blodgett*, 510 N.W.2d 910, 916 (Minn. 1994) (holding that "once a person is committed, his or her due process rights are protected through procedural safeguards that include…the opportunity to petition for transfer to an open hospital").

25. The Panel process and the ability to transfer to a less secure facility were among the "extensive process and protections" that allowed the Minnesota civil commitment structure to withstand facial and as-applied challenges in federal court.  *See Karsjens v. Piper,* 845 F.3d 394, 410-11 (8th Cir. 2017) (discussing the Minnesota Supreme Court's due process analysis in *Call* and *Blodgett*).

26. The Panel is duty bound to give meaningful effect to the civil commitment statute.  There are times when, after full and meaningful consideration, the Panel denies a petition for a reduction in custody as statutorily not met.  When, after full consideration, the Panel grants transfer, that order for transfer must be meaningful.

*Contempt is necessary regarding the Order for Transfer*

27. The Commissioner and the MSOP Executive Director are in contempt for failure to comply with the April 2020 Order for Transfer.

28. The Commissioner and the MSOP Executive Director have the ability to purge the contempt by transferring Petitioner to CPS or an equivalent reduction in custody within 90 days of the date of this order.

29. The Panel is not considering the issues of a right to treatment as raised in argument.  The motion was for contempt of court for failure to transfer pursuant to the April 2020 Order for Transfer.  The questions by the Panel and the arguments from Petitioner's counsel concerning other treatment options pending transfer are relevant to demonstrate the multiplicity of options that the Commissioner could have done to attempt to comply or to demonstrate any willingness to comply with the April 2020 Order for Transfer.  *See, e.g., Plankers v. Plankers*, 175 Minn. 57, 59 (Minn. 1928) ("Defendant would have stood in a more favorable light had he shown a willingness to make any payments-even for a reduced amount. He did not do so.").

30. The Commissioner and the MSOP Executive Director acknowledge that the only option they were willing to explore in the nearly two years since the April 2020 Order for Transfer was issued was to seek bonding from the Legislature, which was denied year after year after year, and then only insufficiently provided.  Although sympathetic to the lack of funding, the Panel views the statutory language and the Commissioner and the MSOP Executive Director's obligations in light of the statute enacted.  *See In re Welfare of J.B.*, 782 N.W.2d 535, 548 (Minn. 2010) (expressing sympathy yet finding contempt appropriate

9

for failure to obey a lawful order in light of the statutory structure enacted by the Legislature, even if that structure was underfunded).

31. This contempt order is necessary to vindicate Petitioner's statutory right and ultimately his constitutional right for a reduction in custody. The Commissioner and the MSOP Executive Director have the ability to comply with the Order for Transfer, the ability to meet the purge conditions (to transfer to CPS or its equivalent within 90 days), and the order thus far is reasonably likely to produce compliance for Petitioner. *See Zanzibar v. Rodriquez*, 819 N.W.2d 187 (Minn. App. 2012). *See also Mower Cty. Human Servs. on Behalf of Swancutt v. Swancutt*, 551 N.W.2d 219, 223-24 (Minn. 1996) (providing that, after the requirements of *Hopp* have been met, additional hearings on nonperformance may be held to determine whether conditional confinement is reasonably likely to produce compliance fully or in part.).

### *Conclusion of contempt and setting a purge condition*

32. The Panel concludes that the Commissioner of Human Services and the MSOP Executive Director are in contempt of court for failure to transfer Petitioner to a reduction in custody.

33. The Panel orders that the Commissioner of Human Services and the MSOP Executive Director transfer Petitioner either to MSOP's Community Preparation Services (CPS) or an equivalent, within 90 days of the date of this Order. It is not the Panel's concern whether transferring Petitioner at this moment to CPS would mean "leap frogging" another client who has been on the waiting list longer in time. The Panel can only address the individual matter before it.

Based on the above Findings of Contempt, the Panel makes the following Order:

## ORDER

1. That the Commissioner of Human Services and the MSOP Executive Director are in civil contempt for failure to comply with the April 2020 Order for Transfer.

2. That the Commissioner of Human Services and the MSOP Executive Director may purge the contempt by transferring Al Stone Folson to MSOP's Community Preparation Services (CPS) or an equivalent reduction in custody within 90 days of the date of this order.

**Dated**: December 2, 2021                    **BY THE PANEL**:

Asphaug, Karen
2021.12.02 08:29:39 -06'00'

_____
Hon. Karen Asphaug
Senior Judge of District Court

_____
Herbert Lefler
Senior Judge of District Court

Hon. Warren Sagstuen
Senior Judge of District Court

11

# EXHIBIT C

STATE OF MINNESOTA

DISTRICT COURT

COUNTY OF RAMSEY

SECOND JUDICIAL DISTRICT

| | |
|---|---|
| Ricky Lee McDeid, | |
| Plaintiff, | Court File No.: 62-CV-19-8232 |
| vs. | Case Type: Civil – Other/Misc. |
| Nancy Johnston, CEO/Director, Minnesota Sex Offender Program, an agency of the State of Minnesota; and Jodi Harpstead, Commissioner, Department of Human Services, an agency of the State of Minnesota, | |
| Defendants. | |

## ORDER & MEMORANDUM

This matter came before the undersigned on the motion of Defendants Nancy Johnston, as CEO/Director of the Minnesota Sex Offender Program ("MSOP Director") and Jodi Harpstead, as Commissioner of the Minnesota Department of Human Resources ("Commissioner") for dismissal for failure to state a claim upon which relief can be granted. Assistant Attorney General R.J. Detrick represents the Defendants. Attorneys Andrew Pieper and Roxanna Gonzalez represent Plaintiff Ricky Lee McDeid ("McDeid"). There was no hearing held and the matter was taken under advisement.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.  Defendants' motion to dismiss is **GRANTED**.

2.  The attached Memorandum shall be incorporated into this Order.

**THERE BEING NO JUST REASON FOR DELAY, LET JUDGMENT BE ENTERED ACCORDINGLY.**

**BY THE COURT**:

Dated: September 18, 2020

Gilligan, Thomas(Judge)
Sep 18 2020 1:45 PM

THOMAS A. GILLIGAN, JR.
JUDGE OF DISTRICT COURT

0

## MEMORANDUM

This matter was originally commenced through a "Petition for Writ of Mandamus and Complaint" filed by McDeid on November 20, 2019.  On January 7, 2020, this court issued an Order Directing Clerk to Execute Writ of Mandamus.  On that same day, the Court Administrator issued a Writ of Mandamus that commanded the MSOP Director and the Commissioner to "show cause before this court…on January 21, 2020…why [they] should not be required to comply with the relief sough[t] in [McDeid's] Writ."  The court held a hearing as scheduled and allowed the MSOP Director and the Commissioner to file a motion to dismiss the Petition and allowed McDeid to amend his pleading.  Defendants moved to dismiss and McDeid filed his amended pleading.  The motion was fully briefed by the parties. Because of the COVID-19 pandemic, the court did not have a hearing on the motion to dismiss.  Through an error of this court, however, the motion was not taken under advisement as of the date that the briefs on the motion were complete on May 8, 2020.  As a result, the parties to this matter did not receive a timely decision.  The parties and attorneys should expect, and receive, a timely decision on all matters filed in this court.  This decision follows.

McDeid was first committed to the MSOP in 1999 and received an indeterminate commitment.  Petitioner was committed as a sexually dangerous person ("SDP") and a sexual psychopathic personality ("SPP") to the Minnesota Sex Offender Program ("MSOP") and formerly resided at MSOP's Moose Lake ("Moose Lake") facility.  McDeid petitioned the Special Review Board ("SRB") for transfer to Community Preparation Services ("CPS").  The SRB recommended that McDeid should be transferred to CPS on September 26, 2016. Approximately one year later, on September 21, 2017, the Minnesota Commitment Appeal

1

Filed in District Court
State of Minnesota
9/18/2020 2:17 PM

Panel ("CAP") issued an Order ("CAP Order") which granted McDeid's "petition for transfer to a less restrictive facility ("CPS") pursuant to Minn. Stat. § 253D.28, subd. 2(e)" and stayed the entry of the order for 15 days.  Defendants did not appeal the CAP Order.  McDeid contends that, despite this CAP Order, he remained held in a secure facility in Moose Lake, "where his liberty interests and ability to progress through treatment for eventual reintegration" have been severely limited.  In total, it took DHS 796 days to transfer McDeid to CPS.

McDeid sued the MSOP Director in "her individual and official capacity," because she "acted under the color of law to implement, retain, and carry out policies through MSOP that violated McDeid's constitutional, statutory, and common law rights."  McDeid sued the Commissioner in "her individual and official capacity," because she "acted under the color of law to implement, retain, and carry out policies through MSOP that violated McDeid's constitutional, statutory, and common law rights."

McDeid claims that because of Defendants' "refusal to abide by the CAP Order and refusal to transfer [him] to CPS significantly delayed his treatment progression and hindered his ability to advance in the program toward discharge."  He claims that there was no procedure for him to enforce the CAP Order and that he lacked an administrative remedy to effectuate his transfer to CPS and therefore was denied his procedural due process rights.

McDeid contends that, under 42 U.S.C. § 1983, he was denied due process under the Fourteenth Amendment to the United States Constitution.  He maintains that, under the CAP Order, he was conferred a protected property and liberty interest and had a "legitimate claim of entitlement to effectuation of the CAP Order, transfer to a less restrictive facility (*e.g.* CPS),

Filed in District Court
State of Minnesota
9/18/2020 2:17 PM

and to have access to treatment…"  He maintains that because of Defendants' unlawful conduct, he was: (1) deprived of his protected property and liberty interests in violation of the Fourteenth Amendment to the U.S. Constitution; and (2) suffered and continues to suffer damages.

Defendants moved for dismissal for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e).  First, Defendants claim that McDeid's due process claim lacks merit because they contend he cannot bring a procedural due process claim based on the alleged violation of the CAP Order.  Second, they claim that the procedural due process claim against them in their individual capacities for monetary damages is barred by qualified immunity.  Third, even if McDeid's claim survives the first two challenges, Defendants contend that the claim against them in their official capacities should be dismissed because McDeid cannot prevail on a damage claim against them.

McDeid responds that the motion to dismiss should be denied because he has properly stated a cause of action for a § 1983 claim against Defendant for a deprivation of procedural due process.  According to McDeid, Defendants lacked discretion to delay his transfer for 796 days or otherwise decide what a "reasonable time" would be to effectuate his transfer because of the directive provided by the CAP Order.  McDeid also contends that Defendants lack discretion to withhold performance under the CAP Order simply because it did not state a date certain by which the Defendants must comply.  In any event, McDeid contends that whether 796 days constitutes a "reasonable time" is a fact question, which is inappropriate for disposition in a motion to dismiss.  McDeid also claims that he has have adequately pled facts which would defeat a qualified immunity defense at this stage, so a motion on that basis is

premature.  He acknowledges limitations on his remedies against Defendants under the doctrine of official immunity, but that those limitations are not fatal.

## MOTION TO DISMISS STANDARD OF REVIEW

A motion to dismiss a complaint under Minn. R. Civ. P. 12.02(e) "raises the single question of whether the complaint states a claim upon which relief can be granted." *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 739 (Minn. 2000)(citations omitted). "Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 567 (D. R.I. 1996).  "[I]t is immaterial whether or not the plaintiff can prove the facts alleged," and a court should not grant a dismissal under Rule 12.02(e) "if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded…"  *Martens* 616 N.W. 2d at 739-40 (internal quotes and citations omitted). In determining whether a claim survives a motion to dismiss, courts are "not bound by legal conclusions stated in a complaint . . ." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014) (internal quotes and citations omitted).  The district court must consider and accept as true only the facts alleged in the complaint and construe all reasonable inferences in favor of the nonmoving party.  *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008).

## THE DEFENDANTS' MOTION TO DISMISS IS GRANTED

McDeid, through his original Petition for a Writ of Mandamus, asked the court to command the Defendants to transfer him to CPS.   In the intervening time, after 796 days, McDeid was finally transferred to CPS.  As a result of the transfer, McDeid sought and was granted the opportunity to amend his pleading.  Thus, this court will no longer treat the

Petition as one for mandamus relief, but rather one for the relief requested in the Amended Complaint.

