UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, and Brian Keith Hausfeld, on behalf of themselves and all others similarly situated, | Civil File No. 23-cv-00486 (JRT/LIB) |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT/ DEMURRER IN RESPONSE TO MANDAMUS PETITION** |
| vs. | |
| Nancy Johnston, Executive Director, Minnesota Sex Offender Program; and Jodi Harpstead, Department of Human Services Commissioner, in their official capacities, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs' Class Action Complaint ("Complaint," Doc. 1-1, pp. 6-20) fails as a matter of law to plead either entitlement to mandamus relief or a due process violation. The extraordinary remedy of mandamus is inappropriate to effectuate transfer to a non-secure Minnesota Sex Offender Program ("MSOP") facility where Plaintiffs identify no sufficiently clear legal duty on Defendants, fail to plead that Defendants could have transferred them earlier, and in any event have available a civil contempt motion, the obvious vehicle for seeking compliance with a state court order. As for Plaintiffs' due process claims, neither the United States Constitution nor the Minnesota Constitution mandates that Defendants provide less restrictive alternative placements or particular treatment to civilly committed sex offenders, nor does either forbid the Minnesota

legislature from limiting the size of CPS—a facility it has no constitutional obligation to create in the first place.  The Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

### I.   BACKGROUND OF THE MINNESOTA SEX OFFENDER PROGRAM ("MSOP").

By statute, MSOP provides services to civilly committed sex offenders.  Minn. Stat. § 246B.02.  Defendants do not control who is committed to MSOP; those decisions are made by district courts.  *See* Minn. Stat. §§ 253D.07, subd. 2; 253B.07-.08.  The Commissioner has broad authority to "adopt rules to govern the operation, maintenance, and licensure of secure treatment facilities operated by [MSOP] or at any other facility operated by the commissioner, for a person committed as a sexual psychopathic personality or a sexually dangerous person."  Minn. Stat. § 246B.04, subd. 1; *see also* Doc. 1-1, p. 8; Compl., p. 3 ¶ 10 (Plaintiffs pleading that "[t]he Commissioner and MSOP Executive Director have exclusive authority over general operational decisions and treatment decisions.").

MSOP in part serves civilly committed clients in secure treatment facilities located in Moose Lake and St. Peter.  Minn. Stat. § 253D.02, subd. 13.  The Minnesota legislature has also elected to create a non-secure MSOP facility on the St. Peter campus called Community Preparation Services ("CPS"), statutorily defined as:

> specialized residential services or programs operated or administered by [MSOP] outside of a secure treatment facility. [CPS is] designed to assist civilly committed sex offenders in developing the appropriate skills and resources necessary for an eventual successful reintegration into a community.

Minn. Stat. § 246B.01, subd. 2a.  MSOP clients may seek placement at CPS by filing a petition for the "reduction in custody" of transfer, discussed below.

## II.   THE REDUCTION IN CUSTODY PROCESS.

A person committed to MSOP may seek three forms of "reduction in custody": a transfer out of a secure treatment facility; a provisional discharge; or a full discharge from civil commitment.  Minn. Stat. § 253D.27, subd. 1(b).  The Commitment Appeal Panel ("CAP")[1] determines whether the specified criteria for each form of reduction in custody are met.  Minn. Stat. §§ 253B.19 (creating the CAP); 253D.28, .29, subd. 1, .30, subd. 1, .31 (setting forth the criteria governing each form of reduction in custody).

First, the reduction in custody of transfer "may be to other treatment programs under the commissioner's control."  Minn. Stat. 253D.29, subd. 1(a).  As to CPS specifically, "[a] civilly committed sex offender may be placed in [CPS] only upon an order of the [CAP] under section 253B.19."  Minn. Stat. § 246B.01, subd. 2a.  The CAP "must … consider[]" five factors "in determining whether a transfer [to CPS] is appropriate," and the petitioning MSOP client has the burden to prove appropriateness for transfer by a preponderance of the evidence.  Minn. Stat. §§ 253D.29, subd. 1; 253D.28, subd. 2(e).  The governing statute does not require MSOP clients to reach a particular treatment phase to be eligible for transfer to CPS.  Minn. Stat. § 253D.29.

Second, the reduction in custody of provisional discharge provides a form of supervised release.  Minn. Stat. § 253D.30. The governing statute directs the CAP to grant

---

[1] The CAP is referred to in statute as the "judicial appeal panel."  Minn. Stat. § 253B.19.

a provisional discharge request (assuming the petitioning party has set forth a prima facie case of entitlement to provisional discharge, *see* Minn. Stat. § 253D.28, subd. 2(d)) unless the party opposing it proves by clear and convincing evidence that the MSOP client is not "capable of making an acceptable adjustment to open society." Minn. Stat. § 253D.30, subd. 1(a). The CAP must answer this question by considering two factors. *Id*. at subd. 1(b). The governing statute does not require an MSOP client to reside at CPS or to have started or completed a particular treatment phase to be eligible for provisional discharge.

Finally, the reduction in custody of discharge simply releases an MSOP client from civil commitment entirely. Minn. Stat. § 253D.31. The governing statute, as interpreted by the Minnesota Supreme Court, directs the CAP to grant a discharge request (assuming the petitioning party has set forth a prima facie case of entitlement to discharge, *see* Minn. Stat. § 253D.28, subd. 2(d)) unless the party opposing it proves by clear and convincing evidence that the MSOP client both "continues to need treatment for his sexual disorder and continues to pose a danger to the public, which are the reasons for which the person was originally committed." *Call v. Gomez*, 535 N.W.2d 312, 319 (Minn. 1995); *see also* Minn. Stat. § 253D.31. Again, the governing statute does not require an MSOP client to reside at CPS or to have started or completed a particular treatment phase to be eligible for discharge.

