UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, and Brian Keith Hausfeld, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Nancy Johnston, Executive Director, Minnesota Sex Offender Program; and Jodi Harpstead, Department of Human Services Commissioner, *in their official capacities*,<br><br>Defendants. | Court File No. 0:23-cv-00486-JRT-LIB<br><br>**PLAINTIFF RUD'S REPLY MEMORANDUM OF LAW IN SUPPORT OF TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Defendants' opposition to Plaintiff Rud's Motion for a Temporary Restraining Order or a Preliminary Injunction attempts to misdirect the inquiry on what is an otherwise straight-forward proposition. Even though a Minnesota court has ordered Plaintiff transferred to Community Preparation Services (CPS), and even thought Defendants have not appealed that order, they refuse to comply with the Court's order. Instead, Defendants offer multiple justifications and excuses for why they cannot follow the order and blame Plaintiff for not sufficiently alleging facts that are obvious and for the most part, a matter of public record.

The record in this case is clear and undisputed. In addition to Plaintiff's complaint, Defendants filed several affidavits that admit Plaintiff allegations are true. At bottom, there

is simply no dispute about any relevant fact or the applicable law that justifies Defendants' conduct ignoring the Court's order.  As a result, Plaintiff's motion should be granted.[1]

## ARGUMENT

I.     **THE RECORD FULLY SUPPORTS PLAINTIFF'S MOTION**

In the face of undisputed facts and undisputed court orders, Defendants first suggest the Court deny Plaintiff's motion because the complaint is "unverified" and therefore insufficient. Defendants' assert that Plaintiffs' filings alone fail to support an injunction citing cases from other jurisdictions and earlier times.[2] *Id.* Because there is simply no relevant dispute, that argument should be rejected.

Plaintiffs' Class Action Complaint (Exhibit 1 to ECF No. 1 properly is signed by counsel thereby certifying that the contents of the Complaint are based on counsel's knowledge, information, and belief, and that the factual contentions alleged have evidentiary support. *See* Fed. R. Civ. P. 11(b). In addition to the Complaint, however,

---

[1] Although Plaintiff initially styled its motion as one for a TRO, Rule 65's parameters appear to make this properly a motion for preliminary injunction because Defendants have appeared and filed opposition papers to Plaintiff's motion.

[2] Although Plaintiffs believe it sufficient to merely state that Defendants' citations are foreign, non-precedential, and outdated, for the sake of completeness, they will address each. *Palmer v. Braun*, 155 F. Supp. 2d 1327 (M.D. Fla. 2001), *aff'd,* 287 F.3d 1325 (11th Cir. 2002) is inapposite because, besides the boilerplate statement that Defendants cite, contains no discussion whatsoever about verification. *Greer v. Amesqua*, 22 F. Supp. 2d 916 (W.D. Wis. 1998) discusses the responsibilities of the party moving for a preliminary injunction that are imposed *by the court's local rules* and *Societe Comptoir De L'Industrie Cotonniere, Etablissements Boussac v. Alexander's Dep't Stores, Inc.*, 190 F. Supp. 594 (S.D.N.Y. 1961), *aff'd,* 299 F.2d 33 (2d Cir. 1962) misses the mark because it does not represent the modern state of the rule, under which a TRO or preliminary injunction may issue based on the complaint's allegations.

Defendants also filed papers that are now part of the record before the Court including sworn declarations from Defendant Nancy Johnston and MSOP Executive Clinical Director Jannine Hébert.  *See* Declaration of Nancy Johnston, ECF No. 29 ("Johnston Decl."); *see also* Declaration of Jannine Hébert, ECF No. 31 ("Hébert Decl."). These sworn statements confirm Plaintiff's allegations and clearly show that there are no factual disputes regarding the claims at issue here.  These admissions by Defendants (and their senior personnel) and the entire record amply demonstrate sufficient proofs to support Plaintiff's requested injunction.[3]

## II.  APPLICATION OF THE *DATAPHASE* FACTORS STRONGLY SUPPORT GRANTING PLAINTIFF'S MOTION

### A.  Plaintiff Rud is Likely to Succeed on the Merits.

Substantive Due Process

Defendants' opposition brief is littered with "straw[person]" arguments based on their characterizations about what Plaintiffs pleaded in their complaint. But those characterizations misdirect the proper inquiry.  In that regard, it is important to clear up what Plaintiff does not plead.

