# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, and Brian Keith Hausfeld, on behalf of themselves and all other similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>Nancy Johnston, Executive Director, Minnesota Sex Offender Program; and Jodi Harpstead, Department of Human Services Commissioner, *in their official capacities,*<br><br>        Defendants. | Court File No. 0:23-cv-00486-JRT-LIB<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT/DEMURRER IN RESPONSE TO MANDAMUS PETITION** |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................... 1

II.    FACTS AND PROCEDURAL POSTURE ................................................. 1

III.   LEGAL STANDARD ................................................................................ 7

IV.    PLAINTIFF RUD'S MANDAMUS CLAIM SHOULD NOT BE DISMISSED ... 8

   A. Defendants Have an Official Duty Clearly Imposed by Law to Transfer
      Plaintiff Rud ......................................................................................... 8

   B. Plaintiffs Have No Obligation to Prove Funding Availability ......................... 9

   C. The Availability of Civil Contempt Does Not Defeat Mandamus ................... 13

   D. Plaintiffs Are Entitled to a Peremptory Writ of Mandamus ........................... 14

V.     THE COURT SHOULD NOT DISMISS PLAINTIFFS' DUE PROCESS
     CLAIMS ................................................................................................. 17

   A. Plaintiffs' Procedural Due Process Claims are Well-Pled............................... 17

      i.   Plaintiffs identify a clear liberty or property interest in transfer to CPS .... 17

      ii.  Plaintiffs allege a procedural deprivation.................................................... 22

   B. Plaintiffs' Substantive Due Process Claim is Well-Pled ................................. 25

      i.   Plaintiff's claims are distinct from those in *Karsjens* ................................. 26

      ii.  Plaintiffs allege a fundamental right to state officials following the law ... 27

      iii. Plaintiffs sufficiently plead "truly irrational" behavior ............................. 28

VI.    DISMISSAL WITH PREJUDICE IS IMPROPER IN ANY EVENT................... 29

VII.   CONCLUSION ....................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Anderson v. Creighton*,
483 U.S. 635 (1987) ........................................................................................... 35

*Armstrong v. City of Minneapolis*,
525 F. Supp. 3d 954 (D. Minn. 2021) ................................................................ 24

*Armstrong v. Manzo*,
380 U.S. 545 (1965) ........................................................................................... 30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 24

*Bagley v. Rogerson*,
5 F.3d 325 (8th Cir. 1993) ............................................................................. 31, 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 10, 11

*Bliek v. Palmer*,
102 F.3d 1472 (8th Cir. 1997) ........................................................................... 30

*Board of Pardons v. Allen*,
482 U.S. 369 (1987) ...................................................................................... 26, 27

*Chesterfield Dev. Corp.*,
963 F.2d 1102 (8th Cir. 1992) ........................................................................... 36

*Eckert v. Titan Tire Corp.*,
514 F.3d 801 (8th Cir. 2008) ............................................................................. 10

*Evergreen Partnering Grp. v. Pactiv Corp.*,
720 F.3d 33 (1st Cir. 2013) ............................................................................... 24

*Folkerts v. City of Waverly*,
707 F.3d 975 (8th Cir. 2013) ............................................................................. 33

*Greenholtz v. Nebraska Penal Inmates*,
   442 U.S. 1 (1979) ............................................................................................ 26

*Hall v. Lombardi*,
   996 F.2d 954 (8th Cir. 1993) ........................................................................... 36

*Haygood v. Younger*,
   769 F.2d 1350 (9th Cir. 1985) ......................................................................... 35

*Hemming v. Ald, Inc.*,
   155 N.W.2d 384 (Minn. 1967) ........................................................................ 14

*Home Ins. Co. v. Scheffer*,
   12 Minn. 382 (1967) ................................................................................. 22, 23

*In re Blodgett*,
   510 N.W.2d 910 (Minn. 1994) ........................................................................ 31

*Jones v. United States*,
   463 U.S. 354 (1983) ........................................................................................ 29

*Judah v. Ovsak*,
   550 F. Supp. 3d 687 (D. Minn. 2021) ............................................................ 37

*Kentucky Dep't of Corr. v. Thompson*,
   490 U.S. 454 (1989) ........................................................................... 25, 26, 31

*Kramer v. Otter Tail County Bd. of Comm'rs*,
   647 N.W.2d 23 (Minn. Ct. App. 2002) ........................................................... 21

*Luney v. SGS Auto. Servs., Inc.*,
   432 F.3d 866 (8th Cir. 2005) ..................................................................... 10, 15

*Mathews v. Eldridge*,
   424 U.S. 319 .................................................................................................... 30

*McDeid v. Johnston.*,
   984 N.W.2d 864 (Minn. 2023) ................................................................. passim

*McDeid v. Johnston*,
   Nos. A21-0042, A21-0043, 2021 WL 3277218, (Minn. Ct. App. Aug. 2, 2021) ........... 7

*McNeil v. Director, Patuxent Inst.*,
  407 U.S. 245, (1972) ................................................................................... 35

*Mendota Golf, LLP v. City of Mendota Heights*,
  708 N.W.2d 162 (Minn. 2006) ................................................................... 22

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ................................................................................... 30

*N. States Power Co. v. Minnesota Metro. Council*,
  684 N.W.2d 485 (Minn. 2004) ................................................................... 11

*Nationwide Corp. v. Nw. Nat. Life Ins. Co.*,
  87 N.W.2d 671 (Minn. 1958) ..................................................................... 38

*Schmidt v. Des Moines Pub. Schs.*,
  655 F.3d 811 (8th Cir. 2011) ..................................................................... 25

*Slone v. Herman*,
  983 F.2d 107 (8th Cir. 1993) ..................................................................... 35

*Smith v. Questar Capital Corp.*,
  12-cv-2669 (SRN/TNL), 2013 WL 3990319 (D. Minn. Aug. 2, 2013) ........... 11

*Spann v. Minneapolis City Council.*,
  979 N.W.2d 66 (Minn. 2022) ................................................................ 19, 20

*State ex rel. Coduti v. Hauser*,
  17 N.W.2d 504 (Minn. 1945) ..................................................................... 11

*State ex rel. Laurisch v. Pohl*,
  8 N.W.2d 227 (Minn. 1943) ....................................................................... 28

*State ex rel. Traeger v. Carleton*,
  64 N.W.2d 776 (Minn. 1954) ................................................................ 16, 17

*State v. Holloway*,
  916 N.W.2d 338 (Minn. 2018) .............................................................. 25, 33

*Topchian v. JPMorgan Chase Bank, N.A.*,
  760 F.3d 843 (8th Cir. 2014) ................................................................... 9, 29

*Vitek v. Jones*,
    445 U.S. 480 (1980) ...................................................................................... 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................... 35

*Washington v. Craane*,
    No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062 (D. Minn. Apr. 18, 2019) .............. 37

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ...................................................................................... 33

*Winnetka Partners Ltd. P'ship v. Cnty. of Hennepin*,
    538 N.W.2d 912 (Minn. 1995) ....................................................................... 14

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ...................................................................................... 26

**Statutes**

42 U.S.C. § 1983 ................................................................................................. 5

Minn. Stat. § 246B.01, subd. 2a ......................................................................... 2

