## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JAMES JOHN RUD and BRIAN KEITH HAUSFELD, *on behalf of themselves and all others similarly situated*, | Civil No. 23-0486 (JRT/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STAY ORDER PENDING APPEAL** |
| NANCY JOHNSTON, *Executive Director, Minnesota Sex Offender Program, in official capacity*, and JODI HARPSTEAD, *Department of Human Services Commissioner, in official capacity*, | |
| Defendants. | |

---

Anthony Stauber, Daniel E. Gustafson, David A. Goodwin, and Joseph Nelson, **GUSTAFSON GLUEK PLLC,** 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for Plaintiffs.

Aaron Winter, Emily Beth Anderson, and Gabriel Richard Ulman, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1400, Saint Paul, MN 55101, for Defendants.

Plaintiff James John Rud represents a class of individuals civilly committed to the Minnesota Sex Offender Program ("MSOP") who were approved for transfer to the lower-security Community Preparation Services ("CPS") facility, but who have not yet been transferred due to bed and staffing shortages at CPS. The Court granted Rud's request for a preliminary injunction, finding that he was likely to succeed on his procedural due process claim and that he satisfied the other requirements for preliminary injunctive

relief.  As such, the Court mandated Rud be transferred to CPS.  Defendants appealed the Court's preliminary injunction order to the Eighth Circuit and ask the Court to stay the preliminary injunction order pending the appeal.  Because Defendants are unlikely to succeed on appeal and the balance of harms and public interest do not weigh in their favor, the Court will deny the motion to stay.

**BACKGROUND**

The Court recently detailed the Minnesota Sex Offender Program ("MSOP") and its various facilities in its preliminary injunction order.  *See Rud v. Johnston*, No. 23-0486, 2023 WL 2600206, at *1–3 (D. Minn. Mar. 22, 2023).  Therefore, the Court will provide only an abbreviated background here.

Individuals are committed to the MSOP for an indeterminable period under Minn. Stat. § 253D.07, subds. 3, 4.  *Id.* at *1.  MSOP patients must complete three phases of treatment to be eligible for discharge from the program.  *Id.*  Phase III is only available at a secured facility in St. Peter and the Community Preparation Services ("CPS") facility.  *Id.* at *2.  Unlike the other MSOP facilities, CPS is a less restrictive, residential environment that lacks a secure perimeter.  *Id.*  Transfer to CPS is statutorily designated as a "reduction in custody," which may only be obtained via a transfer order from the Commitment Appeal Panel ("CAP").  *Id.* at *3.

As the Minnesota Supreme Court recently determined in *McDeid v. Johnston*, 984 N.W.2d 864 (Minn. 2023), once the CAP orders a patient be transferred to CPS, that individual has a right to be transferred within a "reasonable time."  *Id.* at *7.  But as of

March 13, 2023, there are sixteen MSOP patients with active transfer orders on the CPS waitlist because CPS allegedly has a bed and staffing shortage. *Id.* at *3. Patients often wait months or years to be transferred to CPS.

Plaintiff John James Rud is civilly committed to the MSOP. *Id.* The CAP approved his transfer to CPS, and his transfer order was effective June 6, 2022. *Id.* To date, Rud has not been transferred to CPS. *Id.* Accordingly, Rud brought this action on behalf of himself and other MSOP patients who have received transfer orders but have not yet been transferred to less restrictive facilities.[1] *Id.*

Rud filed a motion for temporary restraining order or preliminary injunction on March 6, 2023, asking the Court to compel Defendants to effectuate his CAP transfer order. (Mot. TRO or Preliminary Injunction, Mar. 6, 2023, Docket No. 9.) The Court found that Rud was likely to succeed on his procedural due process claim because he had a right to be transferred to CPS within a reasonable time, and Defendants deprived him of that right without meaningful procedure. *Rud*, 2023 WL 2600206, at *6–7. After considering the threat of irreparable harm, balancing that harm and the possible harm of injunctive relief, and weighing the public interests, the Court granted Rud a preliminary injunction.

---

[1] Plaintiff Brian Keith Hausfeld is also named in this action. While Rud represents a class of individuals awaiting transfer, Hausfeld represents a class of individuals who have been transferred to less restrictive facilities, but whose transfer was substantially delayed. *Rud*, 2023 WL 2600206, at *3. Because this present motion only concerns Rud, Hausfeld will not be addressed.

*Id.* at *10.  The Court ordered Defendants to transfer Rud to CPS pursuant to his CAP transfer order within fifteen days.  *Id.*

Defendants have now appealed the Court's preliminary injunction order to the Eighth Circuit and ask the Court to stay the injunction pending appeal.  (Notice of Appeal, Mar. 24, 2023, Docket No. 38; Mot. Stay Order, Mar. 24, 2023, Docket No. 39.) Defendants argue that the Court erred in issuing the preliminary injunction because Rud's due process claim was improperly framed as a procedural issue, because Rud could have challenged the MSOP's actions through a "contempt" proceeding, and because Rud failed to show he would be irreparably harmed by a delay in his transfer.  (*See generally* Mem. Supp. Mot. Stay, Mar. 24, 2023, Docket No. 45.)  Defendants also assert that not staying the injunction will irreparably injure Defendants and that the public interest favors a stay. (*Id.*)  Rud opposes Defendants' motion.  (Mem. Opp. Defs.' Mot. Stay, Mar. 27, 2023, Docket No. 48.)

