**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| JAMES JOHN RUD and BRIAN KEITH HAUSFELD, *on behalf of themselves and all others similarly situated*, | Civil No. 23-0486 (JRT/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO CERTIFY CLASSES** |
| NANCY JOHNSTON, *Executive Director, Minnesota Sex Offender Program, in official capacity*, and JODI HARPSTEAD, *Department of Human Services Commissioner, in official capacity*, | |
| Defendants. | |

Anthony Stauber, Daniel E. Gustafson, David A. Goodwin, and Joseph Nelson, **GUSTAFSON GLUEK PLLC,** 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for Plaintiffs.

Aaron Winter, Emily Beth Anderson, and Gabriel Richard Ulman, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1400, Saint Paul, MN 55101, for Defendants.

Plaintiffs John James Rud and Brian Keith Hausfeld initiated this action on behalf of individuals civilly committed to the Minnesota Sex Offender Program ("MSOP") who have been approved for transfer to the lower-security Community Preparation Services ("CPS") MSOP facility but who have not yet been transferred and individuals whose transfers were delayed. The Court previously issued a preliminary injunction ordering Defendants Nancy Johnston, the Executive Director of the MSOP, and Jodi Harpstead, the

Commissioner of the Department of Human Services ("DHS"), to effectuate Rud's transfer to CPS pursuant to his valid transfer order. Rud was subsequently transferred to CPS.

Defendants have now moved to dismiss the Plaintiffs' complaint. Because Plaintiffs have failed to plausibly allege the deprivation of a fundamental right in a manner that shocks the conscience, the Court will dismiss their substantive due process claims. The Court will also dismiss Plaintiffs' writ of mandamus claim and will dismiss the Plaintiffs' damages claims because they cannot recover damages from Defendants in their official capacity under 42 U.S.C. § 1983 for constitutional violations. However, the Court will deny the Motion to Dismiss as to Plaintiffs' procedural due process claims because Plaintiffs have adequately alleged that they have a constitutionally protected liberty and property interest in being transferred to CPS within a reasonable time after receiving a valid transfer order, and Defendants deprived them of that right without any procedure.

Plaintiffs move to certify two classes: a class of individuals who have been approved for transfer to CPS but whose transfers have not yet been effectuated (the "Awaiting Transfer Class") and individuals who have been transferred to CPS, but whose transfers were delayed (the "Delayed Transfer Class"). Because Plaintiffs fail to satisfy Federal Rule of Civil Procedure 23(a)'s commonality requirement as to either class, the Court will deny the certification motion, but because discovery may later prove certification is appropriate, the Court will dismiss the motion without prejudice.

**BACKGROUND**

**I.    FACTS**

The Minnesota Commitment and Treatment Act, Minn. Stat. §§ 253D.01–.36, provides grounds for individuals to be civilly committed to the Minnesota Sex Offender Program ("MSOP").  (Compl. ¶ 8, Mar. 1, 2023, Docket No. 1-1.)  MSOP patients are committed for an indeterminate period of time under Minn. Stat. § 253D.07, subd. 4, during which they are considered within the custody of DHS.  (*Id.* ¶¶ 2, 8.)

Because the goal of the MSOP is to treat and safely reintegrate committed individuals back into the community, the MSOP is required to enable patients to progress towards "rendering further supervision unnecessary." (*Id.* ¶ 9.)  Minn. Stat. ¶ 253B.3, subd. 7.  Treatment of MSOP patients is structured into three phases.[1] (*Id.* ¶ 11.) Patients must complete all three phases to be eligible for discharge from the MSOP. (*Id.* ¶ 14.)

One of the facilities that MSOP patients may reside in is the Community Preparation Services ("CPS") facility.  The CPS facility is different from the secure facility

---

[1] Defendants submitted a declaration in conjunction with their opposition to preliminary injunction that summarizes the three stages.  In Phase I, patients focus on their ability to maintain behavior control, to successfully conform to the rules of the program, and to recognize that they have a problem that needs to be addressed in sex offender specific treatment.  (Decl. Jannine Hébert ("Hébert Decl.") ¶ 5, Mar. 13, 2023, Docket No. 31.)  Phase II then explores the underlying issues involved in the patients' patterns of sexually abusive behavior, including developing a history of their past offenses and contributing factors, and developing strategies to manage the behaviors, thoughts, and emotions that contribute to their offense patterns.  (*Id.* ¶ 6.)  In Phase III, patients focus on demonstrating and maintaining meaningful change while developing reintegration skills.  (*Id.* ¶ 7.)

in St. Peter and the high-security facility in Moose Lake because CPS is outside of a secured perimeter. (*Id.* ¶ 12.) Transfer to CPS is statutorily designated as a "reduction in custody," and CPS is "designed to assist civilly committed sex offenders in developing the appropriate skills and resources necessary for an eventual successful reintegration into a community." (*Id.* ¶ 13 (quoting Minn. Stat. §§ 246B.01, subd. 2a; 253D.27, subd. 1(b)).) Though Plaintiffs allege that Phase III of the MSOP treatment is only available at CPS, the Minnesota Statutes governing the MSOP program do not specifically require that MSOP patients reside in CPS to be eligible for provisional discharge or discharge from the MSOP. (*Id.* ¶ 14.) The Court takes judicial notice that MSOP patients have previously been discharged without ever residing at CPS. *See, e.g., In re: Braylock*, Appeal Panel No. AP15-9038, Order (Aug. 21, 2015) (ordering the discharge of a patient residing on the St. Peter campus); *In re: Breland*, Appeal Panel No. AP15-9054, Order (Sept. 16, 2016) (same).

