# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, Brian Keith Hausfeld, Joshua Adam Gardner, Dwane David Peterson, Lynell Dupree Alexander, and Andrew Gary Mallan on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>Nancy Johnston, Executive Director, Minnesota Sex Offender Program, and Jodi Harpstead, Department of Human Services Commissioner, *in their individual and official capacities,*<br><br>      Defendants. | Court File No. 0:23-cv-00486-JRT-LIB<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.      Plaintiffs bring this class action against Defendants on behalf of themselves and a other individuals civilly committed to the Minnesota Sex Offender Program ("MSOP") who have been approved for transfer to Community Preparation Services ("CPS") by a state court order.  Plaintiffs allege claims against Defendants, in their individual and official capacities, for violations of Plaintiffs' constitutional, statutory, and common law rights. Plaintiffs allege that Defendants violated Plaintiffs' and others' rights by failing to transfer Plaintiffs and others to CPS facilities within a reasonable time after entry of a valid state court.

2.      Defendants' actions violate Plaintiffs' procedural and substantive due process rights under the United States and Minnesota Constitutions, and common law and

statutory rights under Minnesota law. Plaintiffs seek injunctive relief, declaratory relief and damages for these violations and attorneys' fees and costs for themselves and others.

## PARTIES

3.      Plaintiff John James Rud ("Rud") is civilly committed to the MSOP in the care and custody of the Minnesota Department of Human Services ("DHS") indefinitely. He petitioned for a change in status and on June 6, 2022, was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS.  The Court granted Rud's motion for a temporary injunction ordering transfer and on April 11, 2023 –10 months from the date he was approved for transfer – Defendants transferred Plaintiff Rud to CPS. This delay in transfer continues to delay his eventual release into the community. He has been and continues to be injured by the acts and omissions of Defendants.

4.      Plaintiff Brian Keith Hausfeld ("Hausfeld") is civilly committed to the MSOP in the care and custody of DHS indefinitely.  He petitioned for a change of status and, on January 25, 2022, Hausfeld was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS. Despite a valid state court order, Hausfeld was not transferred to CPS until November 8, 2022, almost nine months later. This delay in transfer continues to delay his eventual release into the community. He has been and continues to be injured by the acts and omissions of Defendants.

5.      Plaintiff Joshua Adam Gardner ("Gardner") is civilly committed to the MSOP in the care and custody of DHS indefinitely.  He petitioned for a change of status and, on May 5, 2023, was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS. To date, he has not yet been transferred to CPS nor has

he been provided any opportunity to challenge the delay in his transfer. He has not been notified of a date for his transfer. He has been and continues to be injured by the acts and omissions of the Defendants.

6.    Plaintiff Dwane David Peterson ("Peterson") is civilly committed to the MSOP in the care and custody of DHS indefinitely. He petitioned for a change of status and on October 16, 2023, was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS. To date, he has not yet been transferred to CPS nor has he been provided any opportunity to challenge the delay in his transfer. He has not been notified of a date for his transfer. He has been and continues to be injured by the acts and omissions of Defendants.

7.    Plaintiff Lynell Dupree Alexander ("Alexander") is civilly committed to the MSOP in the care and custody of DHS indefinitely. He petitioned for a change of status and on July 11, 2023, was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS. To date, he has not yet been transferred to CPS nor has he been provided any opportunity to challenge the delay in his transfer. He has not been notified of a date for his transfer. He has been and continues to be injured by the acts and omissions of Defendants.

8.    Plaintiff Andrew Gary Mallan ("Mallan") is civilly committed to the MSOP in the care and custody of DHS indefinitely. He petitioned for a change of status and on October 25, 2023, was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS. To date, he has not yet been transferred to CPS nor has he been provided any opportunity to challenge the delay in his transfer. He has not been

3

notified of a date for his transfer. He has been and continues to be injured by the acts and omissions of the Defendants.

9.      Defendant Nancy Johnston ("Johnston") is the Executive Director of MSOP and a resident of Minnesota. Defendant Johnston, in her individual and official capacity, implemented, retained and carried out policies through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiffs and others.  Upon information and belief, Johnston made the decision not to comply with valid state court orders to transfer Plaintiffs and others.  She did not seek judicial relief from those valid state court orders nor did she take appropriate lawful actions to comply with those orders. Johnston also used litigation and court processes to delay state court decisions that would have protected the rights of Plaintiffs and others sooner.  Upon information and belief, Johnston informed Defendant Jodi Harpstead ("Harpstead") fully about the valid court orders and the decisions not to comply with those orders and Harpstead agreed with those decisions and took no actions to change those orders or seek judicial relief.

