UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, Brian Keith Hausfeld, Joshua Adam Gardner, Dwane David Peterson, Lynell Dupree Alexander, and Andrew Gary Mallan on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>vs.<br><br>Nancy Johnston, Executive Director, Minnesota Sex Offender Program, and Jodi Harpstead, Department of Human Services Commissioner, *in their individual and official capacities,*<br><br>   Defendants. | Court File No. 0:23-cv-00486-JRT-LIB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY DISCOVERY** |

## INTRODUCTION

Defendants seek to stay discovery pending a yet-to-be-filed motion to dismiss. However, Defendants have already brought a motion to dismiss, which was granted in part and denied as to Plaintiffs' official-capacity procedural due process claim. In their First Amended Complaint ("FAC"), Plaintiffs keep the procedural due process claim and address deficiencies in the other claims identified by the Court. [ECF Nos. 73, 77]. Although Plaintiffs recognize that Defendants can challenge new claims and allegations, Plaintiffs are entitled to begin discovery for the claim that the Court has already determined survives a motion to dismiss, and Defendants are not entitled to a "second bite" on those issues. Discovery should proceed on that claim regardless, and a stay of discovery relating

to other claims would not meaningfully reduce Defendants' discovery burden; but such a stay would be confusing, invite discovery disputes, and further delay justice for Plaintiffs—thereby causing prejudice. For all of these reasons, the Court should deny Defendants' Motion.

## BACKGROUND

### I. Procedural Posture

Plaintiffs filed their original Complaint in state court on February 21, 2023. [ECF No. 1]. They promptly moved for a preliminary injunction requiring Defendants to comply with a valid, final state court order to transfer Plaintiff Rud to Community Preparation Services (CPS)—the final step before community release from the Minnesota Sex Offender Program (MSOP). The Court granted that motion, concluding that Rud was likely to succeed on the merits of his official-capacity procedural due process claim. [ECF No. 35 at 23]. Defendants appealed, and the Court denied their motion to stay the preliminary injunction pending that appeal, concluding that "Defendants filed a motion to reconsider thinly disguised as a motion to stay" and "many of [Defendants'] . . . arguments were previously raised and rejected by the Court." [ECF No. 53 at 5]. After Plaintiff Rud was transferred, Defendants' appeal was dismissed, and their motion to dismiss was heard by the Court on August 18, 2023. [ECF Nos. 64, 72].

### II. The Motion to Dismiss and the FAC

In their original Complaint, Plaintiffs brought a petition for a writ of mandamus, and claims for violations of procedural and substantive due process rights under 42 U.S.C. § 1983. [ECF No. 1 at 14–19]. Plaintiffs sought injunctive relief and damages. The Court

dismissed the writ of mandamus claim as moot after Plaintiff Rud had been transferred to CPS. [ECF No. 73 at 31]. The Court also dismissed Plaintiffs' substantive due process claim, as well as Plaintiffs' claims for damages because the original Complaint named Defendants only in their official capacities. [*Id.*] However, the Court "allow[ed] Plaintiffs' procedural due process claim to proceed because their right to be transferred to CPS constitutes a constitutionally protected liberty and property interest, and they have sufficiently alleged that Defendants deprived them of that right without any procedure." [*Id.*]

Plaintiffs filed their FAC on October 30, 2023, and agreed to extend Defendants' deadline to respond. [ECF Nos. 77, 80]. Because Plaintiffs now include putative class representatives for whom their transfer to CPS is not moot, the FAC re-asserts a petition for a writ of mandamus. [ECF No. 77 at 18]. The FAC also names Defendants in both their official and individual capacities, and therefore brings similar damages claims for violations of procedural and substantive due process rights. [*Id.* at 19–24]. Importantly, the FAC retains the official-capacity procedural due process claim and supporting allegations that the Court previously found to be adequately plead.[1]

## STANDARD

"Of course, standing alone, the pendency of a dispositive Motion does not establish 'good cause' to stay discovery." *Zutz v. Nelson*, No. CV 08-958 (JNE/RLE), 2009 WL 10711548, at *3 (D. Minn. Jan. 12, 2009). "Rather, the Court inevitably must balance the

---

[1] Plaintiffs recognize that this Court likely will reach the same conclusions on the previously dismissed claims but refiled them to protect the issue for appeal.

