UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, et al., | Case No. 0:23-cv-00486 (JRT/LIB) |
| Plaintiffs, | |
| vs. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| Nancy Johnston, et. al., | |
| Defendants. | |

## INTRODUCTION

The First Amended Complaint ("FAC"), Plaintiffs' second bite at the apple in this case, adds parties and shifts legal theories in an attempt to overcome the issues that sunk much of their original complaint. But it does not solve the fundamental legal and plausibility problems with their claims. For the three claims that were already dismissed with prejudice, the Plaintiffs that can assert them do no better than Plaintiffs Rud and Hausfeld did before: (1) their procedural due process claim in Count III still rests on allegations that are belied by Minnesota statute and the public record; (2) their substantive due process claim still does not plausibly plead conscience-shocking behavior; and (3) their mandamus claim still does not allege a sufficiently clear duty (and courts in this District have subsequently questioned whether they could even issue a state mandamus writ).

In addition, Plaintiffs have changed their theory on the one claim that survived from their original complaint. But the change makes Plaintiffs' claim *less* viable: Count II now

depends on a right to treatment, which Plaintiffs previously litigated in *Karsjens* and which the Eighth Circuit has conclusively held does not exist.

Plaintiffs' new attempt to seek damages from Defendants Jodi Harpstead and Nancy Johnston in their individual capacities also fails. Individual-Capacity Defendants are entitled to qualified immunity because the existence of any case law holding that a CAP transfer order may have any constitutional implication is new within this calendar year, and no court has ever held what circumstances would violate a constitutional interest with respect to transfer. The FAC should be dismissed in its entirety.

## BACKGROUND

By now the Court is well aware of the basic factual background that underlies the FAC and this action. *See, e.g.,* ECF No. 23 at 2-8; ECF No. 73 at 3-5. Instead of repeating those facts, Defendants recite the relevant procedural history and newly alleged facts here.

## I. PLAINTIFFS' ORIGINAL COMPLAINT.

Plaintiffs Rud and Hausfeld initiated this action in Minnesota state court and Defendants removed it to this Court in March 2023. ECF No. 1. Those Plaintiffs brought four counts against Defendants Harpstead and Johnston in their official capacities: a petition for a writ of mandamus (Count I), two procedural due process claims (Counts II & III) and a substantive due process claim (Count IV). ECF No. 1-1. Plaintiffs sought both injunctive relief and damages. ECF No. 1-1. Plaintiffs also moved to certify a class and Plaintiff Rud moved for a preliminary injunction commanding Defendants to immediately transfer him to CPS. ECF Nos. 4-5. Defendants responded to Plaintiffs' Complaint by moving to dismiss it in its entirety. ECF Nos. 21, 23.

2

The Court initially granted Plaintiff Rud's preliminary injunction. ECF No. 53. Defendants appealed and moved both this Court and the Eighth Circuit to stay that order pending appeal. ECF Nos. 38-39; Appellate Case No. 23-1577, Mot. to Stay, Mar. 31, 2023. The Eighth Circuit granted the stay, but before it ruled on the appeal, Rud was transferred to CPS in the normal course of movement. ECF No. 73 at 5.

## II.   THE COURT'S ORDER ON DEFENDANTS' MOTION TO DISMISS.

In an order dated September 28, 2023, the Court granted Defendants' motion to dismiss in part and denied it in part. Specifically, the Court dismissed Count I – the writ of mandamus claim – with prejudice because Plaintiffs Rud and Hausfeld orally waived it at argument. ECF No. 73 at 7, 32. The Court also dismissed Counts III (procedural due process based on CPS being necessary for discharge) and IV (substantive due process) on the merits and with prejudice, holding that Plaintiffs failed to state either claim under applicable law. ECF No. 73 at 9, fn. 2, 15, & 32. The Court also dismissed all damages claims because Plaintiffs had not sued any defendant in her individual capacity, but permitted Plaintiffs to file an amended complaint alleging individual-capacity claims to save their prayer for damages. ECF No. 73 at 18-19. In the same order, the Court also denied Plaintiffs' class certification motion without prejudice. ECF No. 73 at 32.

The Court permitted one of Plaintiffs' claims to go forward: Count II, a claim that Defendants violated procedural due process by failing to effectuate Plaintiffs' CAP transfer orders within a reasonable time and without any process. ECF No. 73 at 11.

III.    **THE FIRST AMENDED COMPLAINT.**

Plaintiffs filed the FAC on October 30, 2023. ECF No. 77. The FAC also styles itself as a putative class action complaint and contains four counts, each titled the same as the original complaint; but the FAC makes several significant changes from the original complaint. *See generally* FAC. First, the FAC adds several Plaintiffs: Gardner, Peterson, Alexander, and Mallan, who are all alleged to be more recent additions to the CPS waitlist who are each allegedly still awaiting transfer to CPS. FAC ¶¶ 30-33. As allowed by the Court in its Order, Plaintiffs now also bring their claims against Defendants Harpstead and Johnston in their *individual* capacities, as well as their official capacities. *See* FAC.

The FAC makes several other changes throughout: editing certain inaccurate allegations about CPS's role in the reduction in custody process (FAC ¶ 19), adding additional allegations about contempt before the CAP (FAC ¶ 24), adding allegations about how waitlist movement proceeds (FAC ¶ 25), adding more allegations about Johnston and Harpstead's roles and management of CPS and the waitlist (FAC ¶¶ 34-38), and amending their asserted common questions for the putative class (FAC ¶ 42).

But the most salient of the FAC's changes are to the theories that undergird Plaintiffs' entire action. Plaintiffs now allege that, as a matter of law and fact, it is always unreasonable for Defendants to delay transfers to CPS for more than 30 days following the entry of a CAP transfer order. FAC ¶ 26. Along with that change, Plaintiffs have altered their specific theories on three claims.

