## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, Brian Keith Hausfeld, Joshua Adam Gardner, Dwane David Peterson, Lynell Dupree Alexander, and Andrew Gary Mallan, on behalf of themselves and all others similarly situated, | Court File No. 0:23-cv-00486-JRT-LIB |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS** |
| Nancy Johnston, Executive Director, Minnesota Sex Offender Program, and Jodi Harpstead, Department of Human Services Commissioner, *in their individual and official capacities,* | |
| Defendants. | |

## INTRODUCTION

Plaintiffs' initial class action complaint was removed to this District Court on March 1, 2023, [ECF No. 1] and Defendants timely filed a motion to dismiss which the Court granted in part and denied in part. [ECF No. 73]. The Court granted Defendants' motion as to all of Plaintiffs' damages claims but gave Plaintiffs an opportunity to replead claims against Defendants in their individual capacities. [ECF No. 73 at 18–19, 32].

Plaintiffs filed their First Amended Class Action Complaint (the "FAC") on October 30, 2023. [ECF No. 77]. In their FAC, Plaintiffs alleged the same counts against Defendants, but did so in both their official and individual capacities.[1] [*Id.*] The FAC also

---

[1] Although Plaintiffs do not expect the Court to rule differently as to Plaintiffs' official-capacity claims, they replead them in the FAC to avoid a claim that they voluntarily dismissed them.

named additional class representatives as Plaintiffs. Defendants now move to dismiss Plaintiffs' FAC based on substantially the same grounds as their first motion. For the following reasons, the Court should deny Defendants' Motion.

## BACKGROUND

Plaintiffs brought their original complaint against Defendants in their official capacities, seeking injunctive relief and damages on four counts:

- Count I: Petition for Writ of Mandamus

- Count II: Procedural Due Process

- Count III: Procedural Due Process

- Count IV: Substantive Due Process

[ECF No. 1-1]. In the Order on Defendants' first motion to dismiss, the Court (1) dismissed counts I, III, and IV with prejudice; (2) granted dismissal *without prejudice* as to all claims for damages; and (3) denied dismissal of Plaintiffs' procedural due process claim in count II. [ECF No. 73 at p. 32]. In granting dismissal of Plaintiffs' damages claims, the Court granted leave to amend to add claims against Defendants in their individual capacities. [*Id.*] Count I was dismissed only because counsel waived the mandamus claim as moot because by that time the Court entered the temporary injunction requiring transfer, Rud already had been transferred to CPS. [ECF No. 73 at 7].

In the FAC, Plaintiffs again seek injunctive relief and damages on the same four counts, but the FAC brings those counts against Defendants in both their official and

individual capacities.[2] [FAC, ECF No. 77 at 18–24]. The FAC includes additional allegations substantiating Plaintiffs' individual-capacity claims against Defendants and adds four additional putative class representatives as Plaintiffs.

In their latest motion, Defendants seek to add new arguments and to reargue and bolster their previous arguments already rejected by the Court. To be clear, Plaintiffs do not seek to re-litigate issues already decided by the Court.[3] Defendants' latest motion to dismiss essentially only raises two new narrow and straightforward issues for the Court: (1) whether Plaintiffs plausibly plead a claim for a Writ of Mandamus on behalf of Plaintiffs Gardner, Peterson, Alexander, Mallan, and the Awaiting Transfer Class they seek to represent; and, (2) whether Plaintiffs plausibly plead a claim for damages under section 1983 against Defendants in their individual capacities.

## ARGUMENT

### I.    Official Capacity Claims

As stated above, the Court has already ruled on Plaintiffs' claims against Defendants in their official capacities, and Plaintiffs do not seek a second bite on counts III or IV. But the Court previously dismissed count I – a Petition for Writ of Mandamus – because counsel for Plaintiffs waived that claim as moot as to the then-current Plaintiffs Rud and Hausfeld. [ECF No. 73 at 7]. Because the Awaiting Admission Class is represented by the

---

[2] Defendants wrongly suggest that Plaintiffs seek injunctive relief against Defendants in their individual capacities.

