# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, Brian Keith Hausfeld, Joshua Adam Gardner, Dwane David Peterson, Lynell Dupree Alexander, and Andrew Gary Mallan, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Nancy Johnston, Executive Director, Minnesota Sex Offender Program; and Jodi Harpstead, Department of Human Services Commissioner, *in their individual and official capacities*,<br><br>　　　　Defendants. | Court File No. 0:23-cv-00486-JRT-LIB<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND EVIDENTIARY HEARING** |

## INTRODUCTION

Plaintiffs Joshua Adam Gardner ("Gardner"), Dwane David Peterson ("Peterson"), Lynell Dupree Alexander ("Alexander"), and Andrew Gary Mallan ("Mallan") (collectively "Plaintiffs") seek a preliminary injunction pursuant to Rule 65(a) requiring Defendants to follow the final and not appealed transfer orders issued by the Minnesota state court Commitment Appeal Panel ("CAP"), as well as an evidentiary hearing in support such motion.

This Court already granted a preliminary injunction for Plaintiff Rud. [Order, ECF No. 35]. This motion is brought on behalf of the new Plaintiffs and should be granted because it is in all material respects identical to the prior motion: (1) Plaintiffs and the potential class members have no adequate legal remedy; (2) are currently suffering

irreparable harm without a preliminary injunction; and (3) because this Court has already granted a nearly identical motion, these Plaintiffs are likely to succeed on the merits.

## BACKGROUND

Plaintiffs are patients civilly committed to the Minnesota Sex Offender Program ("MSOP") in the care and custody of the Department of Human Services ("DHS") under Minn. Stat. §§ 253D.01-.36. Defendants Jody Harpstead, the Commissioner of DHS (the "Commissioner") and Nancy Johnston, the MSOP Executive Director ("Johnston")[1] have exclusive authority over general operational decisions and treatment decisions and are required to "provide specialized sex offender . . . treatment," including "community-based services and programs, [and] transition services." Minn. Stat. §§ 246B.01-4.

Per the policies and practices of MSOP, all patients must complete three phases of treatment in order to be supported by MSOP for provisional or total discharge. In the vast majority of cases, the first two phases take place at the high-security, prison-like facilities at Moose Lake, although a few are also treated inside a secured perimeter at St. Peter, Minnesota. After patients have completed Phase II, they may petition for a reduction in custody and transfer to Community Preparation Services ("CPS"), which is an admittedly less restrictive environment outside of the secured perimeter in St. Peter. Phase III treatment, which includes reintegration treatment, is only available at CPS. Transfer to CPS is statutorily designated as a "reduction in custody." Minn. Stat. § 253D.27, subd. 1(b).

---

[1] In Plaintiffs' First Amended Complaint, the Commissioner and Johnston are sued individually and in their official capacity. [ECF No. 77 at 1].

MSOP patients' petitions for a reduction in custody come before a Special Review Board (the "SRB"). The SRB makes recommendations on whether transfer is appropriate and issues a report to the CAP recommending approval or denial of the petition. Minn. Stat. § 253D.29, subd. 1. The CAP has exclusive authority to authorize reductions in custody for MSOP patients. Minn. Stat. § 253D.27, subd. 4. An aggrieved party may petition CAP for reconsideration of an SRB recommendation. Minn. Stat. § 253D.28, subd. 1(a). If no petition for reconsideration is filed, the CAP may either issue an order adopting the SRB recommendations or set the matter for hearing. Minn. Stat. § 253D.28, subd. 2(e). The final decision of the CAP may be appealed to the Minnesota Court of Appeals. Minn. Stat. § 253B.19, subd. 5.

