# EXHIBIT A



October 31, 2022

OFFICE OF
APPELLATE COURTS

# STATE OF MINNESOTA
# COMMITMENT APPEAL PANEL

## COUNTY OF DAKOTA

Appeal Panel File No.: AP21-9015

Dakota County File No.: 19HA-PR-10-32

---

In the Matter of the Civil Commitment of:

Steven Loren Edwards.

**FINDINGS AND ORDER SETTING AN
EVIDENTIARY HEARING ON
CONTEMPT**

---

This matter came on for hearing before the Panel on a Motion for Contempt filed August 22, 2022.  The Commissioner field a response to the motion on September 23, 2022, and the matter was set for hearing on October 10, 2022.   The hearing was held from the Hennepin County Government Center, in Minneapolis Minnesota.  The Panel was composed of the Hon. Jay M. Quam, the Hon. Gail Chang Bohr, and the Hon. Lawrence Clark.

The following remote appearances[1] were made at the hearing on October 10, 2022:

> Steven Edwards, movant
> Daniel Kufus, counsel for Mr. Edwards
> Leonard Schweich, Asst Atty General and counsel for the Commissioner
> Jessica Bierwerth, Asst Dakota County Attorney

---

[1] All appearances were remote pursuant to a Minnesota Supreme Court Administrative Order.  *See Continuing Operations of the Minnesota Judicial Branch*, No. ADM 20-8001 (Minn. filed April 19, 2022) (providing that "The panel may conduct any proceedings or hearings using remote technology.")  The Chief Judge was in the courtroom in Minneapolis.  All others, including two Panel Judges, were remote via ITV/Zoom.

Also in attendance at the hearing were Sarah Steenhoek, Department of Human Services (DHS) counsel, and Nancy Johnston, Executive Director of the Minnesota Sex Offender Program (MSOP).

Based on the motion and response filed, the arguments of counsel, the affidavits on file, and the file, records, and proceedings thus far, the Panel make the following:

## FINDINGS OF FACT

1. A strong prima facie showing of contempt has been made for failure to transfer in accordance with the Panel Order dated March 23, 2022. There is no factual dispute that Mr. Edwards has not transferred and remains in the secure perimeter at the Minnesota Sex Offender Program (MSOP).

2. The Panel Order dated March 23, 2022, granted Mr. Edwards' petition for transfer and stayed the Panel Order for 15 days, pursuant to Minn. Stat. § 253D.28, subd. 3. The Panel Order further stated that "The transfer shall occur within a reasonable time after the expiration of the statutory stay."

3. It has now been 219 days since the expiration of the statutory stay.

4. The Panel does not lose sight of the fact that, in this matter, Mr. Edwards initially petitioned for a reduction in custody on January 26, 2020, over two and a half years ago. The Special Review Board recommended granting transfer on January 14, 2021, over one and a half years ago. The Order for Transfer was issued on March 23, 2022. Nevertheless, Mr. Edwards still sits behind the razor wire at MSOP, with no anticipated transfer date communicated to him. After all this time Mr. Edwards could

justifiably believe the reduction in custody he worked so hard toward is essentially meaningless.

5. The Panel finds that the requirements for contempt are satisfied. *See Mower Cty. Human Servs. on Behalf of Swancutt v. Swancutt,* 551 N.W.2d 219, 223 (Minn. 1996) (*citing Hopp v. Hopp*, 156 N.W.2d 212, 216–17 (Minn. 1968)).

   a. The Panel finds that the Panel, as the ordering court, had jurisdiction and subject matter over the person.

   b. The Panel finds that the March 23, 2022, Order for Transfer clearly defined the acts to be performed by the Commissioner.[2]

   c. The Commissioner is a party to these proceedings.

   d. The Commissioner had notice of the Panel's March 23, 2022, Order for Transfer and a reasonable time within which to comply. Given the interests at stake, (90) days at most is a reasonable time.

   e. Mr. Edwards was adversely affected by failure to comply with the March 23, 2022 Order for Transfer and has applied to the court for aid in compelling performance giving specific grounds for the complaint, namely that the

---

[2] The Commissioner was aware of the obligation to transfer Mr. Edwards to CPS within a reasonable time. This matter is not akin to *Mr. Streak, Inc. v. Sandquist Steaks, Inc.*, 245 N.W.2d 837, 838 (Minn. 1976), wherein a court order merely acknowledged the parties' privately negotiated breach of contract compromise and was not sufficiently directive to support contempt proceedings. In this matter specifically the Commissioner had asked the Panel to reconsider and remove the directive that transfer "shall occur within a reasonable time." The Panel declined by Order dated May 26, 2022.

Commissioner has filed to transfer Mr. Edwards to Community Preparation

Services (CPS) as ordered.

6. The Panel shall set this matter for an Evidentiary Hearing on the motion for contempt

for failure to transfer Mr. Edwards pursuant to the March 23, 2022, Order for

Transfer, so that the party charged with nonperformance will be given an opportunity

to show compliance or inability to comply despite a good faith effort.

