UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, et al., | Case No. 0:23-cv-00486 (JRT/LIB) |
| Plaintiffs, | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| vs. | |
| Nancy Johnston, et. al., | |
| Defendants. | |

**INTRODUCTION**

Plaintiffs only defend two aspects of their First Amended Complaint ("FAC"), and both those defenses fall short. First, Plaintiffs' mandamus petitions should be dismissed – either without prejudice because this Court lacks subject matter jurisdiction as "exclusive" jurisdiction is vested in Minnesota courts, or with prejudice because Plaintiffs failed to meet Minnesota law's strict requirements for the extraordinary remedy of a writ to issue. Second, the Individual-Capacity Defendants are entitled to qualified immunity. Plaintiffs still fail to point to any precedent that would provide Defendants notice that their respective transfer delays violate the law, instead relying on abstract legal principles that are insufficient to defeat qualified immunity. Plaintiffs' FAC should be dismissed. [1]

---

[1] Plaintiffs believe that Count II should proceed as it was previously asserted, without any regard for the additional allegations made that change the nature of that count, including their new theory that delays of more than 30 days are always unreasonable. Doc. 101, "Opp. Br." at 3; *see also* FAC ¶ 26. While acknowledging the Court has already ruled on the previously pled Count II, Defendants argue that Count II fails on the merits, both in its

# ARGUMENT

## I. ALL PREVIOUSLY DISMISSED CLAIMS AND THEORY CHANGES TO THE FAC SHOULD BE DISMISSED.

Despite changing key allegations throughout the FAC, and in its Counts II-IV, Plaintiffs now claim that each claim is the same as their previously asserted claims. Opp. Br. at 3. Taking Plaintiffs at their word, each previously dismissed claim should therefore be dismissed for failure to state a claim. *See* Doc. 73 (dismissing Counts I, III and IV).

Even if the Court re-examines the previously dismissed claims with the FAC's new allegations and theories, they should be dismissed for the reasons Defendants set forth in their opening brief – and Plaintiffs make no argument to the contrary. Doc. 96 at 8-17.

## II. PLAINTIFFS' PETITIONS FOR WRITS OF MANDAMUS MUST BE DISMISSED.

Of their re-asserted claims, Plaintiffs only argue that their petitions for a writ of mandamus (Count I) should survive. Opp. Br. at 4-5. But Plaintiffs do not deal with either the jurisdictional issue that another Court in this district just recently identified nor Defendants' argument that mandamus is inappropriate on the merits. For both reasons, their mandamus petitions must be denied.

### A. This Court Lacks Subject-Matter Jurisdiction To Issue Minnesota Writs Of Mandamus.

First, Plaintiffs seem to argue that federal courts have unlimited jurisdiction over all state law legal proceedings if they are removed from state court. To the contrary, it is elementary that "[f]ederal courts are courts of limited jurisdiction." *Great Lakes Gas*

---

original version and as pled in the FAC, and expressly preserve that argument for appeal. Doc. 96 at 8-9; Doc. 23 at 19-22; Doc. 57 at 11-13.

2

*Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 825, 329 (8th Cir. 2016) (quoting *Gunn v. Minton*, 568 U.S. 251, 256 (2013)).  Here, writs of mandamus are not creatures of common law – they are creations of federal and state statute.  *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 171 (Minn. 2006); Minn. Stat. § 586.11; 23 U.S.C. § 1361.  The respective federal and state mandamus statutes dictate specifically how and in what circumstances those petitions may be heard, and state mandamus vests "*exclusive* original jurisdiction" in Minnesota district and appellate courts (depending on the subject of the mandamus petition).  Minn. Stat. § 568.11 (emphasis added).

The only argument Plaintiffs advance for jurisdiction over the mandamus petition, then, is that Defendants removed this case from district court.  Initially, subject matter jurisdiction cannot be waived or forfeited, so Defendants' removal has no effect on whether federal courts may hear state-court-exclusive statutory petitions.  *Nuevos Destinos, LLC v. Peck*, 999 F.3d 641, 646 (8th Cir. 2021).  Moreover, Defendants' removal of Plaintiffs' mandamus petition stems from Plaintiffs' original procedural mistake – filing a mandamus petition within a section 1983 complaint.  Such a mistake cannot create federal jurisdiction where Minnesota statute has unambiguously denied it.

