UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James John Rud, Brian Keith Hausfeld, Joshua Adam Gardner, Dwane David Peterson, Lynell Dupree Alexander, and Andrew Gary Mallan, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Nancy Johnston, Executive Director, Minnesota Sex Offender Program; and Jodi Harpstead, Department of Human Services Commissioner, *in their individual and official capacities*,<br><br>Defendants. | Court File No. 0:23-cv-00486-JRT-LIB<br><br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND EVIDENTIARY HEARING** |

## INTRODUCTION

Defendants continue their efforts to complicate the uncomplicated. The vast majority of their 36-page brief is dedicated to irrelevant matters or issues already addressed by the Court. The issues presented by this motion are narrow and familiar: whether the *Dataphase* factors weigh in favor of an injunction, and whether the Court's will apply its rationale for previously concluding that they do. Plaintiffs argue that the answer to both questions should be "yes," and that their motion should therefore be granted.

## ARGUMENT

**I.   The Court should decline yet another invitation from Defendants to reconsider issues already decided.**

As Plaintiffs argued in their initial memorandum of law, the Court previously decided most of the issues necessary to decide this motion. Defendants argue not only that

the nature of those holdings precludes the law-of-the-case doctrine from applying, but that the court the Court should revisit these issues and scrap its previous conclusions. The Court should reject Defendants' characterization of the law and their request for a third bite at the apple.

Defendants boldly assert that the law-of-the-case doctrine applies "only to final judgment, not interlocutory orders." [Defs.' Br., ECF No. 111 at 16]. The established case law rejects that conclusion and the only case Defendants cite in support of this proposition involves a district court hypothetically exercising its inherent power to reconsider its prior holdings.[1] [Defs.' Br. at 16–17]. *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995) (affirming grant of summary judgment because, even if the district court had previously denied a motion to dismiss, the court "has the inherent power to reconsider and modify an interlocutory order at any time prior to the entry of judgment").

Plaintiffs do not argue that the Court is *required* to apply the law-of-the-case doctrine in this for this Motion and acknowledge that the Court has discretion to revisit its prior rulings if it so chooses.

The law-of-the-case doctrine

> was judicially created to ensure judicial efficiency and prevent the possibility of endless litigation. As one court explained, no litigant deserves an opportunity to go over the same ground twice, hoping that the passage of

---

[1] Defendants cite a plethora of cases in which the law of the case doctrine is applied to appellate decisions and un-appealed district court orders. [Defs.' Br. at 17–18]. These, of course, do not support their proposition that the doctrine is *only* properly applied in such circumstances. [Defs.' Br. at 18.

2

> time or changes in the composition of the court will provide a mote [sic] favorable result the second time.

*Cordis Corp. v. Medtronic, Inc.*, No. CIV. 4-86-820, 1986 WL 15722, at *5 (D. Minn. Dec. 1, 1986) (quotation omitted), *aff'd*, 835 F.2d 859 (Fed. Cir. 1987). "Under Eighth Circuit law, 'when a court decides upon a rule of law, that decision should continue to govern *the same issues* in subsequent stages in the same case.'" *In re President Casinos, Inc.*, 419 B.R. 394, 405 (E.D. Mo. 2009) (emphasis added) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). Here, Plaintiffs merely request that the Court, acting within its discretion, deny Defendants an opportunity to "go over the same ground [thrice]." *Cordis Corp.* 1986 WL 15722, at *5; [Order, ECF No. 53 at 5 (describing Defendant's motion to stay as a "thinly disguised" motion to reconsider because "many of the same arguments were previously raised and rejected by the Court in its preliminary injunction order")].

**II.   The *Dataphase* factors again weigh in favor of an injunction.**

Defendants argue that "Plaintiffs offer no evidence that their claims are likely to succeed and no evidence demonstrating that they are at risk of suffering irreparable harm." [Defs.' Br. at 19]. Even if this were true (which it is not), it is immaterial given that the Court has already concluded that Plaintiff Rud was likely to succeed on the merits of at least one of his claims and that he was at risk of suffering irreparable harm. In this motion for injunctive relief, brought on behalf of Plaintiffs Gardner and Alexander, Plaintiffs argue that three of the four *Dataphase* factors are identical to those presented in Plaintiff Rud's motion and are therefore non-issues, and candidly acknowledge that the balance-of-harm

3

factor may require additional analysis here. Defendants, however, offer no such candor, seizing the opportunity to attempt to relitigate every possible issue in hopes of achieving a different outcome.