# I.    MCDEID HAS SUFFICIENTLY ALLEGED A DUE PROCESS CLAIM

A person committed as SDP or SPP may only receive a reduction in custody by filing a petition with the SRB.  Minn. Stat. § 253D.27, subd. 2.  *In re Civil Commitment of Lonergan*, 811 N.W.2d 635, 642 (Minn. 2012)("The Commitment Act expressly states that patients indeterminately committed 'shall be transferred, provisionally discharged or discharged, *only as provided in this section*.'  Minn. Stat. § 253B.185, subds. 1(e)(emphasis added); *see also id.*, subd. 9. Therefore, when seeking a transfer or discharge, it appears that a patient committed as an SDP or SPP must exclusively follow the Commitment Act's specific procedures for petitioner for a transfer or discharge.").  The SRB is mandated to hold a hearing on each petition before it issues a report and recommendation under Minn. Stat. § 253D.27, subd. 4.  *See* Minn. Stat. § 253D.27, subd. 3.  The SRB must "hear and consider all petitions for a reduction in custody or to appeal a revocation of provisional discharge." Minn. Stat. § 253B.18, subd. 4c(a).  "A 'reduction in custody' means transfer from a secure treatment facility, discharge, and provisional discharge."  *Id.*

The SRB's report and recommendation is then subject to *de novo* review by a judicial appeal panel, the CAP, which determines whether the reduction in custody will be granted or denied.  Minn. Stat. §§ 253D.28, .29, subd. 1, .30, subd. 1.  "A majority of the judicial appeal panel shall rule upon the petition." Minn. Stat. §§ 253D.28, subd. 3.  "No order of the judicial appeal panel granting a transfer, discharge, or provisional discharge shall be made effective

sooner than 15 days after it is issued." *Id.* A party aggrieved by a CAP Order may appeal that order. *Id.*

McDeid contends that he has a protected liberty and property interest in his transfer to CPS and is entitled to an appropriate level of procedural due process as a result. "When engaging in a due process analysis, a court must conduct two inquiries. First, the court must determine whether the complainant has a liberty or property interest with which the state has interfered. Second, if the court finds a deprivation of such an interest, it must determine whether the procedures attendant upon that deprivation were constitutionally sufficient." *Carrillo v. Fabian*, 701 N.W.2d 763, 768 (Minn. 2005)(cleaned up).

As for the first inquiry, "the Due Process Clause of the U.S. Constitution provides that a state shall not 'deprive any person of life, liberty, or property without due process of law.'" *Id.* (quoting U.S. CONST. amend XIV, § 1). "The Supreme Court has ruled that courts must look to the nature of an interest to determine if it is within the scope of the Fourteenth Amendment's protection of liberty and property." *Id.* (citations omitted). "A constitutionally-protected liberty interest arises from a legitimate claim of entitlement rather than simply an abstract need or desire or a unilateral expectation." *Id.* Therefore, McDeid must have a legitimate claim of entitlement to being transferred to CPS before it can qualify as a liberty interest.

Among other things, McDeid contends that he possesses a protected liberty interest in the CAP Order because it directed his transfer to a less restrictive facility and a protected property interest in the statutory scheme which led to the issuance of the CAP Order. He also contends that Defendants lack the discretion to withhold compliance with the CAP Order

6

simply because it did contain a date-certain for compliance. He claims that the suggestion that the Defendants have the discretion to effectively ignore a CAP Order is contrary to the Minnesota Court of Appeals holding in *In re Civil Commitment of Kropp*, 895 N.W.2d 647 (Minn. Ct. App. 2017). McDeid also argues that there are no due process or procedural safeguards in place for him to challenge the deprivation of his transfer to CPS under the CAP Order. In the end, McDeid contends that he has pled sufficient facts to state a plausible claim for a violation of his due process rights to survive a motion to dismiss.

Defendants contend that violations of state laws or state court orders do not constitute a federal due process violation. They also claim that McDeid has no property or liberty interest in the CAP Order because he "does not cite any substantive limitations on [their] exercise of discretion in determining when to transfer him to CPS or 'mandatory language' requiring transfer at a specific time." Defendants also contend that neither the CAP Order, nor Minn. Stat. § 253D.28, subd. 3 "specify that Defendants must transfer Plaintiff to CPS after [the expiration of the 15 day stay]." They therefore contend that Defendants had the discretion in determining when to transfer McDeid to CPS, McDeid did not have a liberty or property interest in such a transfer and his due process claim fails. Finally, they also claim that McDeid cannot bring a procedural due process claim under section 1983 because he had other avenues, such as a contempt proceeding, to enforce the CAP's Order.

The fundamental question posed by the motion to dismiss is whether McDeid has stated a claim upon which relief can be granted.

McDeid alleges that:

The CAP Order conferred a government benefit onto McDeid, that qualifies as a protected property interest and a state-created liberty interest because McDeid

had a legitimate claim of entitlement to effectuation of the CAP Order, transfer to a less restrictive facility (*e.g.,* CPS), and to have access to treatment, including Phase III Reintegration treatment.

McDeid has therefore alleged that he had a protected property and liberty interest in being transferred to CPS under the CAP Order.

McDeid also alleges that he was: (1) held in an overly restricted facility for 796 days in disregard of the CAP Order; (2) not provided with notice about the delay of his transfer or of a transfer date; (3) not transferred to CPS within a reasonable time; and (4) denied meaningful process or procedural protections for him to ensure timely or actual enforcement of the CAP Order.

Accordingly, McDeid has alleged that he was deprived of his protected interest and that the procedures attendant upon that deprivation were not constitutionally sufficient.

The CAP Order found:

> [McDeid] does not require a high level of security to continue his treatment, given that his estimated risk of recidivism is low. Furthermore, CPS will provide any necessary security because [McDeid] will be escorted and monitored by GPS. The Panel is also persuaded that CPS can best meet [McDeid's] treatment needs as he continues his therapeutic work…[and that] CPS is the facility that can best meet [McDeid's] needs because it would allow him to participate in 'treatment that is necessary for him to be able to advance in the program. * * * The Panel is convinced that a transfer to CPS could be accomplished with a reasonable degree of safety for the public.

Based on that finding, among others, the CAP concluded that McDeid "has shown by a preponderance of the evidence that transfer to a non-secure facility (CPS) is appropriate." It ordered that McDeid's "petition for transfer to a less restrictive facility (CPS), pursuant to Minn. Stat. § 253D.28, subd. 2(e) is **GRANTED**." (emphasis added). The CAP made its directive and the reasons for it are clear.

The court does not accept Defendants' argument that the Complaint fails to state a claim because Defendants had the discretion to ignore, disregard, or fail to implement the CAP Order. This court must look at the liberty deprivation at issue, rather than whether there might be a negative or discretionary inference in the CAP Order. *Cf. Carrillo*, 701 N.W.2d at 770 (in consideration of a due process challenge on an extension of an inmate's confinement period, the Minnesota Supreme Court rejected the approach of focusing narrowly on statutory language, rather than the deprivation at issue). Further, the absence of a specific deadline in the CAP Order did not, as Defendants seem to suggest, delegate the CAP's discretion to it. As the Minnesota Court of Appeals observed in *Kropp*:

> [T]he judicial appeal panel [*i.e.* CAP] alone has the authority to grant or deny a provisional discharge. Neither the executive director nor the commissioner has the authority to grant or deny provisional discharge petitions. Rather the executive director and commissioner act as parties who may file petitions and state their support or opposition to any petition filed.

895 N.W.2d at 652 (cleaned up). The Defendants could have appealed from the CAP Order, but apparently did not chose that strategy. Absent that choice, the Defendants lacked the authority to simply ignore the directive of the CAP Order, as McDeid has alleged. Minn. Stat. §§ 253D.28, subd. 3 provides: "No order of the judicial appeal panel granting a transfer, discharge, or provisional discharge shall be made effective sooner than 15 days after it is issued." *Id.* The CAP Order was *effective* on October 4, 2017. In the end, McDeid contends that 796 days to place him into CPS, pursuant to the CAP Order violated his due process rights, because it was an unreasonable period of time to implement a clear judicial directive. That is enough to state a cause of action.

The court also does not accept Defendants' argument that McDeid has failed to state a claim because he had other available remedies, such as a contempt proceeding, than a section 1983 cause of action. It seems absurd to allow a litigant, who fails to take advantage of an appeal to challenge a court order that aggrieved it, to ignore or slow-walk implementing the court order for more than two years, in order to force the beneficiary of the court order to bring a contempt proceeding against it.

McDeid has alleged a due process violation that has stated a claim upon which relief can be granted.

## II.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The Defendants also contend that McDeid's claim for damages against them in their individual capacity must be dismissed because they are entitled to qualified immunity.

Courts consider two factors to determine whether an official is entitled to qualified immunity: "(1) whether the facts alleged or show, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.2d 997, 1003 (8th Cir. 2013). To be clearly established, the law defining the right "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Qualified immunity protects officials by allowing "ample room for mistaken judgments," but does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 N.W.2d 335, 343, 341

Filed in District Court
State of Minnesota
9/18/2020 2:17 PM

(1986).Qualified immunity is more than a defense from liability; it provides immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Generally, an order denying a motion to dismiss an action is not appealable. *Pillsbury v. Foley*, 63 N.W. 1027, 1027 (Minn. 1895). The court allows immediate appeal from an order denying immunity, however, because the immunity from suit would be lost if the case went to trial. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 72 (Minn.1991); *see also Green v. Brantley*, 941 F.2d 1146, 1152 (11th Cir.1991) (issue of qualified immunity is immediately appealable even though resolution of that question would not obviate trial on other issues).

When a defendant asserts qualified immunity and moves to dismiss the complaint, the plaintiff must meet a heightened initial standard of pleading. *Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th Cir.1990).  Here, the plaintiff "must establish that the [official's] action was objectively legally unreasonable." *Stone v. Badgerow*, 511 N.W. 747, 751 (Minn. Ct. App. 1994)(quoted source omitted).  However, "[p]laintiffs cannot expect discovery to provide factual support for conclusory allegations against public officials in Section 1983 suits, and therefore should supply in their complaints or other supporting materials greater factual specificity and "particularity" than is usually required." *Elwood v. Rice County*, 423 N.W.2d 671, 676 (Minn.1988)(citation omitted).  As the Minnesota Court of Appeals observed in *Stone*:

> A plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). "The complaint should include 'all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law.' " *Id.* at 646 (quoting *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987)); *accord Martin*[*v. Malhoyt*], 830 F.2d [237] at 257 [(D.C. Cir. 1987)] (plaintiff must "come forward with 'nonconclusory allegations of evidence'" to proceed to discovery).

*Stone*, 511 N.W.2d at 752. "Unless and until the plaintiff both demonstrates a clearly established right and comes forward with the necessary factual allegations, the government official is properly spared the burden and expense of proceeding any further." *Id.* (cleaned up).

Defendants maintain that qualified immunity applies since McDeid's due process claim fails to state a constitutional violation. Since this court has already rejected that argument, it will address Defendants' other argument that qualified immunity applies since McDeid "cannot point to any…case that would put Defendants on notice that their failure to transfer Plaintiff to CPS sooner violated procedural due process rights." In other words, Defendants maintain that McDeid has not established that a "constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful."

McDeid claims that his rights to procedural due process were "clearly established," contends that he adequately pled allegations to that effect, and that he should have the chance to conduct discovery to support his claim.

McDeid cannot wait to conduct discovery to support his claim, in response to a pleading which alleges qualified immunity. He must come forward, either in his pleading or in response to the motion to dismiss, with allegations or evidence that Defendants' actions were "objectively legally unreasonable." *Stone*, 511 N.W. at 751. While McDeid has established that he was entitled to the benefit of the CAP Order, he has not shown that the rule or statute or CAP Order was so well-defined that it would be "clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted." *Saucier v. Katz*, 533 U.S. 194, 202

(2001). The CAP Order did not order immediate transfer to CPS. It did not specify a timeframe at all. Because of this ambiguity, one reading of the CAP Order would align with McDeid's expectation of being transferred quickly to CPS. Another reading might align with Defendants' using their discretion to determine, for example, whether it had a bed available in CPS, whether it needed to take additional steps to properly staff CPS to accommodate McDeid, or whether it had a "reasonable time" to carry out the CAP Order.

For something to be "clearly established" requires a "high degree of specificity." *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). A rule, statute, or order is too general if the unlawfulness of the official's conduct does not follow immediately from the conclusion that the rule, statute, or order was firmly established. *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2017)(quoted source omitted). This is a fundamentally different and more demanding requirement than that of whether there is a sufficiently clear duty imposed by law for entitlement to mandamus relief. McDeid has not made a demonstration, in his pleading or in his response to the motion to dismiss, that Defendants' violated a clearly established rule, statute, or order.

Nor has McDeid identified a case in which an official acting under similar circumstances was held to have violated due process. *See White,* 137 S. Ct. at 552. While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate. *Wesby*, 138 S. Ct. at 590 (cleaned up). At least, there must be a body of relevant case law which would clearly establish the answer to the questioned action. *Id.* The absence of any case authority here, which would make clear what actions the

13

Filed in District Court
State of Minnesota
9/18/2020 2:17 PM

Defendants were required to take upon receipt of the CAP Order, does not create a "clearly established" right which would defeat qualified immunity.