## III.   PLAINTIFFS' COMPLAINT.

Plaintiffs James John Rud and Brian Keith Hausfeld bring the instant Complaint on behalf of themselves and two putative classes of MSOP clients with CAP orders

4

authorizing transfer to CPS: those who moved to CPS after a wait, and those who continue to wait to move to CPS.  Doc. 1-1, pp. 7, 12; Compl. pp. 2 ¶¶ 2-3, 7 ¶ 25.  Plaintiffs base their alleged entitlement to immediate transfer on assertions that they must complete Phase III of MSOP's treatment program prior to being eligible for provisional discharge or discharge because "reintegration treatment" is only available in Phase III, and that Phase III is only available at CPS.  Doc. 1-1, p. 9; Compl., p. 4 ¶ 14.

Plaintiffs allege that, pursuant to the reduction in custody process described above, the CAP issued an order approving Mr. Hausfeld for transfer to CPS on or about January 25, 2022.  Doc. 1-1, p. 11; Compl., p. 6 ¶ 22. [2]  Mr. Hausfeld alleges that MSOP did not transfer him to CPS until November 8, 2022, about 9 months after his order for transfer.  *Id*. at ¶ 23.  He also alleges he was assaulted by another MSOP client within that period.  *Id.*  Mr. Rud alleges that the CAP issued an order approving him for transfer to CPS on or about May 20, 2022.  *Id*. at ¶ 20.  He also alleges that Defendants have not yet transferred him to CPS and has not received information as to when he will be transferred. *Id*. at ¶ 21.

The Complaint does not allege any facts about *why* Plaintiffs had to wait (or continue to wait) to transfer to CPS.  It instead refers to two CAP orders adjudicating contempt motions filed by MSOP clients awaiting transfer, which Plaintiffs included with their filings.  Doc. 1-1, pp. 10-11; Compl., pp. 5-6 ¶ 19 (referring to documents filed at

---

[2] Without conceding their accuracy, Defendants acknowledge that factual allegations in the Complaint are accepted as true solely for purposes of a motion to dismiss. *See, e.g., Usenko v. MEMC LLC,* 926 F.3d 468, 472 (8th Cir. 2019).

Doc. 1-9, pp. 5-10, 17-27).   The CAP order in *In re: Folson*, Appeal Panel File No. AP19-9153 (December 2, 2021), for example, details unrebutted testimony that no beds were available at CPS and that the Minnesota legislature chose not to provide sufficient funds to expand CPS despite repeated requests from the executive branch.[3] Doc. 1-9, pp. 20-21 ¶¶ 7-8.

## IV.   PRIOR PROCEEDINGS IN *KARSJENS V. HARPSTEAD.*

Plaintiffs are class representatives in an existing certified class action against Defendants called *Karsjens v. Harpstead*, D. Minn. Case No. 11-cv-03659 (DWF/TNL). The operative complaint in *Karsjens* is the Third Amended Complaint, which contains thirteen counts, a few of which are pertinent to this case.  *Karsjens*, Doc. 635.

### A.   *Karsjens* Count II.

First, in 2015 the *Karsjens* Court held a trial on all remaining claims in the TAC but ruled only on Counts I and II.  *See Karsjens* Doc. 966, p. 65 ¶ 38.  As relevant here, Count II alleged that Minnesota Statutes chapter 253D violated substantive due process "as applied" because there were not enough less restrictive facilities for MSOP clients (*Karsjens* Doc. 635 at 62-63 ¶¶ 244-45); and because "Defendants are not providing Plaintiffs and Class members with constitutionally adequate treatment or with treatment, best adapted according to contemporary professional standards, to render further supervision unnecessary" (*id*. at 63 ¶ 245).

---

[3] Again, the Court may consider this document because it is necessarily embraced by the Complaint.

The *Karsjens* Court agreed, in part declaring after trial that Defendants violated substantive due process because "there are simply not enough less restrictive alternatives available for committed individuals seeking transfer to less restrictive alternatives" and "because, although treatment is made available, there is no meaningful relationship between the treatment program at the MSOP and discharge from custody." *Karsjens* Doc. 966, pp. 63-64 ¶¶ 34-35.   On appeal, however, the Eighth Circuit reversed the *Karsjens* Court's liability finding and vacated the corresponding injunctive relief on Count II. *Karsjens v. Piper*, 845 F.3d 394, 410 (8th Cir. 2017) ("*Karsjens I*").  The Eighth Circuit also held that the Supreme Court has not recognized "'a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'" *Id.* (citing *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)).

### B.   *Karsjens* Count III.

Also under a substantive due process theory, Count III of the TAC alleged that Defendants failed to provide constitutionally adequate treatment.  *Karsjens* Doc. 635, pp. 64-66 ¶¶ 254-61.   The *Karsjens* Court dismissed this count during the remand following *Karsjens I*: "In this circuit, committed individuals do not have a recognized 'due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'" *Karsjens* Doc. 1108, p. 15 (citing *Karsjens I*, 845 F.3d at 410).

Plaintiffs appealed, and the Eighth Circuit affirmed dismissal of Count III. *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021) ("*Karsjens II*").  It held Count III

was "duplicative of the as-applied due process claim (Count [II]) that we previously dismissed after applying the 'shocks the conscience' standard," and reiterated that "the Supreme Court has not recognized a 'due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'" *Id*. (citations omitted).

C.    **Karsjens Count VI.**

Count VI of the TAC again challenged, under a substantive due process theory, an alleged lack of less restrictive alternatives, asserting that MSOP "does not provide a less restrictive alternative to confinement at a MSOP secure facility," that MSOP failed to consider that "[n]ot all Plaintiffs and Class members have the same level of security needs," and that "if a Plaintiff or Class member no longer meets the statutory requirements for civil commitment, there is no less restrictive facility or program for them to enter." *Karsjens* Doc. 635, p. 71 ¶ 288.  The *Karsjens* Court recently dismissed this count, holding that it was duplicative of Count II and that, in any event, the trial record did not show a substantive due process violation as it relates to the availability of less restrictive alternative settings. *Karsjens* Doc. 1197, pp. 8-10 & 9-10 n.8.