First, Plaintiff does not allege that Defendants violated his substantive due process rights by failing to transfer him to a less-restrictive facility. Rather, Plaintiff alleges that Defendants violated his substantive due process rights by failing to transfer him to reduction in custody pursuant to a valid and not appealed Minnesota court order. *See*

---

[3] If the Court feels a full evidentiary hearing is required to protect Defendants' due process rights, Plaintiffs would gladly accept the opportunity to put evidence on the record and ask only that the Court schedule the hearing as soon as practicable.

Compl. at ¶ 68, Plaintiff's reference to "less restrictive facilities" reflects the fact that transfer to CPS is defined in statute as a "reduction in custody." *Id.* at ¶ 13 (citing Minn. Stat. § 253D.27, subd. 1(b)). Defendant Johnston and Director Hébert admitted as much. Johnston Decl. at ¶ 4 (stating that CPS is "a less-restrictive, unlocked residential setting … located outside the secure perimeter."); Hébert Decl. at ¶ 8 (stating that people at "CPS are granted an increase in liberty … and that "63% of Phase III [people] at CPS participate in community outings"). In other words, Plaintiff would certainly have more liberty at CPS than the Moose Lake Facility and Defendants significantly misconstrue Plaintiff's substantive due process claim.

Similarly, Plaintiff in this case does not allege that he has a constitutional right to reside in the least restrictive possible setting as Defendants argue. Instead, Plaintiff alleges that he has a right to transfer to CPS as a reduction in custody because the state court with jurisdiction under the statute issued a transfer order with which Defendants presently refuse to comply, (*see, e.g.,* Compl. at ¶¶46-50) contrary to the statute and the Minnesota Supreme Court's decision in *McDeid v. Johnston,* No. A21-0042, 2023 WL 1425674, at *9-10 (Minn. Feb. 1, 2023) (finding "[o]ur precedent and analogous Eighth Circuit cases establish relevant bedrock principles of law concerning the duty of public officials to follow court orders" and determining that it is "clearly established that compliance with a CAP transfer order must occur within a reasonable time.").

Finally, contrary to Defendant's assertions, Plaintiff does not allege a fundamental right to treatment at CPS but instead, Plaintiff alleges that the Minnesota Commitment Statute creates an interest in receiving treatment enabling MSOP patients to progress

4

towards "rendering further supervision unnecessary," an interest that is hindered for Plaintiff by Defendants' refusal to transfer him. *See* Compl. at ¶ 9 (citing Minn. Stat. § 253B.03, subd. 7).

Defendants similarly take liberties with the case law they cite to support their arguments.  For example, Defendants suggest that *Bagley v. Rogerson,* 5 F.3d 325 (8th Cir. 1993), stands for the proposition that "a violation of state law, without more, does not state a claim under the Federal Constitution or 42 U.S.C. § 1983" but then omit the relevant context which reads: "There is a body of law, to be sure, holding that state law may create a 'liberty interest' protected by the Fourteenth Amendment. If, for example, a state statute gives 'specific directives to the decision maker that if the [statute's] substantive predicates are present, a particular outcome must follow,' a 'liberty interest' protected by the Fourteenth Amendment is created." (internal quotations omitted).

Defendants next suggest that Plaintiff's allegations fail to demonstrate that the Defendants' conduct – refusing to follow valid, and not appealed court orders – is "truly irrational." Apart from whatever applicable legal standard applies, it simply cannot be disputed that Plaintiff remains at the prison-like Moose Lake MSOP facility 266 days after his valid transfer order became effective. *See* Compl. at ¶¶ 20-21. Defendant Johnston herself admits that based on Defendants' conduct, there are presently 16 patients with valid and not appealed court orders directing transfer to CPS which are being ignored and that under current conditions, transfer will occur at a rate of one every 24 days. Johnston Decl. at ¶¶ 6, 29 (ECF. No. 29).  Not accounting for how long they already have been on the waitlist to-date, the 16th patient on the waitlist will not be transferred for over 380 days.

5

Actions leading to this result cannot be anything but irrational and unreasonable under the law. *See McDeid,* 2023 WL 1425674, at *8-9.