Minn. Stat. § 246B.02 ....................................................................................... 17

Minn. Stat. § 253B.03, subd. 7 ........................................................................... 2

Minn. Stat. § 253B.10, subd. 1 ......................................................................... 18

Minn. Stat. § 253B.19, subd. 5 ........................................................................... 4

Minn. Stat. § 253D ........................................................................................... 33

Minn. Stat. § 253D.01 ...................................................................................... 17

Minn. Stat. § 253D.27, subd. 1(b) ................................................................. 2, 34

Minn. Stat. § 253D.27, subd. 3—which ............................................................ 32

Minn. Stat. § 253D.27, subd. 4 ........................................................................... 3

Minn. Stat. § 253D.28 ................................................................................. 15, 32

Minn. Stat. § 253D.28, subd. 1(a) ...................................................................... 3

Minn. Stat. § 253D.28, subd. 2(e) ...................................................................... 4

Minn. Stat. § 253D.28, subd. 3 .................................................................. 4, 8, 26

Minn. Stat. § 253D.29, subd. 1 .......................................................................... 3

Minn. Stat. § 586.03 ....................................................................................... 22

Minn. Stat. § 586.04 ....................................................................................... 22

Minn. Stat. § 586.09 ....................................................................................... 38

Minn. Stat. § 645.44, subds. 15–16 .................................................................. 18

Minn. Stat. §§ 246B.01, 246B.03 ..................................................................... 17

Minn. Stat. §§ 253D.04, 253B.22 ....................................................................... 3

Minn. Stat. §§ 586.01–586.03 .......................................................................... 12

U.S. Const. amend. XIV, § 1 ............................................................................ 24

**Other Authorities**

2 Am. Jur. 2d Mandamus § 20 ......................................................................... 14

52 Am. Jur. 2d *Mandamus* § 49 at 374 (1970) ................................................. 21

## I.    INTRODUCTION

Plaintiffs represent purported classes of individuals who have been civilly committed to the Minnesota Sex Offender Program ("MSOP") and who, following a lengthy and arduous petitioning process, each received a court order for transfer from the secure facilities at Moose Lake to the lower-security Community Preparation Services ("CPS") facility in St. Peter. Minnesota statute provides for an automatic fifteen-day stay of enforcement of that transfer to allow Defendants to appeal, which, in the cases of Plaintiffs Rud and Hausfeld, they did not do. Following the automatic fifteen day stay for appeal, Defendants refused to transfer Plaintiff Hausfeld for nine months. As of the date of this filing, nearly 300 days have passed since Defendants received a judicial order for Plaintiff Rud's transfer to CPS, yet he remains at Moose Lake without any information if or when he will be transferred. Defendants attempt to justify their blatant disregard for the constitutional rights of the Plaintiffs and Class members, and the judicial orders requiring them to act, by asserting that they lack sufficient funding. But even assuming this argument is true (which Plaintiffs do not), it is legally worthless. Because Plaintiffs have adequately pleaded all of their claims, the Court should deny the motion to dismiss. However, if the Court dismisses any of Plaintiffs' claims, such dismissal should be without prejudice and Plaintiffs should be given leave to file an amended complaint.

## II.    FACTS AND PROCEDURAL POSTURE

Plaintiffs bring this suit on behalf of two purported classes, the Awaiting Transfer Class, which consists of MSOP patients who have received orders for transfer but who have not been transferred; and the Delayed Transfer Class, MSOP patients who have been

transferred to CPS but whose transfer was delayed. Compl., ECF No. 1-1 ("Compl.") at ¶ 25.

Defendants have exclusive authority over general operational and treatment decisions at MSOP, which has a goal to provide "proper care and treatment best adapted . . . to rendering further supervision unnecessary," and allowing discharge into the community. Minn. Stat. § 253B.03, subd. 7; *accord id.* §§ 246B.01; 246B.03-04; 253D.07, subds 3, 4). Treatment is structured into three phases and patients are typically housed at the high-security facilities at Moose Lake until they complete Phases I and II. *Id.* at ¶ 11. Patients further progress through treatment at the less restrictive, residential environment at CPS, which is outside of the secured perimeter and is statutorily defined as a "reduction in custody." *Id.* at ¶¶ 12–13 (citing Minn. Stat. § 253D.27, subd. 1(b)).

The CPS facilities are "designed to assist civilly committed sex offenders in developing the appropriate skills and resources necessary for an eventual successful reintegration into a community." Minn. Stat. § 246B.01, subd. 2a.

Per MSOP policies, to complete treatment and be eligible for provisional or total discharge from commitment, MSOP patients must complete all three treatment Phases. Phase III consists of, in part, reintegration treatment. This treatment is only offered at CPS. Thus, it is impossible for MSOP patients to receive treatment rendering future supervision unnecessary without transfer to CPS. Compl. at ¶ 14.

MSOP patients may petition for a reduction in custody, which is heard by the Special Review Board ("SRB"). Compl. at ¶ 15 (citing Minn. Stat. §§ 253D.04, 253B.22). The SRB makes recommendations on whether transfer is appropriate and issues a report to

2

the Commitment Appeal Panel ("CAP") recommending approval or denial of the petition. *Id.* (citing Minn. Stat. § 253D.29, subd. 1). The CAP has exclusive authority to authorize reductions in custody. *Id.* (citing Minn. Stat. § 253D.27, subd. 4). An aggrieved party may petition CAP for reconsideration of an SRB recommendation. *Id.* at ¶ 16 (citing Minn. Stat. § 253D.28, subd. 1(a)). If no petition for reconsideration is filed, the CAP must issue an order adopting the SRB recommendations or set the matter for hearing. *Id.* (citing Minn. Stat. § 253D.28, subd. 2(e)). The final decision of the CAP may be appealed to the Minnesota Court of Appeals. *Id.* (citing Minn. Stat. § 253B.19, subd. 5). If a CAP transfer order is not appealed, it becomes effective after 15 days. *Id.* at ¶ 17 (citing Minn. Stat. § 253D.28, subd. 3).

Despite these statutory provisions and CAP orders, Plaintiffs and Class Members who have been approved for transfer to CPS have languished at the high-security Moose Lake facility for months or years waiting for Defendants to effectuate their transfer. Compl. at ¶ 18.

Plaintiff Rud was civilly committed to MSOP on July 2, 2009. *Id.* at ¶ 20. He petitioned for reduction in custody on June 26, 2020. The SRB issued an order recommending his transfer to CPS on July 12, 2021. *Id.* The Commissioner did not petition the CAP for reconsideration of the transfer recommendation, and the CAP adopted the SRB recommendation. *Id.* The Commissioner did not appeal the CAP order to the Minnesota Court of Appeals, and the CAP transfer order was effective as of June 6, 2022. *Id.* He remains at Moose Lake as of the date of this filing. *Id.* at ¶ 21.