## DISCUSSION

The Federal Rules of Civil Procedure provide that a court may suspend an injunction pending appeal.  Fed. R. Civ. P. 62(d).  The factors a court considers in contemplating a stay pending appeal mirror those factors contemplated in issuing a preliminary injunction.  The Court balances: (1) the likelihood that the stay applicant will succeed on the merits of its appeal; (2) whether the denial of a stay will irreparably harm the moving party; (3) whether issuance of a stay will substantially injure the non-moving party; and (4) the public interest.  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  The first

two factors—success on the merits and irreparable harm—are the "most critical." *Nken*

*v. Holder*, 556 U.S. 418, 434 (2009). "A stay is an intrusion into the ordinary processes of

administrative and judicial review . . . and accordingly is not a matter or right, even if

irreparable injury might otherwise result." *Id.* at 427 (citations omitted). "The party

requesting a stay bears the burden of showing that the circumstances justify an exercise

of that discretion." *Id.* at 433–34.

Here, Defendants filed a motion to reconsider thinly disguised as a motion to stay.

They argue that they are likely to succeed on appeal but fail to advance any arguments

that disturb the Court's prior analysis. In fact, many of the same arguments were

previously raised and rejected by the Court in its preliminary injunction order. *See Rud*,

2023 WL 2600206, at *7. The Court reiterates that Rud adequately alleged a procedural

due process violation: that Defendants deprived him of his right to be transferred to CPS

within a reasonable time without any procedure. *Id.* That analysis need not be reiterated

again here.

The Court is unpersuaded that Rud's ability to initiate a contempt proceeding

constitutes adequate due process. The Supreme Court has explained that "the 'right to

be heard **before** being condemned to suffer grievous loss of any kind, even though it may

not involve the stigma and hardships of a criminal conviction, is a principle basic to our

society.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (emphasis added) (quoting *Joint

Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)). For

many protected liberty and property interests, some form of hearing is usually required before deprivation of that interest.  *Id.*  But Defendants did not provide **any** procedure before delaying Rud's transfer from the secured MSOP facility.  Requiring Rud to bring an onerous contempt proceeding to enforce his transfer—which the Minnesota Supreme Court has definitively held he is entitled to within a reasonable time—is not the "meaningful time and meaningful manner" in which Rud must be heard.  *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  And any contempt proceeding initiated by Rud would necessarily be **after** Defendants failed to transfer him in a reasonable time, while due process requires procedure **before** the deprivation of protected interests.  *See id.*

Defendants also contend that Rud has provided no evidence that he will suffer irreparable harm absent an injunction.  "It is well established that irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Grasso Enterprises, LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (citation omitted).  The Supreme Court has characterized civil commitment as a "significant deprivation of liberty."  *Addington v. Texas*, 441 U.S. 418, 425 (1979).  The time Rud spends awaiting transfer to CPS—and how that wait might delay his eventual discharge from the MSOP—is indeterminable and cannot be fully compensated through an award of damages.  Irreparable harm is self-evident.

Because the Court concludes that Rud is likely to succeed on his procedural due process claim, and the other elements for preliminary injunction are satisfied, Defendants are unlikely to succeed on the merits of their appeal. Moreover, the Court has already considered the harm to Defendants and the public interest. *See Rud*, 2023 WL 2600206, at *8–9. While there indeed are other patients awaiting transfer to CPS, this preliminary injunction explicitly only applies to Rud. Defendants have acknowledged that there are 145 beds at CPS, but they have **filled only 130 of them** so that they can maintain an 8:1 patient to staff ratio. *Id.* at *2. Increasing the CPS population from 130 to 131 will only marginally disrupt that ratio. Given that the preliminary injunction only applies to Rud, the Court finds the harm to Defendants to be minimal.

Further, while Defendants are correct that they have discretion to run the MSOP according to its statutory directive, Defendants do not have the discretion to ignore CAP transfer orders. (*See* Mem. Supp. Mot. Stay at 19.) *McDeid*, 984 N.W.2d at 877. It is in the public interest to ensure that Defendants comply with the state statutes governing their responsibilities. Though Defendants "may have 'some discretion' on the timing of the transfer," *McDeid*, 984 N.W.2d at 877, it is not reasonable for MSOP patients to wait months or years to be transferred. Defendants are unlikely to succeed on the merits of their appeal and the balance of equities and public interest weigh in favor of the preliminary injunction. Accordingly, the Court will deny Defendants' motion to stay the injunction pending appeal.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendants' Motion to Stay Order Pending Appeal [Docket No.

39] is **DENIED**.


DATED: April 3, 2023
at Minneapolis, Minnesota.                        _____
                                                            JOHN R. TUNHEIM
                                                      United States District Judge