To move from the Moose Lake or the St. Peter facility to CPS, MSOP patients must be approved for a reduction in custody. MSOP patients or the MSOP Executive Director may petition for a reduction in custody, including for transfer out of a secure treatment facility. (Compl. ¶ 15.) A Special Review Board ("SRB") reviews such petitions pursuant to Minn. Stat. §§ 253D.04, 253B.22. (*Id.*) The SRB first holds a hearing on a petition, analyzes the petition in light of five statutory-defined factors, and then issues a report to the Commitment Appeal Panel ("CAP") either recommending approval or denial of the petition. (*Id.*) Only the CAP has authority to authorize reductions in custody. (*Id.*) MSOP

patients, the DHS Commissioners, and limited other individuals can petition the CAP for reconsideration of an SRB recommendation.  (*Id.* ¶ 16.)  If no petition is filed, then the CAP can either adopt the SRB recommendations or set a hearing date to discuss the petition and consider evidence on the matter.  (*Id.*)  The CAP's decisions may be appealed to the Minnesota Court of Appeals, but if an appeal is not filed within fifteen days, the decisions become effective.  (*Id.*)

Plaintiffs John James Rud and Brian Keith Hausfeld are both civilly committed to the MSOP.  (*Id.* ¶¶ 2–3.)  Both Rud and Hausfeld petitioned and were approved by the SRB and the CAP for transfer from Moose Lake to CPS.  (*Id.*)  Rud's transfer was effective June 6, 2022, but he had not yet been transferred at the time Plaintiffs' Complaint was filed.  (*Id.*)  The parties do not dispute that Rud was eventually transferred on April 11, 2023, after this litigation commenced.  (Appellate Case No. 23-1577, Mot. Withdraw at 1, Apr. 12, 2023.)  Hausfeld's CAP transfer approval was effective February 9, 2022, but he was not transferred until more than nine months later.  (*Id.* ¶¶ 22–23.)  Hausfeld alleges that while awaiting his transfer, he experienced substantial bodily harm and mental and emotional distress when he was assaulted by another MSOP patient.  (*Id.* ¶ 23.)

## II.  PROCEDURAL HISTORY

Plaintiffs initiated this action in Minnesota state court and Defendants removed it to this Court.  (Notice of Removal, Mar. 1, 2023, Docket No. 1.)  Plaintiffs brought claims for procedural due process violations, substantive due process violations, and requested a writ of mandamus.  (*See generally* Compl.)  Rud then filed a Motion for Temporary

Restraining Order or Preliminary Injunction. (Mot. TRO or Preliminary Injunction, Mar. 6, 2023, Docket No. 9.) On March 22, 2023, the Court granted Plaintiffs' Motion for Preliminary injunction, compelling Defendants to effectuate Rud's CAP transfer order. *Rud v. Johnston*, No. 23-486, 2023 WL 2600206 (D. Minn. Mar. 22, 2023). The Court found that Plaintiffs were unlikely to succeed on their substantive due process claims because patients may still complete Phase III of the MSOP and be discharged without ever residing in CPS. *Id.* at *5–6. Further, delaying patients' transfer due to staffing issues and physical capacity limitations does not constitute egregious or extraordinary state action. However, the Court found that Plaintiffs were likely to succeed on their procedural due process claims because the interest in delaying patients' transfer does not outweigh Rud's interest in residing in a lower-security facility that focuses on treatment designed to prepare patients for life after discharge. *Id.* at *6–7.

Defendants asked the Court to stay the preliminary injunction pending appeal, which the Court denied. *Rud v. Johnston*, No. 23-486, 2023 WL 2760533 (D. Minn. Apr. 3, 2023). Defendants then appealed the preliminary injunction to the Eighth Circuit. (Notice of Interlocutory Appeal to 8th Cir., Mar. 24, 2023, Docket No. 38.) However, before the Eighth Circuit ruled on their appeal, Defendants effectuated Rud's transfer order, claiming that it was his turn to be transferred based on his position on the CPS waitlist. (Appellate Case No. 23-1577, Mot. Withdraw at 1, Apr. 12, 2023.) Rud is now residing in CPS. The

Eighth Circuit therefore dismissed the appeal of the preliminary injunction for lack of standing. (USCA J., May 8, 2023, Docket No. 64.)

Defendants then filed a Motion to Dismiss Plaintiffs' claims with prejudice, arguing Plaintiffs failed to state a claim to relief for due process violations or demonstrate they are entitled to a writ of mandamus. (Defs.' Mot. Dismiss, Mar. 8, 2023, Docket No. 23; Defs.' Mem. Supp. Mot. Dismiss, Mar. 8, 2023, Docket No. 23.) They also ask the Court to dismiss Plaintiffs' request for damages. (*Id.*) Plaintiffs assert a substantive and procedural due process right to be transferred to CSP pursuant to a valid CAP transfer order. (Pls.' Mem. Opp. Mot. Dismiss, Mar. 29, 2023, Docket No. 51.) However, Plaintiffs orally waived their writ of mandamus claim at the Court's hearing on the Motion to Dismiss as moot because Rud has since been transferred to CPS. Thus, only Plaintiffs' due process claims remain.