10.     Defendant Harpstead is the Commissioner of the DHS. She is responsible for the operations of all facets of DHS including operating the MSOP. Within her responsibilities as Commissioner, Harpstead has the authority to direct and/or countermand decisions made by Johnston and others at MSOP.  Harpstead, in her individual and official capacity, took actions, failed to take actions, implemented, retained and carried out policies of DHS and MSOP.  Upon information and belief, she agreed with decisions made by others and failed to take action to protect the statutory, common law and constitutional rights of Plaintiffs and others at MSOP with valid state court transfer orders. She could

have, for example, increased pay rates at CPS to increase staffing, and transferred funds

from other DHS departments to add staff and/or space. Harpstead's actions and inactions,

both in her individual and official capacity, violated the constitutional, statutory, and

common law rights of Plaintiffs and others and injured them.

## JURISDICTION AND VENUE

11.     This action arises under the Due Process Clause of the Fourteenth

Amendment to the U.S. Constitution, the Minnesota Constitution and 42 U.S.C. § 1983,

over which this Court has jurisdiction.

12.     Venue is proper in this Court under Minn. Stat. § 542.01 as Defendants are

located in Ramsey County within the District of Minnesota.

## FACTS

13.     Plaintiffs and proposed class members are individuals who have been civilly

committed to the MSOP under Minn. Stat. §§ 253D.01-.36 (Minnesota Commitment and

Treatment Act ("MCTA")). Individuals committed to MSOP under the MCTA are

committed for an indeterminate period. Minn. Stat. § 253D.07, subds 3, 4.

14.     The stated goal of the MSOP is to treat and safely reintegrate committed

individuals back into the community. To that end, treatment for MSOP patients is mandated

by statute to enable patients to progress towards "rendering further supervision

unnecessary," and allow discharge into the community. Minn. Stat. § 253B.03, subd. 7.

15.     The Commissioner and MSOP Executive Director have exclusive authority

over operational and treatment decisions. Minn. Stat. §§ 246B.01; 246B.004. Moreover,

the Commissioner of the DHS is vested with the authority to maintain the program, which

"*shall provide* specialized sex offender assessment, diagnosis, care, treatment, supervision, and other services to civilly committed sex offenders," including "specialized programs at secure facilities," "consultative services, aftercare services, community-based services and programs, transition services, or other services consistent with the mission of the Department of Human Services." Minn. Stat. § 246B.02 (emphasis added).

16.    Treatment of MSOP patients is structured into three phases, and each patient begins at Phase I. Generally, patients are housed at the high-security facilities at Moose Lake until they complete Phases I and II (some patients, such as those that are disabled or elderly, occasionally are housed in an "alternative care program" at a secure facility on the grounds of the Minnesota Security Hospital in St. Peter).

17.    In addition to the high-security facilities at Moose Lake, patients further progress through phases at one of two facilities in St. Peter – the secure and fenced-in St. Peter facility and the less restrictive, residential environment at CPS, which is outside of the secured perimeter. Both the St. Peter facility and CPS have limited capacity.

18.    The CPS facilities are "designed to assist civilly committed sex offenders in developing the appropriate skills and resources necessary for an eventual successful reintegration into a community." Minn. Stat. § 246B.01, subd. 2a. Transfer to CPS is statutorily designated as a "reduction in custody." Minn. Stat. § 253D.27, subd. 1(b). Residing at CPS affords patients substantial liberties that are unavailable to patients who reside at Moose Lake or at any other secured facility, such as increased freedom of

movement, medical trips without physical restraints, the ability to order take-out food, and, as described *infra*, community outings.[1]

19. Per MSOP policies, to complete treatment and be eligible to be supported by MSOP for provisional or total discharge from commitment, MSOP patients must complete all three treatment Phases. Phase III focuses on reintegration, and most of those patients participate in community outings. Such community outings are functionally unavailable to any patient who is not at CPS. As a matter of policy and practice, MSOP normally does not support provisional or full discharge for any patient that has not in CPS. As a matter of policy and practice, MSOP will only support provisional discharge for individuals who are not in CPS if those individuals are juvenile-only offenders (for whom the SRB frequently opines are not well-suited for treatment at MSOP at all), individuals in the Alternative Unit (who have mental disabilities or require heightened levels of medical care), and individuals who are extremely elderly. Thus, for the vast majority of patients, it is impossible to get the support of MSOP to complete treatment rendering future supervision unnecessary without transfer to CPS.