3

harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Riehm v. Engelking*, No. 06-cv-293 (JRT/RLE), 2006 WL 8443398, at *2 (D. Minn. June 12, 2006), *aff'd*, No. 06-cv-293 (JRT/RLE), 2006 WL 2085404 (D. Minn. July 25, 2006). "The balancing of such factors is a proper exercise of the Court's discretion." *Id.*

## ARGUMENT

**I.  Staying discovery pending resolution of unresolved issues would only serve to delay what has already been resolved.**

**A.  The FAC includes the claim that survived Defendant's prior motion.**

The Court has already concluded that Plaintiffs' official-capacity procedural due process claim was sufficiently pleaded in the original Complaint to survive a motion to dismiss. That claim, as well as the factual allegations supporting it, is included in the FAC. Defendants do not contend otherwise, and Defendants are not entitled to a second bite at the apple. Should Defendants again seek dismissal of this claim in their promised upcoming motion, that argument should be summarily denied as estopped. But even if Defendants were not barred from relitigating this issue, the Court's September 28, 2023, order denying Defendant's earlier motion to dismiss thoroughly explains why their new motion will be unsuccessful—certainly as to this claim. Discovery should not be stayed where there is no "possibility that the [dispositive] motion will be granted and entirely eliminate the need for such discovery." *Zutz*, 2009 WL 10711548, at *3 (quotation omitted).

The Court's prior orders all but guarantee that this case will inevitably proceed to discovery on at least one claim. The fact that additional claims may or may not also proceed

4

to discovery does not warrant a stay in this case, because Defendants' minimal very small discovery burden will be virtually identical even if all of Plaintiffs' other claims survive.

### B. Each of Plaintiffs' claims entitle Plaintiffs to essentially identical discovery.

Defendants have failed to identify any discovery Plaintiffs could *not* obtain for their official-capacity procedural due process claim, but *could* obtain to support their other claims.[2] This is because there is no such discovery. In this case, the facts Plaintiffs allege and the claims they make implicate the same limited and well-defined pool of potential discovery.

The narrow scope of relevant discovery is made evident in the joint 26(f) report submitted by the parties. Plaintiffs propose to complete fact discovery by January 31, 2024—little over two months from the date of this filing. [ECF No. 87 at 3]. Plaintiffs anticipate needing no more than a few interrogatories, a few document requests, and a few requests for admission. [*Id.* at 4]. Finally, Plaintiffs anticipate needing only two or three depositions, no medical examinations, and very limited, if any, expert discovery. [*Id.* at 4]. From this limited discovery, it would be impossible to delineate between discovery

---

[2] Defendants assert, without elaboration, that discovery related to damages would "potentially requir[e] discovery on numerous Plaintiff-specific issues." [ECF No. 90 at 5]. This is a putative class action, and Plaintiffs intend to pursue a model of recovery that bases an individual class member's entitlement to damages on the number of days they were not transferred to CPS in violation of their rights. This information is not only a trivial discovery burden, but contrary to Defendants' contention, discovery of this information *would* "simply overlap" with discovery necessary for Plaintiffs and putative class members to obtain relief on their official-capacity procedural due process claim. [ECF No. 73 at 15 (denying Defendants' earlier motion to dismiss Plaintiffs' procedural due process claim because "any factual issues about the reasonableness of their delays are determinations ill-suited for the motion to dismiss stage")].

CASE 0:23-cv-00486-JRT-LIB   Doc. 93   Filed 11/28/23   Page 6 of 9

intended to support Plaintiffs' surviving procedural due process claim and that intended to support Plaintiffs' other claims, because all of Plaintiffs' claims and allegations implicate virtually identical narrow sets of factual issues.

All of Plaintiffs' claims rest on the same set of straight-forward alleged facts and arguments. At bottom, Plaintiffs allege that that Defendants—officials of a department of the state government— routinely failed to timely transfer MSOP patients to CPS following valid, final, state court orders to make such transfers, and that this conduct violates their constitutional rights to due process as well as Defendants' legal duties. It makes no material difference—for the purposes of relevancy under Fed. R. Civ. P. 26(b)—whether the rights in question are substantive, procedural, or both, because the same discovery is relevant to both. Likewise, the same set of discovery will be relevant regardless of whether Defendants' duties arise under MSOP statute or a state court order, or whether Defendants acted in their official or individual capacities.