## A. Count I – Writ Of Mandamus.

Plaintiffs do not make any substantive changes to Count I, other than to update the citation to *McDeid v. Johnston* with its reporter number and to insert the names of the new Plaintiffs.  FAC ¶¶ 51, 53.

## B. Count II – Procedural Due Process.

Despite the fact that the Court had allowed Count II to proceed, Plaintiffs amend key allegations within Count II.  The Court held that Count II had previously asserted a liberty interest in the "timely effectuation of the CAP Transfer Orders" and a substantial deprivation of that right due to the delay in transfer.  ECF No. 1-1 ¶¶ 46-47.

Now, in addition, Plaintiffs assert that their substantial deprivation involves being delayed in receiving reintegration and other "treatment necessary for their discharge." FAC ¶¶ 62-63.

## C. Count III – Procedural Due Process.

The Court had previously dismissed Count III with prejudice because it asserted, incorrectly, that it was impossible for Plaintiffs to be discharged prior to receiving reintegration treatment and a transfer to CPS.  ECF No. 73 at 9, fn. 2.

Now Plaintiffs instead say that it is "*functionally* impossible" to be discharged without first being transferred to CPS.  FAC ¶ 72 (emphasis added).  As in Count II, Plaintiffs allege this constitutes a substantial deprivation because it results in a delay in receiving reintegration and treatment which, they claim, is "necessary for their discharge." FAC ¶ 74.

### D. Count IV – Substantive Due Process.

The Court previously dismissed Count IV's substantive due process claim, holding that Plaintiffs had alleged they had a liberty interest in the effectuation of CAP transfer orders but: (1) there was no fundamental right to timely effectuation of CAP transfer orders; (2) Plaintiffs had not alleged conscience-shocking behavior; and (3) Plaintiffs did not allege Defendants had acted irrationally in a constitutional sense. ECF No. 73 at 15-18.

In the FAC, Plaintiffs now claim they have an interest protected by substantive due process "to be free from unreasonable restraint," and that Defendants infringed on that interest in failing to effectuate CAP transfer orders which provide them access to liberty and "treatment required for phase progression." FAC ¶ 83. Plaintiffs also allege that this conduct "evinces injurious intent, shocks the conscience, and interferes with the rights implicit in the concept of ordered liberty." FAC ¶ 84.

## STANDARD OF REVIEW

Rule 12(b)(6) eliminates actions that are fatally flawed in their legal premises, "streamlin[ing] litigation by dispensing with needless discovery and fact finding." *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party. *See Brotherhood of Maint. of Way Emp. v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001). However, to avoid dismissal, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 680-81

(2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see also Dubois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002) ("[A] complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claims[.]").

Importantly, the Court is "not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)). Similarly, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

As for claims under 42 U.S.C. § 1983, a plaintiff "must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

## ARGUMENT

Defendants move to dismiss the FAC under Fed. R. Civ. P. 12(b)(6) because it fails to state legally plausibly claims on which relief can be granted. Moreover, Count I suffers from a jurisdictional defect in violation of Fed. R. Civ. P. 12(b)(1) because Minnesota state courts have exclusive jurisdiction over state law mandamus actions. In addition, the Individual-Capacity Defendants are entitled to qualified immunity from damages because

they did not violate any clearly established right and cannot provide the injunctive relief Plaintiffs seek, so they must be dismissed.

## I. PLAINTIFFS DO NOT PLAUSIBLY PLEAD PROCEDURAL DUE PROCESS VIOLATIONS (COUNTS II & III).

The Fourteenth Amendment's Due Process Clause prohibits states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The procedural component of the Due Process Clause is reviewed in two steps: whether the plaintiff has been deprived of a protected liberty or property interest, and if so, what process is due to protect that interest. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). The question of what process should balance the nature of the interest affected, the likelihood of an erroneous deprivation, and the challenged program's' interest in providing the process it did. *Id.*

### A. Plaintiffs Still Do Not Seek Procedure, And Still Inappropriately Try To Create Constitutional Issues Out Of State Law.[1]

As Defendants argued in their motion to dismiss the original Complaint, both of Plaintiffs' procedural due process claims fail because they do not seek – and their alleged harm could not be remedied by – additional *procedures*. *See Carey v. Piphus*, 435 U.S. 247, 259-60 (1978); ECF No. 23 at 19-22; ECF No. 57 at 11-13. Instead, Plaintiffs double down on their allegation that any delay – now of over 30 days from the date of a transfer order – is *de facto* unconstitutional, regardless of procedures provided.

---

[1] Defendants understand that the Court rejected these arguments in its prior Order (ECF No. 73 at 14-15), but maintain them on the merits and, out of an abundance of caution, to preserve the arguments for potential appeal.

FAC ¶¶ 26, 42(g); *see also* FAC ¶¶ 33, Counts II & III (Plaintiff Mallan asserting procedural due process violations on October 30 with a transfer order date of October 25). This is not the stuff of a procedural due process claim, and for this reason alone, Plaintiffs' procedural due process claims should be dismissed.

Likewise, to the extent that Plaintiffs continue to assert in Count II a constitutionally-protected liberty interest in the timely effectuation of CAP transfer orders, that is a state law entitlement and not a constitutional issue. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("not every violation of state law or state-mandated procedures is a violation of the Constitution"). State law entitlements only implicate the federal Constitution to the extent those entitlements are "subject to specified factual findings." *Meis v. Gunter*, 906 F.2d 364, 386 (8th Cir. 1990).  Procedural due process, then, protects a plaintiff's right to process to determine *whether those factual predicates exist*, but does not protect the entitlement itself.  *Id.*  Here, Plaintiffs have already litigated the factual predicates of their right to transfer in their CAP proceedings, and they do not challenge the adequacy of that process in their Complaint.  FAC ¶¶ 20, 27-33.  Their challenge, instead, is to a right they allege is certain and determined – transfer within 30 days after receiving a judicial order.  FAC ¶ 61.  As the Eighth Circuit instructed in *Meis*, procedural due process has no interest in state law's direct commands.  906 F.2d at 368.  For this reason, too, Count II continues to fail as a matter of law.