[3] To be clear, Plaintiffs expect the Court to dismiss Counts III and IV for the same reasons as before and reallege them only to avoid any suggestion that Plaintiffs voluntarily abandoned those claims.

new Plaintiffs Joshua Gardner, Dwane Peterson, Lynell Alexander, and Andrew Mallan –

all of whom await transfer to CPS with valid, final state court orders from the Commitment

Appeal Panel ("CAP"). Plaintiffs' mandamus claim is no longer moot.[4]

In their latest motion to dismiss, Defendants raise the new argument that the federal

court lacks jurisdiction to enforce Minnesota's mandamus statute. This argument fails for

two key reasons.

First, Defendants' unstated premise—that a state statute can deprive a federal court

of jurisdiction—is simply incorrect. "A federal court's authority to exercise jurisdiction is

defined by the sources of the court's power, the Constitution and federal statutory grants

of jurisdiction, not the acts of state legislatures." *Wong v. Minnesota Dep't of Hum. Servs.*,

820 F.3d 922, 931 (8th Cir. 2016). A "state right 'cannot be withdrawn from the cognizance

of a Federal court by any provision of State legislation that it shall only be enforced in a

State court.'" *Id.* (quoting *Ry. Co. v. Whitton's Adm'r*, 80 U.S. 270, 286 (1871) (observing

that it is a long-established principle that "a state statute cannot proscribe or limit federal

jurisdiction")); *see also Kaibel v. Mun. Bldg. Comm'n*, 829 F. Supp. 2d 779, 786 (D. Minn.

2011) ("The Court finds that Plaintiffs are entitled to the issuance of an alternative writ of

mandamus.").

28 U.S.C. § 1367 authorizes the Court to exercise supplemental jurisdiction

"[e]xcept as . . . expressly provided otherwise by *Federal* statute." (emphasis added).

---

[4] Although it is not clear, to the extent that Defendants reassert their prior arguments for
dismissal of Plaintiffs' petition for a writ of mandamus, Plaintiffs rely on their prior
briefing. [*See* Pltfs.' Mem., ECF No. 51 at 8–17].

4

Defendants have not cited any federal law that would deprive this Court of the power to issue relief under Minnesota's mandamus statute, nor have they cited any authority for the proposition that a state statute creating a cause of action can deprive the federal court of exercising supplemental jurisdiction over the same.[5]

Second, even if Defendants argument that a state could limit federal jurisdiction had merit, the statutory section Defendants cite makes clear that the Minnesota legislature did not do so here. Defendants cite Minn. Stat. § 586.11 to emphasize its use of the term "exclusive" jurisdiction. [Defs.' Mem., ECF No. 96 at 19]. Read in context, it is clear that in using the term "exclusive," the legislature did not intend to deprive the federal court of jurisdiction (even if it had the power to do so). Section 586.11 deals not with federal court jurisdiction but instead, addresses situations where the mandamus petition is directed at a district court, appellate court or a judge from one of those courts. *Id.* Contrary to Defendants' representation, Minn. Stat. § 586.11 does not even mention "*Minnesota state district courts.*" [Defs.' Mem., ECF No. 96 at 19].

Accordingly, this Court has jurisdiction to grant relief under Minnesota's mandamus statute, and for the reasons Plaintiffs provided in their memorandum in opposition to Defendants' first motion to dismiss, the Court should grant that relief as to Plaintiffs

---

[5] Defendants' sole authority for this argument is a district court order issued in *Chairse v. State of Minn. Dep't of Human Servs.*, No. 23-cv-355, ECF No. 47 (D. Minn. Sept. 14, 2023). In the final paragraph of that order, the Court specifically observed that "[t]he parties have not addressed" whether the district court has the authority to order mandamus relief under the statute, noted only that the Court "doubted" that it had such authority "based on its text." *Id.* at 22. The *Chairse* Court's dicta – without the benefit of any briefing – is contrary to controlling law and not persuasive.

Gardner, Peterson, Alexander, Mallan, and the putative Awaiting Admission Class. [*See* Pltfs.' Mem., ECF No. 51 at 8–17].

## II.   Individual Capacity Claims

### A.   Qualified Immunity

Defendants' primary argument for dismissal of Plaintiffs' individual-capacity claims is that they are entitled to qualified immunity.