If a CAP transfer order is not appealed, it becomes mandatory after 15 days. Minn. Stat. § 253D.28, subd. 3. According to the plain language of the statute, as well as Minnesota courts, the Commissioner and MSOP Executive Director have no discretion in determining if or when CAP transfer orders for reduction are effective and operational. *See McDeid v. Johnston*, 984 N.W.2d 864, 878-79 (Minn. 2023) (reversing lower court's finding of qualified immunity for failure to effectuate CPS transfers, finding "under the plain terms of the statute, if (as here) a CAP transfer order was not appealed, it became effective and operational after 15 days following the issuance"); *In re the Civil Commitment of Steven Loren Edwards*, Appeal Panel File No. AP21-9015 (Minn. Ct. App. 31, 2022) ("*Edwards*") (finding prima facie evidence of Defendant Johnston's contempt of court where "[t]he Commissioner was aware of the obligation to transfer Mr. Edwards to CPS within a reasonable time," but failed to do so for nearly a year) (Gustafson Decl., Ex.

3

A at 4); *In the Matter of the Civil Commitment of Al Stone Folson*, Appeal Panel File No. AP19-9153 (Minn. Ct. App. Dec. 2, 2021) ("*Folson*") (observing that the CAP "noted in the April 2020 Order for Transfer that the Panel's transfer order becomes effective 15 days after the statutorily prescribed stay," and stating "[t]hat transfer shall occur within a reasonable time frame was not a suggestion or an authorization that it is now okay for the Commissioner to someday comply with the Panel's Order granting a reduction in custody.") (Gustafson Decl., Ex. B at 6).

## **FACTS**

As the Court knows, Plaintiff James John Rud ("Rud") was civilly committed to the MSOP on July 2, 2009. Following the procedures set forth in Minn. Stat. § 253B.22, Plaintiff Rud petitioned for reduction in custody on June 26, 2020. The SRB issued an order recommending his transfer to CPS on July 12, 2021. The Commissioner did not petition the CAP for reconsideration of the transfer recommendation, and the CAP adopted the SRB recommendation. The Commissioner did not appeal the CAP order to the Minnesota Court of Appeals, and the CAP transfer order was effective as of June 6, 2022. The Court granted Rud's motion for a temporary injunction ordering transfer and on April 11, 2023 – just over 10 months after the CAP ordered his transfer to CPS – Defendants transferred Plaintiff Rud to CPS.[2]

---

[2] Although this Court entered an injunction ordering MSOP to transfer Rud, and while that order was on appeal to the Eighth Circuit, Defendants stated that Rud was transferred in the normal course of business. Subsequently, the Eighth Circuit dismiss the appeal as moot. [ECF No. 64].

4

Much like Rud, Gardner is civilly committed to the MSOP in the care and custody of DHS indefinitely. He petitioned for a reduction in custody and on April 21, 2022, the SRB recommended his transfer to CPS. The Commissioner did not file a motion for reconsideration and on May 5, 2023, the CAP issued an order for Gardner's transfer from the high-security Moose Lake facility to CPS. The Commissioner did not appeal the CAP order and it became effective May 20, 2023. Despite the passage of time, Gardner remains at Moose Lake—not—CPS and he has not been provided any procedural process to challenge the Defendants' refusal to comply with the final CAP order. This delay in transfer continues to affect his liberty and his eventual release into the community. As a result, he is and continues to be irreparably injured by Defendants' conduct.

Plaintiff Peterson is civilly committed to the MSOP in the care and custody of DHS indefinitely. He petitioned for a reduction in custody and on February 16, 2023, the SRB recommended his transfer to CPS. The Commissioner did not oppose transfer and on October 16, 2023, the CAP issued an order for Peterson's transfer from the high-security St. Peter facility to CPS. The Commissioner did not appeal the CAP order and it became effective on October 31, 2023. Despite the passage of time, Peterson remains at the secure St. Peter facility—not CPS—and he has not been provided any procedural process to challenge the Defendants' refusal to comply with the final CAP order. This delay in transfer continues to affect his liberty and to delay his eventual release into the community. As a result, he is and continues to be irreparably injured by Defendants' conduct.