7. The Evidentiary Hearing shall take place on a date and time scheduled by the Clerk of

Appellate Court's Office.  Pending the Evidentiary Hearing, the Commissioner

through counsel shall  inform the Panel as to the status of the transfer as ordered

below.

8. Although the Commissioner points to the Legislature as the roadblock to transfer and

has made attempts to secure additional Legislative funding, the Commissioner is a

party to the proceedings and statutorily required to effectuate the reduction in

custody.  Unlike prior contempt motions, the Commissioner is making more efforts to

reduce the waitlist for transfer, but by their own admission these efforts will be

insufficient to eliminate the waitlist for transfer.

9. There are currently only 139 transfer beds available, which are all filled.  Based on

the availability of beds and the current staffing levels, there are at least 24 clients

awaiting transfer to CPS, which directly impacts clients' ability to remain motivated

for treatment and move successfully toward provisional discharge.  Mr. Edwards is

7th on the waiting list for transfer.  Even once full staffing is achieved and all beds are

open, there will still be at minimum four (4) MSOP clients on the waiting list for

transfer to CPS.

10. Whether good faith efforts were made will inform the Panel's determination as to

what sanction is necessary to secure compliance with the Order.  *See Hopp*, *supra*, at

173.  The burden of proving good faith efforts and the inability to comply is on the

Commissioner, not a threshold showing to be made by the civilly committed client

with a valid transfer order in hand.  *Id*. at 175.  *Accord Schubel v. Schubel*, 584

N.W.2d 434, 436 (Minn. Ct. App. 1998) ("At the second stage of contempt

proceedings, the contemnor has the opportunity to show compliance or a good faith

effort to comply when contempt was first adjudicated.") (*citing Mahady v. Mahady*,

448 N.W.2d 888, 891 (Minn. Ct. App. 1989)).

Based on the above Findings of Fact, the Panel makes the following Order:

**IT IS HEREBY ORDERED:**

1.      That an Evidentiary Hearing on the Motion for Contempt (Second Stage

Contempt Hearing) shall be held on a date and time scheduled by the Clerk of Appellate Court's

Office.  The Clerk of Appellate Court's Office shall hold a scheduling conference and set the

matter for hearing before a Panel consisting of the Hon. Jay Quam, the Hon. Gail Chang Bohr,

and the Hon. Lawrence Clark.

2.      The Commissioner through counsel shall file status updates with the Panel on the

following schedule, indicating the progress made on transferring Mr. Edwards to CPS.   The

updates shall consist of a signed affidavit by the Commissioner, a Deputy Commissioner, or the

MSOP Executive Director as to the anticipated date of transfer for Mr. Edwards, including the status of staffing for the additional 20 beds and any other impediments to the transfer.  Counsel shall file the status updates on the following dates:

      a.  November 14, 2022

      b.  November 28, 2022

      c.  December 12, 2022

      d.  December 27, 2022

      e.  January 9, 2023

      f.  And every two weeks thereafter until the Evidentiary Hearing is held.

3.     Failure to comply with this order may result in additional sanctions.

**BY THE PANEL**:

_____
Hon. Jay M. Quam
Judge of District Court and Panel Chief

Gail Chang Bohr
Senior Judge of District Court

Clark, Lawrence
2022.10.28
12:12:58 -05'00'
_____
Hon. Lawrence Clark
Senior Judge of District Court

# EXHIBIT B



**STATE OF MINNESOTA**
**COUNTY OF RAMSEY**

**COMMITMENT APPEAL PANEL**

December 2, 2021

OFFICE OF
APPELLATE COURTS

Appeal Panel File No. AP19-9153
County File No. 62-MN-PR-06-267

In the Matter of the Civil Commitment of:

Al Stone Folson.                                             **CONTEMPT ORDER**

---

The matter came before the Commitment Appeal Panel at the Dakota County Northern

Service Center, West St. Paul, Minnesota, upon a motion for contempt filed February 22, 2021,

for failure to comply with the Panel Order for Transfer dated April 10, 2020.  The Panel heard

the matter concerning contempt by remote hearing on May 14, 2021, and September 29, 2021.

At the hearings, the following appearances were made:

> Al Stone Folson, Petitioner
> Richard Mattox, counsel for Petitioner
> Aaron Winter, Assistant Attorney General, counsel for Commissioner of Human Services
> Margaret Galvin, Assistant County Attorney, counsel for Ramsey County

At the motion hearing on May 14, 2021, the Commissioner asked the Panel to forgo

making a finding of contempt and setting purge conditions and requested instead that the matter

be set for an evidentiary hearing.

At the evidentiary hearing on September 29, 2021, the Commissioner called one witness

to testify, Nancy Johnston, Executive Director of the Minnesota Sex Offender Program (MSOP).

The Commissioner did not appear personally.  The Commissioner offered two exhibits: Exhibit 1

– a Satellite view of St. Peter Regional Treatment Center and Exhibit 2 – State of Minnesota

2022 Preliminary Capital Budget Requests Human Services Projects Summary and Project Narrative.  Exhibits 1 and 2 were received by the Panel.