Mandamus only properly lies where no other legal remedy exists – and it is a mandamus petitioner's responsibility to affirmatively *show* that is true in their petition.  *Madison Equities, Inc. v. Crockarell*, 889 N.W.2d 568, 574 (Minn. 2017) (citing Minn. Stat. § 586.02).  Plaintiffs here have turned that obligation on its head:  They assert mandamus as a "claim" within the confines of their section 1983 lawsuit and ask for the exact same remedy under both theories.  The existence of Plaintiffs' prayer for injunctive

3

relief under § 1983 (which the Court already granted on a preliminary basis as to Rud) makes their mandamus request definitionally improper, and it therefore *cannot* properly be housed in the same complaint.

Moreover, Minnesota's mandamus procedure does not fit within the structure of a typical civil complaint. Indeed, mandamus *petitions* are not pleadings like complaints are – the mandamus *writ*, issued by the court, is the pleading. Minn. Stat. § 586.08 ("No pleading or written allegation, other than the writ, answer, and demurrer, shall be allowed."); *see also* Minn. Stat. § 586.05 ("Writs of mandamus shall be issued upon the order of the court or judge"). Similarly, respondents to a writ do not answer the petition, they answer the writ issued by the Court. Minn. Stat. § 586.06. This logistical diversion from baseline, case-initiating civil procedure makes advancing a writ petition in the same vehicle as a civil rights complaint procedurally improper as well as legally improper. Simply put, Plaintiffs cannot create federal subject matter jurisdiction by improperly combining a mandamus petition with a section 1983 complaint (which was properly removable and is fundamentally a federal question).

Plaintiffs point to one federal case where a removed section 1983 and combined mandamus petition was granted by this Court. *Kaibel v. Mun. Bldg. Comm'n*, 829 F. Supp. 2d 779, 786 (D. Minn. 2011). It does not appear any party raised the issue of jurisdiction in that non-binding case, however, and the Court did not analyze it, leaving it of little utility here. *Id.*

And this Court's lack of subject matter jurisdiction over Plaintiffs' petition does not deprive Plaintiffs of an avenue to seek mandamus relief (though, as Defendants have

4

argued from the beginning, mandamus is not proper in this case – *see infra* at 5-6; Doc. 96 at 20-22). If the Court lacks subject matter jurisdiction, it generally should dismiss without prejudice. *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004). This would allow Plaintiffs to refile their mandamus petition in state court, where jurisdiction is unquestionably proper, and proceed on the merits there.[2]

The Minnesota Legislature affirmatively denied federal courts jurisdiction to hear statutory mandamus petitions, providing "exclusive" jurisdiction to Minnesota's state courts. Minn. Stat. § 586.11. Holding that Plaintiffs may create federal subject-matter jurisdiction by improperly housing a state statutory remedy that does not belong within a federal cause of action flies in the face of federalism. Plaintiffs' petition for a writ of mandamus should be dismissed without prejudice for lack of subject matter jurisdiction.

> **B.    In Any Case, Plaintiffs Are Not Entitled To A Writ Under Minnesota Law.**

Plaintiffs claim it is "not clear" whether Defendants reassert their prior arguments for dismissal of Plaintiffs' mandamus petition. Opp. Br. at 4, n.4. On the contrary, Defendants expressly argued again that Plaintiffs' mandamus petition fails on the merits. Doc. 96 at 20-22 (setting forth three reasons Plaintiffs' mandamus petitions do not satisfy Minnesota law's requirements on the merits). For the reasons Defendants have argued since the beginning, Plaintiffs have not shown they are entitled to a writ of mandamus

---

[2] At minimum, given the novelty of the issue of whether Minnesota statute provides any jurisdiction to federal courts, the Court should decline to exercise jurisdiction over Plaintiffs' mandamus petition pursuant to 28 U.S.C. § 1367(c)(1), (4).

under Minnesota law, and their petition should be dismissed on the merits and with prejudice. *Id.*; Doc. 23 at 10-15; Doc. 57 at 1-5.