For example, Defendants argue that "Plaintiffs have not established that they suffer irreparable harm absent an injunction" because the lack of transfer to CPS is not inherently harmful. [Defs.' Br. at 29]. The Court has already found otherwise. [Order, ECF No. 35 at 18 (concluding that Plaintiff Rud is likely to suffer irreparable harm because "[t]here are resources available in CPS that patients otherwise lack")]. Defendants also re-assert that there "may be significant regulatory consequences on MSOP," [Defs.' Br. at 28], but they again "neither definitively state[] nor show[] that the MSOP **would** be out of compliance." [Order, ECF No. 35 at 21 (emphasis in original)]. Defendants also argue again that Plaintiffs "provide no evidence establishing how their treatment is affected by not being transferred to CPS." [Defs.' Br. at 30]. In addition to lacking support, the Court has already concluded that CPS provides "unique benefits . . . such as a less-restrictive environment well-suited for preparing patients for reintegration into society" and "help[s] patients with their therapeutic process." [Order, ECF No. 35 at 21].[2]

---

[2] In addition to the evidence that the Court has already found sufficient [Order, ECF No. 35 at 10], Plaintiffs have submitted a CAP order and memorandum in which the panel concluded, among other things, that the petitioner's non-transfer to CPS "directly impacted Petitioner's ability to be successful in a petition for a further reduction in custody." [Gustafson Decl., Ex. C, ECF No. 105-1 at 8]. The panel further held that, while the statute does not require transfer to CPS specifically, transfer to some less restrictive environment *is* required, and because MSOP has made CPS "the only option for MSOP clients," the Commissioner has

Plaintiffs respectfully request that the Court refuse to again entertain arguments it has already rejected. Rather, as articulated in their initial memorandum, the only arguable distinction between this motion and the one prior is the second *Dataphase* factor. Specifically, the only issue before the Court is whether the balance of harms still weighs in favor of granting an injunction.

The Court previously found that balance of harms tipped in favor of an injunction. On the one hand, the Court concluded that "[e]very day that [Plaintiffs] are not transferred, they lose out on the resources and less-restrictive environment available at CPS." [Order, ECF No. 35 at 20]. Add to that, evidence showing that delays in transfer to CPS result in delays to further reductions in custody—directly harming affected patients. And on the other hand, the Court found less substantial Defendants' claimed harms because the admission of Plaintiff Rud "would only marginally increase the population of CPS, thus not substantially disturbing the existing patient to staff ratio." [*Id.*] Here, Plaintiffs contend that if the difference between 130 and 131 patients is a marginal increase that does not substantially disturb MSOP's operations, then so too is the difference between 130 and 132 patients. Tellingly, Defendants offer no argument to the contrary.

---

set[] up a self-fulfilling prophecy in its favor: clients are not ready for the next step of provisional discharge because the program failed to transfer them or otherwise alter their programing in any way to compensate for the fact that that we were not going to transfer them in any meaningful timeframe.

[*Id.* at 9–10].

Plaintiff Rud had been waiting for transfer to CPS for approximately ten months by the time the Court granted his motion. At time of filing, Plaintiffs Gardner and Alexander have been waiting for 253 and 189 days respectively.[3] In all three cases, the delays in court-ordered transfer far beyond what is reasonable, and every additional day irreparably harms Plaintiffs more than any purported harm to Defendants. For these reasons, the Court should grant Plaintiffs' motion.

### III.   Defendants misrepresent Plaintiffs' request for an evidentiary hearing.

Defendants spill much ink over Plaintiffs' request for an evidentiary hearing on this motion. Contrary to their assertion, Plaintiffs request is not "a way around Magistrate Judge Brisbois' temporary stay of their discovery requests." [Defs.' Br. at 33]. Plaintiffs voluntarily agreed to stay discovery pending Judge Brisbois' ruling on Defendants' motion to stay. Additionally, it has not been "undisputed" that "the only reason these MSOP patients are not being timely transferred is because MSOP lacks staffed beds in which to place them." Defendants, for example, also raise regulatory issues, budgeting issues, and the like. Defendants' citations to their declarations establish only that (1) a lack of staffed beds is *a* reason Defendants cite for failing to transfer individuals with final CAP orders; (2) CPS has fewer staffed beds than there are MSOP patients with final CAP orders, and (3) individuals on the waitlist are transferred sometime after a staffed bed becomes available. Throughout this litigation, Defendants have demonstrated a willingness to make use of every ambiguity to delay a final resolution on the merits. Plaintiffs simply request

---

[3] Plaintiff Gardner's CAP order became final on May 20, 2023, and Plaintiff Alexander's became final on July 26, 2023.

6

an evidentiary hearing to confirm that there is no reason for Defendants conduct that could excuse or warrant violating Plaintiffs' constitutional rights, because a lack of funding cannot. *Finney v. Arkansas Bd. of Correction*, 505 F.2d 194, 201 (8th Cir. 1974) ("Lack of funds is not an acceptable excuse for unconstitutional conditions of incarceration.").

## CONCLUSION

Plaintiffs Alexander and Gardner have met their burden to prove the need for a preliminary injunction, and Defendants have offered no new arguments or evidence to the contrary. Accordingly, Plaintiffs' motion for an injunction (and as the result of the evidentiary hearing) should be granted.

Dated: February 1, 2024

**GUSTAFSON GLUEK PLLC**

*/s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
Joe E. Nelson (#402378)
Matt Jacobs (#403465)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-333-8844
Fax: 612-339-6622
dgustafson@gustafsongluek.com
jnelson@gustafsongluek.com
mjacobs@gustafsongluek.com

***Attorneys for Plaintiffs and the Proposed Classes***