Therefore, on this record, qualified immunity protects Defendants from McDeid's claim for damages under section 1983 in their individual capacities. McDeid's claim for damages against Defendants in their individual capacities is dismissed.

Defendants also contend that McDeid's claim for damages should be dismissed because a state official cannot be sued for damages in their official under section 1983. McDeid concedes that he cannot seek damages against Defendants in their official capacities under section 1983, but instead contends that they remain subject to liability for damages in their individual capacities. Since this court has already applied qualified immunity to McDeid's claim for individual damages, McDeid has no remaining claim for damages. McDeid's claim for damages against Defendants in their official capacities is dismissed.

## CONCLUSION

Since McDeid has withdrawn his claim for mandamus relief, in light of the fact that he has been transferred to CPS, his only remaining claim for relief was for damages. Because this court has dismissed McDeid's damages claim, this matter is dismissed in its entirety.

TAG

# EXHIBIT D

STATE OF MINNESOTA

COUNTY OF RAMSEY

DISTRICT COURT

SECOND JUDICIAL DISTRICT

| | |
|---|---|
| Shane P. Garry, | |
| Plaintiff-Petitioner, | Court File No.: 62-CV-19-8234 |
| vs. | Case Type: Civil – Other/Misc. |
| Nancy Johnston, CEO/Director, Minnesota Sex Offender Program, an agency of the State of Minnesota; and Jodi Harpstead, Commissioner, Department of Human Services, an agency of the State of Minnesota, | |
| Defendants-Respondents. | |

## ORDER & MEMORANDUM

This matter came before the undersigned on the motion of Defendants-Respondents Nancy Johnston, as CEO/Director of the Minnesota Sex Offender Program ("MSOP Director") and Jodi Harpstead, as Commissioner of the Minnesota Department of Human Resources ("Commissioner") (collectively "Defendants") for dismissal for failure to state a claim upon which relief can be granted. Assistant Attorney General R.J. Detrick represents the Defendants. Attorneys Andrew Pieper and Roxanna Gonzalez represent Plaintiff Shane P. Garry ("Garry"). There was no hearing held and the matter was taken under advisement.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

2. The attached Memorandum shall be incorporated into this Order.

**BY THE COURT**

Gilligan, Thomas(Judge)
Sep 18 2020 1:45 PM

Dated: September 18, 2020

THOMAS A. GILLIGAN, JR.
JUDGE OF DISTRICT COURT

## MEMORANDUM

This matter was originally commenced through a "Petition for Writ of Mandamus and Complaint" filed by Garry on November 20, 2019. On January 7, 2020, this court issued an Order Directing Clerk to Execute Writ of Mandamus. On that same day, the Court Administrator issued a Writ of Mandamus that commanded the MSOP Director and the Commissioner to "show cause before this court…on January 21, 2020…why [they] should not be required to comply with the relief sough[t] in [Garry's] Writ." The court held a hearing as scheduled and allowed the MSOP Director and the Commissioner to file a motion to dismiss the Petition and allowed Garry to amend his pleading. Defendants moved to dismiss and Garry filed his amended pleading. The motion was fully briefed by the parties. Because of the COVID-19 pandemic, the court did not have a hearing on the motion to dismiss. Through an error of this court, however, the motion was not taken under advisement as of the date that the briefs on the motion were complete on May 8, 2020. As a result, the parties to this matter did not receive a timely decision. The parties and attorneys should expect, and receive, a timely decision on all matters filed in this court. This decision follows.

Garry was first committed to the MSOP in 2012 and received an indeterminate commitment on August 7, 2012. Garry was committed as a sexually dangerous person ("SDP") to the Minnesota Sex Offender Program ("MSOP") and resides at MSOP's Moose Lake ("Moose Lake") facility. Garry petitioned the Special Review Board ("SRB") to be: (1) transferred to Community Preparation Services ("CPS"); (2) provisionally discharged; or (3) fully discharged. The SRB denied each of Garry's requests on July 5, 2016. On January 24, 2018, the Minnesota Commitment Appeal Panel ("CAP") issued an order ("CAP Order") to

1

transfer Garry to a non-secure facility, stating among other things, that CPS was the best facility to meet his treatment needs because "it would allow him to 'have increased access to positive peers who are working toward deinstitutionalization and reintegration.'" The CAP Order included a 15 day stay after its issuance on January 24, 2018. Defendants did not appeal from the CAP Order. Garry contends that, despite this CAP Order, he remains in a secure facility in Moose Lake, "where his liberty interests and ability to progress through treatment for eventual reintegration" have been severely limited. At the time he filed his amended pleading on March 6, 2020, it had been 758 days since the stay on the CAP Order expired.

Garry sued the MSOP Director in "her individual and official capacity," because she "acted under the color of law to implement, retain, and carry out policies through MSOP that violated Garry's constitutional, statutory, and common law rights." Garry sued the Commissioner in "her individual and official capacity," because she "acted under the color of law to implement, retain, and carry out policies through MSOP that violated Garry's constitutional, statutory, and common law rights."

Garry contends that he is entitled to a Peremptory Writ of Mandamus because Defendants have: (1) a defined and legal obligation and duty under the CAP Order and Minn. Stat. § 253B.09, subd. 1, to transfer Garry to CPS for treatment necessary to advance in the program, including Phase III Reintegration treatment; (2) unreasonably delayed Garry's transfer to CPS; and (3) forced Garry to remain in Phase II treatment at Moose Lake's secure facility for more than two years after the CAP Order granting his petition for transfer to a less restrictive facility. Garry contends that Defendants' failure to comply with their legal duty to timely act on the CAP Order and transfer Garry to CPS constitutes a public wrong specifically

injurious to Garry, and there is no plain, speedy, or adequate remedy in the ordinary course of law. In the alternative, Garry demands the issuance of an Alternative Writ of Mandamus to require the Defendants to show cause as to why they have defied and continue to defy the CAP Order.

Garry also claims that because of Defendants' "refusal to abide by the CAP Order and refusal to transfer [him] to CPS significantly delayed his treatment progression and hindered his ability to advance in the program toward discharge." He claims that there was no procedure for him to enforce the CAP Order and that he lacks an administrative remedy to effectuate his transfer to CPS and therefore was denied his procedural due process rights.

Garry contends that, under 42 U.S.C. § 1983, he was denied due process under the Fourteenth Amendment to the United States Constitution. He maintains that, under the CAP Order, he was conferred a protected property and liberty interest and had a "legitimate claim of entitlement to effectuation of the CAP Order, transfer to a less restrictive facility (*e.g.* CPS), and to have access to treatment…" He maintains that because of Defendants' unlawful conduct, he was: (1) deprived of his protected property and liberty interests in violation of the Fourteenth Amendment to the U.S. Constitution; and (2) suffered and continues to suffer damages.

Defendants moved for dismissal for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). Defendants claim that Garry's demand for mandamus relief should be dismissed because: (1) Garry has not shown the existence of a sufficiently clear duty imposed by law; (2) even if the CAP's Order is specific enough to require transfer within a set time, contempt proceedings provide Garry with an adequate remedy other than

mandamus relief; and (3) mandamus relief is inappropriate because it would be futile and ineffective.

Defendants also contend that Garry's due process claim lacks merit because: (1) he cannot bring a procedural due process claim based on the alleged violation of the CAP Order; (2) the procedural due process claim against them in their individual capacities for monetary damages is barred by qualified immunity; and (3) even if Garry's claim survives the first two challenges, Defendants contend that the claim against them in their official capacities should be dismissed because Garry cannot prevail on a damage claim against them.

Garry responds that the motion to dismiss should be denied because he has stated a claim for mandamus relief that would survive a motion to dismiss, he does not have an adequate remedy at law and mandamus would not be futile.

He also contends that he has properly stated a cause of action for a section 1983 claim against Defendant for a deprivation of procedural due process. According to Garry, Defendants lacked discretion to delay his transfer for 813 days, as of the date his responsive brief was filed, or otherwise decide what a "reasonable time" would be to effectuate his transfer in light of the directive provided by the CAP Order. Garry further contends that Defendants lack discretion to withhold performance under the CAP Order simply because it did not state a date certain by which the Defendants must comply. In any event, Garry contends that whether 813 days is a "reasonable time" is a fact question, which is inappropriate for disposition in a motion to dismiss. Garry also claims that he has have adequately pled facts which would defeat a qualified immunity defense at this stage, so a motion on that basis is

4

premature. He acknowledges limitations on his remedies against Defendants under the doctrine of official immunity, but that those limitations are not fatal.

## MOTION TO DISMISS STANDARD OF REVIEW

A motion to dismiss a complaint under Minn. R. Civ. P. 12.02(e) "raises the single question of whether the complaint states a claim upon which relief can be granted." *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 739 (Minn. 2000)(citations omitted). "Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 567 (D. R.I. 1996). "[I]t is immaterial whether or not the plaintiff can prove the facts alleged," and a court should not grant a dismissal under Rule 12.02(e) "if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded…" *Martens* 616 N.W. 2d at 739-40 (internal quotes and citations omitted). In determining whether a claim survives a motion to dismiss, courts are "not bound by legal conclusions stated in a complaint . . ." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014) (internal quotes and citations omitted). The district court must consider and accept as true only the facts alleged in the complaint and construe all reasonable inferences in favor of the nonmoving party. *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008).

## DEFENDANTS' MOTION TO DISMISS IS GRANTED IN PART AND DENIED IN PART

A person committed as SDP may only receive a reduction in custody by filing a petition with the SRB. Minn. Stat. § 253D.27, subd. 2. *In re Civil Commitment of Lonergan*, 811 N.W.2d 635, 642 (Minn. 2012)("The Commitment Act expressly states that patients indeterminately committed 'shall be transferred, provisionally discharged or discharged, *only as provided in this*

*section*.'  Minn. Stat. § 253B.185, subds. 1(e)(emphasis added); *see also id.*, subd. 9. Therefore, when seeking a transfer or discharge, it appears that a patient committed as an SDP or SPP must exclusively follow the Commitment Act's specific procedures for petitioner for a transfer or discharge.").  The SRB is mandated to hold a hearing on each petition before it issues a report and recommendation under Minn. Stat. § 253D.27, subd. 4.  *See* Minn. Stat. § 253D.27, subd. 3.  The SRB must "hear and consider all petitions for a reduction in custody or to appeal a revocation of provisional discharge." Minn. Stat. § 253B.18, subd. 4c(a).  "A 'reduction in custody' means transfer from a secure treatment facility, discharge, and provisional discharge." *Id.*

The SRB's report and recommendation is then subject to *de novo* review by a judicial appeal panel, the CAP, which determines whether the reduction in custody will be granted or denied.  Minn. Stat. §§ 253D.28, .29, subd. 1, .30, subd. 1.  "A majority of the judicial appeal panel shall rule upon the petition." Minn. Stat. §§ 253D.28, subd. 3.  "No order of the judicial appeal panel granting a transfer, discharge, or provisional discharge shall be made effective sooner than 15 days after it is issued."  *Id.*  A party aggrieved by a CAP Order may appeal that order.  *Id.*

## I.   GARRY'S APPLICATION FOR A WRIT OF MANDAMUS SURVIVES A MOTION TO DISMISS

Garry asks the court to command the Defendants to direct them to comply with the CAP Order and transfer him from MSOP to CSP. A writ of mandamus is an extraordinary legal remedy. *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 171 (Minn. 2006). It is not awarded as "a matter of right, but in the exercise of sound judicial discretion and upon equitable principles."  *Coyle v. City of Delano*, 526 N.W.2d 205, 207 (Minn. Ct. App.

6

1995)(citation omitted). Mandamus is used "(1) to compel the performance of an official duty clearly imposed by law and (2) to compel the exercise of discretion when that exercise is required by law." Minn. Stat. § 586.01. To obtain a writ of mandamus, a petitioner must demonstrate: "(1) the failure of an official duty clearly imposed by law; (2) a public wrong specifically injurious to petitioner; and (3) no other adequate specific legal remedy." *Coyle*, 526 N.W.2d at 207. *See also* Minn. Stat. §§ 586.02, .04. In mandamus cases, petitioners "must demonstrate a clear legal right to have the act in question performed and must demonstrate every material fact necessary to show the existence of the plain duty with respect to the relief sought." *Mendota Golf*, 708 N.W.2d at 174, 178-79 (quotation omitted). A writ of mandamus does not control the particular manner in which a duty is to be performed and does not dictate how discretion is to be exercised. *See, e.g., State v. Davis*, 592 N.W.2d 457, 459 (Minn.1999); *State ex rel. S. St. Paul v. Hetherington*, 61 N.W.2d 737, 740 (Minn. 1953); *State ex rel. Laurisch v. Pohl*, 8 N.W.2d 227, 231 (Minn. 1943). "If the entity has any discretion to perform the duty, a petitioning party must show that the failure to perform was so arbitrary and capricious that it constituted a clear abuse of discretion." *Houck v. Eastern Carver Cnty. Sch.*, 787 N.W.2d 227, 232 (Minn. 2010)(citation omitted). Issuance of the writ should "be denied where it is obvious that it will prove to be futile, unavailing, and ineffective." *Winnetka Partners Ltd. P'ship v. County of Hennepin*, 538 N.W.2d 912, 915 (Minn. 1995)(citations omitted). A court should also not grant mandamus to compel "a technical compliance with the letter of law" that would violate the spirit of the law. *State v. Hodapp*, 48 N.W.2d 519, 522 (Minn. 1951).