**STANDARD OF REVIEW**

Rule 12(b)(6) eliminates actions that are fatally flawed in their legal premises, "streamlin[ing] litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light

most favorable to the non-moving party. *See Brotherhood of Maint. of Way Emp. v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001). However, to avoid dismissal, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 680-81 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see also Dubois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002) ("[A] complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claims[.]").

Importantly, the Court is "not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)). Similarly, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

As for claims under 42 U.S.C. § 1983, a plaintiff "must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). That being said, "[c]onstitutional claims brought under 42 U.S.C. § 1983 are discrete claims and as such should not be pled in a shotgun manner." *Benson v. Piper*, No. 17-CV-266, 2019 WL 2017319, at *9 (D. Minn. Jan. 25, 2019), *report and recomm. adopted*, No. CV 17-266, 2019 WL 1307883 (D. Minn.

9

Mar. 22, 2019) (quoting *Liggins v. Morris*, 749 F. Supp. 967, 971 (D. Minn. 1990)).

Pleading Constitutional claims without particularity "unfairly burdens defendants and

courts by shifting onto the defendant and the court the burden of identifying the plaintiff's

genuine claims and determining which of those claims might have legal support." *Id.*

(quoting *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153

(D. Minn. 2011) (internal quotations omitted).

## ARGUMENT

### I.   PLAINTIFFS' MANDAMUS CLAIM SHOULD BE DISMISSED (COUNT I).

"Mandamus is an extraordinary remedy."  *Duncan v. Roy*, 830 N.W.2d 48, 51

(Minn. Ct. App. 2013).  Courts may only issue mandamus relief where: (1) an official fails

to exercise "a duty imposed by law"; (2) as a result, the petitioner is "injured by a public

wrong"; and (3) no adequate alternative legal remedy exists.  *Chanhassen Chiropractic*

*Ctr., P.A. v. City of Chanhassen*, 663 N.W.2d 559, 562 (Minn. Ct. App. 2003) (outlining

standing requirements for obtaining a writ under Minn. Stat. §§ 586.01–.02).   For the

reasons detailed below, Plaintiffs' petition for a writ of mandamus should be dismissed.[4]

---

[4] In Minnesota, a respondent to an alternative writ of mandamus may respond by demurrer, which has been replaced in modern civil actions by the motion to dismiss for failure to state a claim upon which relief can be granted.  Minn. Stat. § 586.08; Minn. R. Civ. P. 12.02(e); *State by Humphrey v. Baillon Co.*, 503 N.W.2d 799, 803 (Minn. Ct. App. 1993) (holding the civil rules apply to mandamus actions); *Pederson v. Am. Lutheran Church*, 404 N.W.2d 887, 889 (Minn. Ct. App. 1987) (stating that "[t]he demurrer was replaced by the motion to dismiss for failure to state a claim"); *State ex rel. G. M. Gustafson Co. v. Crookston Tr. Co.*, 22 N.W.2d 911, 919 (Minn. 1946) ("For the purpose of determining the sufficiency of the facts alleged in the pleading to which a demurrer is interposed, the demurrer admits all facts well pleaded, but not those not well pleaded or conclusions of law").  Moreover, case law clearly permits a motion to dismiss a mandamus petition.  *See N. States Power Co. v. Minnesota Metro. Council*, 684 N.W.2d 485, 490 (Minn. 2004).

A.    **The Statutes Upon Which Plaintiffs Rely Place No Clear and Positive Duty on Defendants To Have Transferred Mr. Rud to CPS.**

A court may issue a writ of mandamus "only when the petitioner has shown the existence of a legal right to the act demanded which is so clear and complete as not to admit any reasonable controversy." *Day v. Wright Cnty.*, 391 N.W.2d 32, 34 (Minn. Ct. App. 1986). It may only be used to compel an act that the law "clearly and positively requires." *State ex rel. Spurck v. Civil Serv. Bd.*, 32 N.W.2d 583, 586 (Minn. 1948).

Plaintiffs do not show the existence of such a clear legal right. Count I relies on the assertion that *McDeid v. Johnston*, 984 N.W.2d 864 (Minn. 2023) requires Defendants to transfer MSOP clients with CAP transfer orders on the "effective date" of the transfer order (15 days after issuance if not appealed), and that Defendants have "no discretion" to do otherwise as it relates to transfer timing. Compl. ¶¶ 17, 36. This is simply erroneous: *McDeid* held that Defendants must effectuate CAP transfer orders "within a reasonable time" and that "[w]hat amount of time is reasonable in any given set of circumstances is an issue of fact to be determined by the district court." 984 N.W.2d at 868, 879. The *McDeid* court accordingly "accept[ed] as correct" that Defendants "'retained some discretion' to determine when to transfer [MSOP clients with CAP transfer orders] to CPS." *Id.* at 877. This is not appropriate for mandamus relief, and this count should be dismissed.