Conspicuously absent from Defendants' opposition is any claim that they have not complied with the court orders because of negligence or mistake. Instead, their memorandum makes clear that Defendants intentionally failed to comply with these outstanding court orders albeit for various reasons they set out. Moreover, other state courts have consistently rejected (and thereby put Defendants on notice of) their interpretation of the law. *See, e.g., In the Matter of the Civil Commitment of Al Stone Folson*, County File No. 62-MN-PR-06-267; Appeal Panel File No. AP19-9153 (Ramsey County, Dec. 2, 2021) ("*Folson*") at ¶8 fn. 1 (noting and rejecting Defendant Johnston's attempt to read the words "when a bed becomes available" into the transfer statute). Defendants simply have not followed the valid court orders. About that fact, there is no dispute. Plaintiff is thus likely to succeed on the merits of his substantive due process claims.

Procedural Due Process

Defendants' arguments in opposition to Plaintiff's procedural due process claims are puzzling because they seem to suggest Plaintiff has no claim to procedural due process because DHS and MSOP have not put procedures in place through which patients can compel their own transfer. Defendants miss the point here. As is pleaded in the Complaint and discussed in Plaintiffs' initial brief, Plaintiff had a protected right to be transferred pursuant to the valid state court's transfer order. Compl. at ¶¶ 46-50. Defendants deprived him of that interest without any procedural process of any kind. *Id.* at ¶¶ 46-50; 57-62; *see*

*also* Plaintiff's Opening Memorandum at 7 (stating that "But when that opportunity to petition for transfer is merely window-dressing – that is, when there is not a realistic chance to actually be transferred after judicial order – there exist no procedural safeguards to protect MSOP patients' due process rights."). Additionally, case law on this exact set of circumstances – ignored by Defendants – found that plaintiffs adequately pled procedural due process violations at the motion to dismiss stage. *See* Plaintiff's Opening Memo. at 11-13 (citing *McDeid v. Johnston*, Case No. 62-CV-8232, Dkt. No. 1, Petition for Writ of Mandamus and Complaint (November 11, 2019) and *Garry v. Johnston*, Case No. 62-CV-19-8234, Dkt. No. 1, Petition for Writ of Mandamus and Complaint (November 20, 2019)). Plaintiff has thus demonstrated his likelihood of success on his procedural due process claims.

<u>Writ of Mandamus</u>

Defendants devote one footnote to the discussion of Plaintiff's claim for a writ of mandamus, contending only that a writ is inappropriate because other adequate remedies exist. For several reasons, Defendants arguments lack merit. First, Plaintiff reiterates the language from his initial briefing – completely ignored by Defendants – that "to the extent that Defendants might suggest that a contempt proceeding is the proper remedy for Plaintiff and Class Members, Minnesota courts considering this issue have found the notion 'absurd.' *McDeid* [*v. Johnston*, Case No. 62-CV-19-8232, Order Granting Motion to Dismiss (September 18, 2020)] . . . ('It seems absurd to allow a litigant, who fails to take advantage of an appeal to challenge a court order that aggrieved it, to ignore or slow-walk implementing the court order for more than two years, in order to force the beneficiary of

7

the court order to bring a contempt proceeding against it.')" Second, Defendants offer no authority for the proposition that Plaintiff's claim for a writ of mandamus is improper under Minnesota statute, and the cited statute merely describes the issuance of a peremptory writ compared to an alternative writ. *See* Minn. Stat. § 586.04. Plaintiff has therefore adequately demonstrated the likelihood of success of the merits of his petition for writ of mandamus.

## B. Balancing of Harms

Defendants next provide a laundry list of negative effects that could occur should they be forced to overcrowd the CPS facilities. But once again, Defendants misconstrue Plaintiff's motion because Plaintiff is not telling Defendants how to do their jobs nor is Plaintiff seeking an order from the Court order telling Defendants how to do comply with the outstanding court orders. Plaintiff seeks a simple order – comply with the valid state court order to transfer people to CPS. It is solely the responsibility of Defendants to figure out how to accommodate compliance with those valid orders. This has always been the law, as Defendants have been well aware. *See Matter of Civil Commitment of Kropp*, 895 N.W.2d 647, 652 (Minn. App. 2017) (prohibiting the MSOP Executive Director from unilaterally preventing provisional discharge despite the Panel's grant and providing that the Panel may grant a reduction in custody even to a "nonexistent placement"). Moreover, as discussed above, Defendants do not dispute that they have not followed the court orders. To suggest that it is a harm to require state officials to follow state law is unsupported and in fact, specifically rejected in *McDeid.* 2023 WL 1425674, at *7.