Plaintiff Hausfeld was civilly committed to MSOP on March 31, 1999. *Id.* at ¶ 22. He petitioned for reduction in custody and the SRB issued an order recommending his transfer to CPS on April 13, 2021. *Id.* The Commissioner did not petition the CAP for reconsideration of the transfer recommendation, and the CAP adopted the SRB recommendation. *Id.* The Commissioner did not appeal the CAP order to the Minnesota Court of Appeals and the CAP transfer order was effective as of February 9, 2022. *Id.* While Plaintiff Hausfeld awaited transfer to CPS, he was assaulted by another MSOP patient. *Id.* at 23. He was finally transferred to CPS on November 8, 2022, nine months after his order for transfer. *Id.*

On February 1, 2023, the Minnesota Supreme Court issued its opinion in *McDeid v. Johnston*. 984 N.W.2d 864 (Minn. 2023). *McDeid* involved similar lawsuits from two plaintiffs against Defendants under 42 U.S.C. § 1983 for violations of their due process rights stemming from defendants' refusal to effectuate CAP transfer orders after judicial order. *See McDeid v. Johnston*, Case No. 62-CV-19-8232, Dkt. No. 1, Petition for Writ of Mandamus and Complaint (Nov. 20, 2019) at ¶¶ 33–44 (attached as Exhibit 1 to the Declaration of Daniel E. Gustafson in Support of Plaintiffs' Opposition to the Motion to Dismiss ("Gustafson Decl.")); *Garry v. Johnston*, Case No. 62-CV-19-8234, Dkt. No. 1, Petition for Writ of Mandamus and Complaint (Nov. 20, 2019), at ¶¶ 33–44, (attached as Exhibit 2 to Gustafson Decl.). The *McDeid* plaintiffs alleged that they have a protected property and liberty interest in the effectuation of CAP Orders and access to Phase III reintegration treatment, which defendants substantially deprived without due process by refusing to effectuate the CAP transfer orders. Gustafson Decl. Exs. 1–2 at ¶¶ 38–39. On

4

separate motions to dismiss, the district courts in *McDeid* and *Garry* both found that the plaintiffs had adequately alleged deprivation of a protected interest and that the procedures attendant upon that deprivation were not constitutionally sufficient—rejecting defendants' arguments that the plaintiffs do not have a property or liberty interest in the CAP transfer order and that there are other available remedies. *McDeid v. Johnston*, Case No. 62-CV-19-8232, Dkt. No. 35, Order Granting Motion to Dismiss (September 18, 2020) at 8–9 (attached as Exhibit 3 to Gustafson Decl.); *Garry v. Johnston*, Case No. 62-CV-19-8234, Dkt. No. 37, Order Granting in Part and Denying in Part Motion to Dismiss (September 18, 2020) at 13–15 (attached as Exhibit 4 to Gustafson Decl.)

The district courts, however, dismissed McDeid and Garry's complaints, finding that defendants were entitled to qualified immunity because the right to transfer within a reasonable amount of time was not clearly established. Gustafson Decl. Ex. 3 at 13-14; Gustafson Decl. Ex. 4 at 18. The Court of Appeals, on a consolidated appeal, affirmed the district courts' finding of qualified immunity but did not disturb the findings that *McDeid* and *Garry* adequately alleged that they had a protected liberty or property interest in the timely effectuation of a CAP transfer order. *McDeid v. Johnston*, Nos. A21-0042, A21-0043, 2021 WL 3277218, (Minn. Ct. App. Aug. 2, 2021).

The Minnesota Supreme Court reversed the lower courts' finding of qualified immunity and held that "[o]ur precedent and analogous Eighth Circuit cases establish relevant bedrock principles of law concerning the duty of public officials to follow court orders and form a robust consensus of cases of persuasive authority, in combination with the Minnesota statutes governing reductions in custody, that clearly established that

compliance with a CAP transfer order must occur within a reasonable time." *McDeid*, 984 N.W.2d at 879. The Minnesota Supreme Court remanded the case to the court of appeals to determine if Defendants' "clear obligation to transfer the Patients to CPS within a reasonable time following a CAP transfer order" supports a federal due process right. *Id.*

The Minnesota Supreme Court also made several findings that are relevant and important to the instant motion. First, the *McDeid* court determined that the context of Minn. Stat. § 253D.28, subd. 3, "[u]nder the plain terms of the statute," if a CAP order is not appealed, it becomes effective and operational after 15 days following its issuance. *Id.* at 875. Second, while the *McDeid* court recognized that the question of whether the *McDeid* plaintiffs' delay in transfer was "reasonable" was not before the court, it also noted that "what is a 'reasonable time' in any given context involves questions of fact, making claims turning on 'reasonable time' determinations generally inapposite for disposition on a motion to dismiss." *Id.* at 877 n.6. Finally, the *McDeid* court considered and rejected as "startling" Defendants' claim that a party may excuse noncompliance with an explicit, mandatory court order due to inability to comply – here, there purported lack of bed space in CPS. *Id.* at 879 n.8.

Plaintiffs filed this class action lawsuit in Minnesota State Court on February 21, 2023, and it was removed by Defendants on March 1, 2023. ECF No. 1. Plaintiffs filed a Motion for Temporary Restraining Order or Preliminary Injunction on behalf of Plaintiff Rud on March 6, 2023. ECF No. 9. Plaintiffs also filed a Motion for Class Certification on March 8, 2023. ECF No. 15. Defendants filed this Motion to Dismiss on March 8, 2023. ECF No. 21.

On March 17, 2023, the Parties appeared for a hearing on Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction. *See* ECF No. 33. On March 22, 2023, this Court granted Plaintiff's Motion for Preliminary Injunction and ordered Plaintiff Rud to be transferred to CPS within 15 days of the order, or April 6, 2023. ECF No. 35 at 24. On March 24, 2023, Defendants appealed the preliminary injunction and filed a Motion to Stay Proceedings pending appeal. ECF Nos. 38, 45. Plaintiffs responded to that motion on March 26, 2023. ECF No. 48.

## III.  LEGAL STANDARD

On a motion to dismiss, courts must accept the allegations as true and draw all reasonable inferences in plaintiffs' favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). A complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "do[es] not require heightened fact pleading of specifics." *Id.*

Furthermore, a court should construe the complaint liberally in the light most favorable to the plaintiff. *See Luney v. SGS Auto. Servs., Inc.,* 432 F.3d 866, 867 (8th Cir. 2005). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (quoting *Twombly,*550 U.S. at 544). "A motion to dismiss a complaint should not be granted unless it appears beyond doubt that a plaintiff can prove *no set of facts* that would entitle him to relief." *Smith v. Questar Capital Corp.*, No. 12-cv-2669 (SRN/TNL), 2013 WL 3990319, at *2 (D. Minn. Aug. 2, 2013) (emphasis

added).

## IV.    PLAINTIFF RUD'S MANDAMUS CLAIM SHOULD NOT BE DISMISSED.

Mandamus relief requires a petitioner to "show that the defendant: (1) failed to perform an official duty clearly imposed by law; (2) that, as a result, the petitioner suffered a public wrong specifically injurious to the petitioner . . . ; and (3) that there is no other adequate legal remedy." *N. States Power Co. v. Minnesota Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004) (citing *State ex rel. Coduti v. Hauser*, 17 N.W.2d 504, 507 (Minn. 1945)and Minn. Stat. §§ 586.01–586.03). Plaintiffs' Complaint details significant factual and legal grounds to support their claims—well exceeding the minimal pleading standard required to survive a motion to dismiss—and as such Defendants' motion should be denied.