Plaintiffs have moved to certify two classes: the Awaiting Transfer Class under both Rule 23(b)(2) for injunctive relief and 23(b)(3) for damages, and the Delayed Transfer Class under Rule 23(b)(3). (Pls.' Mot. Certify Class, Mar. 8, 2023, Docket No. 17.) Defendants oppose class certification, arguing that individualized inquiries into each Plaintiff's transfer order, length of delay, and appropriate damages preclude certification. (Defs.' Mem. Opp. Class Certification, Mar. 29, 2023, Docket No. 50.)

**DISCUSSION**

I.   **MOTION TO DISMISS**

The Court will first consider Defendants' Motion to Dismiss before turning to Plaintiffs' Motion for Class Certification.   Because Plaintiffs waived their writ of mandamus claim, the Court will only consider whether Plaintiffs plausibly pled a claim to relief for violation of their state or federal due process rights.  The Court will also consider whether Plaintiffs are entitled to monetary damages.

A.   **Standard of Review**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings."  *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the

plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.   Procedural Due Process

Plaintiffs allege that Defendants violated their procedural due process rights under the United States and Minnesota Constitutions because they have a protected interest in being transferred to a less-restrictive environment after receiving a CAP transfer order and that Defendants deprived them of that interest without any procedure.[2]

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) (citation omitted).  If a plaintiff asserts a cognizable

---

[2] Plaintiffs technically bring two procedural due process claims under the United States and Minnesota Constitutions.  Count II pertains to Defendants' failure to comply with the statute that requires them to transfer MSOP patients within a reasonable time.  (Compl. ¶¶ 41–51.) Count III asserts that the patients can only be released from the MSOP after they complete Phase III of reintegration treatment, which they allege is only available at CPS.  (*Id.* ¶ 57.)  However, the Court takes judicial notice that a critical allegation in Count III is incorrect; patients can complete Phase III and be discharged without ever residing in CPS.  *See, e.g., In re: Braylock*, Appeal Panel No. AP15-9038, Order (Aug. 21, 2015) (ordering the discharge of a patient residing in the St. Peter campus); *In re: Breland*, Appeal Panel No. AP15-9054, Order (Sept. 16, 2016) (same).  There is also no statutory requirement that MSOP patients complete reintegration treatment, which is only available at CPS, before being discharged.  Count III therefore fails to plausibly state a procedural due process violation and the Court will dismiss it accordingly.

protected liberty or property interest, then the Court "consider[s] what process is due by balancing the specific interest that was affected, the likelihood that the [MSOP] procedures would result in an erroneous deprivation, and [the MSOP's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976)).

Thus, the Court must first consider whether the MSOP patients have a protected liberty or property interest in being transferred to CPS pursuant to their CAP transfer orders. "[S]tate laws and regulations create a protectable liberty interest only when they (1) place substantive limitation on the exercise of official discretion; and (2) contain explicit mandatory language comprising specific directives to the decision maker that if the regulations' substantive predicate acts are present, a particular outcome must follow." *William v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993) (internal quotations and citation omitted). In other words, a state law creates a protected liberty interest if the state statutes give "specific directives to the decision maker that if the [statute's] substantive predicates are present, a particular outcome must follow." *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).

The Minnesota Supreme Court recently considered this exact issue in *McDeid v. Johnston*, 984 N.W.2d 864 (Minn. 2023). McDeid is an MSOP patient who was approved

for transfer to CPS, but whose transfer was not effectuated for more than two years. *Id.*

at 868. McDeid claimed that this delay was a violation of his due process rights. *Id.* The

Minnesota Supreme Court granted review solely to determine whether MSOP patients

have a clearly established right to timely implementation of CAP transfer orders. *Id.* at

871. It concluded that "transfer orders issued by the CAP are mandatory" and that the

MSOP does "not have discretion to ignore CAP transfer orders." *Id.* at 876–77. Though

the MSOP may have some discretion on the timing of the transfer, the Minnesota

Supreme Court held that the transfer orders must be transferred "within a reasonable

time." *Id.* at 877.

Based upon the *McDeid* holding, it is clear that MSOP patients have a protected

liberty interest in the timely effectuation of their transfer orders. There are specific

directives that if a certain predicate act is present (the existence of a valid CAP transfer

order) then a particular outcome must follow (transfer to CPS within a reasonable time).

Again, the MSOP does "not have the discretion to ignore CAP transfer orders." *McDeid*,

984 N.W.2d at 877. Thus, MSOP patients have a liberty interest in being transferred to

CPS that is subject to due process protections.

On remand in *McDeid*, the Minnesota Court of Appeals faced practically the same

question the Court does today and arrived at the same conclusion. *See McDeid v.