20. MSOP patients or the MSOP Executive Director may petition for a reduction in custody – provisional discharge, discharge from commitment, or transfer out of a secure treatment facility – to the Special Review Board ("SRB"): a three-member panel

---

[1] *See also Minnesota Sex Offender Program Community Preparation Services,* Minnesota Department of Human Services, https://mn.gov/dhs/assets/msop-community-preparation-services_tcm1053-313403.pdf (last accessed October 26, 2023) ("As they [MSOP clients] demonstrate meaningful change across various settings, they gradually incorporate increasing liberties as clinically indicated. Clients are afforded opportunities to safely apply their treatment skills while acclimating to society.").

statutorily-created to hear such petitions. Minn. Stat. §§ 253D.04, 253B.22. When a petition for reduction in custody is made, the SRB must hold a hearing on the petition. Minn. Stat. § 253D.27, subd. 3. The SRB then considers whether transfer is appropriate by considering five statutorily-defined factors, after which the SRB issues a report to the Commitment Appeal Panel ("CAP") recommending approval or denial of the petition. Minn. Stat. § 253D.29, subd. 1. The CAP has exclusive authority to authorize reductions in custody. Minn. Stat. § 253D.27, subd. 4.

21.    MSOP patients, the DHS Commissioner, or certain county attorneys may petition CAP for reconsideration of an SRB recommendation, which requires the SRB to hold a hearing. Minn. Stat. § 253D.28, subd. 1(a). If no petition for reconsideration is filed, the CAP must either issue an order adopting the SRB recommendations or set the matter for hearing, at which point the party seeking transfer must establish by preponderance of the evidence that transfer is appropriate. Minn. Stat. § 253D.28, subd. 2(e). Any party opposing a CAP order after hearing may appeal to the Minnesota Court of Appeals. Minn. Stat. § 253B.19, subd. 5.

22.    If a CAP transfer order is not appealed, it becomes effective after 15 days. Minn. Stat. § 253D.28, subd. 3. The Commissioner and MSOP Executive Director have no discretion in determining if or when CAP transfer orders for reduction are effective and operational.

23.    Despite these statutory provisions and CAP orders, Plaintiffs and others who have been approved for transfer to CPS have languished at the high-security Moose Lake facility for months or years waiting for Defendants to effectuate their transfer.  This is not

due to any administrative roadblocks as the actual transfer process takes only days to complete. Instead, it is caused by deliberate and intentional decisions by Defendants to delay the transfer most often based on the excuse that there is not sufficient staffing or beds.

24. By failing to transfer MSOP patients pursuant to CAP orders, Defendants have also flaunted judicial mandates; indeed, Defendants Johnston and/or Harpstead have faced contempt of court proceedings for failure to transfer one patient to CPS for over 900 days. *See In the Matter of the Civil Commitment of Al Stone Folson*, County File No. 62-MN-PR-06-267; Appeal Panel File No. AP19-9153 (Ramsey County, Dec. 2, 2021). Another patient moved for contempt against Defendant Harpstead for failing to effectuate his CAP transfer order for over 200 days and the court found there to be prima facie evidence of contempt. *See In the Matter of the Civil Commitment of Steven Loren Edwards*, Dakota County File No. 19HA-PR-10-32; Appeal Panel File No. AP21-9015 (Dakota County, October 31, 2022). That patient (Edwards) was finally transferred to CPS on or around January 24, 2023, nearly 300 days after CAP ordered his transfer. Indeed, Plaintiff has filed contempt motions against Defendant Harpstead for failing to transfer him for 161 days, respectively. *In the Matter of the Civil Commitment of Joshua Adam Gardner*, County File No. 85-PR-11-1782; Appeal Panel File No. AP22-9063 (Winona County Oct. 19, 2023) ("Gardner Contempt Order"). In that case, CAP found that Plaintiff Gardner made a *prima facie* showing of contempt, and set the matter on for evidentiary hearings. It remains unclear what the CAP can order Defendants to do in this situation.