For example, Plaintiffs might request discovery pertaining to how and by whom CPS transfer decisions are made at DHS, how judicial orders for transfer are handled, or how Defendants have attempted to address capacity issues at their facilities. This discovery would be just as relevant to Plaintiff's official-capacity procedural due process claim— which has already survived a motion to dismiss—as it would be to Plaintiffs' substantive due process, mandamus, and damages claims. Because Defendants' discovery burden will be virtually unchanged by any disposition on their eventual motion to dismiss, their motion to stay discovery serves no purpose other than delay.

6

### C. The issue of qualified immunity is not relevant and does not warrant a stay of discovery.

Defendants argue that the "unresolved" issue of their qualified immunity justifies staying discovery in this case. Although Defendants correctly recite the policies underlying the doctrine of qualified immunity, they are irrelevant to Plaintiffs' official-capacity procedural due process claim. As the Court noted in its order on Defendants' previous motion to dismiss, and as recognized by Defendants in their memorandum in support of the instant motion, the doctrine of qualified immunity only applies to claims seeking damages against officials in their individual capacity. [ECF No. 90 at 3–4]. Defendants' entitlement to qualified immunity on Plaintiffs' official-capacity procedural due process claim is not an "unresolved issue"—it is not even an issue. Accordingly, qualified immunity cannot delay the inevitable procession of this case to discovery, and for the reasons mentioned above, staying discovery as to other claims would be impracticable, invite discovery disputes, and be of no utility to the Court, the parties, or the efficient resolution of this case.

Additionally, should the Court conclude that Defendants' entitlement to qualified immunity is relevant to the issue of a stay of discovery, recent precedent already recognized by the Court in this case demonstrates that Defendants' new motion to dismiss is not likely to be granted on qualified immunity grounds. In *McDeid v. Johnston*—another case with nearly identical but even more egregious facts relating to delayed transfers to CPS—the Minnesota Supreme Court held "as a matter of longstanding precedent in Minnesota, both from our court and the Eighth Circuit," for the purposes of qualified immunity, MSOP

7

patients have a clearly established right to transfer to CPS within a reasonable time. 984 N.W.2d 864, 877 (Minn. 2023); [ECF No. 73 at 10–11 *et seq.*].

The *McDeid* court's holding rested in part on *Hall v. Lombardi*, which affirmed the district court's denial of summary judgment on qualified-immunity grounds because "[a]ny reasonable official would understand that once [the inmate] obtained final approval for release [transfer from the more restrictive to less restrictive prison unit], he had a legitimate expectation of being released in a reasonable amount of time." *McDeid*, 984 N.W.2d at 878 (quoting *Hall v. Lombardi*, 996 F.2d 954, 959 (8th Cir. 1993)). Further, the *McDeid* court cited *Walters v. Grossheim* as "affirming the district court's finding that reasonable officials should know that 'an unstayed order of a court must be obeyed.'" *McDeid*, 984 N.W.2d at 878 (quoting *Walters v. Grossheim*, 990 F.2d 381, 383 (8th Cir. 1993)).

In this case, the Court relied in part on *McDeid* to deny Defendants' motion to stay the preliminary injunction, concluding that "Defendants are unlikely to succeed on the merits of their appeal" because "it is not reasonable for MSOP patients to wait months or years to be transferred." [ECF No. 53 at 7]. And in its order denying Defendants' first motion to dismiss, the Court held that "any factual issues about the reasonableness of [Plaintiffs'] delays are determinations ill-suited for the motion to dismiss stage." [ECF No. 73 at 15]. Against this backdrop—a clear pronouncement by the Minnesota Supreme Court—Defendant's qualified immunity argument is unlikely to prevail, and the brief period of discovery needed to reach a full resolution of this case should not be stayed pending the resolution of issues that will have no bearing on the scope of that discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to stay discovery.

Dated: November 28, 2023                    **GUSTAFSON GLUEK PLLC**

*/s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
Joseph E. Nelson (#402378)
Matt Jacobs (#403465)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-333-8844
Fax: 612-339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstabuer@gustafsongluek.com
jnelson@gustafsongluek.com

**FREMSTAD LAW**
Hannah L. Scheidecker (#0401987)
3003 32nd Ave. S., Ste. 240
Fargo, ND 58103
(701) 478-7620
hannah@fremstadlaw.com

***Attorneys for Plaintiffs and the Proposed Classes***