**B.     Count II Now Alleges It Depends On A Right To Reintegration Treatment, But There Is No Constitutional Right To Treatment.**

Plaintiffs added key allegations to Count II of the FAC: now, they assert that the deprivation at issue is their lack of "access to treatment necessary for their discharge." FAC ¶¶ 62-63.[2]  But Plaintiffs, as class members in *Karsjens*, already litigated that exact point.  The operative complaint in *Karsjens* alleged that "Defendants are not providing Plaintiffs and Class members with constitutionally adequate treatment or with treatment, best adapted according to contemporary professional standards, to render further supervision unnecessary."  *Karsjens v. Harpstead*, No. 11-CV-03659 (DWF/TNL), Doc. 635 at 63 ¶ 245.  The District Court in *Karsjens* agreed, holding that access to treatment that would have a meaningful relationship to discharge from custody was a substantive due process right.  *Karsjens* Doc. 966, pp. 63-64 ¶¶ 34-35.  The Eighth Circuit reversed, holding in part that there is no "broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involvement confinement."  *Karsjens v. Piper*, 845 F.3d 394, 410 (8th Cir. 2017) (*"Karsjens I"*) (citing *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)); *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021) ("*Karsjens II*") (citing *Strutton* and *Karsjens I*); *Karsjens v. Harpstead*, 74 F.4th 561, 572 (8th Cir. 2023) ("*Karsjens III*") (citing *Strutton* and *Karsjens I* and *Karsjens II*).  Because there is no right to adequate

---

[2] In fact, the changes to Count II mirror the language in Count III from the original complaint.  *Compare* ECF No. 1-1 ¶¶ 58-59 *to* FAC ¶¶ 62-63 (both asserting a substantial deprivation from a delay in receiving "reintegration" which delays "access to the treatment necessary for [Plaintiffs'] discharge").  Count II can accordingly also be dismissed for the reasons set forth in section I(C) herein and the Court's prior Order (ECF No. 73 at 9, fn. 2).

treatment – reintegration or otherwise – Plaintiffs' new procedural due process theory in Count II fails on that basis.

Moreover, the doctrine of res judicata bars Plaintiffs from relitigating their right to treatment that would allegedly speed along their discharge.   Claim preclusion bars Plaintiffs from relitigating a claim when three elements are met: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the judgment was a final judgment on the merits of the claim; and (3) the same cause of action and the same parties or their privies were involved in both cases. *Wickner v. Rose*, No. 17-CV-1214 (DWF/DTS), 2019 WL 3976203, at *3 (D. Minn. July 3, 2019)*, report and recommendation adopted*, No. CV 17-1214 (DWF/DTS), 2019 WL 3975678 (D. Minn. Aug. 22, 2019) (citing *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990)).   Similarly, issue preclusion bars relitigation of issues that had previously been decided in similar circumstances. *Sandy Lake Band of Miss. Chippewa v. United States*, 715 F.3d 1098, 1102-03 (8th Cir. 2013). There is no dispute here that *Karsjens* was heard in this U.S. District Court and, on appeal, by the Eighth Circuit – courts competent to hear that matter.   Likewise, and as Defendants previously noted at ECF No. 23 at 6-8, *Karsjens* resulted in a merits dismissal of all claims. Plaintiffs were also parties in *Karsjens* as class members – Rud, in fact, was a named Plaintiff. *Id.*

And, as set forth above, the *Karsjens* Plaintiffs explicitly litigated whether they had a constitutional right to treatment that would lead to discharge (or, as they phrased it then, "to render further supervision unnecessary").   While in *Karsjens* Plaintiffs litigated their right-to-treatment claim under a substantive due process theory, res judicata bars claims

that could have been litigated in the prior action and "arise[] out of the same nucleus of operative facts as the prior claim." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990); *see also Murphy v. Jones*, 877 F.2d 682, 864-85 (8th Cir. 1989). Plaintiffs cannot seriously contend that they could not have litigated the exact same factual allegations they made in *Karsjens*, brought pursuant the same statutory cause of action, under a procedural due process theory as well. Because Plaintiffs have already litigated whether the Constitution provides them a right to treatment, reintegration and otherwise, and because the Eighth Circuit held that it does not, any changes to Count II should be dismissed to the extent they rest on that same allegation.

## C. Count III Of The FAC Fails For The Same Reason It Did Before: CPS Is Not Necessary For Discharge.

Plaintiffs' attempt to revive Count III rests on a semantic change that does not make a legal difference in the context of the Court's prior order. Plaintiffs' former Count III asserted that Plaintiffs had a protected liberty interest in transfer to CPS because they could only be discharged if they had successfully completed reintegration treatment, which they alleged was only available at CPS. ECF No. 1-1 at ¶ 57. The Court dismissed Count III because it took "judicial notice that a critical allegation in Count III is incorrect; patients can complete Phase III and be discharged without ever residing in CPS." ECF No. 73 at 9, fn. 2 (citing *In re: Braylock*, Appeal Panel No. AP15-9038, Order (Aug. 21, 2015) and *In re: Breland*, Appeal Panel No. AP15-9054, Order (Sept. 16, 2016)). The Court also took judicial notice of the fact that "there is also no statutory requirement that MSOP

patients complete reintegration treatment … before being discharged." *Id.* In light of those facts, the Court dismissed Count III for failing to state a claim. *Id.*