> To determine whether an official is entitled to qualified immunity, courts consider (1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful.

*Northland Baptist Church v. Walz*, 530 F. Supp. 3d 790, 806 (D. Minn. 2021), *aff'd sub nom. Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365 (8th Cir. 2022). **Defendants violated constitutional rights.**

Defendants admit that this Court already ruled that Plaintiffs plausibly plead a violation of their due process rights. [Defs.' Mem., ECF No. 96 at 8 n.1 ("Defendants understand that the Court rejected these arguments in its prior Order . . . .")][6]. For purposes of qualified immunity, Defendants do *not* even attempt to argue that Defendant Johnston was not personally involved in the violative conduct. Rather, they only argue Plaintiffs have not alleged sufficient personal involvement of Defendant Harpstead in the acts that caused the violations. Defendants' summary of Plaintiffs' allegations is woefully

---

[6] To the extent that Defendants "maintain [these arguments] on the merits," Plaintiffs rest on their prior briefing. [*Id.*]

incomplete.  To be clear, Defendants never argue that Plaintiffs rights were, in fact, not violated.

But Plaintiffs have alleged sufficient personal involvement for Defendant Harpstead as well as Johnson.  For example, Plaintiffs allege that "as Commissioner, Harpstead has the authority to direct and/or countermand decisions made by Johnston and others at MSOP." [FAC, ECF No. 77 at ¶ 9]. . Plaintiffs further allege that Defendant Johnston informed Defendant Harpstead "fully about the valid court orders and the decisions not to comply with those orders," and that Harpstead:

> agreed with decisions made by others and failed to take action to protect the statutory, common law and constitutional rights of Plaintiffs and others at MSOP with valid state court transfer orders. She could have, for example, increased pay rates at CPS to increase staffing, and transferred funds from other DHS departments to add staff and/or space. Harpstead's actions and inactions, both in her individual and official capacity, violated the constitutional, statutory, and common law rights of Plaintiffs and others and injured them.

[*Id.*] Plaintiffs also allege that "Defendant Harpstead is statutorily responsible for maintaining MSOP," that she "has personally been held in contempt of court" for failing to transfer individuals to CPS, and that she "authorize[s] others to do the same." [*Id.* at ¶¶ 37–38]. Despite Defendants' argument to the contrary, Plaintiffs allege far more than "general responsibility for supervising the operations" or that Defendant Harpstead "personally violate[s] Plaintiffs' constitutional rights." [Defs.' Mem., ECF No. 96 at 28]. Taking these allegations as true and in the light most favorable to Plaintiffs, they more than plausibly allege Defendant Harpstead's personal involvement in the failure to transfer patients to CPS.

Even assuming that Defendant Harpstead was "not involved in day-to-day operations, [her] personal involvement may be found if [she] is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). The facts in the Amended Complaint plausibly allege that Defendant Harpstead "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to" Plaintiffs. *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (quotations omitted). These factual allegations make Harpstead's personal involvement highly likely; far more than the plausibility standard required by current law.

### i.   The rights Defendants violated were clearly established.

Defendants also argue that the constitutional rights they are alleged to have violated were not clearly established right because there is no precedent "clearly on point." Plaintiffs have already thoroughly briefed, and the Court has already agreed, that the Minnesota Supreme Court's opinion in *McDeid* recognizes a *clearly established* a right for MSOP patients to be transferred to CPS within a reasonable time after their court orders for transfer become final. [Order, ECF No. 73 at 11 (recognizing that the Minnesota Supreme Court answered the question "whether MSOP patients have a clearly established right to timely implementation of CAP transfer orders" in the affirmative)].