Plaintiff Alexander is civilly committed to the MSOP in the care and custody of DHS indefinitely. He petitioned for a reduction in custody and on December 20, 2021, the

5

SRB recommended his transfer to CPS. The Commissioner did not file a motion for reconsideration and on July 11, 2023, the CAP issued an order for Alexander's transfer from the high-security Moose Lake facility to CPS. The Commissioner did not appeal the CAP order and it became effective on July 26, 2023. Despite the passage of time, Alexander remains at Moose Lake—not CPS—and he has not been provided any procedural process to challenge the Defendants refusal to comply with the final CAP order. This delay in transfer continues to affect his liberty and to delay his eventual release into the community. As a result, he is and continues to be irreparably injured by Defendants' conduct.

Plaintiff Mallan is civilly committed to the MSOP in the care and custody of DHS indefinitely. He petitioned for a reduction in custody and on September 11, 2023, the SRB recommended his transfer to CPS. The Commissioner did not file a motion for reconsideration and on October 25, 2023, the CAP issued an order for Mallan's transfer from the high-security Moose Lake facility CPS. The Commissioner did not appeal the CAP order and it became effective on November 9, 2023. Despite the passage of time, Mallan remains at Moose Lake—not CPS—and he has not been provided any procedural process to challenge the Defendants' refusal to comply with the final CAP order. This delay in transfer continues to affect his liberty and to delay his eventual release into the community. As a result, he is and continues to be irreparably injured by the Defendants' conduct.

Plaintiffs now bring a motion for an evidentiary hearing to support their motion for preliminary injunction requiring the MSOP to transfer Plaintiffs currently awaiting transfer after a valid, final CAP order. Because Defendants refuse to participate in discovery

pending a ruling on their motion to stay discovery, Plaintiffs seek a prompt evidentiary hearing to produce a more robust record to support their injunction motion. At the hearing, Plaintiffs intend to call one or two witnesses from MSOP to establish that the only reason these MSOP patients are not being timely transferred is because MSOP lacks staffed beds in which to place them. But that defense cannot justify a deprivation of the patients' constitutional right to liberty and their statutory right (another basis for liberty here) to transfer to CPS—an admittedly less restrictive facility.

For all the following reasons and based on the undisputed allegations in Plaintiffs' First Amended Complaint and the evidence produced at the upcoming evidentiary hearing, the Court should grant Plaintiffs' motions and order Defendants to comply with the existing state law orders immediately.

## ARGUMENT

**A. As to Plaintiffs Gardner and Alexander, the law of the case doctrine (and issue preclusion) warrants granting a preliminary injunction for immediate transfer.**

The law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the case." *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). "This doctrine 'prevents the relitigation of settled of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency.'" *Maxfield v. Cintas Corp., No. 2*, 487 F.3d 1132, 1135 (8th Cir. 2007) (quoting

7

*Little Earth of the United Tribes, Inc.*, 807 F.2d at 1441). The law of the case doctrine applies only to issues already decided.

The Court should apply the law-of-the-case doctrine to Plaintiffs Gardner and Alexander. As Your Honor is aware, this Court issued an injunction ordering the transfer of Plaintiff Rud after his order of transfer was just over 10 months old and yet Defendants refused to comply with that order. Plaintiffs Gardner (waiting for nearly 8 months) and Alexander (waiting for over 5 months) are in a similar factual and the same legal position—currently waiting for transfer to CPS despite final, valid court orders for many months. There is no question—as this Court decided in the case of Plaintiff Rud—that delay this long does not fall within the "reasonable time" described in *McDeid* as a matter of law.[3]