At the close of the September 29, 2021, hearing, the parties asked for a briefing schedule, with final submissions due November 19, 2021.  The Panel received the Commissioner's Supplemental Response to Notice of Motion and Motion filed on October 29, 2021, and the Petitioner's Motion for Contempt of Court Response filed on November 5, 2021.

The Panel had previously received the Commissioner's Response to the Notice of Motion and Motion for Contempt of Court, the Declaration of Aaron Winter o/b/o the Commissioner of Human Services, and the Declaration of Nancy Johnston, filed on April 30, 2021.  The Panel also received correspondence regarding Supplemental Authority Regarding Motion for Contempt, an unpublished opinion filed by the Commissioner on August 5, 2021.  *See Ricky Lee McDeid, Appellant (A21-0042), Shane P. Garry, Appellant (A21-0043), v. Nancy Johnston, CEO/Dir., Minnesota Sex Offender Program, et al., Respondents*, 2021 WL 3277218 (Minn. App. Aug. 2, 2021) (unpublished) (certiorari granted Oct. 27, 2021).

Based upon the Panel's April 2020 Order for Transfer, the motion for contempt filed February 2021, the evidence adduced, the arguments and submissions of counsel, and the entire file, records, and proceedings in this matter, the Panel makes the following:

**FINDINGS OF CONTEMPT**

***Order for Transfer***

1. The Commitment Appeal Panel issued a Findings of Fact, Conclusions of Law, and Order for Transfer dated April 10, 2020, and docketed April 13, 2020 ("April 2020 Order for Transfer") finding that Petitioner satisfied the statutory criteria for a transfer and ordered that Petitioner receive the reduction in custody as provided for by statute.

2

2. The April 2020 Order for Transfer ordered that "Petitioner's petition for transfer to Community Preparation Services (CPS) is hereby **GRANTED**.  The entry of this order granting Petitioner's petition for transfer to a less restrictive facility is hereby **STAYED** for 15 days, pursuant to Minn. Stat. § 253D.28, subd. 3."

3. In the April 2020 Order for Transfer, the Panel noted that the statute does not require transfer to CPS per se, but that CPS was on the only transfer option that the Department of Human Services (DHS) has created for those civilly committed to MSOP as Sexually Dangerous Persons (SDP) and/or Sexual Psychopathic Personalities (SPP), such as Petitioner.  *See Commitment of Ince,* 847 N.W.2d 13, 28 (Minn. 2014) (Justice Page, concurring) (recognizing that DHS has chosen to make MSOP the only option available for those indeterminately civilly committed as SDP and/or SPP).

4. By its express terms and in accordance with the statute, the Panel's April 2020 Order for Transfer became a final order on April 28, 2020.  *See* Minn. Stat. § 253B.19, subd. 3.

***Reasonable time to comply with the Order for Transfer***

5. It is reasonable that the Panel's April 2020 Order for Transfer would have been effectuated within 90 days of the effective date of the Order for Transfer, which would have provided the Commissioner 105 days to effectuate the transfer.

6. At present, 611 days have passed since the April 2020 Order for Transfer became effective and the Commissioner has not complied with the April 2020 Order for Transfer.  There is no factual dispute that Petitioner has not been transferred to CPS or its equivalent and that he remains inside the secure perimeter of MSOP.

7. At present, the Commissioner has not provided Petitioner a specific date when the transfer to CPS is anticipated.  Nancy Johnston, MSOP Executive Director, testified that MSOP

anticipates opening another 20 CPS beds no later than January 1, 2022, and that they anticipate another 79 beds will be habitable in a renovated Bartlett Hall by April 2022, but Ms. Johnston made no assurances that Petitioner would be transferred even by April 2022, two years after the April 2020 Order for Transfer.

***Lack of good faith efforts to comply with the Order for Transfer***

8.  The only good faith efforts toward transfer proffered by the Commissioner and the MSOP Executive Director were that bonding requests were made by the Governor to the Legislature in 2016, 2017, 2018, 2019, 2020, and 2021.  Meanwhile, Petitioner's life, and the lives of 55+ additional clients, have been on pause for two years or more.   The only thing that has changed for them since their respective orders for transfer is that their names were added to a waiting list.  The Commissioner's failure to transfer has rendered these clients, who were statutorily entitled to a reduction in custody, unable to progress toward community placement.  For Petitioner, this means his initial petition for a reduction in custody from 2018 is still in limbo after five years, even after the Special Review Board recommended granting transfer in October 2019 and the Panel granted transfer in April 2020.

9.  MSOP indicated that it intends to transfer Petitioner to CPS when a bed become available for him in accordance with his place on the waiting list. [1]

10. There is no other situation known to the Panel where a party gets to decide when they will comply with a court order.  The April 2020 Order for Transfer was not vague or unclear.