### III. INDIVIDUAL-CAPACITY DEFENDANTS MUST BE DISMISSED.

Likewise, Plaintiffs' damages claims against Individual-Capacity Defendants fall flat because: (1) Plaintiffs point to no case holding comparable factual circumstances violate the Constitution, and (2) the Commissioner is not personally involved in Plaintiffs' allegations.

#### A. Plaintiffs Misread *McDeid* And Do Not Point To A Case Holding What Specific Factual Conduct Would Violate The Constitution.[3]

Individual-Capacity Defendants are entitled to qualified immunity. Qualified immunity is a broad shield that protects government officials from damages claims unless they are "plainly incompetent" or "knowingly violat[ing] the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To deny an official qualified immunity, "existing precedent must place the lawfulness of the particular conduct 'beyond debate.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). And the United States Supreme Court has cautioned that the "dispositive question" is the "violative nature of the *particular* conduct" in question. *Mullenix v. Luna*,

---

[3] Plaintiffs erroneously claim that "Defendants never argue that Plaintiffs['] rights were, in fact, not violated," and are generally preoccupied by their own repeated (but as-of-yet untested) conclusion that Defendants violated the Constitution. Opp. Br. at 6-7. On the contrary, Defendants have consistently argued since the start of this case that they have done nothing to violate the Constitution, even while treating Plaintiffs' unsworn, unproven allegations as true (as, of course, they *must* on a motion to dismiss). *See Brotherhood of Maint. of Way Emp. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001); *see, e.g.,* Doc. 96 at 8-17 and 24 ("First, as set forth in detail above, Plaintiffs have not alleged any constitutional violation.").

6

577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742) (emphasis in original).  It is not, then, general propositions of constitutional rights or abstract theories of law that put an official on sufficient notice to deny them qualify immunity – it is precedent that analyzes specific, comparable factual circumstances and holds those circumstances are unlawful.

Despite this, Plaintiffs point to only one case that they assert should have put Individual-Capacity Defendants on notice that not transferring each Plaintiff in the particular circumstances of his treatment, timing, and conditions surrounding CPS would be unconstitutional: *McDeid v. Johnston*, 984 N.W.2d 864 (Minn. 2023).  But as Defendants laid out in their opening brief, neither *McDeid* nor any other case holds that any particular time of a transfer delay is unconstitutional, or what circumstances surrounding a transfer delay would amount to "violative" conduct.  Doc. 96 at 25-27.  Plaintiffs provide no authority that a general statement that some undescribed circumstances could theoretically violate a CAP transfer order is sufficient to overcome qualified immunity in any particular circumstance – because such authority would be directly contrary to longstanding precedent.

Nor is it a contradiction to point out that the *McDeid* court had a specific set of presumed-to-be-true circumstances in its record and pointedly *neglected* to hold as a matter of law that those circumstances (which far exceed the time that Plaintiffs allege they have been delayed) would violate the transfer orders in question.  The silence of the Minnesota Supreme Court – or any other court – is surely not sufficient to meet the United States Supreme Court's requirement that "particular conduct" must be obviously unlawful

"beyond debate." Accordingly, Individual-Capacity Defendants are entitled to qualified immunity.

### B. Plaintiffs Do Not Allege Sufficient Personal Involvement By The Commissioner.

Plaintiffs also do not state a § 1983 claim against the Commissioner because they fail to allege the Commissioner's personal involvement. Plaintiffs point to allegations that "Commissioner Harpstead has the authority to direct and/or countermand decisions made by Johnston and others at MSOP" (FAC ¶ 9), that the Commissioner "is statutorily responsible for maintain MSOP" (FAC ¶ 377), and that she "agreed with decisions made by others" and did not take action contrary to those decisions that would affect CPS availability (FAC ¶ 9). But those do not actually allege *personal* involvement by the Commissioner.