Defendants first claim that Garry's demand for mandamus relief should be dismissed because he has not shown the existence of a sufficiently clear duty imposed by law.

Defendants contend that since the CAP Order did not require Garry to be transferred to CPS within a specified period of time, there was no sufficiently clear duty for them to follow.

While it is literally true that the CAP did not give Defendants a deadline to comply with the CAP Order, it defies reason to believe that the CAP Order did not provide a clear enough judicial directive. Certainly, the CAP Order did not give Defendants the discretion to wait nearly three years to implement its specific order.

The CAP Order found:

Both Dr. Riedel and Dr. Spielman opine that Petitioner meets the statutory criteria for a transfer to CPS. Petitioner continues to be engaged in his treatment program and has received "Enhanced" ratings on most of his treatment targets. Although Petitioner continues to have remaining treatment needs, both Dr. Riedel and Dr. Spielman opined that Petitioner has made progress in his treatment and CPS is the best facility to meet his current treatment needs. Petitioner does not require his current level of high level of security to continue his treatment, given that he "has demonstrated consistent behavioral control" and "has increased the number of dynamic risk factors currently considered managed." Furthermore, CPS will provide any necessary security because Petitioner will be escorted and monitored by GPS. The Panel has carefully considered the SVRA Update and the opinion and recommendations of Dr. Riedel, which he provided in his report and testimony. The Panel is also persuaded that CPS can best meet Petitioner's treatment needs as he continues his therapeutic work. The Panel agrees with Dr. Spielman, who opined that CPS is the facility that can best meet Petitioner's needs because it would allow him to "have increased access to positive peers who are working toward deinstitutionalization and reintegration." For the reasons stated above, the Panel is convinced that a transfer to CPS could be accomplished with a reasonable degree of safety for the public. The Panel agrees with the opinions of Dr. Riedel and Dr. Spielman that Petitioner's request for transfer *is appropriate at this time*.

(citations omitted)(emphasis added).

Based on that finding, among others, the CAP concluded that Garry "has shown by a preponderance of the evidence that transfer to a non-secure facility (CPS) is appropriate." It ordered that Garry's "petition for transfer to a less restrictive facility (CPS), pursuant to Minn.

8

Filed in District Court
State of Minnesota
9/18/2020 2:16 PM

Stat. § 253D.28, subd. 2(e) is **GRANTED**." (emphasis in original). The CAP made its directive and the reasons for it clear. It determined that transfer was "appropriate at this time," which made it reasonably clear that the Defendants could not wait nearly three years to transfer him to CPS. Since mandamus can be used not only to compel compliance with an official duty clearly imposed by law, but also to compel the exercise of discretion when that exercise is required by law, Garry has adequately stated a claim for relief on this mandamus element. *See* Minn. Stat. § 586.01.

Next, Defendants contend that even if the CAP's Order is specific enough to require transfer within a certain amount of time, contempt proceedings provide Garry with an adequate remedy other than mandamus relief.

This court does not accept Defendants' argument that Garry has failed to state a claim because he had other available remedies, such as a contempt proceeding, than a petition for mandamus relief. It seems absurd to allow a litigant, who fails to take advantage of an appeal to challenge a court order that aggrieved it, to ignore or slow-walk implementing the court order of nearly three years, in order to force the beneficiary of the court order to bring a contempt proceeding against it. This court cannot find that forcing state officials to comply with a reasonably clear court order through a contempt proceeding would be an adequate, alternative remedy to mandamus. A litigant against state officials should not be required to resort to punitive and collateral measures to get them to follow a court order. For these reasons, Garry has adequately stated a claim for relief on this mandamus element.

Finally, Defendants argue that mandamus relief is inappropriate because it would be futile and ineffective. The basis for this contention is two-fold: (1) Defendants contend that

there is a "lack of bedspace" to accommodate transfer of Garry to CPS; and (2) a lack of
available funding to accommodate transferees to CPS. Essentially, Defendants argue that
because publicly available documents from 2018 or 2019 suggest that there were not enough
beds to accommodate a waitlist of transferees to CPS, and because the Legislature has not
approved funding for the expansion of CPS, that it would be futile to mandate its compliance
with the CAP Order.

This is a motion for dismissal, not a motion for summary judgment on a fully developed
factual record. This court will decline the implicit invitation to convert this motion into a
motion for summary judgment. It will also decline the invitation to take judicial notice of facts
that may not necessarily be germane to Garry's specific situation or which may be stale. While
bedspace may be scarce and the budget may be tight, it does not necessarily follow that Garry's
demand for mandamus relief is futile. Accordingly, this court cannot say, on the record before
it, that Garry's petition for mandamus relief is futile.

Defendants' motion to dismiss Garry's demand for mandamus relief is therefore
denied.

## II.   GARRY HAS SUFFICIENTLY ALLEGED A DUE PROCESS CLAIM

Defendants next contend that Garry's procedural due process claim, should be denied
because non-compliance with a state court order cannot be the basis of a section 1983 action.
For the most part, Defendants contend that: (1) there is no protected due process right at issue
because the CAP Order did not provide a deadline for implementation; (2) Garry has not
adequately identified any process he was denied; and (3) Garry cannot bring a section 1983
action to enforce a court order. Although this court has already rejected the argument that

10

Filed in District Court
State of Minnesota
9/18/2020 2:16 PM

Garry has no recourse because the CAP Order did not contain a deadline for compliance, it will address this further in the context of a due process violation. This court has also rejected the argument that contempt is an adequate remedy for addressing Defendants' non-compliance with the CAP Order. There is no need for this court to address that argument further.

Defendants' main argument pertains to whether Garry has identified the process that he was denied. The CAP issued its CAP Order and stayed it for the required time period. Defendants, if aggrieved by the CAP Order, or if they had concerns that it could not be implemented, could have appealed. They did not. As such, they have effectively agreed to the CAP Order's implementation. There is no further process for a transferee in Garry's circumstance. The SRB/CAP process has no protocol for contesting a slow, or never-ending implementation. It does not make sense that a successful MSOP client would have to further litigate his success, through a statutory process which does not yet exist.

Garry contends that he has a protected liberty and property interest in his transfer to CPS and is entitled to an appropriate level of procedural due process as a result. "When engaging in a due process analysis, a court must conduct two inquiries. First, the court must determine whether the complainant has a liberty or property interest with which the state has interfered. Second, if the court finds a deprivation of such an interest, it must determine whether the procedures attendant upon that deprivation were constitutionally sufficient." *Carrillo v. Fabian*, 701 N.W.2d 763, 768 (Minn. 2005)(cleaned up).

As for the first inquiry, "the Due Process Clause of the U.S. Constitution provides that a state shall not 'deprive any person of life, liberty, or property without due process of law.'"

62-CV-19-8234

Filed in District Court
State of Minnesota
9/18/2020 2:16 PM

*Id.* (quoting U.S. CONST. amend XIV, § 1). "The Supreme Court has ruled that courts must look to the nature of an interest to determine if it is within the scope of the Fourteenth Amendment's protection of liberty and property." *Id.* (citations omitted). "A constitutionally-protected liberty interest arises from a legitimate claim of entitlement rather than simply an abstract need or desire or a unilateral expectation." *Id.* Therefore, Garry must have a legitimate claim of entitlement to being transferred to CPS before it can qualify as a liberty interest.

Among other things, Garry contends that he possesses a protected liberty interest in the CAP Order because it directed his transfer to a less restrictive facility, and a protected property interest in the statutory scheme which led to the issuance of the CAP Order. He also contends that Defendants have no discretion to withhold compliance with the CAP Order simply because it did not contain a date-certain for compliance. He claims that the suggestion that the Defendants have the discretion to effectively ignore a CAP Order is contrary to the Minnesota Court of Appeals holding in *In re Civil Commitment of Kropp*, 895 N.W.2d 647 (Minn. Ct. App. 2017). Garry also argues that there is no due process or procedural safeguards in place for him to challenge the deprivation of his transfer to CPS under the CAP Order. In the end, Garry contends that he has pled sufficient facts to state a plausible claim for a violation of his due process rights to survive a motion to dismiss.

Defendants contend that violations of state laws or state court orders do not constitute a federal due process violation. They also claim that Garry has no property or liberty interest in the CAP Order because he "does not cite any substantive limitations on [their] exercise of discretion in determining when to transfer him to CPS or 'mandatory language' requiring

transfer at a specific time." Defendants contend that neither the CAP Order, nor Minn. Stat. § 253D.28, subd. 3 "specify that Defendants must transfer Plaintiff to CPS after [the expiration of the 15 day stay]." They therefore contend that Defendants had the discretion in determining when to transfer Garry to CPS, Garry did not have a liberty or property interest in such a transfer and his due process claim fails. Finally, they also claim that Garry cannot bring a procedural due process claim under section 1983 because he had other avenues, such as a contempt proceeding, to enforce the CAP's Order.

The fundamental question posed by the motion to dismiss is whether Garry has stated a claim upon which relief can be granted.

Garry alleges that:

> The CAP Order conferred a government benefit onto Garry, that qualifies as a protected property interest and a state-created liberty interest because Garry had a legitimate claim of entitlement to effectuation of the CAP Order, transfer to a less restrictive facility (*e.g.,* CPS), and to have access to treatment, including Phase III Reintegration treatment.

Garry has therefore alleged that he had a protected property and liberty interest in being transferred to CPS under the CAP Order.

Garry further alleges that he was: (1) held in an overly restricted facility for 758 days in disregard of the CAP Order; (2) not provided with notice regarding the delay of his transfer or of a transfer date; (3) not transferred to CPS within a reasonable time; and (4) denied meaningful process or procedural protections for him to ensure timely or actual enforcement of the CAP Order.

Accordingly, Garry has alleged that he was deprived of his protected interest and that the procedures attendant upon that deprivation were not constitutionally sufficient.

13

The court does not accept Defendants' argument that the Complaint fails to state a claim because Defendants had the discretion to ignore, disregard, or fail to implement the CAP Order. This court must look at the liberty deprivation at issue, rather than whether there might be a negative or discretionary inference in the CAP Order. *Cf. Carrillo*, 701 N.W.2d at 770 (in consideration of a due process challenge on an extension of an inmate's confinement period, the Minnesota Supreme Court rejected the approach of focusing narrowly on statutory language, rather than the deprivation at issue). Further, the absence of a specific deadline in the CAP Order did not, as Defendants seem to suggest, delegate the CAP's discretion to it. As the Minnesota Court of Appeals observed in *Kropp*:

> the judicial appeal panel [*i.e.* CAP] alone has the authority to grant or deny a provisional discharge. Neither the executive director nor the commissioner has the authority to grant or deny provisional discharge petitions. Rather the executive director and commissioner act as parties who may file petitions and state their support or opposition to any petition filed.

895 N.W.2d at 652 (cleaned up). The CAP Order indicated that transfer was "appropriate at this time." The Defendants could have appealed from the CAP Order, but apparently did not chose that strategy. In the absence of that choice, the Defendants lacked the authority to simply ignore the directive of the CAP Order, as Garry has alleged. Minn. Stat. §§ 253D.28, subd. 3 provides: "No order of the judicial appeal panel granting a transfer, discharge, or provisional discharge shall be made effective sooner than 15 days after it is issued." *Id.* The CAP Order was *effective* on February 8, 2018. In the end, Garry contends that 758 days (and more) to place him into CPS, pursuant to the CAP Order violated his due process rights, because it was an unreasonable period of time to implement a clear judicial directive. That is enough to state a cause of action.

Garry has alleged a claim for a due process violation that has stated a claim upon which relief can be granted.

## III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The Defendants also contend that Garry's claim for damages against them in their individual capacity must be dismissed because they are entitled to qualified immunity.

Courts consider two factors to determine whether an official is entitled to qualified immunity: "(1) whether the facts alleged or show, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.2d 997, 1003 (8th Cir. 2013). To be clearly established, the law defining the right "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Qualified immunity protects officials by allowing "ample room for mistaken judgments," but does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 N.W.2d 335, 343, 341 (1986).