11

**B.      Plaintiffs Do Not Plead Funding Availability, Nor Do They Plead Defendants Could Have Transferred Mr. Rud Without Additional Funds.**

A petition for writ of mandamus "will be denied where it is obvious that it will prove to be futile, unavailing, and ineffective." *Winnetka Partners Ltd. P'ship v. Cty. of Hennepin*, 538 N.W.2d 912, 915 (Minn.1995) (quotation omitted); 2 Am. Jur. 2d Mandamus § 20 ("To warrant the issuance of a writ of mandamus, the act sought to be performed must be capable of being performed; otherwise, the issuance of the writ is a futile act.   Mandamus will not issue if the performance of the requested action is impossible, meaning an act which cannot be done, whether for lack of funds or lack of physical or mental power.").   Relatedly, a court cannot order a defendant, through mandamus, to expend funds that have not been appropriated for that purpose.   Lack of available funding is a complete defense to a petition for a writ of mandamus.   *Powell v. Carlos Twp.*, 225 N.W. 296, 297 (Minn. 1929) (stating that a government entity "cannot be required to proceed if it has no funds").   In fact, the inability to accomplish the task sought in the writ due to of a lack of funds is not merely a defense; rather, "the nature of the writ of mandamus justifies a holding that it must appear by the writ that there are funds." *Id.* (affirming dismissal of writ for failing to state a cause of action when the petition contained no allegation that funds were available to the government entity to accomplish the task it sought to compel); *see also State ex rel. Traeger v. Carleton*, 64 N.W.2d 776, 779 (Minn. 1954) ("Mandamus is an extraordinary legal remedy.   It is granted only when the right is clear.   Before it is issued to compel a municipal corporation to act in a matter

of this kind, it must appear from the writ that the municipality has the funds with which to proceed.").

Plaintiffs do not allege that it is possible for Mr. Rud to have been transferred by now, nor do they allege that funds are or have been available for the purpose of effectuating Mr. Rud's transfer: as noted, they simply say nothing about the reasons why he was not transferred other than to cite CAP orders noting the Minnesota legislature's decision not to provide funding sufficient for CPS expansion to keep pace with CAP transfer orders. Doc. 1-1, pp. 10-11; Compl., pp. 5-6 ¶ 19.[5]  Count I should be dismissed on this basis as well.

### C.   Plaintiffs Have an Adequate Legal Remedy.

A plaintiff seeking a writ of mandamus must show that there is no "plain, speedy, and adequate remedy in the ordinary course of law." *Madison Equities, Inc. v. Crockarell*, 889 N.W.2d 568, 574 (Minn. 2017) (citing Minn. Stat. § 586.02).  The other remedy "'must be one which is reasonably efficient and adequate to reach the end intended, and actually

---

[5] As a related matter, Plaintiffs appear to believe that the Minnesota legislature *both* intended the relevant statutes to guarantee MSOP clients immediate transfer regardless of CPS capacity *and* declined to fund CPS expansion sufficient to create such capacity.  This both makes no sense (*see* Minn. Stat. § 645.17(1) (stating that the Legislature "does not intend a result that is absurd, impossible of execution, or unreasonable") and would require Defendants to have somehow violated the Minnesota Constitution's bar on spending state money without an appropriation by the legislature.  *See* Minn. Const. art. XI, § 1 ("No money shall be paid out of the treasury of this state except in pursuance of an appropriation by law.").  Simply put, if the legislature intended Defendants to transfer MSOP clients with a CAP transfer order to CPS without delay, it would have appropriated sufficient funding for Defendants to do so.  Minn. Stat. § 645.17(3) (stating "the legislature does not intend to violate the Constitution . . . of this state").

compel the performance of the duty refused.'" *Id*. (citing *State v. Dist. Ct. of Meeker Cty.*, 77 Minn. 302, 307, 79 N.W. 960, 962 (1899)).

Mr. Rud views his entitlement to CPS transfer as being triggered by the CAP order that found him appropriate for such a transfer, meaning that Mr. Rud believes he already has a court order requiring his transfer to CPS. Doc. 1-1, p. 14; Compl., p. 9 ¶ 36. Rather than pursuing mandamus in a new case—through which Mr. Rud simply asks for a *second* court order requiring his transfer to CPS—Mr. Rud has available a "plain speedy, and adequate remedy" to pursue transfer: a civil contempt motion, the state vehicle specifically designed to effectuate compliance with the court order Mr. Rud already has from the CAP. *Minn. State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 248 N.W.2d 733, 741 (Minn. 1976) (stating that civil contempt may be sought under circumstances when a party "fail[s] to obey a court order in favor of the opposing party in a civil proceeding."). Indeed, Plaintiffs cite two CAP orders issued in contempt proceedings, thus demonstrating that such motions are available before the CAP. Plaintiffs' mandamus claim should be dismissed for this reason as well.

**D.   To the Extent the Court Does Not Dismiss Plaintiffs' Mandamus Claim in its Entirety, Plaintiffs Are Not Entitled to a Peremptory Writ of Mandamus.**

Finally, if the Court does not dismiss Count I entirely, Plaintiffs' request for a peremptory writ of mandamus should be denied. As a general matter, a writ of mandamus is either "alternative" or "peremptory." Minn. Stat. § 586.03. Minnesota statutes describe the difference between the two:

> The alternative writ shall state concisely the facts showing the obligation of the defendant to perform the act, and the defendant's omission so to do, and command the defendant that immediately after the receipt of a copy of the writ, or at some other specified time, the defendant do the required act, or show cause before the court out of which the writ issued, at a specified time and place, why the defendant has not done so, and that the defendant then and there make a return to the writ, with a certificate thereon of having done as commanded.  The peremptory writ shall be in similar form, except that the words requiring defendant to show cause shall be omitted.

*Id*.  A peremptory writ should only be issued in the first instance "[w]hen the right to require the performance of the act is clear, and it is apparent that no valid excuse for nonperformance can be given."  Minn. Stat. § 586.04 (emphasis added).  The statute further states that "[i]n all other cases the alternative writ shall first issue."  *Id*.