On the other hand, Plaintiff suffers irreparable harm every day he is held at Moose Lake after a receiving a judicial order for his transfer to CPS. As Defendants themselves

8

admit, "Community Preparation Services . . . is a less-restrictive, unlocked residential setting on the grounds of MSOP's St. Peter campus, located outside the secure perimeter." Johnston Decl. at ¶ 4. Moreover, while "community outings are not guaranteed to a client immediately upon his or her transfer to CPS," there is no possibility of community outings at MSOP. *Id; see also* Hébert Decl. at ¶ 8 (stating that people at "CPS are granted an increase in liberty" and "63% of Phase III [people] at CPS participate in community outings").

Finally, Defendants functionally assert that they have violated the law for long enough that Plaintiff somehow forfeited his right to assert that he is suffering irreparable harm. On its face, this argument is unsupported. But even so, the *McDeid* decision which concluded what should have been obvious – that public officials cannot ignore court orders – was published on February 1, 2023. 2023 WL 1425674. Further, Defendants' cases are inapposite because neither of them alleges that the duration of the violation was itself part of plaintiff's harm. *See Adventist Health Sys./SunBelt, Inc. v. United States Dep't of Health & Hum. Servs.*, 17 F.4th 793 (8th Cir. 2021) (alleging a new policy was unlawful under the Administrative Procedures Act); *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964 (2d Cir. 1995) (trademark case where plaintiff waited nine months from discovering allegedly infringing product). Baked into any analysis of whether a plaintiff unreasonably delayed in bringing a lawsuit is the question of when they learned of the threatened harm. *See, e.g.,* Wright & Miller, 11A Fed. Prac. & Proc., § 2948.1 & n.13 (3d ed. 2013) ("[a] long delay by plaintiff *after learning of the threatened harm* ... may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.") (emphasis added).

9

In a case such as this, where the duration of the misconduct is part-and-parcel of the constitutional violation, there can be no bright-line for when a plaintiff is said to have "learned" of the constitutional harm. Plaintiff has demonstrated that the balance of interests weighs strongly in favor of granting the Motion.

### III.   CLASS-WIDE RELIEF IS APPROPRIATE

Defendants contend that class-wide treatment is inappropriate for a temporary restraining order but that argument misses the point.  First, Defendants do not dispute that they treat all court-ordered (but not timely transferred) people the same.  In fact, they admit it.  *See* Johnston Decl. at ¶ 6 (stating that "[a]bsent any unknown clerical errors, when an open bed has become available at CPS, MSOP has always transferred the next person on the waiting list, consistent with the applicable process described above.").  Second, because Fed. R. Civ. P. Rule 23 (b)(2) clearly applies where Defendants have "acted or refused to act on grounds that apply generally to the class," certification would be appropriate.  In fact, for those reasons, these same Defendants stipulated to certification under Rule 23(b)(2) in the *Karsjens* matter. *See Karsjens v. Jesson,* 283 F.R.D. 514, 519-20 (D. Minn. 2012). But to avoid becoming entangled in collaterasl issues, Plaintiffs will limit this motion to Plaintiff Rud and leave for another day the question of class certification.

### CONCLUSION

Plaintiff has submitted ample evidence that he is entitled to a temporary restraining order or preliminary injunction. The Motion should be granted.

| | |
|---|---|
| Dated: March 14, 2023 | */s/Daniel E. Gustafson*<br>Daniel E. Gustafson (#202241)<br>David A. Goodwin (#386715)<br>Anthony J. Stauber (#401093)<br>Joseph E. Nelson (#402378)<br>**GUSTAFSON GLUEK PLLC**<br>Canadian Pacific Plaza<br>120 South Sixth Street, Suite 2600<br>Minneapolis, Minnesota 55402<br>Telephone: 612-333-8844<br>Fax: 612-339-6622<br>dgustafson@gustafsongluek.com<br>dgoodwin@gustafsongluek.com<br>tstauber@gustafsongluek.com<br>jnelson@gustafsongluek.com<br><br>***Attorneys for Plaintiffs and the Proposed Classes*** |