### A.    Defendants Have an Official Duty Clearly Imposed by Law to Transfer Plaintiff Rud.

The Minnesota Supreme Court concluded in *McDeid* that "[our precedent and analogous Eighth Circuit cases establish relevant bedrock principles of law concerning *the duty of public officials to follow court orders* and form a robust consensus . . . that [it is] clearly established that compliance with a CAP transfer order must occur within a reasonable time."984 N.W.2d at 879 (emphasis added). There could be no clearer duty on Defendants, and their contention that the Supreme Court "'accept[ed] as correct' that Defendants 'retained some discretion' to determine when to transfer [MSOP clients with CAP transfer orders] to CPS," does nothing to create an exception to this duty. Defs' Mem., ECF No. 23 at 11.

First, the language in *McDeid* that Defendants contend the Court must "accept as

correct," was posed as part of a hypothetical, not a statement that it is, in fact, correct that Defendants' have discretion on the timing of transfers. *Id.* ("We accept all these points as correct. The State Officials may have 'some discretion' on the timing of the transfer. But that is not the question before us. The question we must address is . . . .").

Second, Defendants selectively omit the relevant footnote from their quoted passage, which reads "[t]he question of whether the years-long delay between the CAP transfer order and the actual date the Patients were transferred was "reasonable" was not addressed below, and we express no opinion on how that question should be resolved. Generally, what is a 'reasonable time' in any given context involves questions of fact, making claims turning on 'reasonable time' determinations *generally inappropriate for disposition on a motion to dismiss*." *Id.* at 879 n.6 (emphasis added). Thus, even if it were relevant to the question of Defendants' duty, resolving the question of what is a reasonable time for transfer is not appropriate for motion to dismiss. *See Hemming v. Ald, Inc.*, 155 N.W.2d 384, 386–87 (Minn. 1967).

### B.    Plaintiffs Have No Obligation to Prove Funding Availability.

Defendants assert that a writ of mandamus "will be denied where it is obvious that it will prove to be futile, unavailing, and ineffective." *See* Defs' Mem., ECF No. 23at 12. (citing *Winnetka Partners Ltd. P'ship v. Cnty. of Hennepin*, 538 N.W.2d 912, 915 (Minn. 1995)). The Defendants go on to cite 2 Am. Jur. 2d Mandamus § 20, which states "Mandamus will not issue if the performance of the requested action is *impossible*, meaning an act which cannot be done, whether for lack of funds or lack of physical or mental power." *Id.* (emphasis added).

Defendants then ignore the standard for a Motion to Dismiss, which requires the Court to construe the complaint liberally in the light most favorable to the Plaintiffs, *Luney*, 432 F.3d at 867, and instead use the language from *Winnetka Partners* and Am. Jur. to claim that Plaintiffs, on a motion to dismiss, are required to prove that Defendants will be able to comply with the writ. Defs' Mem., ECF No. 23 at 12–13..

But what Plaintiffs have alleged is that Minn. Stat. § 253D.28 requires effectuation of CPS transfer orders within a reasonable time. Compl. at ¶¶ 17, 36. There is no exception in the statute for where funds are not available. Furthermore, Defendants did not appeal the CAP Orders claiming they could not comply. *See* Compl. at ¶¶ 20, 22. Indeed, the Minnesota Supreme Court in *McDeid* considered and rejected the exact argument that Defendants are making here—that parties do not have to follow court orders that they cannot perform. *McDeid*, 984 N.W.2d at 876 n.5 ("The logical conclusion of the State Officials' *Youngberg* argument is that they can choose to ignore a CAP transfer order indefinitely (indeed, forever) if the Legislature fails to provide funding. As set forth in this opinion, that is not the law.").

Defendants support their contention with two cases—both of which are readily distinguishable from the instant facts. In *Powell v. Carlos Township*, an alternative writ of mandamus was issued to compel the removal of trees where the defendant township had the *discretionary* power to remove the trees if necessary. 225 N.W. 296, 297 (Minn. 1929). Defendants replied that they had *no* funds available. *Id.* The demurrer was sustained because the appellate court determined that a government entity "cannot be required to proceed if it has no funds." *Id.* In *State ex rel. Traeger v. Carleton*, citizens petitioned for

10

a writ of mandamus to compel construction of a municipal sewage pumping station that had been eliminated from the original build plan. 64 N.W.2d 776 (Minn. 1954). The alternative writ was discharged because the petition did not allege there were sufficient funds, and the requested relief would have been futile because the budget could only build the pumping station or the sewers, not both,. *Id.* at 779.

Thus, in both *Powell* and *Traeger*, mandamus was not successful because it appeared that the municipal entities had *no* money to accomplish the requested relief, and it did not "appear from the writ" that there were funds with which to proceed. This presents no issue in the instant case. The Complaint directly reference the Minnesota Commitment and Treatment Act, Minn. Stat. § 253D.01 *et seq.*, under which Plaintiff Rud and the purported classes are committed. Compl. at ¶ 8. The Complaint details that Defendants have exclusive authority over the general operational and treatment decisions under Minn. Stat. §§ 246B.01, 246B.03-04. Moreover, the Complaint explicitly notes that under Minn. Stat. § 246B.02, the Commissioner of the Department of Human Services ("DHS") "*shall* establish and maintain the Minnesota Sex Offender Program." Compl. at ¶ 10 (citing Minn. Stat. § 246B.02 (emphasis added)). "Shall" and "must" are defined under Minnesota law as mandatory. Minn. Stat. § 645.44, subds. 15–16. The legislature thus created MSOP and the MCTA and has provided appropriations in order for Defendants to operate those programs. *See McDeid*, 984 N.W.2d at 877 n.8 (noting that, while not the question before the court, "the State controls the amount of bed space and allocation of resources to ensure there is sufficient bed space to run the MSOP program . . . .It is certainly within the power of the Legislature to fund sufficient bed space to provide the services and processes that

11

the Legislature itself requires in the statutes"). That is sufficient "appear[ance] from the writ" that there are funds to defeat demurrer and distinguish the instant case from *Powell* and *Traeger*.[1]

Far more relevant and current is *Spann v. Minneapolis City Council*. 979 N.W.2d 66 (Minn. 2022). In *Spann*, a group of citizens filed for mandamus relief to compel the Mayor of Minneapolis and City Council to employ and fund at least .0017 police officers per Minneapolis resident. *Id.* at 69–70. The duty in this case arose from a mandatory statute, stating "The City Council *must* fund a police force of at least 0.0017 employees per resident." *Id.* at 69 (emphasis added). The district court issued the alternative writ of