Johnston*, A21-0042, 2023 WL 4417496, at *1 (Minn. Ct. App. July 10, 2023). The court

acknowledged that there was no binding authority addressing the liberty interests held

by individuals who are lawfully committed.  *Id.* at *3.  The Minnesota Court of Appeals considered liberty interests in the context of incarceration, which are generally "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Supreme Court has explained that an individual's due process liberty rights are invoked where their confinement constitutes a "dramatic departure" from typical prison conditions or if the state's action "will inevitably affect the duration of his sentence."  *Id.* at 486–87.  Applying this standard, the Minnesota Court of Appeals found that McDeid had adequately alleged a procedural due process violation based on a liberty interest because the MSOP's transfer delays may significantly delay patients' treatment progression and hinder their ability to advance through the program to discharge.  *Id.* at *3.

The Court agrees and the same logic applies here.  Even if residing at CPS is not a prerequisite for discharge from the MSOP, Plaintiffs have alleged that CPS is specifically designed to assist MSOP patients "in developing the appropriate skills and resources necessary for an eventual successful reintegration into a community."  (Compl. ¶ 13 (quoting Minn. Stat. ¶ 246B.01).)  Not having access to those resources could plausibly delay MSOP patients' eventual discharge from the program.  Thus, there is a protected liberty interest at stake.

The right to be transferred within a reasonable time also qualifies as a protected property interest. The Supreme Court has explained that property interests subject to procedural due process protections "are not limited by a few rigid, technical forms." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). "Rather, 'property' denotes a broad range of interests that are secured by existing rules or understandings." *Id.* "To have a constitutionally cognizable property interest in a right or benefit, a person must have a legitimate claim of entitlement to it." *Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012) (quotation omitted). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quotation omitted). The Eighth Circuit has held that a state statute can created a constitutionally protected property interest where (1) "it contains particularized substantive standards that guide a decision maker," and (2) "when it limits the decision maker's discretion by using mandatory language." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

Here, the MSOP patients' valid CAP transfer orders create a protected property interest because the orders set a standard that the MSOP must follow: transfer to CPS within a reasonable time after the issuance of a valid CAP transfer order. Thus, MSOP patients who have received a valid CAP transfer order have a protected property interest

in the effectuation of their transfer.  *See also McDeid*, 2022 WL 4417496, at \*4 (concluding the same).

Thus, Plaintiffs have plausibly alleged both that they have a protected liberty interest and a protected property interest in transfer to CPS within a reasonable time. And Plaintiffs have alleged that Defendants deprived them of that interest without **any** procedural protections.[3]  *See also id.*  They sufficiently pled a claim to relief for a procedural due process violation.

Defendants assert that Plaintiffs do not bring a true procedural due process claim because they are not asking for more **procedure**—they are asking for their transfer orders to be effectuated.  However, this argument is unpersuasive.  First, Plaintiffs are not asking only for their CAP transfer orders to be effectuated.  They also seek damages, an order enjoining Defendants' conduct, and attorney's fees and interest.  (Compl. at 19–20.) Moreover, Plaintiffs allege that they have "received no due process of law with respect to Defendants' delay and refusal to comply with the CAP order," and there "is no meaningful process or procedural protections for Plaintiffs and Class Members to ensure

---

[3] Defendants allege that Plaintiffs' ability to bring contempt proceedings in state court constitutes adequate procedure.  However, as the Court has already explained, that does not constitute procedure at all.  *Rud*, 2023 WL 2760533, at \*2.  Procedure is the "right to be heard **before** being condemned."  *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Contempt proceedings cannot occur until **after** the MSOP patient experiences a delay in their transfer.  *Id.*  Thus, they are not a procedural protection in the constitutional sense.

timely or actual enforcement [of] CAP transfer orders." (*Id.* ¶¶ 48–49.)  This adequately

supports a procedural due process violation at the motion to dismiss stage.

Further, any factual issues about the reasonableness of their delays are

determinations ill-suited for the motion to dismiss stage.  *McDeid*, 984 N.W.2d at 877 n.6

("Generally, what is a 'reasonable time' in any given context involves questions of fact,

making claims turning on 'reasonable time' determinations generally inappropriate for

disposition on a motion to dismiss.").  The Court will therefore deny Defendants' Motion

to Dismiss as it pertains to Plaintiffs' procedural due process claims.

### C.    Substantive Due Process

Plaintiffs also argue Defendants' failure to transfer them within a reasonable time

constitutes a substantive due process violation.[4]  "To establish a substantive due process

violation, the plaintiff must demonstrate that a fundamental right was violated, and that

the defendant's conduct shocks the conscience."  *Stockley v. Joyce*, 963 F.3d 809, 818 (8th

Cir. 2020) (internal quotation omitted).  A right is fundamental if it is, objectively, "deeply

rooted in this Nation's history and tradition."  *Washington v. Glucksberg,* 521 U.S. 702,

---

[4] Defendants argue that this substantive due process claim is barred by issue preclusion based on *Karsjens v. Harpstead*, D. Minn. Case No. 11-cv-03659 (DWF/TNL) and *Karsjens v. Piper*, 845 F.3d 394, 410 (8th Cir. 2017).  This argument is fruitless because Plaintiffs are not arguing that they have a liberty interest in transfer to CPS because they have a constitutional right to appropriate or effective or reasonable treatment, which is what was at issue in *Karsjens*.  Rather, Plaintiffs argue that they have a liberty interest in being transferred to CPS because they have a right to transfer after receiving a valid court order, which is different than the liberty interest at issue in *Karsjens.*  Regardless, the substantive due process claims should not survive the motion to dismiss because the right to be transferred to CPS is not a fundamental right.