9

25.     Defendant Johnston personally avows that all patients with active transfer orders are treated the same and are put on a waiting list based on the date their transfer order was issued. When a bed becomes available at CPS, the patient at the top of the waiting list is usually transferred within several days. Based on the contempt petitions, it appears that Defendant Johnston is willfully and intentionally refusing to transfer people with court orders directing such transfer. For every Plaintiffs and Proposed class members on the waiting list, the only factor that impacts how long they remain in Moose Lake after receiving a transfer order is the availability of staffing, and/or beds at CPS.

26.     CAP transfer orders must be carried out within a reasonable amount of time. Considering the mandatory 15-day stay following the entry of a CAP order and the lack of other factors impacting the ability of a patient to be transferred besides the availability of a bed, it is unreasonable for Defendants to delay Plaintiffs' transfers for more than 30 days following the CAP order.

27.     Plaintiff Rud was civilly committed to MSOP on July 2, 2009. Following the procedures set forth in Minn. Stat. § 253B.22, Plaintiff Rud petitioned for reduction in custody on June 26, 2020. The SRB issued an order recommending his transfer to CPS on July 12, 2021. The Commissioner did not petition the CAP for reconsideration of the transfer recommendation, and the CAP adopted the SRB recommendation. The Commissioner did not appeal the CAP order to the Minnesota Court of Appeals, and the CAP transfer order was effective as of June 6, 2022. Plaintiff Rud was finally transferred to CPS on April 11, 2023, nearly 10 months after his order for transfer became effective.

28.    Plaintiff Hausfeld was civilly committed to MSOP on March 31, 1999. Following the procedures set forth in Minn. Stat. § 253B.22, Plaintiff Hausfeld petitioned for reduction in custody and the SRB issued an order recommending his transfer to CPS on April 13, 2021. The Commissioner did not petition the CAP for reconsideration of the transfer recommendation, and the CAP adopted the SRB recommendation. The Commissioner did not appeal the CAP order to the Minnesota Court of Appeals and the CAP transfer order was effective as of February 9, 2022.

29.    While Plaintiff Hausfeld awaited transfer to CPS, he was assaulted by another MSOP patient, causing substantial bodily harm as well as mental and emotional distress. Plaintiff Hausfeld was finally transferred to CPS on November 8, 2022, 9 months after his order for transfer.

30.    Plaintiff Gardner was civilly committed to MSOP on December 12, 2011. Following the procedures set forth in Minn. Stat. § 253B.22, Plaintiff Gardner petitioned for reduction in custody on March 21, 2021. The SRB issued an order recommending his transfer to CPS on April 21, 2022. The Commissioner petitioned for review of the SRB recommendation, but the parties reached a stipulation for Plaintiff Gardner's transfer to CPS before the hearing date. On May 5, 2023, CAP adopted the parties' stipulation and ordered Gardner to be transferred. Following the 15-day statutory stay, Plaintiff Gardner's transfer order became effective on May 20, 2023. On August 19, 2023, Plaintiff Gardner filed a motion for contempt against Defendant Harpstead for failing to transfer him. Following a hearing, the CAP found that Plaintiff Gardner made a *prima facie* case for

contempt and set the matter on for evidentiary hearing. As of this complaint, Plaintiff Gardner has not been transferred.

31.     Plaintiff Dwane David Peterson is civilly committed to the MSOP in the care and custody of DHS indefinitely.  He petitioned for a change of status and, on October 16, 2023, was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS. To date, he has not yet been transferred to CPS nor has he been provided any opportunity to challenge the delay in his transfer.  He has not been notified of a date for his transfer. He has been and continues to be injured by the acts and omissions of Defendants.  As of this complaint, he has not been transferred.

32.     Plaintiff Lynell Dupree Alexander is civilly committed to the MSOP in the care and custody of DHS indefinitely.  He petitioned for a change of status and, on July 11, 2023, was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS. To date, he has not yet been transferred to CPS nor has he been provided any opportunity to challenge the delay in his transfer.  He has not been notified of a date for his transfer. He has been and continues to be injured by the acts and omissions of Defendants.  As of the date of this complaint, he has not been transferred.