Plaintiffs now allege in Count III that it is "functionally impossible" for them to be discharged without first being transferred to CPS, which creates a liberty interest in that transfer. FAC ¶¶ 72, 74. First, that claim remains factually inaccurate: at least 15 MSOP clients have been provisionally discharged to the community and/or fully discharged without ever residing at CPS based on judicial records. *See, e.g., In re Braylock, supra; In re Breland, supra*; *In re: Mathews*, Appeal Panel No. AP15-9035, Order (Sept. 16, 2016); *In re: Barth*, Appeal Panel No. AP15-9061 (Oct. 17, 2017); *In re: Rask*, Appeal Panel No. AP17-9018, Order (June 25, 2018); *In re: Bolte*, Appeal Panel No. AP17-9007, Orders (June 29, 2018 and Feb. 19, 2019); *In re: Sweeden*, Appeal Panel No. AP18-9128, Order (July 24, 2019); *In re: Trosen*, Appeal Panel No. AP19-9081, Order (Jan. 3, 2020); *In re: Simpson*, Appeal Panel No. AP19-9032, Order (January 16, 2020); *In re: Bailey*, Appeal Panel No. AP20-9019 (Dec. 14, 2020); *In re: Coon*, Appeal Panel No. AP20-9001, Order (May 17, 2021) & No. AP22-9197, Order (July 3, 2023); *In re: Uselman*, Appeal Panel No. AP20-9027 (Sept. 8, 2021); *In re: Salinas*, Appeal Panel No. AP21-9094, Order (Sept. 29, 2021); *In re: Anderson*, Appeal Panel No. AP21-9195, Order (Feb. 2, 2022); *In re: Barnes*, Appeal Panel No. AP22-9096, Order (June 1, 2023). And Plaintiffs continue to ignore the statutory scheme at issue, which does not require, or even contemplate as a factor, residence at CPS or completing any particular treatment as a prerequisite for discharge. Minn. Stat. § 253D.31.

Second, Plaintiffs' equivocation regarding just how "required" CPS is for discharge is a distinction without a legal difference under the Court's prior order.  The change from incorrectly alleging absolute impossibility to "functional" impossibility does not change the fact that CPS is *not* statutorily or actually required as a prerequisite for discharge.  ECF No. 73 at 9, fn. 2.  Nor does Plaintiffs' bare conclusion of "functional" impossibility provide actual factual allegation to support it.  Because the Court dismissed Count III with prejudice previously on this basis, the Court should dismiss Count II once again for failing to state a claim, both as law-of-the-case and on the merits.  *See Alexander v. Jensen-Carter*, 711 F.3d 905, 909 (8th Cir. 2013) (law of the case provides that generally "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (quoting *Arizona v. California*, 460 U.S. 605 (1983)).

## II.   PLAINTIFFS' REVIVED COUNT IV STILL FAILS TO STATE A LEGALLY PLAUSIBLE SUBSTANTIVE DUE PROCESS CLAIM.

Plaintiffs add the allegation that they have a fundamental liberty interest in "free[dom] from unreasonable restraint" to revive their substantive due process claim.  *Compare* ECF No. 1-1 ¶ 68 *with* FAC ¶ 83.  But that attempt fails both because Plaintiffs already brought – and lost on – an unreasonable restraint claim in *Karsjens* and because they still fail to plausibly allege conscience-shocking behavior.

### A.   *Karsjens* Precludes Plaintiffs' Substantive Due Process Claim To Treatment, CPS, And Unreasonable Restraint.

Initially, Plaintiffs continue to allege that their substantive due process claim depends, in part, on "access to liberty and to treatment required for phase progression" at CPS.  FAC ¶ 83.  For the reasons Defendants argued in their earlier motion to dismiss

(ECF No. 23 at 6-8, 23-24), to the extent Plaintiffs reassert that they have fundamental liberty interests to either placement at CPS or treatment are precluded by *Karsjens*. The *Karsjens* Plaintiffs – including, as a class, every individual residing at MSOP, including Plaintiffs here – claimed that Defendants failed to provide constitutionally adequate treatment or to allow them to reside at CPS as a least-restrictive alternative. *Karsjens* Doc. 635 at 62-63 ¶¶ 244-25. The Eighth Circuit ruled that neither supported a valid substantive due process claim. *Karsjens I*, 845 F.3d at 410. The doctrine of res judicata bars Plaintiffs from litigating these claims again, and they should accordingly be dismissed. *See Sandy Lake Band*, 714 F.3d at 1102-03 (reciting the elements of res judicata).

The additional allegation in the FAC regarding unreasonable restraint does not fare any better when put up against *Karsjens.* Res judicata bars not only claims and issues that were *actually* litigated in a prior action, but those that arise from the same nucleus of fact and *could have been* litigated in the prior action. *Yankton Sioux*, 533 F.3d at 639. The general proposition that restraints, restrictions, and conditions within the secure perimeter of MSOP are impermissibly punitive was the sine qua non of *Karsjens*. *See, e.g., Karsjens II*, 988 F.3d at 1051-52. *Karsjens* also litigated whether MSOP clients had a constitutional right to be housed in the least restrictive facility at MSOP (CPS). *See Karsjens III*, 74 F.4th at 566-67. Those are functional synonyms to "unreasonable restraint," in theory if not in words. At best, the theory combines the idea that conditions within the secure perimeter are impermissibly punitive compared to the less-restrictive alternative that Plaintiffs are authorized to reside in at CPS. This combination was and in any event could have been advanced in *Karsjens*, as it arises from the same factual

circumstances litigated in *Karsjens*, and accordingly Plaintiffs are precluded from rearguing it here.

**B.    Plaintiffs Do Not Allege Their Transfer Delays Are Conscience-Shocking.**

Even if Plaintiffs' substantive due process claim is not *Karsjens*-barred, it fails to clear the hurdle set by the Court's prior order: it still does not plausibly allege that Defendants' conduct in delaying their transfer from the secured perimeter to CPS was conscience shocking.   ECF No. 73 at 15-18.   To establish a substantive due process violation, a plaintiff must allege that a fundamental right was violated, and that the defendant's conduct shocks the conscience.  *Stockely v. Joyce*, 963 F.3d 809, 818 (8th Cir. 2020).   A right is fundamental only if it is, objectively, "deeply rooted in this Nation's history and tradition."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).   "Only in the rare situation when state action is truly egregious and extraordinary will a substantive due process claim arise."  *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (quotation omitted).