Defendants argue that *McDeid* only recognized a right to transfer within a reasonable time, and without specifying what amount of time is "reasonable," there is no

8

"factual barometer" by which Defendants can know they have committed a constitutional violation. Defendants' argument is an attempt to nullify the Minnesota Supreme Court's holding in *McDeid* and ignores this Court's prior ruling. To argue that a delay in transfer cannot violate a clearly established right unless there is authority on how much of a delay is unreasonable, is to argue that *McDeid* recognized no clearly established right at all. But as this Court recognized, the right to transfer within a reasonable time *is* the clearly established right, and "any factual issues about the reasonableness of their delays are determinations ill-suited for the motion to dismiss stage." [Order, ECF No. 73 at 15]; *McDeid v. Johnston*, 984 N.W.2d 864, 877 (Minn. 2023) ("The question we must address is whether it was clearly established that the Patients had a right to a transfer to CPS within a reasonable time following the final decision of the CAP that such a transfer was appropriate. We conclude that the answer to that question is 'Yes' . . . ."). If Defendants are correct that they are entitled to dismissal at the pleading stage on qualified immunity grounds, then no case would ever be able to set the "factual barometer" they assert is necessary to overcome qualified immunity.[7] Although this may be the result Defendants would prefer, it is for this reason that this Court and the *McDeid* court have already recognized that the reasonableness determination is "ill-suited for the motion to dismiss stage." [Order, ECF No. 73 at 15]; *McDeid*, 984 N.W.2d at 879 (assuming "as we must at

---

[7] Defendants also contradict themselves. They attempt to distinguish *McDeid* by stating that the delays in that case were longer than those found here so *McDeid* should not apply but then rely on *McDeid* for their claims of qualified immunity because *McDeid* did not decide when a failure to obey court orders becomes unreasonable,. [Defs.' Mem. at 26].

this stage, that the Patients can ultimately prove" that the defendants failed to transfer them to CPS in a reasonable time).

*McDeid* did not *establish* the right to be transferred within a reasonable time, it *recognized* that such a right *had been* clearly established "as a matter of longstanding precedent in Minnesota, both from our court and the Eighth Circuit." *McDeid*, 984 N.W.2d at 877. Defendants should not enjoy qualified immunity because no specific case has found "that 10-month-or-less delay in such transfer, accompanied by affirmative factual allegations about a lack of staffing and beds that prevent all waitlisted clients from being immediately transferred, is unconstitutional." [Defs.' Mem., ECF No. 96 at 25]. *Walz*, 530 F. Supp. 3d at 806 ("A 'clearly established' right does not require a case directly on point."). "[T]he key inquiry is whether the state actor had fair warning that the conduct violated a right." *Id.* Defendants had more than sufficient warning that their continuous practice of depriving patients of a reduction in custody for months or years after a court order has found them entitled to the same violates their rights, Not only did they have notice based on *McDeid*, this Court already held that Plaintiff Rud was likely to succeed on his claim that Defendants violated his procedural due process rights by failing to transfer him to CPS less than ten months after his transfer order became effective. [Order, ECF No. 35 at 17–18]. As such, there is no exclude for their failure to timely transfer the new Named Plaintiffs.

The named Plaintiffs in this case were deprived or are currently being deprived of transfer to CPS for periods of time ranging from approximately seven weeks to over ten

months, and Defendants have consistently demonstrated that they will deprive patients—

putative class members in this case—for far longer. [*E.g.*, Gustafson Decl., Ex. A (Kerry

Lenz denied transfer for over two years). In any event, Plaintiffs have clearly pleaded

enough at this pleading stage to avoid the application of qualified immunity based on a

claim that a specific deadline must be found in prior case law. If that were so, *McDeid*

would be eviscerated and the cases upon which *McDeid* relies would mean nothing.

Regardless of exactly when a delay in transfer becomes unreasonable for purposes of

*McDeid* and qualified immunity, Plaintiffs have inarguably pleaded that Defendants have

and will continue to cross that threshold here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' Motion to Dismiss Plaintiffs' Complaint.

Dated: December 22, 2023                    **GUSTAFSON GLUEK PLLC**

*/s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
Joseph E. Nelson (#402378)
Matt Jacobs (#403465)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-333-8844
Fax: 612-339-6622
dgustafson@gustafsongluek.com
jnelson@gustafsongluek.com
mjacobs@gustafsongluek.com

**FREMSTAD LAW**
Hannah L. Scheidecker (#0401987)
3003 32nd Ave. S., Ste. 240
Fargo, ND 58103
(701) 478-7620
hannah@fremstadlaw.com

***Attorneys for Plaintiffs and the Proposed
Classes***