---

[3] Although issue preclusion would not normally apply to a preliminary injunction (because it is temporary and not final), this injunction is different because it is appealable and therefore could become final as that term is used in issue preclusion law. If the Court thinks of these cases as individual (as there is no class certified) issue preclusion may apply as it refers to the effect of a judgment in foreclosing relitigation of a matter that has already been litigated and decided. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Like the law-of-the-case doctrine, the issue preclusion doctrine serves several important purposes, chief among them being "conserve[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quotation omitted). Issue preclusion has five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same issue as involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. *E.g.*, *Sandy Lake Ban of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102–03 (8th Cir. 2013). The factors that apply are easily met. First, the Defendants are the same and the issue is the same. The issue—reasonableness of the delay—was vigorously litigated in *Rud* and the issue was necessary to decide the motion. Finally, the matter was final and not subject to further appeal once the Eighth Circuit dismissed the appeal as moot. That these

### B. The *Dataphase* factors strongly favor plaintiffs' motion for the same reasons that this court set out in Rud.

When evaluating the propriety of a preliminary injunction, a district court considers the four "*Dataphase* factors:" "(1) the threat of irreparable harm to the movant, (2) the balance between this harm and the injury that the injunction will inflict on other parties, (3) the probability that the movant will succeed on the merits and (4) the public interest." *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921 (D. Minn. 2016) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). The third factor—the probability of success on the merits—is the predominant factor. *Id.*

The analyses for the first, third, and fourth factors remain identical to the Court's analysis for Rud. Plaintiffs previously briefed this matter in full and the Court fully explained its reasoning in its order granting Rud injunctive relief. Specifically, under the first *Dataphase* factor, the Court found that Rud demonstrated irreparable harm by showing that Defendants' failure to transfer him to CPS denied him access to the "resources available in CPS that patients otherwise lack" and the greater liberty afforded to patients in CPS. [Order, ECF No. 35 at 18-19]. In addition, the CAP has now issued at least one

---

are different plaintiffs makes no difference. *See, e.g.*, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 332–33 (1979) (applying offensive collateral estoppel because the defendant had a full, fair opportunity to litigate the issue and every incentive to do so). Additionally, the preclusive effect of the prior injunction would not apply to Plaintiffs' case-in-chief, but to a subsequent motion for the same relief. *See John Morrell & Co. v. Loc. Union 304A*, 913 F.2d 544, 563 (8th Cir. 1990) ("[F]inality in the context of issue preclusion may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." (quotation omitted)).

order in an unrelated case detailing the irreparable harm caused by the failure to transfer these MSOP patients timely. *In the Matter of the Civil Commitment of Kerry Mitchell Lenz*, Appeal Panel File No. AP19-9091 (Minn. Ct. App. June 19, 2020) ("Lenz") (observing that Defendants' "failure to transfer as court ordered has denied Petitioner two years of treatment in a more appropriate setting that could have prepared him for provisional discharge and discharge" and "deprived [him] of the treatment opportunities and liberties of CPS. He was offered no deinstitutionalization opportunities . . .[and] denied the therapeutic milieu at CPS," and agreeing this was "patently unfair") (Gustafson Decl., Ex. C, at 5–6). Regarding the third factor, the Court found Rud was "likely to succeed on the merits of his procedural due process claim."[4] [Order, ECF No. 35 at 17]. The same is true here as the facts are undisputed. MSOP simply ignores the CAP orders and offers its patients (Plaintiffs here) absolutely no process by which to challenge the Defendants decision making or conduct.

Under the fourth factor, the Court found it was in the public interest for state officials to follow the CAP's binding orders approving MSOP patients for transfer to CPS, and for patients so-approved to have access to CPS resources to help "safely reintegrate[e] them back into the community." [*Id.* at 21]. Although the prior Eighth Circuit case law said as much, *McDeid* certainly made that clear. *McDeid v. Johnston*, 984 N.W.2d 864, 877 (Minn. 2023) (concluding, "as a matter of longstanding precedent in Minnesota, both from our

---

[4] Indeed, Defendants acknowledge that the Court found Plaintiffs plausibly alleged a procedural due process claim when it denied in part their motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). [Mot., ECF No. 94 at 3]

10

court and the Eighth Circuit," that "it was clearly established that the Patients had a right to a transfer to CPS within a reasonable time following the final decision of the CAP").