---

[1] The District Court also noted the Commissioner's attempt to read the words "when a bed becomes available" into the Panel Order.  *See* The Hon. Leslie Ott Marek's Ramsey County District Court Order Dismissing Petition for Writ of Mandemus in *Folson v. Johnston*, 62-CV-20-5770 (Mar. 1, 2021) (finding the Commissioner's arguments unreasonable and unpersuasive and would vest the Commissioner with unfettered discretion over when, if ever, to transfer a client).

The April 2020 Order for Transfer was not confusing. The Commissioner made no request for clarification of the April 2020 Order for Transfer. The Commissioner provided no communication to the Panel that the April 2020 Order for Transfer would not be followed and the reasons therefor until the contempt motion was filed. It was left to the Petitioner, a civilly committed individual within the custody and control of the Commissioner, who had a valid court order for a reduction in custody in hand, to bring a motion for contempt to vindicate his rights.

### Contempt findings regarding the Order for Transfer

11. The Panel, as the ordering court, had jurisdiction and subject matter over the person.

12. The Panel's April 2020 Order for Transfer clearly defined the acts to be performed by a party to the proceedings.

13. The Commissioner is a party to these proceedings.

14. The Commissioner had notice of the Panel's April 2020 Order for Transfer and a reasonable time within which to comply. As stated before, 90 days at most was a reasonable time within which to comply. The Commissioner is making no argument that two years or more is a reasonable time.

15. The Petitioner was adversely affected by the failure to comply with the April 2020 Order for Transfer and has applied to the court for aid in compelling performance giving specific grounds for the complaint, namely that the Commissioner and the MSOP Executive Director have failed to transfer Petitioner to CPS.

16. That upon due notice a hearing was conducted and at such hearing the party charged with nonperformance was given an opportunity to show compliance or the reason for the failure to comply.  This hearing took place on September 29, 2021.[2]

17. The Panel is hereby determining formally that there was a failure to comply with the April 2020 Order for Transfer.  The Commissioner and the MSOP Executive Director have the ability to comply and are not being compelled to do something they are wholly unable to do.

### Bad faith in failure to comply with the Order for Transfer

18. The Panel finds bad faith on the part of the Commissioner and the MSOP Executive Director in failing to transfer Petitioner to CPS.  The Commissioner and the MSOP Executive Director have exhibited a brazen disregard for the statutory civil commitment process, evident from the initial hearing where the client rightfully expressed concern that the reduction is custody, even if ordered, was not going to occur.  Once the April 2020 Order for Transfer was issued, the Commissioner and the MSOP Executive Director made no efforts, aside from annual bonding requests, to effectuate transfer, essentially ignoring the Panel's Order.

19. The Panel noted in the April 2020 Order for Transfer that the "Panel's transfer order becomes effective 15 days after the statutorily prescribed stay."  Additionally, the Panel warned DHS in the April 2020 Order for Transfer that "DHS cannot merely assume the failure of the Legislature to appropriate new funds somehow obviates its obligation to follow court orders for transfer."  Furthermore, in the April 2020 Order for Transfer, the

---

[2] The evidentiary hearing in this matter was originally set for August 9, 2021.  Due to a failure to docket the order as signed on May 24, 2021, until July 27, 2021, the matter was reset for September 29, 2021, the only date the Commissioner was available, providing ample notice and opportunity for the Commissioner to be heard.

Panel found that DHS's "lack of candor with the Panel as to the situation at CPS was deeply concerning."

20. It is apparent that the Commissioner and the MSOP Executive Director do not intend to follow the statute and the Panel's April 2020 Transfer Order and contempt is necessary to secure compliance with the Panel's Order to vindicate Petitioner's rights. *See Hopp v. Hopp*, 156 N.W.2d 212, 214 (Minn. 1968) (explaining that the purpose of civil contempt is to "make the rights of one individual as against another meaningful" so that court orders are not "an exercise in futility").

21. DHS's failure to transfer is resulting in de facto incarceration and is close to rendering the entire statutory civil commitment structure as applied a "sham." *See Foucha v. Louisiana*, 504 U.S. 71, 115 (1992) ("Foucha has not argued that the State's procedures, as applied, are a sham. This would be a different case if Foucha had established that the statutory mechanisms for release were nothing more than window dressing, and that the State in fact confined [civilly committed individuals] indefinitely without meaningful opportunity for review and release.")

22. That transfer shall occur within a reasonable time frame was not a suggestion or an authorization that it is now okay for the Commissioner to someday comply with the Panel's Order granting a reduction in custody.

23. The Commissioner's argument that the Panel's authority is limited to merely telling DHS that the Commissioner and the MSOP Executive Director now have full discretion to determine when to transfer a client is absurd and harkens back to other matters where the Commissioner and MSOP Executive Director have attempted to circumvent the reduction in custody process. *See Matter of Civil Commitment of Kropp*, 895 N.W.2d 647, 652

(Minn. App. 2017) (prohibiting the MSOP Executive Director from unilaterally preventing provisional discharge despite the Panel's grant and providing that the Panel may grant a reduction in custody even to a "nonexistent placement").  The failure to transfer as provided for by statute implicates not only Petitioner's liberty interests but also undermines the constitutionality and validity of the entire indeterminate civil commitment process.