In *Jackson v. Nixon*, upon which Plaintiffs rely, the director of a corrections facility was sufficiently alleged to be personally responsible where statutes specifically dictated that the director was responsible for supervising employees' work assignments, implementing policies and procedures, and making and enforcing rules and regulations. 747 F.3d 537, 544-45 (8th Cir. 2014). But here, Plaintiffs only point to the Commissioner's general responsibility to "maintain" MSOP. Opp. Br. at 7 (citing Minn. Stat. § 246B.02). Contrary to the situation in *Jackson*, Minnesota statute specifically dictates that MSOP's *executive director*, not the Commissioner, "is charged with overall responsibility for the operation of [MSOP]." Minn. Stat. § 246B.01, subd. 2c. The Commissioner (or, as defined, her designee – Minn. Stat. § 246B.01, subd. 2) is only responsible for applying for

8

licensure (Minn. Stat. § 246B.03, subd. 1), adopting broad rules "to govern the operation, maintenance, and licensure" of MSOP (Minn. Stat. § 246B.04, subd. 1).

The Commissioner is not statutorily responsible for anything specific to transfer to CPS. Instead, it is the *executive director* who is tasked by statute with responsibility for reductions in custody and CPS. *See* Minn. Stat. § 253D.27, subd. 2 (allowing MSOP's executive director to petition for a reduction in custody), Minn. Stat. § 253D.29, subd. 2 (allowing MSOP's executive director to allow committed people to transfer back from nonsecure facilities), Minn. Stat. § 253D.29, subd. 3 (allowing MSOP's executive director to revoke a transfer to a nonsecure facility). This is far from the specific statutory authority that led to the director being personally responsible for the purposes of § 1983 violations in *Jackson*, and far more like *Jackson's* analysis as to the warden. That analysis noted that "general supervisory authority over [MSOP] operations does not make [someone] liable under § 1983." 747 F.3d at 545. Instead Plaintiffs must allege that the Commissioner was "directly involved in making, implementing, or enforcing a policy decision that 'create[d] unconstitutional conditions.'" *Id.* (quoting *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)). Like the plaintiffs in *Jackson* as to the warden, Plaintiffs do not allege this or point to any statute that would put this authority squarely on the Commissioner's shoulders.

Nor does Plaintiffs' claim that the Commissioner was "personally held in contempt of court" make her personally responsible.[4] As an initial matter, the Commissioner in her

---

[4] And again, Plaintiffs' allegations that contempt exists as a remedy forecloses their mandamus petitions, *Madison Equities, Inc. v. Crockarell*, 889 N.W.2d 568, 574 (Minn. 2017) (citing Minn. Stat. § 586.02), and significantly undermines their procedural due

9

official capacity is a party to CAP proceedings and contempt proceedings may lie against her in that capacity – not individually or personally. *See* Minn. Stat. § 253D.28, subd. 2(b). Second, as Plaintiffs are no doubt aware, it is Ms. Johnston, the executive director, who typically provides evidence and information in the CAP's contempt proceedings relating to CPS. *See, e.g., In the Matter of the Civil Commitment of Joshua Adam Gardner*, Commitment Appeal Panel No. AP22-9063, Declaration of Nancy A. Johnston (Dec. 7, 2023). Alleging generally that the Commissioner's title is on legal proceedings as required by law does not allege the Commissioner's personal involvement in any violation. *See Dahl v. Weber*, 580 F.3d 730, 734 (8th Cir. 2009).

Plaintiffs' allegations against the Commissioner's personal involvement are conclusory, nonspecific, and directed at her general supervisory authority. That is not enough to sustain a § 1983 claim against the Commissioner in her individual capacity. *See Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007).

## CONCLUSION

The First Amended Complaint should be dismissed because, once again, Plaintiffs fail to state any legal claim. In addition, the Commissioner and Nancy Johnston are entitled to qualified immunity because no case has ever held what specific conduct would amount to an unconstitutional delay in transfer.

---

process claim, which must rest on an allegation that they lack adequate process, *Carey v. Piphus*, 435 U.S. 247, 259-60 (1978).

Dated: January 5, 2024.

KEITH ELLISON
Attorney General
State of Minnesota

*s/ Emily B. Anderson*
AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

EMILY B. ANDERSON
Assistant Attorney General
Atty. Reg. No. 0399272

JACQUELINE CLAYTON
Assistant Attorney General
Atty. Reg. No. 0504082

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1374 (Voice)
(651) 282-5832 (Fax)
aaron.winter@ag.state.mn.us
emily.anderson@ag.state.mn.us
jacqueline.clayton@ag.state.mn.us

*Attorneys for Defendants*

|#5657750-v1