Qualified immunity is more than a defense from liability; it provides immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Generally, an order denying a motion to dismiss an action is not appealable. *Pillsbury v. Foley*, 63 N.W. 1027, 1027 (Minn. 1895). The court allows immediate appeal from an order denying immunity, however, because the immunity from suit would be lost if the case went to trial. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 72 (Minn.1991); *see also Green v. Brantley*, 941 F.2d 1146, 1152 (11th Cir.1991) (issue

15

of qualified immunity is immediately appealable even though resolution of that question would not obviate trial on other issues).

When a defendant asserts qualified immunity and moves to dismiss the complaint, the plaintiff must meet a heightened initial standard of pleading. *Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th Cir.1990). Here, the plaintiff "must establish that the [official's] action was objectively legally unreasonable." *Stone v. Badgerow*, 511 N.W. 747, 751 (Minn. Ct. App. 1994)(quoted source omitted). However, "[p]laintiffs cannot expect discovery to provide factual support for conclusory allegations against public officials in Section 1983 suits, and therefore should supply in their complaints or other supporting materials greater factual specificity and "particularity" than is usually required." *Elwood v. Rice County*, 423 N.W.2d 671, 676 (Minn.1988)(citation omitted). As the Minnesota Court of Appeals observed in *Stone*:

> A plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). "The complaint should include 'all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law.' " *Id.* at 646 (quoting *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987)); *accord Martin* [*v. Malhoyt*], 830 F.2d [237] at 257 [(D.C. Cir. 1987)] (plaintiff must "come forward with 'nonconclusory allegations of evidence'" to proceed to discovery).

*Stone*, 511 N.W.2d at 752. "Unless and until the plaintiff both demonstrates a clearly established right and comes forward with the necessary factual allegations, the government official is properly spared the burden and expense of proceeding any further." *Id.* (cleaned up).

Defendants maintain that qualified immunity applies since Garry's due process claim fails to state a constitutional violation. Since this court has already rejected that argument, it will address Defendants' additional argument that qualified immunity applies since Garry

16

"cannot point to any…case that would put Defendants on notice that their failure to transfer Plaintiff to CPS sooner violated procedural due process rights." In other words, Defendants maintain that Garry has not established that a "constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful."

Garry claims that his rights to procedural due process were "clearly established," contends that he adequately pled allegations to that effect, and that he should have the chance to conduct discovery to support his claim.

Garry cannot wait to conduct discovery to support his claim, in response to a pleading that alleges qualified immunity. He must come forward, either in his pleading or in response to the motion to dismiss, with allegations or evidence that Defendants' actions were "objectively legally unreasonable." *Stone*, 511 N.W. at 751. While Garry has demonstrated that he was entitled to the benefit of the CAP Order, he has not shown that the rule or statute or CAP Order was so well-defined that it would be "clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The CAP Order did not order immediate transfer to CPS. It did not specify a timeframe at all. Because of this ambiguity, one reading of the CAP Order would align with Garry's expectation of being transferred quickly to CPS. Another reading might align with Defendants' using their discretion to determine, for example, whether it had a bed available in CPS, whether it needed to take additional steps to properly staff CPS to accommodate Garry, or whether it had a "reasonable time" to carry out the CAP Order.

For something to be "clearly established" requires a "high degree of specificity." *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). A rule, statute, or order is too general if the unlawfulness of the official's conduct does not follow immediately from the conclusion that the rule, statute, or order was firmly established. *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2017)(quoted source omitted). This is a fundamentally different and more demanding requirement than that of whether there is a sufficiently clear duty imposed by law for entitlement to mandamus relief. Garry has not made a demonstration, in his pleading or in his response to the motion to dismiss, that Defendants' violated a clearly established rule, statute, or order.

Nor has Garry identified a case in which an official acting under similar circumstances was held to have violated due process. *See White*, 137 S. Ct. at 552. While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate. *Wesby*, 138 S. Ct. at 590 (cleaned up). At least, there must be a body of relevant case law which would clearly establish the answer to the questioned action. *Id.* The absence of any case authority here, which would make clear what actions the Defendants were required to take upon receipt of the CAP Order, does not create a "clearly established" right which would defeat qualified immunity.

Therefore, on this record qualified immunity protects Defendants from Garry's claim for damages under section 1983 in their individual capacities. Garry's claim for damages against Defendants in their individual capacities is dismissed.

Defendants also contend that Garry's claim for damages should be dismissed because a state official cannot be sued for damages in their official under section 1983. Garry concedes

that he cannot seek damages against Defendants in their official capacities under section 1983, but instead contends that they remain subject to liability for damages in their individual capacities.  Since this court has already applied qualified immunity to Garry's claim for individual damages, Garry has no remaining claim for damages.  Garry's claim for damages against Defendants in their official capacities is dismissed.

## CONCLUSION

In summary, Defendants' motion to dismiss all of Garry's claims for damages against Defendants is granted.  Defendants' motion to dismiss Garry's claims for mandamus relief and for non-monetary relief under section 1983 is denied.  The parties shall appear for a status conference on November 6, 2020, at 1:30 p.m.

TAG

# EXHIBIT E

STATE OF MINNESOTA

COUNTY OF DAKOTA

In the Matter of the Civil Commitment of:

Steven Edwards.

COMMITMENT APPEAL PANEL
Appeal Panel File No. AP21-9015
Court File No. 19HA-PR-10-32

**AFFIDAVIT OF**
**NANCY A. JOHNSTON**

I, NANCY A. JOHNSTON, declare and state as follows:

1.      I am currently employed as the Executive Director of the Minnesota Sex Offender Program ("MSOP").  I have personal knowledge of the facts in this declaration.

2.      In my capacity as Executive Director of MSOP, I am responsible for the oversight, operation, and programming of MSOP.

3.      MSOP is a program of the Minnesota Department of Human Services ("DHS").  I have been employed by DHS since 2003.  I have held several different positions at MSOP, both clinical and operational, including Social Work Specialist, Clinical Supervisor, Facility Director, and Executive Director.  I have been Executive Director of MSOP since June of 2012, except for an approximate seven-month period in 2016 when I was a Deputy Commissioner of DHS.

4.      Community Preparation Services ("CPS") is a less restrictive, unlocked residential setting on the grounds of MSOP's St. Peter campus located outside of the secure perimeter.

5.      I am submitting this affidavit in accordance with the Court's Findings and Order Setting an Evidentiary Hearing on Contempt, filed on October 31, 2022, which provides that the Commissioner, Deputy Commissioner, or MSOP Executive Director update the Court as to: the anticipated date for transfer of Mr. Edwards to CPS; the status of staffing for additional beds at CPS; and any other known impediments to transfer.

1

6.      Mr. Edwards is now number four on the waitlist for clients awaiting transfer to CPS. At the time of the contempt motion hearing on October 10, 2022, Mr. Edwards had been number seven on the waitlist.

7.      DHS is still in the process of opening what will ultimately be 36 CPS beds by taking over another building on the St. Peter campus that was recently vacated by the Forensic Mental Health Program.  Based on current staffing levels, the building can only accommodate 20 additional MSOP clients, which have been filled by recently transferred CPS clients.  Upon being fully staffed, DHS will fill the remaining 16 licensed beds at this building, which will allow 16 additional CPS clients on the waiting list to be transferred, including Mr. Edwards.  There are currently 18 clients on the waitlist.  Upon being fully staffed, only 2 MSOP clients would be on the *current* CPS waiting list.

8.      As part of the effort to fully staff the building referenced in paragraph 7, DHS has advertised for Clinicians and Security Counselors.  In order to encourage qualified persons to apply, DHS has offered a monetary incentive in the amount of up to $2,500, as indicated on Exhibits A and B attached hereto.

9.      MSOP intends to transfer Mr. Edwards to CPS when a bed becomes available for him in accordance with his place on the waiting list.

10.     With the exception of needing to fully staff the remaining 16 licensed beds, I am not aware of any impediments to transferring Mr. Edwards to CPS.

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

Executed on November 14, 2022
St. Paul, Ramsey County,
State of Minnesota

Nancy Johnston
Digitally signed by Nancy Johnston
Date: 2022.11.14 10:52:52 -06'00'

/s/ _____
NANCY JOHNSTON

2

# *Johnston Exhibit A*

**Job ID:** 56870 - Clinician or Senior Clinician - Clinical Program Therapist 3 or 4

**Location:** St. Peter
**Full/Part Time:** Full-Time
**Regular/Tempory:** Unlimited

# Working Title: Clinician or Senior Clinician
# Job Class: Clinical Program Therapist 3 or 4
# Agency: Human Services Dept

- **Who May Apply**: Open to all qualified job seekers
- **Date Posted**: 11/04/2022
- **Closing Date**: 11/17/2022
- **Hiring Agency**: Department of Human Services
- **Division/Unit**: Direct Care and Treatment / MSOP Prof Staff / MSOP SP Clinical Team E
- **Work Shift**: Day Shift
- **Work Hours**: 8:00 a.m. - 4:30 p.m.
- **Days of Work**: Monday - Friday
- **Travel Required**: No
- **Clinical Program Therapist 3Salary Range:** $28.96 - $43.67 / hourly; $60,468 - $89,095 / annually
- **Clinical Program Therapist 4Salary Range:** $31.00 - $45.98 / hourly; $64,728-$96,006 / annually
- **Classified Status**: Classified
- **Bargaining Unit/Union**: 214 - MN Assoc of Professional Empl/MAPE
- **FLSA Status**: Nonexempt
- **Telework Eligible**: No
- [Designated in Connect 700 Program for Applicants with Disabilities](#): Yes

## Make a difference in the lives of Minnesotans.

The work you'll do is more than just a job. Join the talented, engaged and inclusive workforce dedicated to creating a better Minnesota.

**Join us at our St. Peter Career Fair!**
Date: Nov 15th, 2022
Location: St. Peter Library
601 S Washington Ave St. Peter, MN 56082
Time: 1:00 pm-3:30 pm

1

Nancy Johnston
Exhibit
**A**

**Job ID:**  56870 - Clinician or Senior Clinician - Clinical Program Therapist 3 or 4

Learn more about our opportunities! Interview on the spot!

# Job Summary

The Minnesota Sex Offender Program (MSOP) in St. Peter is seeking dynamic Clinicians and Senior Clinicians to work on the leading edge of the comprehensive evaluation, treatment, and management of individuals who have been civilly committed as a Sexually Dangerous Person or Sexual Psychopathic Personality. MSOP St. Peter is a residential treatment facility for clients who have been court-ordered to receive ongoing treatment in a secure setting. As clients progress in treatment they may petition to transition to MSOP Community Preparation Services (CPS). Clients must petition the Special Review Board and Commitment Appeal Panel to be granted a transfer to CPS from inside the secure perimeter at MSOP St. Peter or Moose Lake campus. CPS is a less restrictive, unlocked residential setting on the grounds of the MSOP St. Peter campus located outside of the secure perimeter.

We are a national leader in the industry and are committed to implementing the latest research throughout all aspects of our program. CPS is designed to provide clients with opportunities to continue working on treatment, as well as offer new opportunities for deinstitutionalization and reintegration into the community.

**Clinician responsibilities include:**

- Treatment Planning;
- Preparing written reports;
- Providing individual counseling and group therapy;
- Developing and providing clinical training for staff;
- Delivering psycho-educational curriculums;
- Perform related duties as assigned in the areas of admissions and discharge, program development, scheduling, supervision of client activities, and/or involvement in policy drafting teams or special work groups.
- Cooperate within an interdisciplinary team and build positive working relationships.

**In addition to the responsibilities list above, Senior Clinician responsibilities include:**

**Job ID:** 56870 - Clinician or Senior Clinician - Clinical Program Therapist 3 or 4

- Function as a lead clinician on the treatment team, taking on a leadership role and additional responsibilities as assigned.

**Why Work for MSOP**

You owe it to yourself to check out this exciting and rewarding career at MSOP with Direct Care and Treatment, the behavioral health care system operated by the Department of Human Services.

Led by seasoned and respected professionals, MSOP is a comprehensive sex offense specific treatment program in a modified therapeutic community in a secure setting. MSOP is committed to the professional growth of staff and applying current best practices to assist our clients in making meaningful change. MSOP, while rooted in public safety, is focused on the capacity to clients to change and ultimately be reintegrated into the community when risk to the public is sufficiently reduced.

*This is a continuous job posting and will be used to fulfill multiple permanent, full-time Clinician or Senior Clinician - Clinical Program Therapist 3 or 4 vacancies for the Minnesota Sex Offender Program in St. Peter, MN. The level in which the position is filled will be based on the qualifications of the applicant who is selected for the position.*

**Working for the Minnesota Department of Human Services Direct Care & Treatment division PAYS!**
When you start a career with us, you may also be eligible for:

- Up to $2,500 hiring bonus! (current state employees are not eligible)
- Relocation expenses covered
- Annual pay increases
- Tuition reimbursement for courses related to the work of DHS Student loan reimbursement for eligible positions

# Minimum Qualifications

**Clinician - Clinical Program Therapist 3**

**Job ID:**  56870 - Clinician or Senior Clinician - Clinical Program Therapist 3 or 4

To qualify as a Clinician, applicants must meet the following qualifications:

- Possess a Master's degree in psychology, social work, or closely related field; **AND**
- Have one (1) year of professional experience providing clinical services, including group and individual therapy.