The Minnesota Supreme Court has explained that although Minnesota law permits a peremptory writ in the first instance, "it is plain that it is to be issued with great caution," and it has described the peremptory writ as an exercise of "extraordinary and arbitrary power."  *Home Ins. Co. v. Scheffer*, 12 Minn. 382, 384 (1867).  It is "only upon a state of unquestionable facts" that leave "no room for doubt as to the right to the performance of the act sought to be compelled," and "only when it is apparent and manifest that no valid excuse can be given for non performance," that a peremptory writ should be issued in the first instance.  *Id.*  Indeed, the Supreme Court described the peremptory writ as "rarely issued in the first instance."  *Id.*  Therefore, it set forth a "general rule, subject to very few exceptions," that "if the peremptory writ is to be applied for in the first instance, it should be upon notice, and if the circumstances call for great dispatch, there will be few cases in which this cannot be attained under an order to show cause."  *Id.* at 385; *see also State ex*

*rel. Nicolin v. Bd. Cnty. Comm'rs*, 44 N.W. 64, (Minn. 1890) (reversing peremptory writ and finding an alternative writ should have issued).

## II.   PLAINTIFFS' DUE PROCESS CLAIMS SHOULD BE DISMISSED (COUNTS II-IV).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.   There are two recognized components to this clause: procedural due process and substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998).  "The possession of a protected life, liberty, or property interest is a condition precedent to any due process claim." *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (cleaned up and citation omitted). The due process protections of the Minnesota Constitution are coextensive with those guaranteed by the United States Constitution, *State v. Halloway*, 916 N.W.2d 338, 344 (Minn. 2018), and the analysis below accordingly applies to Plaintiffs' claims under both.

### A.   Plaintiffs Do Not Plausibly Plead a Procedural Due Process Violation (Counts II and III).

Plaintiffs fail to allege violations of procedural due process—both for Count II, which alleges a violation of due process due to transfer wait times, and Count III, which alleges a violation of procedural due process for a purported violation of Plaintiffs' right to treatment they claim is only available at CPS.

A procedural due process claim is reviewed in two steps.  *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).   The first is whether the plaintiff has been deprived of a protected liberty or property interest.  *Id*.  If the plaintiff has a protected interest, courts

then consider what process is due by balancing the interest affected, the likelihood of an erroneous deprivation, and the challenged program's interest in providing the process it did. *Id.*

      **i.      Counts II and III should be dismissed because Plaintiffs identify no liberty or property interest in earlier transfer to CPS.**

"While a violation of a state-created liberty interest can amount to a violation of the Constitution, *not every violation of state law or state-mandated procedures is a violation of the Constitution*." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (emphasis added). "The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension." *Id.* Accordingly, "[s]tate laws and regulations create a protectable liberty interest only when they (1) place substantive limitation on the exercise of official discretion; and (2) contain explicit mandatory language comprising specific directives to the decision maker that if the regulations' substantive predicate acts are present, a particular outcome must follow." *William v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993) (quotations and internal citations omitted); *see also Snodgrass v. Robinson*, 512 F.3d 999, 1003 (8th Cir. 2008) (stating that "no liberty interest . . . is created unless the state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state officials" (quotation omitted)); *Jennings v. Lombardi*, 70 F.3d 994, 996 (8th Cir. 1995) (indicating that the same standard applies to property interests).

Here, Count II alleges that Plaintiffs "had a protected liberty interest in being transferred to a less-restrictive environment after receiving a judicial order for transfer"

(Doc. 1-1, p. 16; Compl., p. 11 ¶ 46), and as discussed above Plaintiffs believe that Minnesota statutes require transfer to CPS on a transfer order's effective date.  Plaintiffs, however, identify no "explicit mandatory language" to that effect, as required, and as also noted above, the Minnesota Supreme Court in *McDeid* interpreted the governing statutes and CAP orders, as a matter of state law, only to require transfer within "a reasonable time"—language not included in the statute.  984 N.W.2d at 879.  Accordingly, while Defendants concede that Mr. Rud and others awaiting transfer have a state law vehicle to adjudicate whether a transfer delay violates this "reasonable time" requirement, *see supra* at 13-14, the statutes at issue create no interest of constitutional dimensions.  Count II should be dismissed.

With respect to Count III, Plaintiffs apparently rely on the statutory provision that MSOP clients have "the right to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary." Minn. Stat. § 253B.03, subd. 7; *see also* Doc. 1-1, p. 17; Compl., p. 12 ¶ 57.  Plaintiffs assert that this treatment "includes reintegration treatment only offered at CPS."  *Id*.  But the statute does not say anything about "reintegration treatment," and accordingly cannot possibly direct (in explicit, mandatory, or any other language) that anyone receive "reintegration treatment" at CPS or elsewhere.   Further, Plaintiffs' statement that "discharge from commitment . . . is conditioned upon completion of reintegration treatment" (*id*.) is simply not true as a matter of law: as discussed above, the law governing discharge does not require completion of "reintegration treatment" or of MSOP's treatment program.  *See supra* at 3-4.  Indeed, such a discharge precondition would be blatantly

unconstitutional, as civilly committed individuals are entitled to discharge when the mental condition underlying their commitment remediates *or* their dangerousness sufficiently lessens—by whatever means. *Call*, 535 N.W.2d at 319; *Jones v. United States*, 463 U.S. 354, 370 (1983) ("the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society.").[6]

> ## ii.   Counts II and III should in any event be dismissed because Plaintiffs do not allege a procedural deprivation, as required to state a procedural due process claim.

Unlike substantive due process, procedural due process protects not from substantive deprivations, but from the denial of *procedures* allowing the person to contest the basis for the deprivation of a protected interest. *Carey v. Piphus*, 435 U.S. 247, 259-60 (1978). Accordingly, "[a] plaintiff who seeks only to stop a challenged practice entirely"—here, waiting for transfer to CPS—"rather than to be afforded procedural protections in connection with that practice, does not have a procedural due-process claim." *Hough v. Shakopee Pub. Sch.*, 608 F.Supp.2d 1087, 1112 (D. Minn. 2009); *see also Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures.").