---

[1] At least two state courts have considered and rejected these arguments made by Defendant Harpstead in the context of Minn. Stat. § 253B.10, subd. 1, which requires the Commissioner to transfer individuals who have been found incompetent to stand trial due to mental illness to a treatment program within 48 hours. *Swope v. Harpstead*, Case No. 70-CV-22-13153, Dkt. No. 109, Findings of Fact, Conclusions of Law, and Order Denying Demurrer, and Peremptory Writ of Mandamus, at 9–14 (Scott County, Feb. 22, 2023) ("Swope Order") (attached as Exhibit 5 to Gustafson Decl.); *Ly v. Harpstead*, Case No. 70-CV-22-13781, Dkt. No. 65, Findings of Fact, Conclusions of Law and Order Denying Demurrer, Ordering a Peremptory Writ of Mandamus, and Judgment for Petitioner, at 12-16 (Scott County, Dec. 21, 2022) ("Ly Order") (attached as Exhibit 6 to Gustafson Decl.). Similar to the instant case, those plaintiffs petitioned for a writ of mandamus based on allegations that Defendant Harpstead refused to transfer them for nearly two months, during which time they were confined in corrections facilities. Defendant Harpstead argued as a defense to the writ of mandamus that plaintiffs failed to plead that DHS had available funding to make "medically-appropriate beds" available to plaintiffs. Both courts distinguished *Powell* and *Traeger* and held that plaintiffs' allegations were sufficient to defeat demurrer. Gustafson Decl., Ex. 5 at 9 ("In both *Traeger* and *Powell,* there were no specific funds to do the thing demanded by the plaintiffs or use of the funds would be futile. The present case does not present such limitations. [DHS] has money allocated to it by the Legislature for the care of those patients civilly committed."); Gustafson Decl., Ex. 6 at 13 ("The Commissioner's argument that Petitioner himself must show that the Commissioner has a bed available for Mr. Ly at one of the facilities controlled by the Commissioner is unpersuasive. The Petition plead that there are currently existing facilities of the type needed by Mr. Ly, and this is sufficient.").

mandamus, finding that the residents "established the essential elements required for the issuance of an alternative writ of mandamus." *Id.* at 71. On appeal, the Minnesota Supreme Court found that there was a clear legal duty to fund the specific number of police officers and that the writ of mandamus was proper where the writ commanded the mayor to fulfill a clear legal duty and did not specifically instruct how to do so while there was a clear allocation of funds. *Id.* That situation is present here, where Plaintiff asks for mandamus compelling Defendants to effectuate their transfer orders in accordance with statute, where there is a clear allocation of funds, and where Plaintiff does not specify how it wants Defendants to exercise their duty. Accordingly, Plaintiffs' petition for a writ of mandamus should not be dismissed.

### C.    The Availability of Civil Contempt Does Not Defeat Mandamus.

Defendants suggest that Plaintiffs cannot obtain relief through a writ of mandamus because they have an adequate legal remedy through civil contempt. Notably absent, however, is any authority stating that civil contempt is an adequate substitute for a petition for writ of mandamus.

Moreover, other courts have considered this argument regarding the same operative facts and concluded that the availability of civil contempt proceedings does not prevent a party from seeking mandamus. *See* Gustafson Decl., Ex. 3 at 10 ("It seems absurd to allow a litigant, who fails to take advantage of an appeal to challenge a court order that aggrieved it, to ignore or slow-walk implementing the court order for more than two years, in order to force the beneficiary of the court order to bring a contempt proceeding against it.").

Additionally, Defendants provide no reason to believe that a contempt proceeding is "equally as convenient, complete, beneficial, and effective as would be mandamus, and be sufficiently speedy to prevent material injury." *Kramer v. Otter Tail County Bd. of Comm'rs*, 647 N.W.2d 23, 26–27 (Minn. Ct. App. 2002) (rejecting defendant's argument that a writ of certiorari to the appellate court was a "plain, speedy, and adequate remedy in the ordinary course of law" because a writ of certiorari would require plaintiff to provide a complete record and is "more expensive, more time-consuming, and more complicated than a petition to the district court for a writ of mandamus" (quoting 52 Am. Jur. 2d *Mandamus* § 49 at 374 (1970))).

Here, bringing individual contempt motions for each putative class member in order to exercise their civil and statutory rights would not only be far less efficient, it would also risk producing different standards of conduct for the parties. Moreover, Plaintiffs in this case seek to vindicate their procedural and substantive due process rights through injunctive and declaratory relief, as well as recover damages. One comprehensive lawsuit to bring all of these claims is certainly a more complete, speedy, and adequate vehicle than bringing each claim piecemeal. Therefore, Defendants' motion to dismiss Plaintiff's writ of mandamus claim should be denied.

### D. Plaintiffs Are Entitled to a Peremptory Writ of Mandamus.

An alternative writ of mandamus permits a defendant to answer the petition and show cause for not complying with the writ, while a peremptory writ does not. *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 171 n.5 (Minn. 2006) (citing Minn. Stat. § 586.03). Peremptory writs may be allowed in the first instance only when the right

14

to require performance of the act is clear and no valid excuse for nonperformance can be given. *Id.* (citing Minn. Stat. § 586.04.). Defendants' final argument on Plaintiffs' writ of mandamus is that, essentially, a peremptory writ is too severe. Defs' Mem., ECF No. 23 at 14–16. However, the challenged conduct here is squarely "upon a state of unquestionable facts, leaving no room for doubt as to the right to the performance of the act sought to be compelled" and "it is apparent and manifest that no valid excuse can be given for non performance," which justifies a peremptory writ. *Home Ins. Co. v. Scheffer*, 12 Minn. 382, 384 (1967).

First, as this Court has noted in its Order Granting Preliminary Injunction, "Defendants' affidavits support the assertions set forth in Plaintiffs' complaint," and "[t]he parties appear to agree upon the underlying facts." ECF No. 35 at 10 ("Injunction Order"). Indeed, Defendants' brief is nearly devoid of factual disputes. Specifically on the issues that are relevant to Plaintiff's petition for mandamus, the facts are unquestionable: Plaintiff Rud received a valid CAP transfer order on June 6, 2022; he has not been transferred to the less-secure CPS facility, and he remains at the high-security Moose Lake facility nearly 300 days after the automatic fifteen-day stay expired.

Second, there is no room for doubt as to the right to the performance of the act sought to be compelled. *Home Ins. Co.*, 12 Minn. at 385. Setting aside the issue of qualified immunity, which the Minnesota Supreme Court resolved in *McDeid*, even prior to that, Defendants were on notice of their clear duty to timely effectuate CPS transfer orders. *See In the Matter of the Civil Commitment of Steven Loren Edwards,* Dakota County File No. 19HA-PR-10-32; Appeal Panel File No. AP21-9015 (Dakota County, Oct. 31, 2022)

15

("*Edwards*") (attached as Exhibit 7 to Gustafson Decl.) (finding prima facie evidence of Defendant Johnston's contempt of court where "[t]he Commissioner was aware of the obligation to transfer Mr. Edwards to CPS within a reasonable time," but failed to do so for nearly a year); *In the Matter of the Civil Commitment of Al Stone Folson*, County File No. 62-MN-PR-06-267; Appeal Panel File No. AP19-9153 (Ramsey County, Dec. 2, 2021) ("*Folson*") (attached as Exhibit 8 to Gustafson Decl.). And, of course, *McDeid* held in no uncertain terms that it is "clearly established that compliance with a CAP transfer order must occur within a reasonable time." 984 N.W.2d at 879.