720–21 (1997). "Only in the rare situation when state action is truly egregious and extraordinary will a substantive due process claim arise." *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (quotation omitted).

The Eighth Circuit has found that MSOP patients' substantive due process rights are not violated by being civilly committed, provided they receive treatment while in the MSOP program. *See Karsjens v. Piper*, 845 F.3d 394, 409–11 (8th Cir. 2017). But Plaintiffs do not argue that they have a substantive due process derived from the fundamental right to reside in a less-restrictive facility or to receive effective treatment. Instead, Plaintiffs allege that they have a "liberty interest in the effectuation of the CAP transfer orders which provide them with access to treatment required for phase progression and are otherwise statutorily required." (Compl. ¶ 68.) Even so, this right does not rise to the level of a fundamental right because it is not "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S. at 720–21.

Plaintiffs assert that the Eighth Circuit has held that any continued detention after a final non-appealable order for release is an unlawful deprivation of a person's liberty, which is protected from unlawful state deprivation by the due process. *Slone v. Herman*, 983 F.2d 107, 109–100 (8th Cir. 1993) (citing *McNeil v. Director, Patuxent Inst.*, 407 U.S. 245, (1972). But *Slone* is easily distinguishable. Slone had a clearly established liberty interest in being freed from prison after a court order suspending their sentence. Here, whether the MSOP patients are in Phase I, II, or III of the treatment program, they are still

civilly committed to the program.  There is no court order demanding that any patient be **released** from the program—just **transferred** from one location to another.

Even if Plaintiffs' right to be transferred is a fundamental right, they have not shown that Defendants' conduct "shocks the conscience."  Patients may still complete Phase III of the MSOP and be discharged without ever residing in CPS.  *See, e.g., In re: Braylock*, Appeal Panel No. AP15-9038, Order (Aug. 21, 2015) (ordering the discharge of a patient residing in the St. Peter campus).  Delaying patients' transfer due to practical staffing and physical capacity limitations does not rise to the level of "egregious" or "extraordinary" state action.

The violation of a state statute may also implicate substantive due process rights when the government's actions are "truly irrational."  *Rozman v. City of Columbia Heights*, 268 F.3d 588, 593 (8th Cir. 2001) (en banc).  The government action must be arbitrary "in the constitutional sense."  *Id.*  For example, the Eighth Circuit has held that "attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet" would be truly irrational.  *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992).  This theory is reserved for "truly egregious and extraordinary cases."  *Id.* at 1105.  Truly irrational behavior is such a high bar that it must be so abusive as to be "offensive to human dignity."  *New v. City of Minneapolis*, 792 F.2d 724, 726 (8th Cir. 1986).  Though Plaintiffs argue to the contrary, they have not alleged facts that suggest Defendants acted truly irrationally.  They simply

allege that Defendants are not complying with valid CAP transfer orders, which is not irrational in a constitutional sense.  Accordingly, the Court will dismiss their substantive due process claims.

### D.     Damages

Finally, Defendants ask the Court to dismiss Plaintiffs' request for damages stemming from violations of their due process rights.  Plaintiffs' procedural due process claims implicate 42 U.S.C. § 1983, which entitles an injured person to monetary damages if a state official violates his or her constitutional rights.  *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017).  The Eighth Circuit has made clear that the Eleventh Amendment bars § 1983 claims against states.  *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8ᵗʰ Cir. 1997).  Section 1983 claims against individual defendants acting in their official capacity are likewise barred, "either by the Eleventh Amendment or because in these capacities they are not 'persons' for § 1983 purposes."  *Id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (treating lawsuits against government employees in their official capacity as claims against the government entity itself).  Here, Plaintiffs brought claims against Nancy Johnston and Jodi Harpstead in their official capacities.  (Compl. at 1.)  Thus, § 1983 damages claims against them are barred.

Moreover, Minnesota does not have a statutory equivalent to 42 U.S.C. § 1983 allowing a direct cause of action for damages for violations of the Minnesota Constitution. *Redd v. Abla-Reyes*, No. 12-465, 2013 WL 6057860, at *1 (D. Minn. Nov. 15, 2013).  There

is therefore no means for Plaintiffs to recover monetary damages for Defendants' violation of the Minnesota Constitution.

Because Plaintiffs' Complaint does not demonstrate they are entitled to damages based on the alleged due process violations, the Court will grant Defendants' Motion to Dismiss as it pertains to Defendants' damages request.  However, the Court will dismiss the damages request without prejudice so that Plaintiffs may amend their Complaint and add individual capacity claims.[5]

## II.   CLASS CERTIFICATION

Next, Plaintiffs have asked the Court to certify two classes: an Awaiting Transfer Class, represented by Rud, and a Delayed Transfer Class, represented by Hausfeld.  The proposed Awaiting Transfer Class is defined as: "All patients committed to the Minnesota Sex Offender Program who have received transfer orders to less restrictive facilities but who have yet to be transferred."  (Mem. Supp. Mot. Certify at 2, Mar. 8, 2023, Docket No. 17.)  The Delayed Transfer Class is defined as "All patients committed to the Minnesota Sex Offender Program who received transfer orders to less restrictive facilities and who were transferred, but whose transfer was delayed."  (*Id.*)  The Court declines to certify either class at this stage of the litigation.