33.     Plaintiff Andrew Gary Mallan is civilly committed to the MSOP in the care and custody of DHS indefinitely.  He petitioned for a change of status and, on October 25, 2023, was approved for transfer from the high-security MSOP facility in Moose Lake, Minnesota to CPS. To date, he has not yet been transferred to CPS nor has he been provided any opportunity to challenge the delay in his transfer.  He has not been notified of a date

for his transfer. He has been and continues to be injured by the acts and omissions of Defendants.  As of the date of this complaint, he has not been transferred.

34.     Due to the policies and procedures created and promulgated by Defendants, Plaintiffs and others typically wait *years* between when they first petition for reduction (assuming they receive a favorable recommendation from the SRB and CAP) and when they are eventually transferred.[2] At any given time, Defendants know how many petitions for reduction in custody have been filed, how many petitions have received a recommendation for transfer from the SRB, how many recommendations have been appealed to CAP, and how many petitions have received an order for transfer from CAP. Due to the extensive delay from petition to CAP order, Defendants will know *years in advance* how many beds they will need to accommodate patients with transfer orders. Despite this foreknowledge, Defendants have for years taken no action to secure the required beds.

35.     Defendants are responsible for the operational decisions that result in Plaintiffs and proposed class members being denied transfer after receiving transfer orders. As Executive Director of MSOP, Defendant Johnston is "charged with overall

---

[2] This is a fact that CAP has taken note of. *See, e.g.,* Gardner Contempt Order at ¶ 4 ("Whether the reason for this specific delay is valid or not, Mr. Gardner is the one who pays the price for the slowness of the process. The Panel does not lose sight of the fact that, in this matter, Mr. Gardner was indeterminately civilly committed by final order dated January 31, 2012. Mr. Gardner petitioned for a reduction in custody on March 31, 2021, over two and a half years ago. The Special Review Board recommended granted transfer on April 19, 2022, over one and a half years ago. The Order for Transfer was issued on May 4, 2023, over six months ago. All the while Mr. Gardner sits behind the razor wire at MSOP, with no anticipated transfer date.")

responsibility for the operation of the Minnesota Sex Offender Program." Minn. Stat. § 246B.01, subd. 2(c). Defendant Johnston personally created, implemented, and approved of the policies involving transfers to CPS.

36.     Johnston personally makes decisions that directly result in the failure to transfer Plaintiffs and Proposed class members, such as the decision to take no meaningful effort to secure funds from the legislature or to identify alternative facilities or treatment options for patients who have received an order for reduction in custody. Moreover, Defendant Johnston made decisions that resulted in MSOP refusing to transfer Plaintiffs and proposed class members, such as the *de facto* requirement that MSOP patients must be transferred to CPS in order to be provisionally or fully discharged. Additionally, Defendant Johnston routinely opposes patients' petitions for provisional and full discharge or petitions for CAP review of SRB recommendations of the same, which results in fewer patients being discharged from CAP and resultantly fewer open beds for Plaintiffs and proposed class members. Defendant Johnston is undoubtedly aware that Plaintiffs are not being transferred after receiving a transfer order because, *inter alia,* she is an active participant in litigation involving those claims and has personally been held in contempt of court for that conduct. Despite her awareness, Defendant Johnston continues to personally violate Plaintiffs' and proposed class members' constitutional rights and authorize others to do the same.

37.     As Commissioner of DHS, Defendant Harpstead is statutorily responsible for maintaining MSOP. Minn. Stat. § 246B.02. Harpstead has taken actions that result in Plaintiffs and proposed class members not being transferred after receiving transfer orders,

such as the failure to allocate sufficient funds to MSOP to expand CPS, the failure to make meaningful efforts to secure funds from the legislature or to identify alternative facilities or treatment options for patients who have received an order for reduction in custody.

38.    Defendant Harpstead is aware that Plaintiffs are not being transferred after receiving a transfer order because she is an active participant in litigation involving those claims and has personally been held in contempt of court for that conduct. Despite her awareness, Defendant Harpstead continues to personally violate Plaintiffs' and proposed class members' constitutional rights and authorize others to do the same.

39.    As a result of Defendants' failure to transfer MSOP patients to CPS after judicial order, Plaintiffs and proposed class members have been and continue to be injured.