The Court held that Plaintiffs' prior substantive due process claim regarding transfer to CPS failed, in part, because Plaintiffs did not have a deeply rooted right to be transferred from one location to another, even under the argument that this constituted an unlawful deprivation of their liberty.  ECF No. 73 at 16-17.  More fundamentally, though, the Court held that allegations that Defendants "[d]elay[ed] patients' transfer due to practical staffing and physical capacity limitations does not rise to the level of 'egregious' or 'extraordinary' state action" that would state a substantive due process claim.  *Id.* at 17.

16

Plaintiffs do nothing to distinguish their new allegations than those that failed earlier.  In fact, they add *more* allegations that the delay is due to insufficient beds, funding, and/or staff.  FAC ¶¶ 23 (alleging that there is not sufficient staffing or beds at CPS for immediate transfer for all waitlist clients), 25 (alleging that Defendant Johnston transfers clients to CPS promptly when a bed is available), and 38 (alleging that neither MSOP nor DHS has sufficient funds to expand capacity at CPS).  Those are the same reasons the Court previously dismissed Plaintiffs substantive due process claim.

True, Plaintiffs now also formulaically recite that Defendants' conduct "evinces deliberate injurious intent [and] shocks the conscience."  FAC ¶ 84.  But alleging labels and conclusions, without specific facts plausibly alleging conscience-shocking behavior, is not enough for a claim to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).  Both law of the case and an analysis of the merits dictate that Plaintiffs' substantive due process claim fails for the same reason it did before. *Alexander v. Jensen-Carter*, 711 F.3d at 909 (when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case).

**III.   PLAINTIFFS RUD AND HAUSFELD ARE PRECLUDED FROM RE-LITIGATING COUNTS I (MANDAMUS), III (PROCEDURAL DUE PROCESS) AND IV (SUBSTANTIVE DUE PROCESS).**

Additionally, Plaintiffs Rud and Hausfeld are precluded from re-litigating Counts I, III, and IV because the Court previously dismissed their claims with prejudice.  Claim preclusion bars a party from asserting a claim where: (1) there has been a final judgment on the merits of a cause of action; (2) the court that issued the judgment was of competent jurisdiction; (3) the person seeking to preclude the claim was a party (or in privy to a party)

in the first action; and (4) the claim sought to be precluded was actually litigated or could have been offered in the first litigation. *Yankton Sioux Tribe v. U.S. Dep't of Health and Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008). Dismissal with prejudice has the effect of a final judgment on the merits. *Graham v. Mentor Worldwide, LLC*, 998 F.3d 800, 804 (8th Cir. 2021).

Plaintiff Rud and Hausfeld were actual parties who asserted Counts I, III, and IV previously; the Court is clearly one of competent jurisdiction; and the Court dismissed those claims with prejudice in its Order at ECF No. 73, so those three factors are easily met. And while Plaintiffs now shift theories in Counts III and IV, they are the same causes of action as previously brought and their new allegations spring from the same nucleus of fact and theory that were previously asserted. Accordingly, Plaintiffs Rud and Hausfeld are precluded from re-asserting those claims; Counts I, III, and IV should be dismissed as to them.

## IV. PLAINTIFFS' MANDAMUS CLAIM (COUNT I) SHOULD BE DISMISSED.

The new Plaintiffs – Gardner, Peterson, Alexander, and Mallan – have also renewed the request that Plaintiff Rud initially made in the original complaint for a writ of mandamus. "Mandamus is an extraordinary remedy." *Duncan v. Roy*, 830 N.W.2d 48, 51 (Minn. Ct. App. 2013). Courts may only issue mandamus relief under Minnesota law where: (1) an official fails to exercise "a duty imposed by law"; (2) as a result, the petitioner is "injured by a public wrong"; and (3) no adequate alternative legal remedy exists. *Chanhassen Chiropractic Ctr., P.A. v. City of Chanhassen*, 663 N.W.2d 559, 562 (Minn. Ct. App. 2003). For both the reasons Defendants previously argued and because this Court

has no authority under Minnesota statute to issue a writ under state law, Count I should be dismissed.

### A.  This Court Has No Authority To Issue The Writ.

First, federal courts have neither the jurisdiction nor statutory authority to issue a mandamus writ under Minnesota law. Plaintiffs explicitly bring their mandamus claim under Minnesota state statute.  FAC ¶ 50.  Under Minnesota law, "'[t]he authority to issue a writ of mandamus is statutory.'"  *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 171 (Minn. 2006) (quoting *State v. Wilson*, 632 N.W.2d 225, 227 (Minn. 2001)); *see* Minn. Stat. §§ 586.01-586.12.  With exceptions that are not relevant to Plaintiffs' claims, the statute vests Minnesota state district courts with "*exclusive* original jurisdiction in all cases of mandamus[.]"  Minn. Stat. § 586.11  (emphasis added). Accordingly, this Court does not have jurisdiction to entertain Plaintiffs' mandamus request or issue a writ of mandamus, as another court in this District has recently observed. *Chairse, et al. v. State of Minn. Dep't of Human Servs., et al.*, Order at 21-22, No. 23-CV-355 (ECT/ECW), Doc. 47 (Sept. 14, 2023).

Nor can this Court use federal law to accomplish Plaintiffs' request for a writ. Federal district courts only possess jurisdiction to issue a writ of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 23 U.S.C. § 1361; they do not have jurisdiction "to issue a writ of mandamus compelling a *state* actor to act."  *Herbert v. Winona Cnty.*, 111 F. Supp. 3d 970, 975 (D. Minn. 2015); *see also Rivera v. State of Minnesota*, No. 22-CV-1129 (KMM/BRT),

2022 WL 4298745, at *1 (D. Minn. Sept. 19, 2022) (same).  Because this Court does not have jurisdiction to issue Plaintiffs' writ, Count I should be dismissed.