No material circumstances have changed for purposes of this motion. Plaintiffs, like Rud, were approved for transfer to CPS months ago, yet remain in MSOP's high-security setting, deprived of access to the resources and greater liberties available to them at CPS. Undoubtedly, this delay in turn delays when patients will be discharged. [*See Lenz* at 6–10 (noting that the fact discharge was inappropriate for the patient "was due, in large part, to the Commissioner's failure to transfer him to a more open facility as ordered")]. Plaintiffs, like Rud, have an underlying liberty or property interest in timely transfer to CPS which has been denied them without due process. And the public interest that applied to Rud remains identical for Plaintiffs' transfer: ensuring state officials comply with binding courts orders and placing patients in the appropriate treatment setting to facilitate their transition back to the community.

The only arguable differences between Rud's motion and the instant motion, and therefore the only issue before the Court, concern the second *Dataphase* factor. Specifically, Rud had been waiting for transfer to CPS for approximately ten months, whereas Plaintiffs Gardner and Alexander have been waiting for nearly eight and over five months respectively. Additionally, the Court rejected Defendants' arguments regarding their burdens on the grounds that one additional patient would not materially affect the patient-to-staff ratio. Here, Plaintiffs seek the immediate admission of two additional patients and two more after an evidentiary hearing to demonstrate the *Dataphase* factors

11

for the two Plaintiffs currently delayed less time. As argued below, neither of these minor differences in details should change the Court's analysis or conclusion.

Before granting Rud relief, the Court considered and rejected the weight Defendants ascribed to their asserted harms: that transferring Rud to CPS would exceed MSOP's physical and staffing limits, that exceeding those limits presented security concerns, and that Rud's transfer would negatively impact MSOP staff, patients, and the people of Minnesota. [Order, ECF No. 35 at 20]. The Court concluded those asserted harms did not outweigh Rud's: that each day awaiting transfer constituted a loss of "the resources and less-restrictive environment available at CPS." The Court specifically rejected Defendants' claims regarding physical and staffing limits and their claimed security concerns, noting that Rud's transfer to CPS "would only marginally increase the population for CPS, thus not substantially disturbing the existing patient to staff ratio." [*Id.* at 20–21].

Plaintiffs request the transfer of two individuals to CPS and seek an evidentiary hearing as to the facts necessary to support the transfer of additional Plaintiffs. If the transfer of one patient to CPS did not portend the harms Defendants claimed, there can be no serious argument that transferring two patients does either. Because the second *Dataphase* factor also militates in Plaintiffs' favor, the Court should grant Plaintiffs injunctive relief in the form of ordering their immediate transfer to CPS.

## CONCLUSION

Based on the undisputed facts in the First Amended Complaint, Plaintiffs Alexander and Gardner have met their burden to prove the need for a preliminary injunction. Plaintiffs seek an evidentiary hearing to bolster that record and to put forth a record for the remaining

Plaintiffs. Accordingly, Plaintiffs' motion for an evidentiary hearing and a temporary injunction should be granted.

| | |
|---|---|
| Dated: January 3, 2024 | */s/Daniel E. Gustafson*<br>Daniel E. Gustafson (#202241)<br>Joseph E. Nelson (#402378)<br>Matthew Jacobs (#403465)<br>**GUSTAFSON GLUEK PLLC**<br>Canadian Pacific Plaza<br>120 South Sixth Street, Suite 2600<br>Minneapolis, Minnesota 55402<br>Telephone: 612-333-8844<br>Fax: 612-339-6622<br>dgustafson@gustafsongluek.com<br>jnelson@gustafsongluek.com<br>mjacobs@gustafsongluek.com<br><br>***Attorneys for Plaintiffs and the Proposed Classes*** |