24. If the Commissioner's interpretation of its obligation under the statute and the Panel's Order for Transfer is correct, the entire constitutionality of the indeterminate civil commitment would be suspect.  Transfer to an open facility is a statutory provision specifically enumerated by the Minnesota Supreme Court as essential to constitutional due process.  *See Call v. Gomez*, 535 N.W.2d 312, 318-19 (Minn. 1995).  *See also In re Blodgett*, 510 N.W.2d 910, 916 (Minn. 1994) (holding that "once a person is committed, his or her due process rights are protected through procedural safeguards that include…the opportunity to petition for transfer to an open hospital").

25. The Panel process and the ability to transfer to a less secure facility were among the "extensive process and protections" that allowed the Minnesota civil commitment structure to withstand facial and as-applied challenges in federal court.  *See Karsjens v. Piper,* 845 F.3d 394, 410-11 (8th Cir. 2017) (discussing the Minnesota Supreme Court's due process analysis in *Call* and *Blodgett*).

26. The Panel is duty bound to give meaningful effect to the civil commitment statute.  There are times when, after full and meaningful consideration, the Panel denies a petition for a reduction in custody as statutorily not met.  When, after full consideration, the Panel grants transfer, that order for transfer must be meaningful.

*Contempt is necessary regarding the Order for Transfer*

27. The Commissioner and the MSOP Executive Director are in contempt for failure to comply with the April 2020 Order for Transfer.

28. The Commissioner and the MSOP Executive Director have the ability to purge the contempt by transferring Petitioner to CPS or an equivalent reduction in custody within 90 days of the date of this order.

29. The Panel is not considering the issues of a right to treatment as raised in argument. The motion was for contempt of court for failure to transfer pursuant to the April 2020 Order for Transfer. The questions by the Panel and the arguments from Petitioner's counsel concerning other treatment options pending transfer are relevant to demonstrate the multiplicity of options that the Commissioner could have done to attempt to comply or to demonstrate any willingness to comply with the April 2020 Order for Transfer. *See, e.g., Plankers v. Plankers*, 175 Minn. 57, 59 (Minn. 1928) ("Defendant would have stood in a more favorable light had he shown a willingness to make any payments-even for a reduced amount. He did not do so.").

30. The Commissioner and the MSOP Executive Director acknowledge that the only option they were willing to explore in the nearly two years since the April 2020 Order for Transfer was issued was to seek bonding from the Legislature, which was denied year after year after year, and then only insufficiently provided. Although sympathetic to the lack of funding, the Panel views the statutory language and the Commissioner and the MSOP Executive Director's obligations in light of the statute enacted. *See In re Welfare of J.B.*, 782 N.W.2d 535, 548 (Minn. 2010) (expressing sympathy yet finding contempt appropriate

9

for failure to obey a lawful order in light of the statutory structure enacted by the Legislature, even if that structure was underfunded).

31. This contempt order is necessary to vindicate Petitioner's statutory right and ultimately his constitutional right for a reduction in custody. The Commissioner and the MSOP Executive Director have the ability to comply with the Order for Transfer, the ability to meet the purge conditions (to transfer to CPS or its equivalent within 90 days), and the order thus far is reasonably likely to produce compliance for Petitioner. *See Zanzibar v. Rodriquez*, 819 N.W.2d 187 (Minn. App. 2012). *See also Mower Cty. Human Servs. on Behalf of Swancutt v. Swancutt*, 551 N.W.2d 219, 223-24 (Minn. 1996) (providing that, after the requirements of *Hopp* have been met, additional hearings on nonperformance may be held to determine whether conditional confinement is reasonably likely to produce compliance fully or in part.).

### *Conclusion of contempt and setting a purge condition*

32. The Panel concludes that the Commissioner of Human Services and the MSOP Executive Director are in contempt of court for failure to transfer Petitioner to a reduction in custody.

33. The Panel orders that the Commissioner of Human Services and the MSOP Executive Director transfer Petitioner either to MSOP's Community Preparation Services (CPS) or an equivalent, within 90 days of the date of this Order. It is not the Panel's concern whether transferring Petitioner at this moment to CPS would mean "leap frogging" another client who has been on the waiting list longer in time. The Panel can only address the individual matter before it.

Based on the above Findings of Contempt, the Panel makes the following Order:

## ORDER

1. That the Commissioner of Human Services and the MSOP Executive Director are in civil contempt for failure to comply with the April 2020 Order for Transfer.

2. That the Commissioner of Human Services and the MSOP Executive Director may purge the contempt by transferring Al Stone Folson to MSOP's Community Preparation Services (CPS) or an equivalent reduction in custody within 90 days of the date of this order.

**Dated**: December 2, 2021                    **BY THE PANEL**:


_Karen Asphaug_          Asphaug, Karen
                         2021.12.02 08:29:39 -06'00'
_____
Hon. Karen Asphaug
Senior Judge of District Court


_____
_Herbert Lefler_
_Senior Judge of District Court_


_Warren R. Sagstuen_
Hon. Warren Sagstuen
Senior Judge of District Court

11

# EXHIBIT C

**STATE OF MINNESOTA**

**COUNTY OF BENTON**



**COMMITMENT APPEAL PANEL**

June 19, 2020

**OFFICE OF APPELLATE COURTS**

_____

In the Matter of the Civil Commitment of:

    Kerry Mitchell Lenz.