**<u>Senior Clinician - Clinical Program Therapist 4</u>**

To qualify as a Senior Clinician, applicants must meet the following qualifications:

- Possess a Master's degree in psychology, social work, or closely related field;  **AND**
- Current licensure by the State of Minnesota as an independent behavioral health professional (i.e. Licensed Independent Clinical Social Worker (LICSW), Licensed Psychologist (LP), Licensed Professional Clinical Counselor (LPCC), Licensed Marriage and Family Therapist (LMFT); **AND**
- Have three (3) years of professional experience providing clinical services, including group and individual therapy.

## Preferred Qualifications

- Our employees are dedicated to ensuring cultural responsiveness. Preferred candidates will have a variety of experiences working effectively with others from different backgrounds and cultures.

## Additional Requirements

This position requires successful completion of the following:

To facilitate proper crediting, please ensure that your resume clearly describes your experience in the areas listed and indicates the beginning and ending month and year for each job held.

<u>REFERENCE/BACKGROUND CHECKS</u> - The Department of Human Services will conduct reference checks to verify job-related credentials and criminal background check prior to appointment.

**Job ID:** 56870 - Clinician or Senior Clinician - Clinical Program Therapist 3 or 4

EDUCATION VERIFICATION - Applicants will be required to provide a copy of their high school diploma at time of interview OR copies of their college transcript or college degree/diploma at time of interview. Copies of the college degree/diploma are acceptable ONLY if it clearly identifies the field in which it was earned.

## How to Apply

Select "Apply for Job" at the top of this page. If you have questions about applying for jobs, contact the job information line at 651-259-3637 or email careers@state.mn.us. For additional information about the application process, go to http://www.mn.gov/careers.

CERTAIN DISABLED VETERANS: Effective August 1, 2012, legislation provides state agencies with the option to appoint certain disabled veterans on a noncompetitive basis if they: 1) meet service requirements and have a verified service-connected disability rating of at least 30%; 2) provide qualifying documentation verifying the disability; and 3) meet all Minimum Qualifications identified in this posting. To be considered under this legislation you must submit all documentation to Recruiter Samantha DeVries at samantha.devries@state.mn.us before the closing date.

If you have questions about the position, contact Stacey Sonnek at Stacey.Sonnek@state.mn.us.

To receive consideration as a Connect 700 Program applicant, apply online, email the Job ID #56870, the Working Title and your valid Proof of Eligibility Certificate by the closing date to Samanatha DeVries at samatha.devries@state.mn.us.

## About Human Services Dept

WE MAKE A DIFFERENCE! The Minnesota Department of Human Services impacts the lives of 1.7 million people every year, helping them meet their basic needs so they can achieve their highest potential.

**Job ID:** 56870 - Clinician or Senior Clinician - Clinical Program Therapist 3 or 4

# Why Work for Us

## Diverse Workforce

We are committed to continually developing a workforce that reflects the diversity of our state and the populations we serve. The varied experiences and perspectives of employees strengthen the work we do together and our ability to best serve the people of Minnesota.

**A recent engagement survey of State of Minnesota employees found:**

- 95% of employees understand how their work helps achieve their agency's mission
- 91% of employees feel trusted to do their jobs
- 88% of employees feel equipped to look at situations from other cultural perspectives when doing their job
- 87% of employees report flexibility in their work schedule

## Comprehensive Benefits

Our benefits aim to balance four key elements that make life and work meaningful: health and wellness, financial well-being, professional development, and work/life harmony. As an employee, your benefits may include:

- Public pension plan
- Training and professional development
- Paid vacation and sick leave
- 11 paid holidays each year
- Paid parental leave
- Low-cost medical and dental coverage
- Prescription drug coverage
- Vision coverage
- Wellness programs and resources
- Employer paid life insurance
- Short-term and long-term disability
- Health care spending and savings accounts
- Dependent care spending account
- Tax-deferred compensation

**Job ID:**  56870 - Clinician or Senior Clinician - Clinical Program Therapist 3 or 4

- Employee Assistance Program (EAP)
- Tuition reimbursement
- Federal Public Service Student Loan Forgiveness Program

**Programs, resources and benefits eligibility varies**   based on type of employment, agency, funding availability, union/collective bargaining agreement, location, and length of service with the State of Minnesota.

---

## AN EQUAL OPPORTUNITY EMPLOYER

Minnesota state agencies are equal opportunity, affirmative action, and veteran-friendly employers. The State of Minnesota recognizes that a diverse workforce is essential and strongly encourages qualified women, minorities, individuals with disabilities, and veterans to apply.

We will make reasonable accommodations to all qualified applicants with disabilities. If you are an individual with a disability who needs assistance or cannot access the online job application system, please contact the job information line at  651-259-3637 or email  careers@state.mn.us and indicate what assistance is needed.

*Johnston Exhibit B*

**Job ID:** 50353 - Security Counselor / Forensic Support Specialist

**Location:** St. Peter
**Full/Part Time:** Full-Time
**Regular/Tempory:** Unlimited

# Working Title: Security Counselor / Forensic Support Specialist
# Job Class: Security Counselor
# Agency: Human Services Dept

- **Who May Apply**: Open to all qualified job seekers
- **Date Posted**: 11/08/2022
- **Closing Date**: 02/28/2023
- **Hiring Agency/Seniority Unit**: Department Human Services / DHS St Peter AFSCME
- **Division/Unit**: Direct Care and Treatment / St Peter / FMHP Aspen Unit
- **Work Shift**: Varies
- **Work Hours**: Varies
- **Days of Work**: Varies
- **Travel Required**: No
- **Salary Range:** $22.11 - $29.08 / hourly; $46,166 - $60,719 / annually
- **Classified Status**: Classified
- **Bargaining Unit/Union**: 204 - Health Care Non Professional/AFSCME
- **Work Area**: Forensic Services / Minnesota Sex Offender Program
- **FLSA Status**: Nonexempt
- **Telework Eligible**: No
- [Designated in Connect 700 Program for Applicants with Disabilities](): Yes

# Make a difference in the lives of Minnesotans.

The work you'll do is more than just a job. Join the talented, engaged and inclusive workforce dedicated to creating a better Minnesota.

**Join us at our St. Peter Career Fair!**
**Date: Nov 15th, 2022**
**Location: St. Peter Library**
**601 S Washington Ave St. Peter, MN 56082**
**Time: 1:00 pm-3:30 pm**
**Learn more about our opportunities! Interview on the spot!**

1



Nancy Johnston
Exhibit
**B**

**Job ID:**  50353 - Security Counselor / Forensic Support Specialist

# Job Summary

**Candidates may be eligible for a hiring bonus up to $2,500!!!**

The Minnesota Department of Human Services (DHS) is seeking qualified and enthusiastic individuals to join our Forensic Services or MSOP teams within the Direct Care & Treatment (DCT) division of the agency.

The Security Counselor will provide facility security and/or residential care to individuals within one of the following programs at our St. Peter campus:

The **Forensic Mental Health Program (FMHP)*** provides psychiatric evaluation and treatment services to individuals diagnosed with a mental illness who present a risk to public safety.

The **Minnesota Sex Offender Program (MSOP)*** is for individuals who have completed their prison sentences and are civilly committed by the courts and placed in sex offender treatment for an indeterminate period of time.

Responsibilities of a Security Counselor include:

- Providing informal counseling;
- Implementing treatment plans;
- Observing and documenting client behavior;
- Encouraging client participation in program activities;
- Providing security and verbal and/or physical crisis intervention.

**Working for the Minnesota Department of Human Services Direct Care & Treatment division PAYS!**

In addition to a rewarding career in which you will be positively impacting the lives of Minnesota's most vulnerable residents, we provide competitive compensation and a comprehensive benefits package. This includes a competitive hourly wage, affordable insurance, retirement benefits, paid time off and more!

**Job ID:**  50353 - Security Counselor / Forensic Support Specialist

When you start a career with us, you may also be eligible for:

- $2,500 Hiring Bonus
- Annual pay increases
- Corrections Early Retirement Program

What a great opportunity to be a part of an organization that is committed to our staff, clients, and community!

This announcement will be used to fill multiple permanent, full-time, part-time, and intermittent (on-call) vacancies within the Forensic Mental Health Program (FMHP)* and Minnesota Sex Offender Program (MSOP)* in St. Peter. Shift may be day shift, rotating (day/evening) shift, or overnight shift.

## Minimum Qualifications

To qualify, applicants must:

- Have a HS diploma or GED;
- Be at least 18 years of age;

AND

**Job ID:**  50353 - Security Counselor / Forensic Support Specialist

- At least ONE of the following in order to qualify for further consideration:
    - One or more years of full-time work experience in ANY field; OR
    - Two or more years of part-time work experience in ANY field

## Preferred Qualifications

- Our employees are dedicated to ensuring cultural responsiveness. Preferred candidates will have a variety of experiences working effectively with others from different backgrounds and cultures.

## Additional Requirements

This position requires successful completion of the following:

To facilitate proper crediting, please ensure that your resume clearly describes your experience in the areas listed and indicates the beginning and ending month and year for each job held.

REFERENCE CHECKS - The Department of Human Services will conduct reference checks to verify job-related credentials and criminal background check prior to appointment.

EDUCATION VERIFICATION – Applicants may be required to provide documentation to demonstrate proof of education if required for the position.

## How to Apply

Select "Apply for Job" at the top of this page. If you have questions about applying for jobs, contact the job information line at  651-259-3637 or email careers@state.mn.us. For additional information about the application process, go to http://www.mn.gov/careers.

CERTAIN DISABLED VETERANS: Effective August 1, 2012, legislation provides state agencies with the option to appoint certain disabled veterans on a noncompetitive basis if they: 1) meet service requirements and have a verified service-connected disability rating of at least 30%; 2) provide qualifying documentation verifying the disability; and 3) meet all

**Job ID:** 50353 - Security Counselor / Forensic Support Specialist

Minimum Qualifications identified in this posting. To be considered under this legislation you must submit all documentation before the closing date.

If you have questions about the position, contact Samantha DeVries at Samantha.DeVries@state.mn.us.

To receive consideration as a Connect 700 Program applicant, apply online, email the Job ID #50353, the Working Title and your valid Proof of Eligibility Certificate by the closing date to Samantha DeVries at Samantha.DeVries@state.mn.us.

## About Human Services Dept

WE MAKE A DIFFERENCE! The Minnesota Department of Human Services impacts the lives of 1.7 million people every year, helping them meet their basic needs so they can achieve their highest potential.

## Why Work for Us

## Diverse Workforce

We are committed to continually developing a workforce that reflects the diversity of our state and the populations we serve. The varied experiences and perspectives of employees strengthen the work we do together and our ability to best serve the people of Minnesota.

**A recent engagement survey of State of Minnesota employees found:**

**Job ID:**  50353 - Security Counselor / Forensic Support Specialist

- 95% of employees understand how their work helps achieve their agency's mission
- 91% of employees feel trusted to do their jobs
- 88% of employees feel equipped to look at situations from other cultural perspectives when doing their job
- 87% of employees report flexibility in their work schedule

# Comprehensive Benefits

Our benefits aim to balance four key elements that make life and work meaningful: health and wellness, financial well-being, professional development, and work/life harmony. As an employee, your benefits may include:

- Public pension plan
- Training and professional development
- Paid vacation and sick leave
- 11 paid holidays each year
- Paid parental leave
- Low-cost medical and dental coverage
- Prescription drug coverage
- Vision coverage
- Wellness programs and resources
- Employer paid life insurance
- Short-term and long-term disability
- Health care spending and savings accounts
- Dependent care spending account
- Tax-deferred compensation
- Employee Assistance Program (EAP)
- Tuition reimbursement
- Federal Public Service Student Loan Forgiveness Program

**Programs, resources and benefits eligibility varies**   based on type of employment, agency, funding availability, union/collective bargaining agreement, location, and length of service with the State of Minnesota.

---

### AN EQUAL OPPORTUNITY EMPLOYER

Minnesota state agencies are equal opportunity, affirmative action, and veteran-friendly

**Job ID:**  50353 - Security Counselor / Forensic Support Specialist

employers. The State of Minnesota recognizes that a diverse workforce is essential and strongly encourages qualified women, minorities, individuals with disabilities, and veterans to apply.

We will make reasonable accommodations to all qualified applicants with disabilities. If you are an individual with a disability who needs assistance or cannot access the online job application system, please contact the job information line at  651-259-3637 or email  careers@state.mn.us and indicate what assistance is needed.