---

[6] To the extent Plaintiffs intend either Count II or III to rely on fundamental rights arising under substantive due process, they have no substantive due process rights to live in a less restrictive alternative setting or to treatment. *See infra* at 23-24. In that event, Counts II and III would be precluded by *Karsjens* for the reasons discussed below in connection with Plaintiffs' substantive due process claim. *See infra* at 22-23.

Here, even if Plaintiffs had alleged the violation of a protected interest, they do not contend that *any* procedural protections could justify the delay in transferring them to CPS. *See Hough*, 608 F.Supp.2d at 1112. Instead, Plaintiffs appear to allege that it is the wait to transfer itself, after they have already gone through all required legal process, that has caused Plaintiffs damage, not a lack of opportunity to be heard. Compl ¶¶ 1-3; 19; 46 ("Plaintiffs … have followed all statutory requirements to be eligible for transfer. Plaintiffs … thus had a legitimate claim of entitlement to the timely effectuation of the CAP transfer orders."). In short, Plaintiffs do not allege any "process" they believe would alleviate the harm in their alleged delay in transfer—and in failing to do so, they fail to state a procedural due process claim.

An analysis of Plaintiffs' purported entitlement to transfer under Minnesota statute comes out the same. In *Bagley v. Rogerson*, the Eighth Circuit explained what kinds of procedural due process protections are afforded to interests created by state law: "If a state law gives me the right to a certain outcome in the event of the occurrence of certain facts, I have a right, by virtue of the Fourteenth Amendment, to *whatever process is due in connection with the determination of whether those facts exist*." *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir.1993) (emphasis added).[7] Here, Plaintiffs allege that both the CAP

---

[7] In other words, just because a state law "creates a certain right or entitlement" through mandatory language (including a statute that "is a direct command"), it does not implicate procedural due process if the statute "does not create a certain right or entitlement *subject to specified factual findings*." *Meis*, 906 F.2d at 368-69 (emphasis added). This is a hard limit on federal due process rights provided by state statute; if mandatory language automatically implicated the Due Process Clause, "[s]uch a doctrine would turn every state-law violation into a *substantive*-due-process claim, *a result that would obliterate completely the distinction between state law and the federal Constitution*." *Bagley*, 5 F.3d

transfer orders and Minn. Stat. § 253B.09, subd. 1 entitle them (and both sets of putative class members) to be transferred to CPS. Compl. ¶ 17-18, 36. But procedural due process would only protect the determination of whether an MSOP client meets the "predicate facts"—here, whether the MSOP client is in fact entitled to transfer to CPS. *See Bagley*, 5 F.3d at 328.

According to Plaintiffs, Defendants have not contested that Plaintiffs in fact meet those predicate facts. Compl. ¶¶ 20, 22 (noting that Defendant Harpstead did not appeal the CAP transfer orders).  In other words, the threshold determination of whether Plaintiffs are entitled to the purportedly protected interest is not at issue in Plaintiffs' Complaint because Plaintiffs have already gone through that legal procedure (the SRB and CAP petition process) and they do not allege *that* procedure is deficient. Compl. ¶¶ 20, 22. Under Eighth Circuit precedent, that is the only process Plaintiffs are constitutionally due with respect to the denial of a state law created entitlement.  *Bagley*, 5 F.3d at 328.  As Judge Brisbois stated in recommending dismissal of a claim from another MSOP client about a wait to transfer to CPS:

> Because of the type of relief that Plaintiff seeks, specifically an Order from this Court directing state officials to conform with a state court order, Plaintiff is not asking for due process but rather injunctive relief. Even liberally construing Plaintiff's pleadings, Plaintiff merely makes a conclusory assertion that he is bringing a due process claim. The record, however, indicates that Plaintiff received due process and that the state court order he seeks to enforce is the result of that process. Plaintiff does not allege any process that he was denied. Rather, Plaintiff has had his process, and it

---

at 328 (emphasis added); *see also, Meis*, 906 F.2d at 368-69 (holding that it is "*emphatically not the law*" that the violation of "every state statute which imposes a mandatory duty, or creates a legal right. . . would be a violation of the Due Process Clause of the Fourteenth Amendment.") (emphasis added).

> resulted in an order, whereas Plaintiff now seeks injunctive relief to enforce that order. The Court, therefore, will not address what process would be due to Plaintiff.

*McDeid v. Johnston*, No. 18-CV-1350 (SRN/LIB), 2018 WL 6204968, at *3 n.4 (D. Minn. Nov. 5, 2018), *report and recommendation adopted sub nom. McDeid v. Johnston*, No. 18-CV-1350 (SRN/LIB), 2018 WL 6201729 (D. Minn. Nov. 28, 2018).   Because Plaintiffs allege no procedural deprivation in the determination of whether they are entitled to transfer to or treatment at CPS, their procedural due process claims in Counts II and III fail.

**B.     Plaintiffs' Substantive Due Process Claim Should Be Dismissed (Count IV).**

In contrast to procedural due process, substantive due process protects from the denial of a limited set of substantive rights regardless of what procedure is provided. Substantive due process analysis has two primary features: (1) it only specially protects those fundamental rights and liberties which are, objectively, deeply rooted in the nation's history and tradition, and (2) in order for a court to grant substantive due process protection, a court requires the moving party provide a "careful description" of the asserted fundamental liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Whether a substantive due process right exists is a question of law. *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982).  When determining whether a substantive due process right has been violated, it is necessary for courts to balance "the liberty of the individual" with "the demands of an organized society." *Id*. at 320.

### i.       Count IV is barred by issue preclusion.

First, Count IV is barred by issue preclusion.  Plaintiffs premise this claim on the assertion that they "have a liberty interest protected by due process in being transferred to a less-restrictive environment after judicial order for transfer" and in "receiving community reintegration treatment which is only available at CPS and upon which discharge from commitment is conditional."  Doc. 1-1, p. 13; Compl., p. 8 ¶¶ 27a-b.   As discussed, *see supra* at 6-8, Plaintiffs have already claimed substantive due process entitlement to reside in a less restrictive alternative and to treatment, and lost.