Finally, it is "apparent and manifest that no valid excuse can be given for non compliance." *Home Ins. Co.*, 12 Minn. at 385. Defendants have advanced every argument under the sun to try to excuse their conduct and have submitted declarations in support of their opposition to Plaintiff's Motion for Preliminary Injunction that they lack sufficient funds and that allows them to ignore judicial orders. *See* Hébert Decl., ECF No. 31; Johnston Decl., ECF No. 29. First, because those declarations are not before the Court on this motion to dismiss and should not be considered on the motion to dismiss, those "contentions" are irrelevant. *Armstrong v. City of Minneapolis*, 525 F. Supp. 3d 954, 961 (D. Minn. 2021) ("Matters outside the pleadings include any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings, as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings." (quotation omitted)). But, even if the Court were to consider those contentions, they give rise to a factual dispute, making a motion to dismiss inappropriate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Evergreen*

*Partnering Grp. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. 2013) (at the pleading stage, courts cannot weigh "competing inferences" or "credit a defendant's counterallegations"). An alternative writ of mandamus that gives Defendants the opportunity to appear and show cause for noncompliance would be redundant—the Court is aware of the relevant evidence and will inevitably determine whether it accepts Defendants' legal theory or not. For those reasons, the Court should deny Defendants' motion to dismiss and issue a peremptory writ of mandamus.

## V.     THE COURT SHOULD NOT DISMISS PLAINTIFFS' DUE PROCESS CLAIMS

The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without the due process of law." U.S. Const. amend. XIV, § 1. The Due Process protections guaranteed by the Minnesota Constitution are coextensive with those guaranteed by the United States Constitution. *State v. Holloway*, 916 N.W.2d 338, 344 (Minn. 2018). Because Plaintiffs have adequately pleaded both procedural and substantive due process violations, the Court should deny Defendants' motion to dismiss on these claims.

### A.     Plaintiffs' Procedural Due Process Claims Are Well-Pleaded.

#### i.     Plaintiffs identify a clear liberty or property interest in transfer to CPS.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake." *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011) (quotation omitted). "Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Id.*

Protected liberty interests may arise from two sources—the Due Process Clause itself and the laws of the States. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Plaintiffs allege that they had a liberty interest in being transferred to a less-restrictive environment after receiving a judicial order for transfer. Compl. at ¶ 46. In *McDeid*, the Minnesota Supreme Court unequivocally announced that Plaintiffs have a right under Minnesota law to be transferred within a reasonable time. 984 N.W.2d at 879. This Court agreed, and found that "[t]he record before the Court indicates that the Defendants deprived Rud of that right by delaying his transfer for nine months, without providing him with meaningful procedures to protect that right and enforce his transfer." Injunction Order at 17–18. Defendants strenuously assert that "not every violation of state law or state-mandated procedures is a violation of the Constitution." Defs.' Mem., ECF No. 23 at 17. However, Defendants shield their gaze from the wealth of cases finding that state law may create liberty interests in the prison setting. *E.g.*, *Thompson*, 490 U.S. at 460; *Board of Pardons v. Allen*, 482 U.S. 369 (1987) (finding that certain state regulations granted inmates a protected interest in parole); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979) (same); *Wolff v. McDonnell*, 418 U.S. 539 (1974) (state laws created a protected interest in good-time credits); *Vitek v. Jones*, 445 U.S. 480, at 487–94 (1980) (state laws created protected interest in freedom from involuntary transfer to a mental hospital). Plaintiffs' interest in the timely effectuation of their judicial transfer orders is precisely of the kind to which courts have found constitutional dimensions. Indeed, this Court agreed: "procedural due process cases a wider net. The Supreme Court has explained that protected liberty interests may arise under "the laws of the States" – as is the case

18

here." Injunction Order at 17 (quoting *Thompson*, 490 U.S. at 460).

Defendants make much of the purported requirement that state laws and regulations use "explicit mandatory language" in order to create a federal constitutional dimension. Defs.' Mem., ECF No. 23at 17–18. But their arguments are meritless. It is true that "the use of explicitly mandatory language, in connection with the establishment of specified substantive predicates to limit discretion, forces a conclusion that the State has created a liberty interest." *Thompson*, 490 U.S. at 463 (internal quotations omitted). While not explicitly holding so, the reasoning of the Minnesota Supreme Court in *McDeid* matches exactly with what the United States Supreme Court described as "forcing a conclusion that the State has created a liberty interest." Specifically, *McDeid* concluded that Minn. Stat. § 253D.28, subd. 3 used explicitly mandatory language—"[n]o order . . . *shall* be made effective sooner than 15 days after it is issued." *McDeid*, 984 N.W.2d at 875. Additionally, the *McDeid* court reasoned that the plain meaning of the word "effective" was "something that follows immediately from an antecedent" or "a resultant condition." *Id.* In other words, the effect would occur upon the satisfaction of some predicate condition. *McDeid* found such specified substantive predicates in the statute—"[n]o reduction in custody . . . is effective until it has been reviewed by the [CAP] and until 15 after and order . . . ." *Id.* The Minnesota Supreme Court's summary of their statutory interpretation directly reflects the form of state statutes that the United States Supreme Court has found create protected liberty interests under the due process clause. *Compare id.* ("Thus, after the issuance of the CAP transfer order and the passing of the 15-day waiting period (assuming no appeal is taken . . . ), the transfer becomes mandatory.") *with Board of Pardons*, 482 U.S. at 375–82

19

(holding that the following state statute created a protected liberty interests under the due process clause: "Prisoners eligible for parole. (1) Subject to the following restrictions, the board *shall* release on parole . . . any person confined in the Montana state prison or the women's correction center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community."). !

The remainder of Defendants' argument on this point reflects their misunderstanding of *McDeid* and the Complaint. Defendants first erroneously state that "Plaintiffs believe that Minnesota statutes require transfer to CPS on a transfer order's effective date." Defs.' Mem., ECF No. 23at 16–17. Nowhere in the Complaint or the contemporaneously filed motions do Plaintiffs make that argument. *See* Compl. at ¶ 46 ("Plaintiffs and Class Members had a protected liberty interest in being transferred to a less-restrictive environment *after receiving a judicial order for transfer.*" (emphasis added)). As the Minnesota Supreme Court has held and as was reiterated in *McDeid*, "[i]t is a well recognized rule that when a public officer is called upon to perform a public duty by statute and no time is specified for the performance of the act, it is required that the act be performed within a reasonable time." *McDeid*, 984 N.W.2d at 877 (quoting *State ex rel. Laurisch v. Pohl*, 8 N.W.2d 227, 229 (Minn. 1943)). Thus, *McDeid* held that transfer was mandatory as a matter of statute and that mandatory language is, as a matter of settled case law, interpreted to demand that the action be performed within a reasonable time. *Id.* at 877–78. Defendants' suggestion that Plaintiffs' procedural due process claims fail because the statute does not include explicit mandatory language stating the length of time they have to effectuate transfers is accordingly without merit.