---

[5] Plaintiffs should be mindful, of course, that individual capacity claims would likely raise qualified immunity concerns.  *See Murphy v. State of Ark.*, 127 F.3d 750, 755 (8th Cir. 1997).

### A.    Standard of Review

To certify a class, Plaintiffs must demonstrate compliance with Federal Rule of Civil Procedure 23.  Rule 23 sets forth more than "a mere pleading standard."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Rather, Plaintiffs must provide evidentiary proof of each of Rule 23's elements.  *Id.*  It is the Court's duty to conduct a rigorous analysis before certifying a class, which necessarily requires that the Court consider some issues that bear on the merits of a claim.  *Id.* at 33–34.  But courts considering class certification are not expected to resolve questions regarding the merits at this time.  *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459–60 (2013).

First, Plaintiffs must show that they meet the requirements of Rule 23(a). Then, they must satisfy one of the three 23(b) categories.  Both the Awaiting Transfer Class and the Delayed Transfer Class claim they meet the requirements of Rule 23(b)(3) for damages, and the Awaiting Transfer Class also asks for certification for injunctive relief pursuant to Rule 23(b)(2).

### B.    Rule 23(a)

The Court must first consider if the requirements of Rule 23(a) are met.  *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005).  These requirements are: (1) the class is so numerous that joinder of all members is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the

interests of the class ("adequacy").  Fed. R. Civ. P. 23(a).  The Court will take each prong in turn.

### 1.    Numerosity

There is no clear-cut rule for numerosity.  Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).  Though there are no arbitrary rules regarding the necessary size of classes, courts typically consider the number of persons involved in the class, the nature of the action, the value of each individual claim, and the inconvenience of trying individual suits.  *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir. 1982).  A putative class size of forty or more will generally support a finding of numerosity, but the Eighth Circuit has occasionally certified classes with less than forty members.  *Portz v. St. Cloud State Univ.,* 297 F. Supp. 3d 929, 944 (D. Minn. 2018).  "Courts in this circuit have found numerosity where an unknown group may in the future suffer harm."  *Id.*

Here, Plaintiffs have set forth no evidence regarding the size of either putative class.  In fact, the only evidence before the Court demonstrates there were only sixteen patients awaiting transfer as of March 13, 2023.  (Decl. Nancy Johnston ("Johnston Decl.") ¶ 29, Mar. 13, 2023, Docket No. 29.)  Nevertheless, the Court concludes that the numerosity requirement is met because joinder of all possible litigants is impracticable.

Impracticability is a "fact-specific determination."  *Parkhill v. Minn. Mut. Life Ins. Co.,* 188 F.R.D. 332, 337 (D. Minn. 1999) (citing *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50,

54 (8th Cir.1977)).   In determining impracticability, courts generally consider various factors, including the size of the putative class, ease of identifying its members and determining their addresses, the facility of making service on them if joined, their geographic dispersion, and the size of class members' individual claims. *Glenn v. Daddy Rocks, Inc.*, 203 F.R.D. 425, 429 (D. Minn. 2001).

The fact that there are currently unascertainable MSOP patients who will be approved for transfer to CPS in the future heavily weighs in favor of numerosity. *See Portz*, 297 F. Supp. 3d at 944 (finding numerosity where future students will be harmed by the college's failure to comply with Title IX requirements); *Rajender v. Univ. of Minn.*, No. 4-73-435, 1978 WL 212, at *4 (D. Minn. Feb. 13, 1973) ("[T]he joinder of unknown women in the future that may suffer discrimination by the Chemistry Department is impracticable."). There are certainly MSOP patients who will be approved for transfer in the future and will be added to the CPS waitlist.  Presumably, they will eventually be transferred to CPS, perhaps after some delay.  The identity of those patients is unknown at this time, making them unascertainable and their joinder impracticable.  Thus, the Court finds the numerosity requirement is satisfied for both putative classes.

### 2.    Commonality

Next, the Court must consider if Rule 23(a)(2)'s commonality requirement is satisfied.  Rule 23(a)(2) requires that there be questions of law or fact that are common to the class.  Fed. R. Civ. P. 23(a)(2).  To establish commonality under Rule 23(a)(2), class claims "must depend upon a common contention" that is "capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, the Court considers whether proceeding as a class will "generate common **answers** apt to drive resolution of the litigation." *Id.* (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). "[M]erely advancing a question stated broadly enough to cover all class members is not sufficient under Rule 23(a)(2)." *Goyette v. City of Minneapolis*, No. 20-1302, 2023 WL 2014792, at *3 (D. Minn. Feb. 15, 2023) (quoting *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016)).

For Rule 23(a)(2) commonality, dissimilarities between class members may be relevant if they preclude a finding that there is "even a single common question." *Dukes*, 564 U.S. at 359. Some dissimilarities, however, do not defeat the existence of commonality provided there is a single common question that can drive answers. *See id.* More importantly, "[c]ommonality requires . . . plaintiff[s] to demonstrate that the class members 'have suffered the same injury,'" *id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982)), as opposed to having suffered a violation of the same provision of law.