## CLASS ACTION ALLEGATIONS

40.    Plaintiffs bring this class action on behalf of themselves and the proposed class members pursuant to Minnesota Rules of Civil Procedure 23, seeking equitable, injunctive, and declaratory relief, and damages, on behalf of the following Classes:

> All patients committed to the Minnesota Sex Offender Program who have received transfer orders to less restrictive facilities but who have yet to be transferred. (The "Awaiting Transfer Class")

and

> All patients committed to the Minnesota Sex Offender Program who have received transfer orders to less restrictive facilities and who were transferred, but whose transfer was delayed. (The "Delayed Transfer Class")

41.    The Classes are so numerous that joinder of all the members would be impracticable. There are currently nearly one thousand individuals committed to MSOP.

Considering the rate at which patients typically progress through Phases I and II of treatment, the number of patients who have been approved for but are still awaiting transfer is likely 50-60. Likewise, considering that the Delayed Transfer Class encompasses all patients historically who have had their transfers delayed, the proposed class is likely as many as one hundred members. This is sufficiently numerous. *See Lewy 1990 Trust ex rel. Lewy v. Inv. Advisors, Inc.*, 650 N.W.2d 445, 452 (Minn. Ct. App. 2002) ("[T]he difficulty of joining as few as 40 proposed class members may also raise a presumption that joinder is impracticable.").

42.     Common questions of law and fact exist as to all Plaintiff and others and are the same for both proposed Classes. These questions predominate over any questions unique to any individual patient and include, without limitation:

a.    Whether Defendants failed to transfer Plaintiffs and others within thirty (30) days of receiving a CAP order for transfer.

b.    Whether Defendants' actions caused a delay in the progress of Plaintiffs' and others' treatment.

c.    Whether Defendants acted with deliberate indifference to the due process rights of Plaintiffs and others.

d.    Whether Defendants violated the constitutional rights of Plaintiffs and others.

e.    Whether Plaintiffs and others should be allowed amend their complaint to plead punitive damages.

f.    Whether Defendants' conduct shocks the conscience.

g.    Whether thirty (30) days is a "reasonable" time to comply with valid state court orders to transfer Plaintiffs and others.

h.    To what extent Plaintiffs and the proposed class members have been damaged.

43.    Plaintiffs' claims are typical of the claims of their respective Classes. Defendants' actions have affected others equally because those actions were directed at Plaintiffs and others and affected each in the same manner. Accordingly, Plaintiffs' claims against Defendants are based on the conduct of the Defendants and, as such, are typical to the claims of other Proposed class members.

44.    Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs are potential Proposed class members and have no interests that are adverse to the interests of the Classes. Plaintiffs are committed to prosecuting this action to final resolution and has retained competent counsel with extensive experience in complex class action and civil rights litigation, and who will vigorously pursue this litigation on behalf of the Classes.

45.    A class action is superior to other methods of adjudicating this controversy.

46.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

47.    Defendants have acted or refused to act on grounds generally applicable to the Classes. Defendants' pattern of unconstitutional conduct has been directed at Plaintiffs only by virtue of their membership in the Classes.

48.     The identity of Proposed class members would be easily ascertainable from Defendants' records.

## CAUSES OF ACTION

### COUNT I:
**Petition for Writ of Mandamus**
**(On Behalf of the Awaiting Transfer Class)**

49.     Plaintiffs and Proposed class members restate and reallege all previous paragraphs of this Complaint.

50.     Minn. Stat. § 586.01, *et seq*. permits the Court to issue a writ of mandamus to compel a person to perform an act or official duty clearly imposed by law.

51.     Defendants have a clear, statutorily-defined duty under Minn. Stat. § 253B.09, subd. 1, to effectuate CAP transfer orders no longer subject to appeal. *McDeid v. Johnston,* 984 N.W.2d 864, 876 (Minn. Feb. 1, 2023) ("under the plain terms of the statute, if . . . a CAP transfer order was not appealed, it becomes effective and operational after 15 days following its issuance.").

52.     Defendants have another, independent, statutorily-defined duty under Minn. Stat. § 253B.03, subd. 7 to provide treatment to render further supervision unnecessary, including reintegration treatment under Minn. Stat. §§ 246B.01; 246B.03-04.

53.     Defendants have delayed Plaintiffs' and proposed class members' transfer to CPS. As a result, Plaintiffs Gardner, Peterson, Alexander, and Mallan and members of the Awaiting Transfer Class have remained in the high-security treatment facility without access to Phase III reintegration treatment for months or years without any guarantee if or when they will be transferred.