**B.    Even If The Court Had Jurisdiction, Plaintiffs Have Not Shown They Are Entitled To A Writ.**

Defendants previously argued, at length, why a writ of mandamus is inappropriate under the facts Plaintiffs alleged, and Plaintiffs have not changed the substance of their mandamus claim in the FAC.  ECF No. 23 at 10-16.  Because neither Plaintiffs' theory nor the arguments have changed, Defendants do not rehash that argument in full.  Briefly, Plaintiffs' mandamus claim fails for at least three reasons: (1) under the terms of their own complaint, Plaintiffs have adequate alternative legal remedies;  (2) neither Minnesota statute nor Minnesota courts' opinions in *McDeid* are sufficiently clear regarding when Defendants have a "duty" to transfer Plaintiffs; and (3) Plaintiffs do not plead funding availability.

First, Plaintiffs mandamus claim fails because they affirmatively plead and have received adequate alternative legal remedy.  A plaintiff seeking a writ of mandamus must show that there is no "plain, speedy, and adequate remedy in the ordinary course of law." *Madison Equities, Inc. v. Crockarell*, 889 N.W.2d 568, 574 (Minn. 2017) (citing Minn. Stat. § 586.02).  Here, Plaintiffs affirmatively identify an adequate alternative remedy: contempt.  Specifically, Plaintiff Gardner has commenced a contempt proceeding against the Commissioner to attempt to compel compliance with his transfer order.  FAC ¶ 30. While Plaintiffs allege it is "unclear" what the CAP can order Defendants to do in a contempt proceeding (FAC ¶ 24), such an allegation belies reality.  The CAP has the same

authority to enter orders and enforce its orders as this Court, or any court, does.  Per the terms of Plaintiffs complaint, contempt is an adequate, speedy, alternative proceeding.

Similarly, Plaintiff Rud sought – and received – a preliminary injunction earlier in this case that compelled his immediate transfer.  ECF No. 35.  That preliminary injunction was awarded pursuant to his § 1983 claims.  *Id.*  That, too, is a speedy adequate alternative remedy that Plaintiffs ostensibly believe was appropriately granted, and precludes an award of mandamus.   Because Plaintiffs have alternative adequate legal remedies, their mandamus claim fails.

Second, as set forth more fully below in section V(A), Defendants have no guidance – from any CAP transfer order, *McDeid*, or any other source of law – regarding under what circumstances a transfer delay is reasonable or not.  A court may issue a writ of mandamus "only when the petitioner has shown the existence of a legal right to the act demanded which is so clear and complete as not to admit any reasonable controversy."  *Day v. Wright Cnty.*, 391 N.W.2d 32, 34 (Minn. Ct. App. 1986).  Here, courts have held that whether a delay is unreasonable – and accordingly, a violation of law – is a question of fact that depends on individual circumstances.  *McDeid*, 984 N.W.2d at 868.  Questions of specific factual circumstances, on which no guidance has ever been entered, is not "so clear and complete" as to place that timing beyond controversy; accordingly, Plaintiffs have not shown they are entitled to a writ of mandamus.

Finally, as Defendants argued in their previous motion, lack of available funding is a complete defense to a petition for a writ of mandamus.  *Powell v. Carlos Twp.*, 255 N.W. 296, 297 (Minn. 1929).  If a writ does not show on its face that it appears funding

is available, a writ should be denied.  *State ex rel. Traeger v. Carleton*, 64 N.W.2d 776, 779 (Minn. 1954).  Plaintiffs do not plead funding availability – instead, Plaintiffs' allegations indicate the opposite.  FAC ¶ 36 (indicating that there are not sufficient funds from the legislature); FAC ¶ 37 (noting that insufficient funds have been allocated to MSOP to expand CPS).  Because Plaintiffs acknowledge Defendants do not currently have sufficient funds to accomplish the act they seek to compel in their writ, their mandamus claim must be dismissed.

## V.  CLAIMS AGAINST THE INDIVIDUAL-CAPACITY DEFENDANTS MUST BE DISMISSED.

To the extent that any claims survive this motion, those claims should be dismissed as to the Individual-Capacity Defendants.  First, both Individual-Capacity Defendants are entitled to qualified immunity from damages.  Second, Plaintiffs do not sufficiently allege facts showing that Defendant Harpstead was plausibly personally involved in the delay of their transfer, and accordingly claims against her must be dismissed.  Third, injunctive and mandamus relief do not properly lie against Defendants sued in their individual capacities.

### A.  Because No Legal Authority Establishes When Or In What Circumstances A Transfer Delay Becomes Unreasonable, Defendants Are Entitled To Qualified Immunity from Damages.[3]

Both Individual-Capacity Defendants are entitled to qualified immunity because Plaintiff's allegations do not show that Defendants violated any clearly established due

---

[3] As the Court previously recognized, sovereign immunity bars damages claims against the Official-Capacity Defendants.  ECF No. 73 at 18 (citing *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997)).  Accordingly, if the Individual-Capacity Defendants are entitled to qualified immunity, damages must be dismissed entirely.

process right at the time the alleged conduct occurred. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982) (citation omitted). Courts consider both "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, *such that a reasonable official would have known that the acts were unlawful*." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013) (emphasis added). Qualified immunity is analyzed by applying an "objective legal reasonableness" standard, *Anderson v. Creighton*, 483 U.S. 635, 639 (1987), and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986)

For a constitutional right to be clearly established, that right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . [T]he unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[E]xisting precedent must have placed the statutory or constitutional question *beyond debate*." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted) (emphasis added). To be clearly established, the right must be defined with a sufficient level of particularity to provide a defendant "'fair and clear warning of what the Constitution requires.'" *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 617 (2015) (quoting *al-Kidd*, 563 U.S. at 746 (Kennedy, J., concurring)). A right is clearly

23

established when there is "'controlling authority' or a 'robust consensus of cases' of persuasive authority." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *al-Kidd*, 563 U.S. at 741-42) (quotes internal to *al-Kidd* omitted)). "While there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular conduct 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742)) (emphasis in original).