_____

Appeal Panel File No. AP19-9091
County File No.: 05-PR-14-1080

**<u>ORDER AND MEMORANDUM</u>**

       The above-entitled matter came on for hearing on April 17, 2020, before the Commitment Appeal Panel at the Dakota County Judicial Center in Hastings, Minnesota.  Kerry Mitchell Lenz, hereafter Petitioner, appeared and was represented by Jennifer Thon, Esq.  Assistants Attorney General Roger Yang and Scott Ikeda appeared for the Commissioner of Human Services.  There was no appearance by Benton County.  The matter was scheduled as a full day[1] hearing on Petitioner's petition for provisional discharge and discharge from the civil commitment.

       The matter was heard by the Panel on December 13, 2019, as a "part 1" hearing. Petitioner's exhibits 100-101 and 103-108 were received.  Petitioner's exhibit 102 was not received.  The Panel heard testimony from Dr. Andrea Lovett, Dr. Mallory Obermire, and Petitioner.

       On April 17, 2020, the "part 2" hearing was held.  Counsel, Petitioner, the court appointed examiner, and all witnesses appeared by ITV.[2]  The Panel received Petitioner's exhibits 109-112.

---

[1] Also heard on April 17, 2020, was Petitioner's motion for an order to show cause for failure to transfer to Community Preparation Services (CPS).  The Panel granted transfer to CPS by Order dated January 28, 2018.  The Order for transfer became effective 15 days later.

[2] At the time of the "part 2" hearing, the Panel proceedings were governed by Minnesota Supreme Court Order issued April 9, 2020, due to the covid-19 pandemic.  *See Continuing Operations of the Minnesota Judicial Branch Under Emergency Executive Order* No. 20-33, No. ADM20-8001 (Minn. Filed April 9, 2020).  The Supreme Court suspended the Rules to allow for appearances by ITV or other electronic means.

The Panel also received Commissioner's Exhibits 1-8, 9 (pages 1-5 only), 10, 14-20, and 22-23. Commissioner's Exhibits 11, 12, and 13 were not received. The Panel received portions of Exhibit 21, striking from the record certain pages including pages 24, 31, 62, 54, 56, and 75, as well as all other pages of exhibits offered by the Commissioner containing an incorrect client identification number, and thereby not pertaining to Petitioner. The Panel heard testimony from Christopher Schiffer, Dr. Mallory Obermire, and Dr. Andrea Lovett.

At the conclusion of the hearing, the Panel provided an opportunity for counsel to make written closing arguments. The written arguments were received from Petitioner and the Commissioner on May 18, 2020.

Based upon the evidence adduced at the December 13, 2019, and the April 17, 2020, Panel hearings, the arguments of counsel, and the file, records, and proceedings, the Court makes the following:

## **ORDER**

1. Petitioner's petition for provisional discharge and discharge from the civil commitment is **DENIED.**

2. The following Memorandum is incorporated as the Court's Findings of Fact and Conclusions of Law.

---

*Id.* One Panel Judge appeared remotely. The two other Panel Judges and the official court reporter heard the matter from the courthouse in Hastings.

**BY THE COURT**:

Abrams, Jerome
Jerome B. Abrams
Judge of District Court

Gail Chang Bohr
Senior Judge of District Court

Patrice Sutherland
Senior Judge of District Court

## MEMORANDUM

### I.   Procedural history

Petitioner was indeterminately committed as a Sexually Dangerous Person and Sexual Psychopathic Personality by final order dated May 8, 2015.  On July 26, 2018, Petitioner petitioned for provisional discharge and discharge from the civil commitment.  A hearing was held before the Special Review Board (SRB) on May 14, 2019.  On June 13, 2019, the SRB issued its findings and recommendation to deny the petition.  On July 1, 2019, Petitioner petitioned for rehearing by the Commitment Appeal Panel.  The Panel hearing was held on December 13, 2019, and April 17, 2020.

### II.   Legal Standard for Provisional Discharge and Discharge

The burden was on the Commissioner to demonstrate by clear and convincing evidence that provisional discharge and discharge from the civil commitment is not appropriate according to the statutory factors.  Minn. Stat. §253D.28, subd. 2(d).

Under Minnesota law, to be eligible for provisional discharge, the committed person must be capable of making an acceptable adjustment to open society.  Minn. Stat. § 253D.30 subd. 1(a).  In making this determination the Panel considers (1) whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the current treatment setting and (2) whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community.  Minn. Stat. § 253D.30 subd. 1(b).

Under Minnesota law, to be eligible for discharge, there must be a showing that the committed person is "capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision."  Minn.