# EXHIBIT F

CASE TYPE:  CIVIL OTHER

STATE OF MINNESOTA                                         DISTRICT COURT

COUNTY OF RAMSEY                                 SECOND JUDICIAL DISTRICT

---

Ricky Lee McDeid,                                Court File No. _____

             Plaintiff-Petitioner,

      v.

Nancy Johnston, CEO/Director, Minnesota Sex          **PETITION FOR**
Offender Program, an agency of the State of       **WRIT OF MANDAMUS**
Minnesota; and                                     **AND COMPLAINT**

Jodi Harpstead, Commissioner, Minnesota
Department of Human Services, an agency of
the State of Minnesota;

           Defendants-Respondents.

---

Plaintiff-Petitioner Ricky Lee McDeid ("McDeid"), for his petition for writ of mandamus and complaint, states and alleges as follows:

## INTRODUCTION

1.      This is a mandamus action to compel Defendants Nancy Johnston, in her official capacity as CEO/Director of the Minnesota Sex Offender Program ("MSOP"), and Jodi Harpstead, in her official capacity as Commissioner ("Commissioner") of the Minnesota Department of Human Services ("DHS"), and those acting under them, to take all appropriate action to transfer McDeid to Community Preparation Services ("CPS"), a non-secure treatment facility, without further delay and in accordance with the Minnesota Commitment Appeal Panel order issued 790 days ago.

2.      McDeid was initially committed into MSOP by the Aitkin County District Court on July 22, 1999. The court ordered his indeterminate commitment on December 2, 1999. In compliance with Minn. Stat. § 253D.27, McDeid properly petitioned the Special Review Board ("SRB") for a transfer to CPS. The SRB recommended McDeid's transfer to CPS on September 26, 2016. On September 21, 2017, the Minnesota Commitment Appeal Panel ("CAP") issued an order ("CAP Order") to transfer McDeid to a non-secure facility, stating that CPS was the best facility to meet his treatment needs because it would allow him to participate in "treatment that is necessary for him to be able to advance in the program." The CAP Order included an effective date of 15 days after its issuance on September 21, 2017. A true and accurate copy of the CAP Order is attached hereto as Exhibit A.

3.      In defiance of the CAP Order's clear directive, however, Defendants continue to hold McDeid in a secure facility at Moose Lake where his liberty interests and ability to progress through treatment for eventual reintegration are severely limited. Defendants have now improperly withheld action on McDeid's transfer for 775 days, an unreasonable period of time and to the significant detriment of McDeid.

4.      McDeid brings this action for a writ of mandamus requiring Defendants to transfer McDeid to CPS, where he can receive treatment in a lesser-secured facility in compliance with the CAP Order and pursuant to Minn. Stat. § 586.01, *et seq.*, as well as to seek relief from Defendants' violations of McDeid's civil rights secured by, *inter alia*, the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**PARTIES**

5.      McDeid is and has been a civilly committed person, under Minn. Stat. §§ 253B, *et seq.* and 253D, *et seq.* He is therefore in the care and custody of DHS and is currently being held at MSOP's facility in Moose Lake.

Filed in District Court
State of Minnesota
11/20/2019 3:38 PM

6.      Nancy Johnston is the current Executive Director of MSOP.

7.      Jodi Harpstead is the current Commissioner of DHS. DHS is responsible for operating MSOP. Defendant Jodi Harpstead, in her official capacity, implemented, retained and carried out policies through MSOP that violated McDeid's constitutional, statutory, and common law rights.

### JURISDICTION AND VENUE

8.      Subject matter jurisdiction is conferred upon this Court by, *inter alia*, Minn. Stat. § 586.01, *et seq*. This action also arises under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. This Court has concurrent and simultaneous jurisdiction over federal claims of this nature.

9.      Venue is proper in this Court under, *inter alia*, Minn. Stat. § 542.01. Defendants are located in Ramsey County.

### FACTUAL AND PROCEDURAL BACKGROUND

10.     McDeid was initially civilly committed by the Aitkin County District Court on July 22, 1999. The court ordered his indeterminate commitment on December 2, 1999.

11.     In compliance with Minn. Stat. § 253D.27, McDeid petitioned the SRB for a transfer to CPS, a provisional discharge, or a full discharge from his civil commitment on January 20, 2016.

12.     The SRB issued findings of fact and recommendations on September 26, 2016, which granted McDeid's request for transfer to CPS, but denied his request for either provisional or full discharge.

13.     In response, the Commissioner filed a petition for rehearing and reconsideration with the CAP—formerly known as the Supreme Court Appeals Panel—which was established to

consider petitions for rehearing and reconsideration of a decision by the Commissioner or by the SRB. The CAP held a hearing on the Commissioner's petition on June 14, 2017.

14.     On September 21, 2017, the CAP issued an order concluding that "[McDeid] has shown by a preponderance of the evidence that transfer to a non-secure facility (CPS) is appropriate." The CAP Order agreed with the Court's Independent Examiner that "CPS is the facility that can best meet [McDeid's] needs because it would allow him to participate in 'treatment that is necessary for him to be able to advance in the program.'"

15.     The CAP Order granted McDeid's "petition for transfer to a less restrictive facility (CPS), pursuant to Minn. Stat. §253D.28, subd. 2(e)," and, by its own terms, the CAP Order took effect 15 days after it issued, on October 6, 2017.

16.     The CAP Order conferred on McDeid a governmental benefit to receive treatment at a less restrictive facility. Once transferred to CPS, McDeid would have access to MSOP's Phase III Reintegration programming that is otherwise unavailable to him and is necessary for him to receive in order to become eligible for discharge from MSOP.

17.     According to DHS, the MSOP treatment progression is as follows: (1) Phase I, (2) Phase II, (3) Phase III Reintegration, (4) CPS, (5) Provisional Discharge, and (6) Discharge.

18.     McDeid is currently receiving Phase II treatment at Moose Lake. In order to be provisionally discharged, McDeid must progress through all phases of MSOP treatment. McDeid cannot progress to the next phase of treatment—Phase III Reintegration treatment—until he is transferred to CPS, as provided in the CAP Order. Defendants' refusal to abide by the CAP Order and transfer McDeid to CPS within a reasonable period of time has significantly delayed his treatment progression and hindered his ability to advance in the program toward discharge.

62-CV-19-8232

Filed in District Court
State of Minnesota
11/20/2019 3:38 PM

19.    CPS also provides many privileges that do not exist at Moose Lake, including, as examples, a facility without razor wire fences; medical trips without physical restraints; access to move about the facility more freely; access to the CPS deck, patio, and yard during the hours of 6:00 a.m. until 10:00 p.m.; ability to garden; and ability to order take-out food.

20.    Upon information and belief, MSOP received a copy of the CAP Order.

21.    Upon information and belief, the Commissioner received a copy of the CAP Order.

22.    As of the filing of this petition—775 days after the CAP Order went into effect—Defendants have still not complied with the CAP Order. Rather, in direct defiance of the CAP Order, Defendants continue to hold McDeid in Phase II treatment at the Moose Lake facility and refuse to transfer McDeid to CPS where he can enter Phase III Reintegration, thus preventing McDeid from gaining eligibility for discharge from MSOP.

23.    Minn. Stat. § 253B.18 only provides for an appeal for any "patient aggrieved" by a decision, but there is no procedure for McDeid to enforce the CAP Order. Therefore, he lacks any administrative remedy to effectuate his ordered transfer to CPS and Phase III Reintegration.

24.    McDeid is suffering irreparable injury from Defendants' failure to abide by the CAP Order and will continue to suffer irreparable injury until the CAP Order is enforced.

**CAUSES OF ACTION**

**COUNT ONE**
**Petition for Peremptory Writ of Mandamus**

25.    McDeid incorporates by reference the allegations above as if set forth fully herein.

26.    Minn. Stat. § 586.01, *et seq.*, permits the Court to issue a writ of mandamus to compel a person to perform an act or official duty clearly imposed by law.

Filed in District Court
State of Minnesota
11/20/2019 3:38 PM

27.     Defendants have a defined and legal obligation and duty under the CAP Order and Minn. Stat. § 253B.09, subd. 1, to transfer McDeid to CPS for treatment necessary to be able to advance in the program, including Phase III Reintegration treatment.

28.     Defendants have unreasonably delayed McDeid's transfer to CPS, and, as a result, Defendants have forced McDeid to remain in Phase II treatment at Moose Lake's secure facility for more than two years *after* the CAP Order granting his petition for transfer to a less restrictive facility.

29.     Defendants' failure to comply with their legal duty to timely act on the CAP Order and transfer McDeid to CPS, which would allow McDeid access to Phase III Reintegration treatment and permit him to advance in the treatment program constitutes a public wrong specifically injurious to McDeid, and there is no plain, speedy, or adequate remedy in the ordinary course of law.

30.     Therefore, McDeid is entitled to a peremptory writ of mandamus ordering the Defendants to immediately comply with the CAP Order, transfer McDeid to CPS, provide McDeid with access to treatment necessary to advance in the program, and award McDeid any damages resulting from their failure to timely comply with the CAP Order.

## COUNT II
### Petition for Alternative Writ of Mandamus

31.     McDeid incorporates by reference the allegations above as if set forth fully herein.

32.     Defendants' failure to transfer McDeid as required under the CAP Order and Minn. Stat. § 253B.09, subd. 1, entitles McDeid to issuance of an alternative writ of mandamus that states Defendants' failure to comply with the CAP Order, orders Defendants to show cause why they have defied and continue to defy the CAP Order, and awards McDeid any damages resulting from Defendants' failure to timely comply with the CAP Order.

## COUNT III
### Denial of Right to Due Process Protection in Violation of the
### Fourteenth Amendment to the U.S. Constitution

33.     McDeid incorporates by reference the allegations above as if set forth fully herein.

34.     Pursuant to, *inter alia*, 42 U.S.C. § 1983, federal law further provides that any person acting under color of state law who deprives any other person of rights secured by the U.S. Constitution shall be liable to the injured party.

35.     The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Included within these constitutional protections are the rights to notice and hearing when an individual is deprived of his fundamental property and liberty interests.

36.     Defendants are state actors subject to the Fourteenth Amendment.

37.     McDeid followed all statutory requirements to be eligible for transfer and access to treatment necessary to advance through the program, including Phase III Reintegration treatment.

38.     The CAP Order conferred a government benefit onto McDeid, that qualifies as a protected property interest and a state-created liberty interest because McDeid has a legitimate claim of entitlement to effectuation of the CAP Order, transfer to a lesser secure facility (*e.g.*, CPS), and access to treatment, including Phase III Reintegration treatment.

39.     McDeid cannot be deprived of these protected property and liberty interests without due process of law.

40.     Defendants have disregarded and defied the CAP Order by refusing to transfer McDeid to a lesser secure facility (*e.g.*, CPS) and providing him with access to treatment including Phase III Reintegration treatment.

41.     McDeid has received no due process of law with respect to Defendants' unreasonable delay and refusal to comply with the CAP Order.

42.     There is no meaningful process or procedural protections for McDeid to ensure timely or actual enforcement of the CAP Order.

43.     Defendants have violated McDeid's due process rights and deprived McDeid of his protected property and liberty interests in violation of the Fourteenth Amendment to the U.S. Constitution.

44.     As a result of Defendants' unlawful conduct, McDeid has suffered and continues to suffer damages, the exact amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, McDeid respectfully requests relief from the Court as follows:

1.     Immediately issue a peremptory writ of mandamus to compel Defendants' compliance with the CAP Order, transfer McDeid to CPS, provide McDeid with access to treatment that will allow him to advance through the program, including Phase III Reintegration treatment, and award damages to McDeid;

2.     Immediately issue an alternative writ of mandamus compelling Defendants to show cause why Defendants have refused to transfer McDeid to CPS in defiance of the CAP Order issued 790 days ago;

3.     Order that Defendants are liable to McDeid for actual and compensatory damages in amounts to be proven at trial;

4.     Order that Defendants are liable to McDeid for his attorneys' fees and costs, pursuant to, *inter alia*, 42 U.S.C. § 1988;

5.     Order that Defendants are liable to McDeid for all of his other costs and disbursements; and

6.      Order such other and further relief for McDeid as the Court deems just and equitable.

## ACKNOWLEDGMENT

The party upon whose behalf this pleading is submitted, by and through the undersigned, hereby acknowledges that sanctions may be imposed for a violation of Minn. Stat. § 549.211.