A claim is barred by issue preclusion when:

(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit;
(2) the issue sought to be precluded must be the same as the issue involved in the prior action;
(3) the issue sought to be precluded must have been actually litigated in the prior action;
(4) the issue sought to be precluded must have been determined by a valid and final judgment; and
(5) the determination in the prior action must have been essential to the prior judgment.

*Sandy Lake Band of Miss. Chippewa v. U.S.*, 714 F.3d 1098, 1102–03 (8th Cir. 2013) (citing *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir.2007).  All these elements are met here with respect to Counts II, III, and VI of *Karsjens*: Plaintiffs are class representatives in *Karsjens*, their substantive due process entitlement to less restrictive alternative placement and treatment was at issue in *Karsjens* as well, it was actually litigated and determined by a valid and final judgment in *Karsjens*, and those determinations were

essential to the dismissal of the counts at issue.  Count IV should be dismissed on this basis alone.

### ii.   Count IV should be in any event dismissed because Plaintiffs do not have a fundamental right to transfer to CPS.

Count IV should be dismissed even if not precluded.  Plaintiffs assert that they have a fundamental right to "the effectuation of the CAP transfer orders which provide them access to treatment . . . and are otherwise statutorily required."  But this allegation does not meet the first prerequisite of the *Glucksberg* test: Plaintiffs have not shown that the right to be transferred to CPS after a CAP order is a right or liberty that is, "objectively, deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 720-21 (citation omitted).  Plaintiffs do not allege anything in "[o]ur Nation's history, legal traditions, and practices" that establishes the right to transfer to CPS as a "fundamental liberty interest." *Id.*  Plaintiffs do not attempt a discussion of these issues, instead conceding that they do not believe the existence of such a fundamental right is clear. Compl. ¶ 27(a)-(b).

Moreover, Plaintiffs' claim arises from their assertion that they must, as a matter of substantive due process, have access to CPS to receive the "reintegration treatment" they assert is necessary to move them towards discharge.  The Eighth Circuit (as noted in Defendants' preclusion argument, above) has held that civilly committed individuals like Plaintiffs have no constitutionally protected right to reside in the least restrictive possible setting, including CPS. *Karsjens v. Piper*, 845 F.3d 394, 402-03, 409-11 (8th Cir. 2017) (rejecting a substantive due process claim for less restrictive alternative facilities at MSOP); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1046 (9th Cir. 2002)

24

("A reasonable relationship between the governmental interest and the challenged restriction does not require … showing a 'least restrictive alternative.'" (citation omitted)); *Lelsz v. Kavanagh*, 807 F.2d 1243, 1247 (5th Cir. 1987) ("considerable case law authority rejects a federal constitutional right to treatment in a least restrictive alternative setting."); *Soc'y for Good Will to Retarded Children v. Cuomo*, 737 F.2d 129, 1248-49 (2d Cir. 1984); *Phillips v. Thompson*, 715 F.2d 365, 367-68 (7th Cir. 1983).

The Eighth Circuit (as referenced, in part, in Defendants' preclusion argument) has also repeatedly held that civilly committed individuals have no due process right to treatment of any kind. *Bailey v. Gardebring*, 940 F.2d 1150, 1153 (8th Cir. 1991) ("We turn first to Bailey's asserted right to treatment. . . [he] simply does not have the constitutional right he claims."); *Elizabeth M. v. Montenez*, 458 F.3d 779, 788 (8th Cir. 2006) ("[T]he Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, but not a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement."); *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (same). *Karsjens I*, 845 F.3d at 410 (same); *Karsjens II*, 988 F.3d at 1051 (8th Cir. 2021) (same). If Plaintiffs do not have a substantive due process right to reside in CPS or a substantive due process right to particular (or any) treatment, then they do not have a substantive due process right to particular treatment while residing at CPS.[8]

---

[8] Neither does the Minnesota Supreme Court's recent decision in *McDeid* establish that transfer to CPS after CAP order is a protected liberty interest. Contrary to Plaintiffs' implication, the Minnesota Supreme Court in *McDeid v. Johnston* explicitly did not decide whether transfer to CPS within a "reasonable time" implicated a protected interest under

### iii.   Count IV should be dismissed because an alleged violation of chapter 253D does not implicate substantive due process.

Neither does Plaintiffs' allegation that transfer to CPS is "statutorily required" implicate substantive due process, because a state's violation of its own laws does not, without more, implicate a constitutionally-protected liberty interest. "[S]ubstantive due process rights are created only by the Constitution," and, in almost all situations, they cannot be created by state law. *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring); *see also Lewis v. Brown*, 409 F.3d 1271 (11th Cir. 2005).[9] As the Eighth Circuit noted, "We have held several times that a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993) (citing, e.g., *Meis v. Gunter*, 906 F.2d 364, 369 (8th Cir.1990), *cert. denied*, 498 U.S. 1028 (1991)); *see also Chesterfield Dev.*

---

either procedural or substantive due process interest. *Id.* at *10 ("We remand to the court of appeals to address whether the State Officials' clear obligation to transfer the Patients to CPS within a reasonable time following a CAP transfer order gives rise to a federal due process right."). In addition, although the Supreme Court indicated it was "not clear" whether the nature of the claim was procedural or substantive, *McDeid*, 984 N.W.2d at 872 n.3, it was clear from the Court of Appeals' decision that the alleged claim was procedural in nature. *See McDeid v. Johnston*, 2021 WL 3277218, at *1 (Minn. Ct. App. Aug. 2, 2021) (discussing that the appeal challenged the "dismissal of their procedural due-process claims for damages").