Additionally, Plaintiffs' claim under Count III should not be dismissed because Plaintiffs have alleged that the failure to transfer the Plaintiffs and Class Members to CPS results in a delay in receiving the treatment and reintegration necessary for their ultimate discharge. Compl. at ¶ 59. Plaintiffs also allege in their Complaint that "[p]er MSOP policies, to complete treatment and be eligible for provisional or total discharge from commitment, MSOP patients must complete all three treatment Phases. Phase III consists of, in part, reintegration treatment. This treatment is only offered at CPS. Thus, it is impossible for MSOP patients to receive treatment rendering future supervision unnecessary without transfer to CPS." Compl. at ¶14.

Defendants assert that "Plaintiffs' statement that 'discharge from commitment . . . is conditioned upon completion of reintegration treatment' . . . is simply not true as a matter of law" because "the law governing discharge does not require completion of 'reintegration treatment' or of MSOP's treatment program." Defs.' Mem., ECF No. 23 at 18 (internal citations omitted). But Plaintiffs' allegations stem from the fact that Defendants do not follow the statute and required that Plaintiffs and Class Members complete the treatment program (including reintegration). As Defendants acknowledge in their brief "such a discharge precondition would be blatantly unconstitutional, as civilly committed individuals are entitled to discharge when the mental condition underlying their commitment remediates *or* their dangerousness sufficiently lessens—by whatever means." *Id.* at 18–19 (citing *Call*, 535 N.W.2d at 319 and *Jones v. United States*, 463 U.S. 354, 370 (1983) ("the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no

21

longer a danger to himself or society.")). Again, applying the standard for the motion to dismiss and taking Plaintiffs' allegations as true, drawing all reasonable inferences in Plaintiffs' favor, Count III should not be dismissed. *Topchian*, 760 F.3d at 848.

### ii.   Plaintiffs allege a procedural deprivation.

Defendants' arguments relating to their assertion that Plaintiffs do not allege a procedural deprivation is just a rehash of the arguments that this Court has already considered and rejected. *See* Injunction Order at 13–18. Specifically, Defendants contend that Plaintiffs have failed to identify any processes they believe would alleviate the harm in their delayed transfer. Defs.' Mem., ECF No. 23 at 20. But Plaintiffs are not required to do Defendants' homework for them.[2] As Defendants themselves state, "procedural due process is only meant to protect a person from the denial of procedures allowing him to contest the basis on which he has been deprived of a protected interest." *Id.* at 19. The Supreme Court has held that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The opportunity to be heard must be coupled with "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339

---

[2] To the extent Defendants suggest that a civil contempt proceeding is adequate to satisfy procedure due process, it is not, because it does not offer the range of remedies that could be available in a litigation such as this. At best, it would direct the Defendants to comply with the already issued Order but here the Court can order the Defendants to provide a range of possible procedural due process to satisfy their constitutional obligation.

U.S. 306 (1950). The requirements of notice and an opportunity to be heard are necessarily intertwined and dependent upon one another: "Adequate notice is integral to the due process right to a fair hearing, for the 'right to be heard has little reality or worth unless one is informed.'" *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997) (quoting *Mullane*, 339 U.S. at 314). !

As is pleaded in the Complaint and discussed in briefs on other issues, Plaintiffs had a protected right to be transferred pursuant to the valid state court's transfer order. Compl. at ¶¶ 46–50. Defendants deprived them of that interest without any procedural process of any kind. *Id.* at ¶¶ 46–50; 57–62. The Defendants did not provide Plaintiffs with notice that they were not going to comply with the transfer order nor give them any opportunity to object. Defendants did not appeal the CAP orders, which might have provided Plaintiffs with a chance to respond. Compl. at ¶¶ 20, 22. They simply did not act. This certainly satisfies the standard for a motion to dismiss.

Additionally, the Minnesota Supreme Court has held that "once a person is committed, his or her due process rights are protected through procedural safeguards that include…the opportunity to petition for transfer to an open hospital." *Call*, 535 N.W.2d at 318 (citing *In re Blodgett*, 510 N.W.2d 910, 916 (Minn. 1994)). But when that opportunity to petition for transfer is merely window-dressing—that is, when there is not a realistic chance to actually be transferred after judicial order—there exist no procedural safeguards to protect MSOP patients' due process rights. That is precisely the kind of procedural deprivation that rises to the level of constitutional concern.

Defendants let *Bagley v. Rogerson* 5 F.3d 325, 328 (8th Cir. 1993) do a lot of their heavy-lifting, suggesting that "procedural due process would only protect the determination of whether an MSOP client meets the 'predicate facts' – here, whether the MSOP client is in fact entitled to transfer to CPS." Defs.' Mem., ECF No. 23at 21. First, *Bagley* reiterates the standard in *Kentucky Department of Correction,* as discussed *supra*: "There is a body of law, to be sure, holding that state law may create a "liberty interest" protected by the Fourteenth Amendment. If, for example, a state statute gives "specific directives to the decision maker that if the [statute's] substantive predicates are present, a particular outcome must follow," a "liberty interest" protected by the Fourteenth Amendment is created. *Bagley*, 5 F.3d at 328 (quoting *Kentucky Dep't. of Corr's.*, 490 U.S. at 463)). As noted in Section II.A.i., the statute at issue here, Minn. Stat. § 253D.28, creates such a liberty interest as described by *Kentucky Dep't. of Corr's.*

Second, Defendants are mistaken in their attempt to analogize *Bagley* with the instant facts. *Bagley* states that "[i]f a state law gives me the right to a certain outcome in the event of a certain occurrence of certain facts, I have a right, by virtue of the Fourteenth Amendment, to whatever process is due in connection with the determination of whether those facts exist." 5 F.3d at 328. Defendants are not wrong that procedural due process protects the process by which Plaintiffs petition the SRB and CAP board for transfer. That is, Plaintiffs are entitled to a determination of whether predicate facts exist—whether Plaintiffs have satisfied the five statutory factors in Minn. Stat. § 253D.27, subd. 3—which would compel a certain outcome—the issuance of a CAP transfer order. But that is not the process that Plaintiffs complain of. Rather, Plaintiffs' procedural due process claim here

arises when they have a state right to be transferred after receiving a CAP transfer order and they are not transferred, and they are not given any right to some process when Defendants simply refuse to transfer them. It is not Plaintiffs' burden to brainstorm a list of procedures that would have satisfied due process prior to Defendants depriving Plaintiffs of their protected liberty interest in transfer after judicial order. It is sufficient that Defendants simply provided none.

Finally, Defendants cite to a previous complaint filed *pro se* by Ricky McDeid, where Judge Brisbois found that plaintiff had not alleged a procedural due process claim. Defs.' Mem., ECF No. 23 at 20–21. A mere glance at the complaint shows why that holding is not strong authority. Complaint, *McDeid v. Johnston*, No. 18-cv-1350 (SRN/LIB), ECF No. 1 (D. Minn. May 16, 2018) (attached as Exhibit 9 to Gustafson Decl.). The Complaint totals nine pages, including two cover pages, and devotes all of three sentences to the alleged due process claim. *See id.* at 4. The Complaint does not allege that the Minn. Stat. § 253D creates a protected liberty interest that was deprived without process. *Id.* Moreover, this complaint was filed and dismissed before the *McDeid* Minnesota Supreme Court decision was issued. Thus, the case is at best weak authority; at worst, invalid as a matter of law.