Plaintiffs present two procedural due process questions that they believe are common to the Awaiting Transfer Class and Delayed Transfer Class members: (1) whether Defendants' conduct violates procedural due process, and (2) whether Plaintiffs and

members of each Class have a liberty interest protected by due process in being transferred to a less-restrictive environment after receiving a judicial order for transfer. (Mem. Supp. Mot. Certify at 10–11.)

Neither question satisfies the commonality requirement. The first question merely alleges that the putative classes "suffered a violation of the same provision of law," with nothing more. *Dukes*, 564 U.S. at 350. This is far too broad to establish commonality. *See Ebert*, 823 F.3d at 478.

The second question, though more specific, also fails the commonality requirement because its resolution will not resolve Plaintiffs' claims "in one stroke." *Dukes*, 564 U.S. at 350. As the Minnesota Supreme Court established in *McDeid*, MSOP patients have a right to be transferred "within a reasonable time." 984 N.W.2d at 868. Even though the Court finds that the putative Class Members have a protected liberty and property interest in being transferred to CPS after receiving a valid CAP transfer order, Plaintiffs' claims will not be resolved because the Court will still need to conduct individualized inquiries into each Class Member to determine if they waited an unreasonable amount of time for transfer. An MSOP patient who has awaited transfer for a month is in a vastly different position than a patient who has waited for over a year.

Because Plaintiffs have not set forth any common questions that will resolve their claims in one stroke, they fail to satisfy Rule 23(b)(2)'s commonality requirement. The

Court therefore cannot certify either class. However, for the sake of completeness, the Court will also briefly consider the other class certification requirements.

### 3.   Typicality

Rule 23(a)(3)'s typicality requirement requires the Court to consider if the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). To establish typicality, the Court must determine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co.*, 457 U.S. at 157 n.13. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff[s]." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Variations between class members will not preclude finding typicality "if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc*., 84 F.3d 1525, 1540 (8th Cir. 1996).

In this case, Plaintiffs' claims are identical: Defendants waited an unreasonable amount of time to transfer them to CPS. Even if their alleged injuries vary depending on the amount of time their transfer was delayed, their claims are typical of likely class members. A "strong similarity of legal theories" satisfies the typicality requirement even if substantial factual differences exist. *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569 (D. Minn. 1995). Plaintiffs all present the same legal theory. Thus, the typicality requirement is satisfied.

### 4.    Adequacy of Representation

Finally, the Court must decide whether the proposed representatives and counsel will "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4).  To demonstrate adequacy of representation, a plaintiff must show that "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge."  *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012).

There is no dispute that Mr. Hausfeld is a proper representative for the Delayed Transfer Class. But the parties dispute if Mr. Rud is still a proper representative for the Awaiting Transfer Class because **he is no longer part of the class**.  He was transferred to CPS on April 12, 2023, "in the normal course of waiting list movement." (Appellate Case No. 23-1577, Mot. Withdraw at 1, Apr. 12, 2023.)  Because Mr. Rud no longer awaits transfer, Defendants argue that his interests are not "sufficiently similar to those of the class." *City of Farmington*, 281 F.R.D. at 353.  The Court agrees.

Plaintiffs argue that Mr. Rud may still be an adequate class representative under the doctrine of "capable of repetition, yet evading review."  The Supreme Court has explained that "[w]hen a claim on the merits is 'capable of repetition, yet evading review,' the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980).  However, for a plaintiff to represent a class in which he does no longer has a

personal stake in the outcome of the litigation, there must be a chance that the claim may arise again as to the plaintiff. *Id.* Class certification is inappropriate when "there is no chance that the named plaintiff's claim will reoccur." *Id.* To get around this mootness issue, classes should be certified "prior to expiration of the named plaintiff's personal claim." *Id.*

Because Rud has already been transferred to CPS, it is highly unlikely that his claim may arise again. Thus, he is an inadequate class representative. And because the Court will deny Plaintiffs' class certification motion for lack of commonality, it need not consider whether Plaintiffs' claim is so "inherently transitory that the trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Id.* at 399; *see also Gerstein v. Pugh*, 420 U.S. 103, 110–11 n.11 (1975). If Plaintiffs bring another motion for class certification in the future, they should keep in mind where the proposed representative is on the CPS waitlist so the Court has ample opportunity to consider the motion before they are transferred.

The Court concludes that Plaintiffs have failed to satisfy all the requirements of Rule 23(a). Thus, it must deny their motion for class certification.

### C.    Rule 23(b)

Even if the Court found that Rule 23(a) was satisfied, there are still issues with each class as to Rule 23(b)'s requirements. Both classes seek certification under Rule 23(b)(3), and the Awaiting Transfer Class also seeks certification under Rule 23(b)(2).