54.     Defendants' failure to comply with their legal duties constitutes a public wrong injurious to Plaintiffs and Proposed class members, and there is no plain, speedy, or adequate remedy in the ordinary course of law.

55.     Therefore, Plaintiffs and proposed class members are entitled to a peremptory writ of mandamus ordering Defendants to immediately comply with all effective CAP orders and to transfer Plaintiffs and proposed class members pursuant to those orders.

## COUNT II:
### Procedural Due Process Under the United States and Minnesota Constitutions
### (On Behalf of Both Classes)

56.     Plaintiffs and the proposed class members restate and reallege all previous paragraphs of this Complaint.

57.     42 U.S.C. § 1983 creates a private right to sue government entities and their employees for violations of civil rights under the United States Constitution.

58.     The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without the due process of law." Included within these constitutional protections are the rights to notice and hearing when an individual is deprived of his fundamental property and liberty interests.

59.     The Due Process protections guaranteed by the Minnesota Constitution are coextensive with those guaranteed by the United States Constitution. *State v. Holloway*, 916 N.W.2d 338, 344 (Minn. 2018).

60.     Defendants are state actors subject to the Fourteenth Amendment.

61.     Plaintiffs and proposed class members had a protected liberty interest in being transferred to a less-restrictive environment after receiving a judicial order for transfer. The transfer of Plaintiffs and proposed class members after judicial order is not discretionary, and Defendants are required by statute to effectuate transfer. *McDeid,* 984 N.W.2d 864, 876 (Minn. 2023). Plaintiffs and proposed class members followed all statutory requirements to be eligible for transfer. Plaintiffs and proposed class members thus had a legitimate claim of entitlement to the timely effectuation of the CAP transfer orders.

62.     Defendants' conduct constitutes a substantial deprivation because for the Awaiting Transfer Class, Plaintiffs Gardner, Alexander, Peterson, and Mallan and proposed class members have not been transferred, have not been given a timeline for transfer, and are uncertain if they ever will be transferred and, concomitantly, have not had access to the treatment necessary for their discharge.

63.     Defendants' conduct constitutes a substantial deprivation because for the Delayed Transfer Class, Plaintiffs Hausfeld, Rud, and proposed class members were not transferred after judicial order and as such were delayed in receiving reintegration which delayed Plaintiff Hausfeld and Delayed Transfer Proposed class members' access to the treatment necessary for their discharge.

64.     Plaintiffs and proposed class members have received no due process of law with respect to Defendants' delay and refusal to comply with the CAP order.

65.     Defendants have thus violated Plaintiffs' and proposed class members' due process rights and deprived Plaintiffs and proposed class members of their protected property and liberty interest in violation of the U.S. and Minnesota Constitutions.

66.     As a result of Defendants' unlawful conduct, Plaintiffs and proposed class members have suffered and continues to suffer damages, the exact amount to be determined at trial.

### COUNT III:
### Procedural Due Process Under the United States and Minnesota Constitutions
### (On Behalf of Both Classes)

67.     Plaintiffs and the proposed class members restate and reallege all previous paragraphs of this Complaint.

68.     42 U.S.C. § 1983 creates a private right to sue government entities and their employees for violations of civil rights under the United States Constitution.

69.     The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without the due process of law." Included within these constitutional protections are the rights to notice and hearing when an individual is deprived of his fundamental property and liberty interests.

70.     The Due Process protections guaranteed by the Minnesota Constitution are coextensive with those guaranteed by the United States Constitution. *State v. Holloway*, 916 N.W.2d 338, 344 (Minn. 2018).

71.     Defendants are state actors subject to the Fourteenth Amendment.

72.     Under the MCTA, MSOP patients are entitled to treatment so as to "render further supervision unnecessary." Because it is functionally impossible for Plaintiffs and

21

proposed class members to be discharged from commitment – that is, to not require further supervision – without first being transferred to CPS Plaintiffs and proposed class members have a protected property and liberty interest in the effectuation of the CAP transfer order.

73.     Defendants' conduct constitutes a substantial deprivation because for the Awaiting Transfer Class, Plaintiffs and proposed class members have not been transferred, have not been given a timeline for transfer, and are uncertain if they ever will be transferred and, concomitantly, have not had access to the treatment necessary for their discharge.