First, as set forth in detail above, Plaintiffs have not alleged any constitutional violation. This alone is enough to grant Defendants qualified immunity. *See Person v. Callahan*, 555 U.S. 223, 236 (2009) (holding that while it is not mandatory to determine the first prong of qualified immunity first, it is "often beneficial").

Second, Plaintiffs also do not allege (and cannot allege) that any controlling or persuasive precedent gave the Individual-Capacity Defendants fair notice that they were violating due process principles by allegedly delaying Plaintiffs' transfer in the circumstances alleged in the FAC. Plaintiffs provide few specific allegations about the circumstances of their transfer delays: they allege the amount of time they have been purportedly delayed, ranging from almost 10 months at the longest to no delay[4] at the time of filing at the shortest (FAC ¶¶ 27-33); that clients are transferred to CPS in chronological

---

[4] Per Minnesota statute and the FAC's allegations, transfer orders do not become effective and accordingly transfer cannot be "delayed" until 15 days after those orders are entered. FAC ¶ 22; Minn. Stat. § 253D.28, subd. 3. At the time the FAC was filed on October 30, Peterson and Mallan's transfer orders were still within that 15-day period.

order based on the date of their transfer order (FAC ¶ 25); that the client at the top of the waiting list is transferred to MSOP "within several days" of a bed becoming available at CPS (FAC ¶ 25); that CPS lacks sufficient staffing and/or beds (FAC ¶ 23); and that Defendants have "taken no action to secure the required beds" for CPS over the course of several years (FAC ¶ 34).

But Defendants are aware of no court case from any court that describes circumstances under which delaying a civilly committed person's transfer from a razor-wire secured facility to a non-secure state-run custodial facility violates the constitution. Defendants are certainly not aware of any case law finding that 10-month-or-less delay in such transfer, accompanied by affirmative factual allegations about a lack of staffing and beds that prevent all waitlisted clients from being immediately transferred, is unconstitutional.[5] Instead, Plaintiffs point only to the Minnesota state court case *McDeid v. Johnston*.[6] *See, e.g.,* FAC ¶ 61. But no opinion or order from any of the

---

[5] Elsewhere, Plaintiffs state that they believe that a transfer must be accomplished within 30 days of a CAP order for transfer being issued in order for Defendants' conduct to be reasonable. FAC ¶ 26). Defendants are similarly not aware of any case law holding a 30-day delay in a transfer to a less-secure custodial facility is unreasonable, and Plaintiffs point to none.

[6] One Plaintiff – Gardner – alleges that he has filed a contempt motion against Defendant Harpstead to determine whether Harpstead is violating his transfer order. FAC ¶ 24. But Gardner affirmatively pleads that, while the CAP found he had made a *prima facie* showing for contempt sufficient to proceed with an evidentiary hearing on the issue, the CAP has not issued an order holding Defendants or anyone else in contempt. (*Id.*) In any case, any argument that a state contempt order is grounds to deny qualified immunity runs into the same problem as Plaintiff's arguments on the merits: a violation of a state court order does not coextensively prove a *constitutional* violation, as the Minnesota Supreme Court recognized in its *McDeid* opinion. *See McDeid II*, 984 N.W.2d 865, 879 (Minn. 2023) ("We remand to the court of appeals to address whether the State Officials' clear obligation to transfer the Patients to CPS within a reasonable time following a CAP transfer order

courts to have issued one in the *McDeid* case provides or cites a factual barometer by which Individual-Capacity Defendants could measure at what point they have committed a constitutional violation.

The delays at issue in *McDeid* far exceed the delays alleged by Plaintiffs here as a matter of time – over 2 years as compared to less than 10 months (even assuming that all other circumstances that inform the reasonableness of a delay are the same between this case and *McDeid* – an assumption that Plaintiffs have not pleaded). *McDeid v. Johnston*, 984 N.W.2d 864, 870 (Minn. 2023) ("*McDeid II*"). Neither the Minnesota Supreme Court nor the Court of Appeals held that, as a matter of law, those 2+-year delays violate the Constitution. *See McDeid II*, 984 N.W.2d 864; *see also McDeid v. Johnston*, A21-0042, A21-0043, 2023 WL 4417496 (Minn. Ct. App. July 10, 2023) ("*McDeid III*"). *McDeid*'s equivocation regarding a delay that over *doubled* the time of any of Plaintiffs' alleged delays does not put "beyond question" that these much shorter delays violate the Constitution.

Compare, for example, *McDeid*'s core holding with the Fourth Amendment. Both proclaim that "unreasonableness" is a key component of the constitutional inquiry: an unreasonable delay in transfer would violate a CAP transfer order and may implicate procedural due process, *McDeid II*, 984 N.W.2d at 879 & *McDeid III*, 2023 WL 4417496 at *4, and an unreasonable seizure violates the Fourth Amendment, U.S. Const. amend. IV.

---

gives rise to a federal due process right and, accordingly, whether the State Officials' failure to do so (assuming, as we must at this stage, that the Patients can ultimately prove that failure) is a violation of the Patients' federal constitutional rights sufficient to support a section 1983 claim.").

But it is well established that the language of the Fourth Amendment alone is not enough to deny a state official qualified immunity. *Al-Kidd*, 563 U.S. at 742. Instead, Courts require precedent in which very factually similar specific conduct – an arrest in similar circumstances, supported by the same justification, for example – has been previously *held unreasonable* so as to violate the Fourth Amendment. *See, e.g., al-Kidd*, 563 U.S. at 741-42.