Stat. § 253D.31 (2013). The Panel must consider "whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the committed person in adjusting to the community. *Id.* The discharge statute is to be construed in accordance with Constitutional due process concerns. *See Matter of Opiacha*, No. A19-1693, 2020 WL 1845253, at *5 (Minn. Ct. App. Apr. 13, 2020) (explaining that the Panel must grant discharge if the individual is entitled to discharge under the statute or under the due process clause).[3]

## III.    Background for the Evidence Presented

Petitioner is currently in Phase II of the three phase treatment program at the Minnesota Sex Offender Program (MSOP). Petitioner was granted transfer to MSOP's Community Preparation Services (CPS) in January 2018. Petitioner was not yet transferred to CPS.[4]

Dr. Andrea Lovett, Ph.D., LP, was appointed court examiner in this matter. Dr. Lovett opined that provisional discharge and discharge cannot presently be accomplished while also providing for the public safety. However, Dr. Lovett's November 26, 2019, report also indicated:

> The undersigned recognizes that the Appellant's transfer to CPS was approved almost two years ago, yet he remains inside the secure perimeter due bed space issues. Put simply, he would be "stuck inside the razor wire" even if his treatment progress was exemplary. One can reasonably argue that this situation is patently unfair to Mr. Lenz and other MSOP clients awaiting placement at CPS.

The Panel agrees with Dr. Lovett that the present situation is "patently unfair" and is not anticipated by the statutory structure that provides for the civil commitment.

---

[3] Petitioner reserved any constitutional rights connected with his motion for contempt.

[4] Petitioner was granted transfer to CPS in January 2018. That was over two years ago. CPS is the only least restrictive facility offered as a reduction in custody by the Commissioner for clients in the MSOP program.

The failure to transfer as court ordered has denied Petitioner two years of treatment in a more appropriate setting that could have prepared him for provisional discharge and discharge. Although one cannot know for sure what would have happened if he had transferred as ordered, the Panel does know what happened when he did not transfer.  Nothing changed for him. Everything about his treatment and supervision remained the same.  He was deprived of the treatment opportunities and liberties of CPS.  He was offered no deinstitutionalization opportunities, even those afforded by living in a less institutional setting.  He was denied the therapeutic milieu at CPS and denied the treatment indicated per the Risk Needs Responsivity (RNR) model of risk reduction utilized by MSOP.

Despite this situation, Petitioner continued to participate in treatment, work, and appropriate recreational activities.  He did not start acting out and receiving major Behavioral Expectation reports (BERs) for breaking institutional rules.  He passed a maintenance polygraph concerning his masturbation fantasies (no deception indicated).  He continued to present as motivated for treatment and continued to receive positive matrix scores from his treatment providers.  His 2019 Annual Treatment Report provided matrix ratings in all action areas of "Satisfactory" or "Enhanced" and even one "Proficient."  There were no treatment areas that rated as "Needs Attention." Despite the unfairness of the present situation, Petitioner continued to be actively involved in treatment and continued to make satisfactory progress in the MSOP treatment program.[5]

---

[5] It is uncontroverted that Petitioner has continued work to do in sex offender treatment.  There is also a concerning pattern noted by Dr. Obrermire that Petitioner is feeling the need to punish himself rather than digging in and openly addressing the roots of his offending.  Even items that could be viewed as pro-social or empathetic, such as volunteering to mow in the rain so that a softball game could proceed, could be viewed as attempts to punish himself, akin to the deprivation and excessive exercising noted by Dr. Obermire.

**IV.    Legal Analysis in Light of Evidence Presented**

The Commissioner met the burden of demonstrating by clear and convincing evidence that provisional discharge and discharge are not appropriate at this time according to the statutory factors.  However, the Panel cannot ignore the fact that this was due, in large part, to the Commissioner's failure to transfer him to a more open facility as ordered.

The forensic examiners who evaluated Petitioner for this hearing opined that Petitioner does <u>not</u> meet the statutory criteria for provisional discharge or discharge.  Both Dr. Lovett and Dr. Obermire opined that, for Petitioner in particular, a gradual reduction in custody is "critical," both for himself and for the public safety.   Neither expert opined that Petitioner has progressed far enough in treatment that outpatient sex offender treatment would be appropriate or that the provisional discharge plan offered would provide a reasonable degree of protection to the public and would enable Petitioner to adjust successfully to the community.

Mr. Schiffer, the MSOP Clinical Courts Services Director, testified before the Panel.  Mr. Schiffer does not know Petitioner personally, but he read the SRB treatment reports, is familiar with the CPS program at MSOP, and is part of the MSOP clinical leadership.  Mr. Schiffer explained that gradual deinstitutionalization and gradual reintegration are the purposes of CPS.  Mr. Schiffer further explained that CPS is designed as a residential location where clients can practice the skills they have learned in sex offender treatment.