**STOEL RIVES LLP**

Dated:  November 20, 2019

*s/  Andrew J. Pieper*
Andrew J. Pieper (MN #389262)
Roxanna V Gonzalez (MN #0397322)
33 South Sixth Street, Suite 4200
Minneapolis, MN  55402
Telephone:  612-373-8800
Facsimile:   612-373-8881
andrew.pieper@stoel.com
roxanna.gonzalez@stoel.com

**ATTORNEYS FOR PLAINTIFF-PETITIONER**

# EXHIBIT G

CASE TYPE:  CIVIL OTHER

STATE OF MINNESOTA

DISTRICT COURT

COUNTY OF RAMSEY

SECOND JUDICIAL DISTRICT

---

Shane P. Garry,

Court File No. _____

           Plaintiff-Petitioner,

   v.

Nancy Johnston, CEO/Director, Minnesota Sex
Offender Program, an agency of the State of
Minnesota; and

Jodi Harpstead, Commissioner, Minnesota
Department of Human Services, an agency of
the State of Minnesota;

           Defendants-Respondents.

**PETITION FOR
WRIT OF MANDAMUS
AND COMPLAINT**

---

Plaintiff-Petitioner Shane P. Garry ("Garry"), for his petition for writ of mandamus and complaint, states and alleges as follows:

### INTRODUCTION

1.     This is a mandamus action to compel Defendants Nancy Johnston, in her official capacity as CEO/Director of the Minnesota Sex Offender Program ("MSOP"), and Jodi Harpstead, in her official capacity as Commissioner ("Commissioner") of the Minnesota Department of Human Services ("DHS"), and those acting under them, to take all appropriate action to transfer Garry to Community Preparation Services ("CPS"), a non-secure treatment facility, without further delay and in accordance with the Minnesota Commitment Appeal Panel order issued 665 days ago.

2.     Garry was initially committed into MSOP by the Rice County District Court on April 16, 2012. The court ordered his indeterminate commitment on August 7, 2012. In compliance

with Minn. Stat. § 253D.27, Garry properly petitioned the Special Review Board ("SRB") to be (1) transferred to CPS, (2) provisionally discharged, or (3) fully discharged. The SRB denied each of Garry's requests on July 5, 2016. On January 24, 2018, the Minnesota Commitment Appeal Panel ("CAP") issued an order ("CAP Order") to transfer Garry to a non-secure facility, stating that CPS was the best facility to meet his treatment needs because "it would allow him to 'have increased access to positive peers who are working toward deinstitutionalization and reintegration.'" The CAP Order included an effective date of 15 days after its issuance on February 8, 2018.

3.      In defiance of the CAP Order's clear directive, however, Defendants continue to hold Garry in a secure facility at Moose Lake where his liberty interests and ability to progress through treatment for eventual reintegration are severely limited. Defendants have now improperly withheld action on Garry's transfer for 650 days, an unreasonable period of time and to the significant detriment of Garry.

4.      Garry brings this action for a writ of mandamus requiring Defendants to transfer Garry to CPS, where he can receive treatment in a lesser-secured facility in compliance with the CAP Order and pursuant to Minn. Stat. § 586.01, *et seq.*, as well as to seek relief from Defendants' violations of Garry's civil rights secured by, *inter alia*, the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

## PARTIES

5.      Garry is and has been a civilly committed person, under Minn. Stat. §§ 253B, *et seq.* and 253D, *et seq.* He is therefore in the care and custody of DHS and is currently being held at MSOP's facility in Moose Lake.

6.      Nancy Johnston is the current Executive Director of MSOP.

7.      Jodi Harpstead is the current Commissioner of DHS. DHS is responsible for

Filed in District Court
State of Minnesota
11/20/2019 3:48 PM

operating MSOP. Defendant Jodi Harpstead, in her official capacity, implemented, retained and carried out policies through MSOP that violated Garry's constitutional, statutory, and common law rights.

## JURISDICTION AND VENUE

8.      Subject matter jurisdiction is conferred upon this Court by, *inter alia*, Minn. Stat. § 586.01, *et seq*. This action also arises under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. This Court has concurrent and simultaneous jurisdiction over federal claims of this nature.

9.      Venue is proper in this Court under, *inter alia*, Minn. Stat. § 542.01. Defendants are located in Ramsey County.

## FACTUAL AND PROCEDURAL BACKGROUND

10.     Garry was initially civilly committed by the Rice County District Court on April 16, 2012. The court ordered his indeterminate commitment on August 7, 2012.

11.     In compliance with Minn. Stat. § 253D.27, Garry petitioned the SRB for a transfer to CPS, a provisional discharge, or a full discharge from his civil commitment.

12.     The SRB issued findings of fact and recommendations on July 5, 2016, which granted Garry's request for transfer to CPS, but denied his request for either provisional or full discharge.

13.     In response, the Commissioner filed a petition for rehearing and reconsideration with the CAP—formerly known as the Supreme Court Appeals Panel—which was established to consider petitions for rehearing and reconsideration of a decision by the Commissioner or by the SRB. The CAP held a Phase I hearing on January 31, 2017, and a Phase II hearing on October 10, 2017.

14.     On January 24, 2018, the CAP issued an order concluding that "[Garry] has shown by a preponderance of the evidence that transfer to a non-secure facility (CPS) is appropriate." The CAP Order agreed with the Court's Independent Examiner that "CPS is the facility that can best meet [Garry's] needs because it would allow him to 'have increased access to positive peers who are working toward deinstitutionalization and reintegration.'" A true and accurate copy of the CAP Order is attached hereto as Exhibit A.

15.     The CAP Order granted Garry's "petition for transfer to a less restrictive facility (CPS), pursuant to Minn. Stat. §253D.28, subd. 2(e)," and, by its own terms, the CAP Order took effect 15 days after it issued, on February 8, 2018.

16.     The CAP Order conferred on Garry a governmental benefit to receive treatment at a less restrictive facility. Once transferred to CPS, Garry would have access to MSOP's Phase III Reintegration programming that is otherwise unavailable to him and is necessary for him to receive in order to become eligible for discharge from MSOP.

17.     According to DHS, the MSOP treatment progression is as follows: (1) Phase I, (2) Phase II, (3) Phase III Reintegration, (4) CPS, (5) Provisional Discharge, and (6) Discharge.

18.     Garry is currently receiving Phase II treatment at Moose Lake. In order to be provisionally discharged, Garry must progress through all phases of MSOP treatment. Garry cannot progress to the next phase of treatment—Phase III Reintegration treatment—until he is transferred to CPS, as provided in the CAP Order. Defendants' refusal to abide by the CAP Order and transfer Garry to CPS within a reasonable period of time has significantly delayed his treatment progression and hindered his ability to advance in the program toward discharge.

19.     CPS also provides many privileges that do not exist at Moose Lake, including, as examples, a facility without razor wire fences; medical trips without physical restraints; access to

move about the facility more freely; access to the CPS deck, patio, and yard during the hours of 6:00 a.m. until 10:00 p.m.; ability to garden; and ability to order take-out food.

20.     Upon information and belief, MSOP received a copy of the CAP Order.

21.     Upon information and belief, the Commissioner received a copy of the CAP Order.

22.     As of the filing of this petition—650 days after the CAP Order went into effect—Defendants have still not complied with the CAP Order. Rather, in direct defiance of the CAP Order, Defendants continue to hold Garry in Phase II treatment at the Moose Lake facility and refuse to transfer Garry to CPS where he can enter Phase III Reintegration, thus preventing Garry from gaining eligibility for discharge from MSOP.

23.     Minn. Stat. § 253B.18 only provides for an appeal for any "patient aggrieved" by a decision, but there is no procedure for Garry to enforce the CAP Order. Therefore, he lacks any administrative remedy to effectuate his ordered transfer to CPS and Phase III Reintegration.

24.     Garry is suffering irreparable injury from Defendants' failure to abide by the CAP Order and will continue to suffer irreparable injury until the CAP Order is enforced.

**CAUSES OF ACTION**

**COUNT ONE**
**Petition for Peremptory Writ of Mandamus**

25.     Garry incorporates by reference the allegations above as if set forth fully herein.

26.     Minn. Stat. § 586.01, *et seq.*, permits the Court to issue a writ of mandamus to compel a person to perform an act or official duty clearly imposed by law.

27.     Defendants have a defined and legal obligation and duty under the CAP Order and Minn. Stat. § 253B.09, subd. 1 to transfer Garry to CPS for treatment necessary to be able to advance in the program, including Phase III Reintegration treatment.

Filed in District Court
State of Minnesota
11/20/2019 3:48 PM

28.     Defendants have unreasonably delayed Garry's transfer to CPS, and, as a result, Defendants have forced Garry to remain in Phase II treatment at Moose Lake's secure facility for nearly two years ***after*** the CAP Order granting his petition for transfer to a less restrictive facility.

29.     Defendants' failure to comply with their legal duty to timely act on the CAP Order and transfer Garry to CPS, which would allow Garry access to Phase III Reintegration treatment that would allow him to advance in the treatment program constitutes a public wrong specifically injurious to Garry, and there is no plain, speedy, or adequate remedy in the ordinary course of law.

30.     Therefore, Garry is entitled to a peremptory writ of mandamus ordering the Defendants to immediately comply with the CAP Order, transfer Garry to CPS, provide Garry with access to treatment necessary to advance in the program, and award Garry any damages resulting from their failure to timely comply with the CAP Order.

## COUNT II
### Petition for Alternative Writ of Mandamus

31.     Garry incorporates by reference the allegations above as if set forth fully herein.

32.     Defendants' failure to transfer Garry as required under the CAP Order and Minn. Stat. § 253B.09, subd. 1 entitles Garry to issuance of an alternative writ of mandamus that states Defendants' failure to comply with the CAP Order, orders Defendants to show cause why they have defied and continue to defy the CAP Order, and awards Garry any damages resulting from Defendants' failure to timely comply with the CAP Order.

## COUNT III
### Denial of Right to Due Process Protection in Violation of the
### Fourteenth Amendment to the U.S. Constitution

33.     Garry incorporates by reference the allegations above as if set forth fully herein.

34.     Pursuant to, *inter alia*, 42 U.S.C. § 1983, federal law further provides that any person acting under color of state law who deprives any other person of rights secured by the U.S. Constitution shall be liable to the injured party.

35.     The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Included within these constitutional protections are the rights to notice and hearing when an individual is deprived of his fundamental property and liberty interests.

36.     Defendants are state actors subject to the Fourteenth Amendment.

37.     Garry followed all statutory requirements to be eligible for transfer and access to treatment necessary to advance through the program including, Phase III Reintegration treatment.

38.     The CAP Order conferred a government benefit onto Garry, that qualifies as a protected property interest and a state-created liberty interest because Garry has a legitimate claim of entitlement to effectuation of the CAP Order, transfer to a lesser secure facility (*e.g.*, CPS), access to treatment including, Phase III Reintegration treatment.

39.     Garry cannot be deprived of these protected property and liberty interests without due process of law.

40.     Defendants have disregarded and defied the CAP Order by refusing to transfer Garry to a lesser secure facility (*e.g.*, CPS) and providing him with access to treatment including, Phase III Reintegration treatment.

41.     Garry has received no due process of law with respect to Defendants' unreasonable delay and refusal to comply with the CAP Order.

42.     There is no meaningful process or procedural protections for Garry to ensure timely or actual enforcement of the CAP Order.

43.     Defendants have violated Garry's due process rights and deprived Garry of his protected property and liberty interests in violation of the Fourteenth Amendment to the U.S. Constitution.

44.     As a result of Defendants' unlawful conduct, Garry has suffered and continues to suffer damages, the exact amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Garry respectfully requests relief from the Court as follows:

1.      Immediately issue a peremptory writ of mandamus to compel Defendants' compliance with the CAP Order, transfer Garry to CPS, provide Garry with access to treatment that will allow him to advance through the program, including Phase III Reintegration treatment, and award damages to Garry;

2.      Immediately issue an alternative writ of mandamus compelling Defendants to show cause why Defendants have refused to transfer Garry to CPS in defiance of the CAP Order issued 665 days ago;

3.      Order that Defendants are liable to Garry for actual and compensatory damages in amounts to be proven at trial;

4.      Order that Defendants are liable to Garry for his attorneys' fees and costs, pursuant to, *inter alia*, 42 U.S.C. § 1988;

5.      Order that Defendants are liable to Garry for all of his other costs and disbursements; and

6.      Order such other and further relief for Garry as the Court deems just and equitable.

## ACKNOWLEDGMENT

The party upon whose behalf this pleading is submitted, by and through the undersigned,

hereby acknowledges that sanctions may be imposed for a violation of Minn. Stat. § 549.211.

**STOEL RIVES LLP**

Dated:  November 20, 2019

*s/ Andrew J. Pieper*
Andrew J. Pieper (MN #389262)
Roxanna V Gonzalez (MN #0397322)
33 South Sixth Street, Suite 4200
Minneapolis, MN  55402
Telephone:  612-373-8800
Facsimile:   612-373-8881
andrew.pieper@stoel.com
roxanna.gonzalez@stoel.com

**ATTORNEYS FOR PLAINTIFF-
PETITIONER**