[9] This stems from the fundamental notion that "a federal court will not require a state to follow its own law, even though adherence to governing rules is an important ingredient of. . . due process[.]" *Carson v. Block*, 790 F.2d 562, 565-66 (7th Cir.), *cert. denied*, 479 U.S. 1017 (1986)); *see also Bowers v. City of Flint*, 325 F.3d 758, 766 (6th Cir. 2003) (J. Moore, concurring). When the source of a duty or obligation is not the United States Constitution, but is instead a state law, "federal courts have no rule external to the state's choices to enforce. We have only state law, which states may enforce, alter, or disregard so far as the Due Process Clause is concerned." *Archie v. City of Racine*, 847 F.2d 1211, 1218 (7th Cir. 1988).

*Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) ("In other contexts we have unequivocally held that a state-law error, no matter how fundamental, cannot in and of itself create a federal due-process violation.") (citation omitted)).  Indeed, even if a violation of state law is done in bad faith, it does not implicate the Due Process Clause. *Chesterfield*, 963 F.2d at 1105 (8th Cir. 1992) ("A bad-faith violation of state law remains only a violation of state law."); *WMX Techs., Inc. v. Gasconade Cnty., Mo.*, 105 F.3d 1195, 1200 (8th Cir. 1997) ("A violation of state law remains only a violation of state law. . . . Such is a matter primarily of concern to the state and is better addressed to state courts and administrative bodies.").

The only way that a violation of state statute implicates substantive due process rights are when the government's actions are "truly irrational." *Chesterfield*, 963 F.2d at 1105; *see also Rozman v. City of Columbia Heights*, 268 F.3d 588, 593 (8th Cir. 2001) (en banc) ("The government action must be arbitrary *in the constitutional sense*.") (emphasis added). This is an extraordinarily high burden for a plaintiff to meet.  *See Azam v. City of Columbia* Heights, 865 F.3d 980, 986 (8th Cir. 2017) ("This Court has repeatedly emphasized the high burden facing a person who claims a violation of his or her Fourteenth Amendment rights") (quotations omitted).  Examples of "truly irrational" government actions include (i) "attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet" (*Chesterfield*, 963 F.2d at 1104); (ii) a government "fir[ing] an at-will employee because his name starts with 'A,' or because it rained last night" (*Singleton*, 155 F.3d at 989–90); and (iii) "a zoning board's decision

made by flipping a coin." (*Lemke v. Cass Cnty., Neb.*, 846 F.2d 469, 472 (8th Cir. 1987) (Arnold, J., concurring)).

Plaintiffs allege nothing close to this level of irrationality. Indeed, Plaintiffs allege nothing about the reasons for the delay in transfer, other than to cite CAP orders indicating they did not move or have not moved earlier because CPS is full.[10]  *See supra* at 5-6. Count IV should be dismissed.

### C.   To The Extent the Court Does Not Otherwise Dismiss Plaintiffs Due Process Claims, It Should Dismiss Any Requests for Damages Under Counts II-IV.

First, the Court should dismiss any claims for damages under the Minnesota Constitution to the extent Plaintiffs bring them.  "Minnesota does not have a statutory equivalent to 42 U.S.C. § 1983 allowing a direct cause of action for damages for violations of the Minnesota Constitution."  *Redd v. Abla-Reyes*, Case No. 12-465 (MJD/JSM), 2013 WL 6057860, at *1 (D. Minn. Nov. 15, 2013).

Second, the Court should also dismiss any claims for damages under the United States Constitution to the extent Plaintiffs bring them.  Plaintiffs sue Defendants in their official capacities only.  Doc. 1-1, p. 6; Compl., p. 1 (stating that Defendants are sued

---

[10] Plaintiffs also allege that "Defendants' failure to transfer Plaintiffs … shocks the conscience." Compl. ¶ 69. The Court need not accept such conclusory allegations—unsupported by any factual material—on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (pleadings require more than a formulaic recitation of the elements of a cause of action to be assumed true).  In any case, to be conscience-shocking and thus potentially implicate substantive due process, government conduct must be "'so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Karsjens I*, 845 F.3d at 408. Again, Plaintiffs make no factual allegations rising to this level.

"*in their official capacities*"); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th

Cir. 1999) ("This court has held that, in order to sue a public official in his or her individual

capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise,

it will be assumed that the defendant is sued only in his or her official capacity.").  Because

they are not persons within the meaning of section 1983 and because the state has not

waived its immunity from section 1983 claims, "a state and its officers acting in their

official capacity may not be sued under section 1983." *Rico v. State*, 458 N.W.2d 738, 740

(Minn. Ct. App. 1990), *aff'd*, 472 N.W.2d 100 (Minn. 1991) (citing *Will v. Michigan

Department of State Police*, 491 U.S. 58, 70-71 (1989).[11]

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to dismiss

Plaintiffs' Complaint in its entirety with prejudice.

Dated:  March 8, 2023                              Respectfully submitted,

                                                   KEITH ELLISON
                                                   Attorney General
                                                   State of Minnesota

                                                   **s/ Aaron Winter**
                                                   AARON WINTER
                                                   Assistant Attorney General
                                                   Atty. Reg. No. 0390914

                                                   EMILY B. ANDERSON
                                                   Assistant Attorney General
                                                   Atty. Reg. No. 0399272

---

[11] An exception to this rule allows section 1983 suits against state officials for prospective
injunctive relief, which Defendants acknowledge Plaintiffs seek here on behalf of Mr. Rud
and the putative Awaiting Transfer Class. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy,
Inc.*, 506 U.S. 139, 146, (1993).

GABRIEL R. ULMAN
Assistant Attorney General
Atty. Reg. No. 0402503

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1275 (Voice)
aaron.winter@ag.state.mn.us
emily.anderson@ag.state.mn.us
gabriel.ulman@ag.state.mn.us

*Attorneys for Defendants*

|#5445722-v1