In sum, Plaintiffs have sufficiently alleged their procedural due process claims and Defendants' motion to dismiss these counts should be denied.

## B.   Plaintiffs' Substantive Due Process Claim is Well-Pled.

"To establish a substantive due process violation, [the plaintiff] must demonstrate that a fundamental right was violated and that [the defendant's] conduct shocks the

conscience*." Folkers v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013). A right is fundamental if it is, objectively, "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The due process protections provided under the Minnesota constitution are "identical to the due process guaranteed under the Constitution of the United States." *Holloway*, 916 N.W.2d at 344 (internal quotation omitted).

### i.    Plaintiff's claims are distinct from those in Karsjens.

Defendants spill much ink asserting (here and in previous pleadings) that Plaintiffs are repeating the claims in *Karsjens v. Harpstead*, 11-cv-03659 (DWF/TNL) and its progeny. *See e.g.*, Defs.' Mem., ECF No. 23at 6–8, 23–24. But Plaintiffs' instant claims are distinct. Plaintiffs substantive due process claim states "[a]s previously alleged, Plaintiffs and Class Members had a liberty interest in the effectuation of the CAP transfer orders which will provide them access to treatment required for phase progression and are otherwise statutorily required." Compl. at ¶ 68.

Contrary to Defendants' assertions, Plaintiffs are not arguing that they have a liberty interest in transfer to CPS because they have a constitutional right to live in a less-restrictive setting. Plaintiffs are arguing that they have a liberty interest in being transferred to CPS because they have a right to transfer after receiving a valid and not-appealed Minnesota court order. *See Id.* Plaintiffs' reference to "less restrictive facilities" reflects the fact that transfer to CPS is defined in statute as a "reduction in custody." *Id.* at ¶ 13 (citing Minn. Stat. § 253D.27, subd. 1(b)).

ii.    **Plaintiffs allege a fundamental right to state officials following the law.**

Plaintiffs do not argue that they have a substantive due process derived from the fundamental right to reside in a less-restrictive facility or to receive effective treatment.[3] Rather, Plaintiffs assert that "Plaintiffs and Class Members had a liberty interest in the effectuation of the CAP transfer orders which provide them access to treatment required for phase progression and are otherwise statutorily required." Compl. at ¶ 68.

The Supreme Court has held that in order for a person to have a clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Eighth Circuit, citing the Supreme Court has also held that any continued detention after a final non-appealable order for release is an unlawful deprivation of a person's liberty, which is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment. *See Slone v. Herman*, 983 F.2d 107, 109–100 (8th Cir. 1993) (citing *McNeil v. Director, Patuxent Inst.*, 407 U.S. 245, (1972); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied,* 478 U.S. 1020 (1986)). The Eighth Circuit has also found in the context of an order to transfer an inmate from a more

---

[3] As an initial note, Defendants argue that Plaintiffs' inclusion of the common question of law relating to their Class Claims is somehow a concession that Plaintiffs do not believe the existence of a fundamental right is disingenuous. As Defendants are certainly aware, common questions of law and fact are questions for which "determination of [] truth or falsity will resole an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011). They are not, as Defendants suggest, questions that plaintiffs concede are unsettled.

secured facility to the general population, that "regulations containing language of a mandatory nature (shall, will, must) . . . are interpreted as created a protectible liberty interest. *Hall v. Lombardi*, 996 F.2d 954, 958–959 (8th Cir. 1993) (citations omitted). The Hall court went on to find that "Any reasonable official would understand that once Hall obtained final approval for release, he had a legitimate expectation of being released in a reasonable amount of time, and that failing to meet that expectation for such a long time violated Hall's rights." Id. at 959.

In the present case, the Plaintiffs and the Class Members each received orders that they be moved to CPS. The Defendants did not appeal those orders. As such, those orders became final and non-appealable. The language of those orders is clear that the Plaintiffs and the Class members must be transferred to CPS. That created a "legitimate expectation of being transferred", and "the failing to meet those expectations for such a long time" violated protectible liberty interests of Plaintiffs and the Class Members.

As such, Defendants violate this fundamental right when they refuse to comply with those court orders by failing to transfer Plaintiffs.

### iii.    Plaintiffs sufficiently plead "truly irrational" behavior.

A violation of a state statute will implicate substantive due process rights when the government's actions are "truly irrational." *Chesterfield Dev. Corp.*, 963 F.2d 1102, 1105 (8th Cir. 1992). Here, the Defendants—state actors—are purposely ignoring court orders. They do not appeal the court orders, which they have a right to do. They do not go back to the court and ask for more time. They do not provide notice to the Plaintiffs telling them that they are not going to abide by the orders to transfer them. They just ignore the court

orders.

Defendants have not disputed in this brief or any previous filings that they have ignored and continue to ignore a valid court order for Plaintiff Rud's transfer nearly 300 days after it became effective. Defendant Johnston herself admits that based on Defendants' conduct, there are presently 16 patients with valid and not appealed court orders directing transfer to CPS which are being ignored and that under current conditions, transfer will occur at a rate of one every 24 days. Johnston Decl., ECF. No. 29 at ¶¶ 6, 29 . Not accounting for how long they already have been on the waitlist to-date, the 16th patient on the waitlist will not be transferred for over 380 more days. Actions leading to this result cannot be construed as anything except truly irrational.

## VI.    DISMISSAL WITH PREJUDICE IS IMPROPER IN ANY EVENT

For the aforementioned reasons, Defendants' motion should be denied. If the Court grants any part of the motion, however, it should be without prejudice and with leave to amend. Defendants request dismissal with prejudice, but do not offer any justification for this result. "[C]ourts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal." *Judah v. Ovsak*, 550 F. Supp. 3d 687, 709 (D. Minn. 2021). When a plaintiff's claims "might conceivably be repleaded with success," particularly where discovery might reveal yet-unknown facts relevant to a dismissed claim, dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). Here, Defendants have alleged deficiencies they contend mandate dismissal under rule 12(b)(6), but have not argued that there are no

set of facts which exist upon which Plaintiff could rely on for an amended pleading to prevail. Accordingly, dismissal with prejudice is not warranted.

On a peremptory writ, Plaintiff is entitled to damages. Minn. Stat. § 586.09 ("Under our statute, damages are recoverable as a matter of right upon the issuance of a peremptory writ of mandamus."); *Nationwide Corp. v. Nw. Nat. Life Ins. Co.*, 87 N.W.2d 671, 686 (Minn. 1958). Should the Court grant Defendants' motion with regard to mandamus, Plaintiffs seek leave to amend the complaint to add a claim for damages against Defendants in their individual capacities.

## VII.   CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants Motion to Dismiss in its entirety. If the Court does grant Defendants' motion, Plaintiffs ask leave to file an amended complaint be granted.

Dated: March 29, 2023

*/s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
David A. Goodwin (#386715)
Anthony J. Stauber (#401093)
Joseph E. Nelson (#402378)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-333-8844
Fax: 612-339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com
jnelson@gustafsongluek.com

***Attorneys for Plaintiffs and the Proposed Classes***