Rule 23(b)(3) requires "that the questions of law or fact common to class members **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Thus, there are two main requirements: (1) predominance and (2) superiority. In analyzing these two requirements, courts must consider:

> (A) The class members' interests in individually controlling the prosecution or defense of separate action;
> (B) The extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) The likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"The predominance requirement is 'demanding'; a court considering certification pursuant to Rule 23(b)(3) must take a 'close look at whether common questions predominate over individual ones.'" *Hudock v. LG Electronics U.S.A., Inc.*, 12 F.4th 773, 776 (8th Cir. 2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 569 U.S. 26, 34 (2013)). The superiority requirement is satisfied if a class action is the superior method of pursuing the claims at issue. "There is no bedrock standard upon which a Court determines that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 265 (D. Minn. 2001) (internal quotation marks omitted).

Even if a class action is the superior method of adjudicating the Awaiting Transfer Class's and the Delayed Transfer Class's claims, neither class satisfies the predominance prong. "Predominance subsumes the commonality requirement." *Custom Hair Designs by Sandy v. Central Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020). Because both classes failed to satisfy Rule 23(b)(2)'s commonality requirement, they necessarily fail Rule 23(b)(3)'s predominance requirement. Thus, certification under Rule 23(b)(3) is improper at this juncture.

The Awaiting Transfer Class also seeks certification under Rule 23(b)(2) effectuating their transfers to CPS. "Certification is appropriate under subsection (b)(2) if classwide injunctive relief is sought when the defendant has acted or refused to act on grounds generally applicable to the class." *DeBoer,* 64 F.3d at 1175 (internal quotation marks and citation omitted). One of the purposes of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980). Thus, the rule "must be read liberally in the context of civil rights suits." *Id.* (quoting *Ahrens v. Thomas*, 570 F.2d 286, 288 (8th Cir. 1978)). "At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness . . . . Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries." *In re St. Jude Med.*, 425 F.3d at 1122 (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983)).

Here, the Court finds that the Awaiting Transfer Class has not yet shown that it is well-suited for Rule 23(b)(2) certification because "Rule 23(b)(2) applies only when a

single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.  Under *McDeid*, Plaintiffs only have a right to be transferred to CPS **within a reasonable time**.  It would therefore be improper to issue an injunction ordering the MSOP to effectuate all CAP transfer orders because Plaintiffs have not yet established that all patients awaiting transfer have waited an unreasonable amount of time.[6]

But, again, even if the Awaiting Transfer Class satisfied the requirements of Rule 23(b)(2), the Court would still deny Plaintiffs' class certification motion because neither class satisfies the requirements of Rule 23(a).  There are factual issues precluding class certification at this time, such as the number of individuals who await transfer or experienced a delayed transfer, the length of their delays, and other factors impacting the reasonableness of their delay.  But discovery will shed light on these issues and may later reveal that class certification is appropriate.  The Court will therefore deny Plaintiffs' class certification motion without prejudice.

---

[6] Defendants also assert that the Awaiting Transfer Class is ill-suited for rule 23(b)(2) certification because they ask for monetary relief in addition to injunctive relief.  For Rule 23(b)(2) to apply, the "primary relief sought must be declaratory or injunctive in nature." *In re St. Jude Med.*, 425 F.3d at 1121.  The only damages that are allowed for a 23(b)(2) class are incidental damages.  *DeBoer*, 64 F.3d at 1175.  Moreover, Rule 23(b)(2) "does not authorize class certification when each [class] member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61.  As the Court has explained in its motion to dismiss analysis, Plaintiffs are not entitled to damages because their sole remaining claim is for procedural due process violations, and 42 U.S.C. § 1983 does not allow damages for official capacity claims.  Thus, the Court need not consider if the Awaiting Transfer Class is ill-suited for Rule 23(b)(2) certification based upon their damages request.

**CONCLUSION**

The Court will grant in part and deny in part Defendants' Motion to Dismiss. Because Plaintiffs have waived their writ of mandamus claim as moot, the Court will dismiss it.  The Court will also dismiss Plaintiffs' substantive due process claim because they failed to allege the deprivation of a fundamental right in a manner that shocks the conscience, and their request for damages because these are official capacity claims. However, the Court will allow Plaintiffs' procedural due process claim to proceed because their right to be transferred to CPS constitutes a constitutionally protected liberty and property interest, and they have sufficiently alleged that Defendants deprived them of that right without any procedure.

As to the Plaintiffs' class certification motion, the Court declines to certify either the Awaiting Transfer Class or the Delayed Transfer Class at this time.  There are factual issues that preclude satisfaction of Rule 23(a)(2)'s commonality requirement.  However, the Court will deny this motion without prejudice so that Plaintiffs can bring a renewed motion in the future if discovery reveals that certification is appropriate.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

-31-

1. Defendant's Motion to Dismiss [Docket No. 21] is **GRANTED in part and DENIED in part** as follows:

   a. Count I, Count III, and Count IV are **DISMISSED** with prejudice;

   b. Plaintiffs' request for damages is **DISMISSED** without prejudice;

   c. Plaintiffs may file an Amended Complaint within 30 days from the date of this order that adds individual capacity claims against Defendants;

   d. Defendants' Motion to Dismiss is **DENIED** as to Count II; and

2. Plaintiffs' Motion to Certify Class [Docket No. 15] is **DENIED** without prejudice.


DATED:  September 28, 2023
at Minneapolis, Minnesota.

                                        JOHN R. TUNHEIM
                                        United States District Judge