74.     Defendants' conduct constitutes a substantial deprivation because for the Delayed Transfer Class, Plaintiffs Hausfeld, Rud, and proposed class members were not transferred after judicial order and as such were delayed in receiving reintegration which delayed Plaintiffs Hausfeld and Rud and Delayed Transfer proposed class members' access to the treatment necessary for their discharge.

75.     Plaintiffs and proposed class members have received no due process of law with respect to Defendants' refusal to comply with CAP orders.

76.     There is no meaningful process or procedural protections for Plaintiffs and proposed class members to ensure timely or actual enforcement CAP transfer orders.

77.     Defendants have thus violated Plaintiff's and proposed class members' due process rights and deprived Plaintiff and proposed class members of their protected property and liberty interest in violation of the U.S. and Minnesota Constitutions.

78.     As a result of Defendants' unlawful conduct, Plaintiff and proposed class members have suffered and continues to suffer damages, the exact amount to be determined at trial.

## COUNT IV:
## Substantive Due Process Under the Minnesota and United States Constitutions
## (On Behalf of Both Classes)

79.     Plaintiffs and proposed class members restate and reallege all previous paragraphs of this Complaint.

80.     42 U.S.C. § 1983 creates a private right to sue government entities and their employees for violations of civil rights under the United States Constitution.

81.     The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without the due process of law." Included within these constitutional protections are the rights to notice and hearing when an individual is deprived of his fundamental property and liberty interests.

82.     The Due Process protections guaranteed by the Minnesota Constitution are coextensive with those guaranteed by the United States Constitution. *State v. Holloway*, 916 N.W.2d 338, 344 (Minn. 2018).

83.     As previously alleged, Plaintiffs and proposed class members had a fundamental liberty interest deeply rooted in the United States to be free from unreasonable restraint.  As a result, the Defendants infringed on that fundamental liberty interest by failing to effectuate the CAP transfer orders which provide them access to liberty and to treatment required for phase progression and are otherwise statutorily required.

84.     Defendants' failure to transfer Plaintiffs and proposed class members in the face of statute and judicial mandate – not for days, but for months and even years – evinces deliberate injurious intent, shocks the conscience, and interferes with the rights implicit in the concept of ordered liberty.

23

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

1.       An Order certifying the Classes as defined herein under Minnesota Rule of Civil Procedure 23, and appointing Plaintiffs and their counsel to represent the Classes;

2.       A writ of mandamus to compel Defendants' compliance with Minn. Stat. § 253B.09, subd. 1, transfer Plaintiffs Gardner, Peterson, Alexander, and Mallan and Awaiting Transfer Proposed class members pursuant to CAP transfer orders, and award damages to Plaintiffs Gardner, Peterson, Alexander, and Mallan and Awaiting Transfer Proposed class members and declaration that the actions of Defendants, as described above, are unconstitutional;

3.       An Order enjoining Defendants' ongoing unconstitutional conduct described herein;

4.       An order permanently enjoining Defendants from Depriving Plaintiffs and the proposed class members of their constitutional rights;

5.       Damages compensating Plaintiffs and the proposed class members for their injuries, including but not limited to compensatory, pecuniary, and medical expense damages;

6.       Costs, disbursements, expenses, and attorneys' fees;

7.       Pre- and post-judgment interest, to the extent allowable; and

8.       Such other relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demands

a trial by jury in this case as to all issues so triable.

Dated: October 30, 2023                    **GUSTAFSON GLUEK PLLC**

                                           */s/Daniel E. Gustafson*
                                           Daniel E. Gustafson (#202241)
                                           David A. Goodwin (#386715)
                                           Anthony J. Stauber (#401093)
                                           Joseph E. Nelson (#402378)
                                           Canadian Pacific Plaza
                                           120 South Sixth Street, Suite 2600
                                           Minneapolis, Minnesota 55402
                                           Telephone: 612-333-8844
                                           Fax: 612-339-6622
                                           dgustafson@gustafsongluek.com
                                           dgoodwin@gustafsongluek.com
                                           tstabuer@gustafsongluek.com
                                           jnelson@gustafsongluek.com

                                           ***Attorneys for Plaintiffs and the Proposed
                                           Classes***