Here, *McDeid*'s proclamation that unreasonable delays in the effectuation of CAP transfer orders without some unidentified procedure may violate the procedural due process clause sets a broad principle of constitutional law. But, like the Fourth Amendment's, *McDeid*'s broad principle does not provide the factual guidance necessary to show Individual-Capacity Defendants that the particular conduct alleged in the FAC would violate that principle. Because there is no controlling or persuasive authority that establishes what circumstances surrounding a transfer delay would result in a constitutional violation – or that holds similar delays to Plaintiffs' alleged delays are unconstitutional – the Court should grant Individual-Plaintiffs qualified immunity from damages[7].

---

[7] Moreover, Plaintiffs Rud and Hausfeld were both transferred *before McDeid III* held that allegations of a delay in transfer to CPS could even state a procedural due process claim. *See* FAC ¶¶ 27 (noting Rud was transferred on April 11, 2023) & 29 (noting Hausfeld was transferred on November 8, 2022); *McDeid II*, 984 N.W.2d at 879 (remanding the question of whether a constitutional right is implicated by transfer to the Court of Appeals on February 1, 2023); *McDeid III*, 2023 WL 4417496 (holding plaintiffs stated a procedural due process claim under § 1983 on July 10, 2023). Individual-Capacity Defendants are certainly entitled to qualified immunity on Rud and Hausfeld's damages claims because no case had held a constitutional right even existed at the time of their alleged delays.

**B.    Plaintiffs Do Not Plausibly Allege Harpstead's Personal Involvement.**

Defendant Harpstead should also be dismissed in her individual capacity because Plaintiffs have failed to plausibly allege her personal involvement in any of the conduct they allege violates the Fourteenth Amendment.  "In a civil rights action, the 'plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution.'"  *Geiger v. Minn. Dep't of Human Servs.*, Civ No. 13-2140 (JRT/LIB), 2013 WL 5596599 at *3 (D. Minn. Oct. 11, 2013) (quoting *Iqbal*, 556 U.S. at 676)); *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (affirming dismissal of complaint based on failure to allege personal involvement by defendants).  An individual-capacity defendant's liability cannot be established absent "a causal link to, and direct responsibility for, the deprivation of rights."  *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quotation omitted).

Plaintiffs do not raise any concrete allegations about Harpstead's personal involvement in the allegedly unconstitutional conduct.  At most, she is broadly alleged to have the authority to "direct … decisions made by Johnston and others at MSOP," "agree[] with decisions made by others," have an awareness that Plaintiffs are allegedly not being transferred after receiving transfer orders, and failed to sufficiently request or allocate funding to MSOP for MSOP to expand CPS.  ECF No. 77 at ¶¶ 10, 37-38.  But allegations of "general responsibility for supervising the operations" of DHS do not "establish [the] personal involvement" necessary to support a claim for deprivation of Constitutional rights.  *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).  Nor do Plaintiffs conclusory allegations that such failures "personally violate Plaintiffs' … constitutional rights and

authorize others to do the same" plausibly state the *specific* factual circumstances necessary to attach individual liability to Defendant Harpstead.   *Clemmons*, 477 F.3d at 967; ECF No. 77 at ¶ 38.   *See also Dahl v. Weber*, 580 F.3d 730, 734 (8th Cir. 2009) (holding an official with general supervisory authority was not personally liable under § 1983 where the official received and accepted service of a lawsuit naming him because the official did not have the statutory duty to investigate the circumstances at issue).   Because Harpstead is not alleged to be directly or personally responsible for facilitating Plaintiffs' transfers between MSOP facilities, constitutional claims against her in her individual capacity should be dismissed.

### C.   Injunctive Relief Is Not Available Against Individual-Capacity Defendants.

"Section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."   *Hines v. Smith*, No. 16-cv-3797 (DSD/SER), 2018 WL 7050674, *3 (D. Minn. Dec. 20, 2018) (quoting *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005)), report and recommendation adopted by 2019 WL 234778 (D. Minn. Jan. 16, 2019).   Similarly, mandamus relief only lies against a state official acting in their official capacity.   *See, e.g., Chanhassen Chiropractic Ctr., P.A. v. City of Chanhassen*, 663 N.W.2d 559, 562 (Minn. Ct. App. 2003).   Accordingly, Plaintiffs cannot seek injunctive or mandamus relief against either Defendant in her individual capacity.   Because Individual-Capacity Defendants are immune from damages and injunctive relief cannot be ordered against them in their

individual capacities, the Individual-Capacity Defendants should be dismissed from this matter.

## CONCLUSION

Like much of Plaintiffs' original complaint, their First Amended Complaint fails to state a claim on which relief can be granted.  Individual-Capacity Defendants are entitled to qualified immunity from damages.  Moreover, Plaintiffs' theory-shifting cannot save their claims from the legally deficiencies the Court previously identified in Counts III & IV.  Count I asks for relief beyond the jurisdiction of this Court and, in any case, fails to allege the requirements for a writ of mandamus to issue.  And Count II, which previously survived, now pleads a right to treatment that has been foreclosed by the Eighth Circuit. The FAC should be dismissed in its entirety.

Dated:  December 1, 2023.               Respectfully submitted,

                                        KEITH ELLISON
                                        Attorney General
                                        State of Minnesota

                                        *s/ Emily B. Anderson*
                                        AARON WINTER
                                        Assistant Attorney General
                                        Atty. Reg. No. 0390914

                                        EMILY B. ANDERSON
                                        Assistant Attorney General
                                        Atty. Reg. No. 0399272

                                        JACQUELINE CLAYTON
                                        Assistant Attorney General
                                        Atty. Reg. No. 0504082

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1374 (Voice)
(651) 282-5832 (Fax)
aaron.winter@ag.state.mn.us
emily.anderson@ag.state.mn.us
jacqueline.clayton@ag.state.mn.us

*Attorneys for Defendants*

#5625707-v1