The April 23, 2019 SRB Treatment Report indicated that Petitioner has gained knowledge in sex offender treatment but he demonstrates inconsistent implementation of skills learned.  By the time of the March 24, 2020 SRB Treatment Report-Update, Petitioner's progress in treatment had started to wane, however, it was noted, to his credit by the report writer, that Petitioner "shows  a consistent willingness to comply with each directive or intervention asked of

him, whether an informal staff request or part of an action plan." Petitioner was not demonstrating autonomy in applying interventions, a skill that will assist him at CPS. However, Petitioner has not been afforded a timeline for when that skill may be needed at CPS.

There was no testimony that the generic provisional discharge plan provided is appropriate for Petitioner or would provide a reasonable degree of protection for the public. Petitioner has a violent criminal history, with offenses that occurred within weeks of release or while on parole for other offenses. Petitioner continues to minimize or justify his offending behaviors, which were quite violent and possibly sadistic. Petitioner has not completed the inpatient sex offender treatment at MSOP. There is no evidence that he has reached a point in treatment where he is no longer dangerous to the public or has mitigated his risk of sexually violent recidivism. There was no testimony of how the Department of Corrections (DOC) supervision would interact with the DHS supervision, to provide additional layers of protection to the public. (The client is on Intensive Supervised Release (ISR) through the DOC until 2026). There was no testimony that the stages at CPS and the reintegration tiers on provisional discharge are equivalent to the extent argued by Petitioner.

The Panel considered all the evidence presented and determined that, for this particular client, despite the patently unfair situation of the Commissioner's failure to transfer him, provisional discharge and discharge are not appropriate.

**V.   Due Process in the Current Circumstances**

Petitioner was granted transfer to CPS by Panel order dated January 28, 2018. The Order became effective 15 days later, on February 10, 2018. To date, the Commissioner has not transferred Petitioner to CPS, which directly impacted Petitioner's ability to be successful in a petition for a further reduction in custody.

The Panel is concerned not only about the Commissioner's failure to transfer, but also by the Commissioner's cavalier attitude toward transfer and its failure to present a competent case against provisional discharge and discharge.  The exhibits offered were not well prepared and consisted of many reports that were created after the fact, apparently to fill gaps in reports that should have been written contemporaneously but were not.  The questioning of the court examiner devolved into a discussion of how she decided to not follow the official scoring manual for actuarial instruments based on an informal discussion she had with one of the instrument's authors.  This undermined the credibility of the witness and caused the Panel to question the entire rationale of the opinion offered.

Most troubling was the situation created by the Commissioner, essentially setting up a self-fulfilling prophecy in its favor: clients are not ready for the next step of provisional discharge because the program failed to transfer them or otherwise alter their programing in any way to compensate for the fact that we were not going to transfer them in any meaningful timeframe.

There is nothing in the statute that requires transfer to the CPS program that MSOP has created as the only option for MSOP clients.  Minn. Stat. § 253D.29 ("Transfer may be to other treatment programs under the commissioner's control.")  There is nothing in the statute that requires building a new facility to fulfill the transfer requirements.  *Id*.  Transfer is an essential underpinning of the entire statutory structure that allows for indeterminate commitment to a highly secure facility, when no less secure options are made available to those civilly committed as SDP/SPP.  *See Commitment of Ince,* 847 N.W.2d 13, 28 (Minn. 2014) (Justice Page, concurring).

The Courts assume that the civil commitment process operates as statutorily structured. *See Call v. Gomez*, 353 N.W.2d 312, 318-19 (Minn. 1995). The ability to transfer to an open facility is a statutory provision specifically enumerated by the Minnesota Supreme Court as essential to the constitutional due process. *See id.*, citing *Blodgett*, 510 N.W.2d 910, 916) (Minn. 1994) (holding that "once a person is committed, his or her due process rights are protected through procedural safeguards that include…the opportunity to petition for transfer to an open hospital"). The Panel process and the ability to transfer to a less secure facility were among the "extensive process and protections" that allowed the Minnesota civil commitment structure to withstand facial and as-applied challenges in federal court. *See Karsjens v. Piper,* 845 F.3d 394, 410-11 (8th Cir. 2017) (discussing the Minnesota Supreme Court's due process analysis in *Call* and *Blodgett*). The Panel finds the Commissioner's assertion that the Panel can order transfer but cannot enforce its order shocking. *Id.* at 410-11 (stating the "conscience shocking" standard necessary for an as-applied challenge). The opportunity to petition for transfer is meaningless if transfer does not occur. The Panel's order for transfer became effective over two years ago.[6] The Panel further notes that Petitioner has been waiting five years on his petition for transfer.[7] Presently there is no timeline offered for when the Commissioner anticipates the transfer to occur.

Petitioner has brought a motion for contempt for failure to transfer, and the Panel will address the failure to transfer by separate evidentiary hearing. The Panel notes that there could exist situations where provisional discharge would be appropriate for other clients under the statutory criteria or under a due process analysis, when there has been a failure to transfer as

---

[6] The Panel order for transfer was issued in file number AP16-9030.

[7] Petitioner's petition for transfer to the SRB was made June 23, 2015, as found in file number AP16-9030.

ordered.  *See Opiacha*, *supra*.  This is not such a case for Petitioner, given the specific treatment needs, supervision needs, and public safety concerns presented.