UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James John Rud, et al.,                              Case No. 23-cv-486 (JRT/LIB)

Plaintiffs,

v.                                                   **ORDER**

Nancy Johnston, et al.,

Defendants.

Pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Defendants' Motion to Stay Discovery. [Docket No. 88]. Following a Motions Hearing, the Court took the Motion under advisement. (Minutes [Docket No. 109]).

For the reasons discussed below, Defendants' Motion to Stay Discovery, [Docket No. 88], is **GRANTED in part** and **DENIED in part**, as set forth herein.

I.      **Background**

The Minnesota Sex Offender Program ("MSOP") houses civilly committed individuals. (See Compl. [Docket No. 1-1]). Individuals civilly committed to the MSOP are generally housed in one of three possible locations: a secure facility in Moose Lake, Minnesota; a secure facility in St. Peter, Minnesota; and a less secure, residential environment at the Community Preparation Services ("CPS") facility which is outside the secured-fenced area. (Id. ¶ 12).

Either a patient himself or the MSOP Executive Director can petition for a patient to be transferred to CPS. Such a petition is first reviewed by a special review board. See Minn. Stat. § 253B.18, subd. 4(c); Minn. Stat. § 253B.18, subd. 5. The special review board holds an administrative hearing and issues a report and recommendation to the Minnesota Commissioner of Human Services

who either grants or denies the petition for transfer. See Minn. Stat. § 253B.18, subd. 5. If a party is dissatisfied with the Commissioner's decision, said party may appeal the Commissioner's decision to the Commitment Appeal Panel ("CAP"). Minn. Stat. § 253B.19. The CAP is comprised of three Minnesota state court judges and four alternate judges appointed from among the acting state court judges. Id. "A party aggrieved by an order of the" CAP may appeal the CAP's decision to the Minnesota Court of Appeals. Minn. Stat. § 253B.19, subd. 5.

Plaintiffs John James Rud and Brian Keith Hausfeld initiated this action on behalf of themselves and similarly situated individuals civilly committed to the MSOP. (See Compl. [Docket No. 1-1]). Both Plaintiff Rud and Plaintiff Hausfeld had valid orders from the CAP directing that they be transferred to CPS. (Id.). At the time he initiated this action, Plaintiff Rud was housed at the secured MSOP facility in Moose Lake, Minnesota, although he had been approved for transfer to the lower-security CPS facility. (Id.). At the time this action was initiated, Plaintiff Hausfeld was housed at the CPS facility, but he alleges that the MSOP delayed his transfer for more than nine months after he received a valid transfer order. (See Id.).

Plaintiff Rud and Plaintiff Hausfeld initially raised four claims. (Id.). In Count I, they raised a claim for a writ of mandamus requiring Defendants to immediately comply with all valid CAP transfer orders. (Id. ¶¶ 34–40). Plaintiffs Rud and Hausfeld also raised two procedural due process claims (Count II & Count III) and one substantive due process claim (Count IV) alleging that their due process rights were violated by Defendants' failure to comply with valid CAP transfer orders. (Id. ¶¶ 41–69).

Shortly after initiating this action, Plaintiff Rud moved for a preliminary injunction requiring Defendants to effectuate Plaintiff Rud's transfer to CPS. (Motion [Docket No. 9]). Thereafter, the Honorable John R. Tunheim, United States District Court Judge for the United States District Court, District of Minnesota issued a preliminary injunction ordering Defendants Nancy Johnston, the

Executive Director of the MSOP, and Jodi Harpstead, the Commissioner of the Department of Human Services ("DHS"), to effectuate Plaintiff Rud's transfer to CPS pursuant to his valid transfer order. (Order [Docket No. 35]). Rud was subsequently transferred to CPS.

Defendants then moved to dismiss the Plaintiffs' initial Complaint. (Defs.' Mot. [Docket No. 21]). Defendants moved to dismiss Plaintiffs' initial Complaint in its entirety.

Judge Tunheim issued an Order granting in part and denying in part Defendants' Motion to Dismiss. (Order [Docket No. 73]). Judge Tunheim dismissed Plaintiffs' claim for a writ of mandamus based on Plaintiffs having waived said claim after Plaintiff Rud was transferred to CPS. (Id. at 8). Judge Tunheim also dismissed Plaintiffs' procedural due process claim at Count III after finding that Count III was predicated on a factually inaccurate assertion. (Id. at 9 n.2).[1] Judge Tunheim also dismissed Plaintiffs' substantive due process claim (Count IV) reasoning that although Plaintiffs have a right to be transferred to CPS, said right was not a fundamental right and Defendants' alleged conduct did not shock the conscience. (Id. at 15–18).

Judge Tunheim also dismissed Plaintiffs' claims for monetary damages reasoning that Plaintiffs had raised only official capacity claims for which Plaintiffs may not recover monetary damages. (Id. at 18–19). Judge Tunheim specifically noted, however, that the dismissal of the claim for damages was dismissed "without prejudice so that Plaintiffs may amend their Complaint and add individual capacity claims." (Id. at 19). Judge Tunheim further noted that Plaintiffs should be mindful that individual capacity claims would likely raise qualified immunity concerns. (Id. at 19 n.5).

---

[1] In part, Count III asserted that the patients can only be released from the MSOP after they complete Phase III of reintegration treatment, which Plaintiffs alleged was only available at CPS. However, in his Order, Judge Tunheim took judicial notice that a critical allegation in Count III is incorrect; patients can complete Phase III and be discharged without ever residing in CPS. (Id.) (citing In re: Braylock, Appeal Panel No. AP15-9038, Order (Aug. 21, 2015) (ordering the discharge of a patient residing in the St. Peter campus); In re: Breland, Appeal Panel No. AP15-9054, Order (Sept. 16, 2016) (same)). Judge Tunheim further noted that there is no statutory requirement that MSOP patients complete reintegration treatment before being discharged. (Id.). Judge Tunheim thus concluded that Count III failed to plausibly state a procedural due process claim and dismissed it accordingly. (Id.).

3

Judge Tunheim, however, denied Defendants' request to dismiss Plaintiffs' procedural due process claim at Count II. (Id. at 9–15). Judge Tunheim reasoned that Plaintiffs had adequately alleged that they have a constitutionally protected liberty and property interest in being transferred to CPS within a reasonable time after receiving a valid CAP transfer order, and Defendants had deprived Plaintiffs of that right without any procedure. (Id. at 15–18). Judge Tunheim also noted that a determination on any factual issues as to the reasonableness of any delay to transfer was ill-suited for consideration at the motion to dismiss stage. (Id. at 15–18).[2]

Plaintiffs filed their Amended Complaint on October 30, 2023. [Docket No. 77]. Plaintiffs' Amended Complaint names the same Defendants, but it specifically notes that the Defendants are being sued in their individual and official capacities. (Amended Compl. [Docket No. 77]). The Amended Complaint also adds four new Plaintiffs: Joshaua Gardner, Dwane Peterson, Lynell Alexander, and Andrew Mallan. (Id.). Each of these new Plaintiffs was approved for transfer to CPS. (Id. ¶¶ 5–8). Plaintiffs' Amended Complaint also adds factual allegations regarding Defendants' personal involvement in the process underlying the present action, as well as, additional allegations in support of class certification. (See Id.). The Amended Complaint contains each of the previously alleged Counts, and it adds a claim for monetary damages against Defendants in their individual capacities. (Id.).

On December 1, 2023, Defendants filed their second Motion to Dismiss, [Docket No. 94], aimed at Plaintiffs' Amended Complaint. In their second Motion to Dismiss, Defendants seek the dismissal of Plaintiffs' Amended Complaint in its entirety. The briefing on Defendants' second

---

[2] Judge Tunheim's Order also denied without prejudice Plaintiffs' Motion to Certify Class. (Id. at 19–32). Plaintiffs moved to certify two classes: a class of individuals who have been approved for transfer to CPS but whose transfers have not yet been effectuated (the "Awaiting Transfer Class") and individuals who have been transferred to CPS, but whose transfers were delayed (the "Delayed Transfer Class"). Judge Tunheim denied Plaintiffs' Motion for class certification reasoning that Plaintiffs failed to satisfy Federal Rule of Civil Procedure 23(a)'s commonality requirement as to either class. However, Judge Tunheim specifically noted that the Motion to Certify Class was denied without prejudice because discovery may later prove certification is appropriate.

Motion to Dismiss has been completed, but oral arguments on the Motion are not scheduled to occur until March 5, 2024.

On January 3, 2024, Plaintiffs filed a second Motion for Preliminary Injunction. [Docket No. 102]. Through their new Motion for Preliminary Injunction, Plaintiffs seeks an Order of this Court effectuating the transfers of Plaintiffs Gardner, Peterson, Alexander, and Mallan to CPS pursuant to each respective Plaintiff's existing CAP transfer order. Plaintiffs' second Motion for Preliminary Injunction is fully briefed but oral arguments on the Motion are not scheduled to occur until March 5, 2024.

## II.    Defendants' Motion to Stay Discovery. [Docket No. 88].

Through their present Motion, Defendants seek an Order of this Court staying all discovery in the present case. In support of their Motion to Stay, Defendants argue that a stay of discovery is warranted because their second Motion to Dismiss is likely to result in the dismissal of the present action, and even if their Motion to Dismiss does not result in a complete dismissal, the doctrine of qualified immunity protects them from having to participate in discovery prior to the resolution of the issue of qualified immunity. (Defs.' Mem. [Docket No. 90] at 4–10).

Federal Rule of Civil Procedure 26(c) provides that a district court may stay discovery upon a showing of good cause. Fed. R. Civ. P. 26(c); TE Connectivity Networks Inc. v. All Systems Broadband, Inc., No. 13-cv-1356 (ADM/FLN), 2013 WL 4487505, at *1 (D. Minn. Aug. 20, 2013). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Cottrell v. Duke, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)); Kemp v. Tyson Seafood Group, Inc., 19 F. Supp. 2d 961, 964 (D. Minn. 1998).

When determining whether a stay is appropriate pending resolution of a motion to dismiss in a particular case, federal courts have considered various factors, including (1) whether the movant

has shown a likelihood of success on the merits of the dispositive motion; (2) hardship or inequity to the moving party if the matter is not stayed; (3) prejudice to the non-moving party if the matter is stayed; and (4) the conservation of judicial resources. See, e.g., Johnson v. Cty. of Douglas, 2011 WL 9368969, at *2 (D. Neb. July 6, 2011) (citing Being v. Eli Lilli & Co., 553 F. Supp. 2d 1049, 1050 (N.D. Ind. 2008)). "Generally, the determination is practical, and largely left to the district court's discretion. Where a complaint is clearly without merit, or where a motion to dismiss otherwise seems likely to resolve the entire litigation, a stay of discovery may be appropriate." Hari v. Smith, No. 20-cv-1455 (ECT/TNL), 2022 WL 336831, at *3 (D. Minn. Feb. 4, 2022) (cleaned up) (quoting TE Connectivity Networks, Inc., 2013 WL 4487505, at *2).

It is "[t]he proponent of a stay [who] bears the burden of establishing its need." Kreditverein der Bank Austria v. Nejezchleba, 477 F.3d 942, 945 n.3 (8th Cir. 2007) (citing Clinton v. Jones, 520 U.S. 681, 708 (1997)). In meeting this burden, the proponent of the stay must demonstrate a specific hardship or inequity that would result if required to proceed. See Roehrs v. Walstrom, No. 23-cv-1885 (SRN/DLM), 2024 WL 22089, at *6 (D. Minn. Jan. 2, 2024). This heavy burden includes a presumption favoring the party opposing a stay. Busch v. Bluestem Brands, Inc., No. 16-cv-644 (WMW/HB), 2017 WL 5054391, at *1 (D. Minn. Feb. 22, 2017); Marden's Ark, Inc. v. UnitedHealth Grp., Inc., No. 19-cv-1653 (PJS/DTS), 2020 WL 13002517, at *5 (D. Minn. Aug. 20, 2020); ASI, Inc. v. Aquawood, LLC, No. 19-cv-0763 (JRT/HB), 2020 WL 13519442, at *3 (D. Minn. Jan. 6, 2020).

### A. Likelihood of Success on the Merits

"A party who must demonstrate a likelihood of success on the merits in support of requested stay is not required to demonstrate a greater than fifty percent probability that the motion for which it is seeking the stay will result in a determination in its favor." Danger v. Nextep Funding, LLC, No. 18-cv-567 (SRN/LIB), 2019 WL 4917181, at *3 (D. Minn. Jan. 22, 2019) (citing Knutson v. AG

6

Processing, Inv., 302 F. Supp. 2d 1023, 1034 (N.D. Iowa 2004)). The movant for a stay must, however, show more than a mere possibility that the motion will result in a decision in movant's favor. Danger, 2019 WL 4917181, at *3. In determining whether a movant seeking a stay has shown a likelihood of success on the merits, the Court must take a "peek" into the merits of the pending dispositive motion. Unbehaun v. Minnesota Energy Res. Corp., No. 23-cv-1145 (NEB/DTS), 2023 WL 8434460, at *2 (D. Minn. Aug. 16, 2023); TE Connectivity Networks Inc. v. All Systems Broadband, Inc., No. 13-cv-1356 (ADM/FLN), 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013).

In the present case, Defendants unpersuasively argue that a stay of discovery is warranted because their Motion to Dismiss is likely to result in the dismissal of the present action in its entirety. Although Defendants proffer arguments in support of the dismissal of all four claims in Plaintiffs' Amended Complaint, the Court need not consider Defendants' arguments related to Counts III and IV because Plaintiffs have affirmatively acknowledged that Counts III and IV were plead in the Amended Complaint only to preserve appeal of those claims. (Plfs.' Mem. [Docket No. 101] at 3 n.3) ("To be clear, Plaintiff expect the Court to dismiss Count III and IV for the same reasons as before and reallege them only to avoid any suggestion that Plaintiffs voluntarily abandoned those claims."); (January 8, 2024, Motions Hearing, Digital Record at 1:41 p.m. – 1:43 p.m., 1:54 p.m. – 1:55 p.m.). Plaintiffs are not attempting to reassert Counts III and IV. For the purposes of the present Motion, the Court need only determine whether Defendants have shown a likelihood of the success on the merits of their request to dismiss Plaintiffs' Count I, Plaintiffs' Count II, and Plaintiffs' claim for monetary damages against the Defendants in their individual capacities.

### 1. Writ of Mandamus Claim (Count I)

Count I of Plaintiffs' Amended Complaint seeks a preemptory writ of mandamus ordering Defendants to immediately comply with all effective CAP orders and to transfer Plaintiffs and proposed class members to CPS pursuant to these effective CAP orders. (Amended Compl. [Docket

No. 77] ¶¶ 49–55). Plaintiffs allege that although Defendants have a statutory duty to comply with those CAP transfer orders which are no longer subject to appeal, Defendants have materially delayed these transfers without any assurances that the transfer will eventually be effectuated. (See Id.). Plaintiffs further allege that Defendants' failure constitutes a "public wrong" for which Plaintiffs have no adequate, alternative remedy in the law. (See Id.).

Although it is unclear whether Plaintiffs seek a writ of mandamus pursuant to Minnesota state law or federal law,[3] in either case mandamus is an extraordinary remedy. Madison Equities, Inc. v. Crockarell, 889 N.W.2d 568, 571 (Minn. 2017); In re Kellogg Brown & Root, Inc., 796 F.3d 137, 150 (D.C. Cir. 2015). To obtain a writ of mandamus under Minnesota law, a plaintiff must show that a defendant "'failed to perform an official duty clearly imposed by law,' (2) which caused 'a public wrong specifically injurious to [said plaintiff],' and (3) for which 'there is no other adequate legal remedy.'" Id. Similarly, to obtain a writ of mandamus pursuant to federal law requires that "(1) the mandamus petitioner have no other adequate means to attain the relief he desires; (2) the mandamus petitioner show that its right to the writ is clear and indisputable; and (3) the court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." In re Kellogg Brown & Root, Inc., 796 F.3d 137, 150 (D.C. Cir. 2015) (cleaned up) (quoting Cheney v. U.S. Dist. Ct. for D.C., 542 U.S. 367, 380 (2004)).

Defendants first unpersuasively argue that Plaintiffs' new claim for a writ of mandamus will be dismissed because Judge Tunheim already dismissed the original Plaintiffs' claim for a writ of mandamus. (See Defs.' Mem. [Docket No. 90] at 7). This argument overlooks the fact that the original Plaintiffs' claim for a writ of mandamus was dismissed only because Plaintiffs' counsel waived the

---

[3] Plaintiffs' Amended Complaint cites Minnesota state law as the basis for their need for a writ of mandamus; however, it is unclear whether they seek the issuance of said writ of mandamus pursuant to state or federal law. (See Amended Compl. [Docket No. 77] ¶¶ 49–55). In any event, the Court need not here resolve this issue because regardless of whether Plaintiffs seek the issuance of a writ of mandamus pursuant to state or federal law, Defendants, for all the reasons discussed herein, have failed to show a likelihood of success on the merits of their request to dismiss said claim.

claim as moot after the action for which the writ was sought (transferring Plaintiff Rud to CPS) was completed pursuant to Judge Tunheim's Order on Plaintiffs' Motion for Preliminary Injunction. (See Order [Docket No. 73] at 8).

Moreover, Judge Tunheim's rationale in his Order granting Plaintiffs' first Motion for Preliminary Injunction, (Order [Docket No. 35]), weighs against finding that Defendants have demonstrated a likelihood of success on the merits regarding Plaintiffs' renewed claim for a writ of mandamus. Plaintiffs' claim for a writ of mandamus seeks the same relief that Plaintiff Rud sought in his Motion for Preliminary Injunction, and Judge Tunheim has already determined that Plaintiff Rud was entitled to a preliminary injunction ordering Defendants to transfer him to CPS. (Id.).[4] Although the determination as to whether each plaintiff will be entitled to similar relief is highly individualized and fact-dependent, Judge Tunheim's rationale in his Order granting Plaintiffs' first Motion for Preliminary Injunction greatly diminishes the persuasiveness of Defendants' generalized assertion that Plaintiffs' renewed claim for a writ of mandamus will be summarily dismissed simply based on Judge Tunheim's previous Order on Defendants' first Motion to Dismiss.

Defendants have also failed to demonstrate that they are likely to succeed on the merits of their argument that this Court lacks jurisdiction to issue the requested writ of mandamus.[5] In support of their second Motion to Dismiss, Defendants argue that this Court lacks the subject matter jurisdiction to issue a writ of mandamus because (1) Minnesota statute vests Minnesota state courts with "exclusive" jurisdiction to issue a writ of mandamus and (2) because no federal law authorizes this Court to issue a writ of mandamus like the writ requested by Plaintiffs. (Defs.' Mem. in Support

---

[4] In their memorandum in support of the present Motion, Defendants acknowledge that the new plaintiffs are in "substantively the same position as" Plaintiff Rud and Plaintiff Hausfeld. (Defs. Mem. [Docket No. 90] at 7).
[5] In fact, Defendants' memorandum in support of the present Motion does not offer any argument suggesting that Defendants have demonstrated a likelihood of success on the merits of this argument. (See Defs.' Mem. [Docket No. 90]). Nevertheless, this argument is contained within Defendants' memorandum in support of their second Motion to Dismiss, and the consideration of the present Motion necessitates that the Court "peek" into the merits of Defendants' second Motion to Dismiss.

of Mot. to Dismiss [Docket No. 96] at 18–19). The Court finds that on the present record Defendants have failed to demonstrate a likelihood of success regarding their argument that this Court lacks the subject matter jurisdiction to issue a writ of mandamus as requested by Plaintiffs.

Title 28 U.S.C. § 1651 authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Defendants fail to offer any argument as to how a Minnesota state statute could override the authorizations provided by § 1651. Similarly, Plaintiffs' citation to Minnesota State statutes in their Amended Complaint does not necessarily preclude the Court from exercising its authority under § 1651. Although a federal court may not generally issue a writ compelling a state official to conduct their duties in accordance with state law, neither the Eleventh Amendment nor any issue of comity precludes a federal court from issuing a writ of mandamus ordering a state official to enforce rights protected by federal law. See Hoffman v. Stump, 172 F.3d 48 (6th Cir. 1998) (citing CBS Inc. v. Young, 522 F.2d 234, 242 (6th Cir. 1975); Benjamin v. Malcolm, 803 F.2d 46, 47 (2d Cir. 1986)); Jackson v. Powell, No. 1:18-cv-466, 2020 WL 13750990, at *3 (W.D. Mich. Dec. 3, 2020); Spencer v. Gasper, No. 22-1318, 2022 WL 20730193, at *3 (6th Cir. Aug. 9, 2022), cert. dismissed, 144 S. Ct. 271 (2023); State ex rel. Skaggs v. Brunner, 588 F. Supp. 2d 828, 833 (S.D. Ohio 2008). See also Hankins v. Finnel, 964 F.2d 853, 859 (8th Cir. 1992).[6] Importantly, the Court does not here conclude that Plaintiffs are entitled to a writ of mandamus as requested or even that Plaintiffs are likely to succeed on their claim for a writ of mandamus; rather, the Court concludes that Defendants have

---

[6] Defendants' reliance on Hebert v. Winona Cnty., 111 F. Supp. 3d 970, 975 (D. Minn. 2015), is misplaced because Herbert, unlike the present case, involved a writ of mandamus seeking to compel state actors to comply with state law. Section 1651 was simply not at issue in Herbert. Defendants' reliance on Rivera v. Minnesota, is likewise misplaced because Rivera, again unlike the present case, involved a plaintiff seeking a writ of mandamus directing the state courts to perform a specific judicial function, i.e., resentence plaintiff in accordance with plaintiff's interpretation of state law. Rivera v. Minnesota, No. 22-cv-1129 (KMM/BRT), 2022 WL 4298745, at *2 (D. Minn. Sept. 19, 2022), aff'd, No. 22-3383, 2023 WL 3444884 (8th Cir. Jan. 17, 2023). These cases are inapposite to the circumstances of the present case.

failed to demonstrate a likelihood of success on the merits of their Motion to Dismiss to the extent it is based on the argument that this Court lacks the authority to issue such a writ of mandamus.

Defendants have also failed to demonstrate a likelihood of the success of their argument that Plaintiffs are not entitled to a writ of mandamus because they have an adequate alternative remedy in the law.[7] Although it is, as Defendants contend,  possible that Plaintiffs could obtain relief similar to their requested writs of mandamus through contempt proceedings in Minnesota State Court based on Defendants failure to comply with valid orders from the CAP, at least one Minnesota state court considering the issue in circumstances substantively similar to the present case concluded that contempt proceedings were not an adequate, alternative remedy to mandamus relief. Garry v. Johnston, No. 62-cv-19-8234, Order [Docket No. 37] at 9 (Minn. D. Ct. Sept. 18, 2020). Likewise, Defendants have failed to demonstrate a likelihood of success on their argument that a preliminary injunction is an adequate, alternative remedy because Defendants fails to cite to any legal authority in support of the assertion that a preliminary injunction is an adequate, alternative remedy.[8]

---

[7] Here again, Defendants' memorandum in support of the present Motion does not offer any argument suggesting that Defendants have demonstrated a likelihood of success on the merits of this argument. (See Defs.' Mem. [Docket No. 90]). Nevertheless, this argument is contained within Defendants' memorandum in support of their second Motion to Dismiss, and the consideration of the present Motion necessitates that the Court "peek" into the merits of Defendants' second Motion to Dismiss.

[8] Defendants also argue that a lack of funding is a complete defense to a petition for a writ of mandamus. (Defs.' Mem. [Docket No. 96] at 21–22). The Court finds, however, that on the present record Defendants have failed to demonstrate a likelihood of success on this lack-of-funding argument at the motion to dismiss stage. Although a lack of funds can be a defense to a petition for a writ of mandamus in certain limited circumstances, Defendants, on the record now before the Court, have failed to cite to any case in which a court accepted the lack-of-funds defense in the face of a petition for a writ of mandamus regarding the enforcement of a federal constitutional right. (See Defs.' Mem. in Support of Mot. to Dismiss [Docket No. 96] at 21–22). Typically, the lack of funds is not a viable defense to a plaintiff's claim that their constitutional rights are being violated. See Finney v. Arkansas Bd. of Correction, 505 F.2d 194, 201 (8th Cir. 1974) ("Lack of funds is not an acceptable excuse for unconstitutional conditions of incarceration."); C.P.X. through S.P.X. v. Garcia, 450 F. Supp. 3d 854, 907 (S.D. Iowa 2020). Moreover, Plaintiffs specifically allege that, to the extent the constitutional violation is caused by a lack of funds, Defendants are the cause of this lack of funds because they are responsible for failing to make a "meaningful effort to secure funds[.]" (Amended Compl. [Docket No. 77] ¶¶ 36, 37). Furthermore, Defendants' lack-of-funding argument disregards the fact that the Court, at the motion to dismiss stage, must accept Plaintiffs' factual allegations as true. At the motion to dismiss stage, the Court is required to accept the Amended Complaint's factual allegations as true and draw all reasonable inferences in favor of Plaintiffs. See, e.g., Varga v. U.S. Nat'l Bank Ass'n, 764 F.3d 833, 838 (8th Cir. 2014); Riley v. St. Louis County Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

In summation, the Court finds that Defendants have failed to adequately demonstrate a likelihood of success on the merits of their request to dismiss Count I of Plaintiffs' Amended Complaint. Although it is possible that Defendants will ultimately prevail on their request to dismiss Count I of Plaintiffs' Amended Complaint, the Court finds that Defendants have not, on the present record, demonstrated more than a mere possibility they will succeed on their request to dismiss Count I of Plaintiffs' Amended Complaint.

## 2. Procedural Due Process Claim (Count II)

In Count II of their Amended Complaint, Plaintiffs allege a procedural due process claim under the Due Process Clause of the United States Constitution and the Minnesota Constitution. (Amended Compl. [Docket No. 77] ¶¶ 56–66). Specifically, Plaintiffs allege that they have a protected interest in being transferred to the less-restrictive CPS after receiving a CAP transfer order, and Defendants deprived Plaintiffs of that protected interest without adequate procedure. (Id.) This is the same procedural due process claim Plaintiffs alleged in their initial Complaint.[9]

"Procedural due process entitles a person to 'predeprivation notice and hearing' where 'deprivations of property are authorized by an established state procedure.'" Foster v. Missouri Dep't of Health & Sr. Servs., 736 F.3d 759, 763 (8th Cir. 2013) (quoting Keating v. Neb. Pub. Power Dist., 562 F.3d 923, 928 (8th Cir. 2009)). "To establish a violation of procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty, or property interest."

---

[9] In support of their second Motion to Dismiss, Defendants argue that Count II in Plaintiffs' Amended Complaint has materially altered from Count II in Plaintiffs' initial Complaint because Count II in the Amended Complaint is now depended on Plaintiffs' new claim that they are constitutionally entitled to treatment—a claim which, Defendants argue, Plaintiffs are barred from raising here. (Defs.' Mem. In Support of Mot. to Dismiss [Docket No. 96] at 10–12). The Court need not consider this argument beyond this footnote because it is based on a misinterpretation of Plaintiffs' Amended Complaint. Although the language of Count II in Plaintiffs' Amended Complaint includes language referencing "treatment" which was not included in their previous Complaint, the language of Count II, when read in context, makes it evident that the reference to "treatment" is included only to demonstrate a collateral consequences of Defendants' alleged failure to transfer Plaintiffs to CPS after Plaintiffs received valid CAP transfer orders. (See Amended Compl. [Docket No. 77] ¶¶ 56–66). Count II of Plaintiffs' Amended Complaint is still predicated on Plaintiffs' assertion that they "have received no due process of law with respect to Defendants' delay and refusal to comply with the CAP order[s]." (Id. ¶ 64).

McCollum v. Titus, No. 21-cv-1774 (NEB/HB), 2022 WL 2496249, at *4 (D. Minn. June 2, 2022) (quoting Mulvenon v. Greenwood, 643 F.3d 653, 657 (8th Cir. 2011)), report and recommendation adopted, 2022 WL 2467786 (D. Minn. July 6, 2022). If a plaintiff demonstrates that he has a protected interest, the Court must consider what constitutes constitutionally adequate process "by balancing the specific interest that was affected, the likelihood that the" defendant's procedures or lack thereof "would result in an erroneous deprivation, and the [defendant's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (citing Mathews v. Eldridge, 424 U.S. 319, 332–35 (1976)).

In the present case, Defendants have failed to adequately demonstrate a likelihood that they will succeed on their request to dismiss the procedural due process claim found at Count II of Plaintiffs' Amended Complaint. Defendants have failed to demonstrate the likelihood of their success on this request because Judge Tunheim has already concluded that Plaintiffs have "sufficiently pled a claim to relief for a procedural due process violation" as found in Count II of their Amended Complaint. (See Order [Docket No. 73] at 14). Judge Tunheim's decision that Plaintiffs' Count II sufficiently pled a procedural due process claim is the law of the case here, and it thus precludes Defendants from demonstrating a likelihood of success on the merits of their request to dismiss Count II for failure to state a claim. See e.g., Sprint Commc'ns Co. L.P. v. Lozier, 860 F.3d 1052, 1056 (8th Cir. 2017) ("The law-of-the-case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'").

For these reasons, the Court finds that Defendants have failed to adequately demonstrate a likelihood of success on the merits of their request to dismiss Count II of Plaintiffs' Amended Complaint.

### 3.   Individual Capacity Claims for Monetary Damages

Plaintiffs' Amended Complaint also seeks monetary damages against Defendants in their individual capacities stemming from the alleged violations of Plaintiffs' due process rights. (Amended Compl. [Docket No. 77] at 24). Although Plaintiffs' Amended Complaint does not specifically connect the claim for monetary damages to a particular cause of action, Plaintiffs' discussion of their claim for monetary damages demonstrates that the claim for monetary damages derives primary from their procedural due process claim. (See Plfs.' Mem. in Opposition to Defendants' Motion to Dismiss [Docket No. 101] at 6–11).

Plaintiffs' procedural due process claim at Count II is raised pursuant to 42 U.S.C. § 1983. It is well-established that § 1983 entitles an injured person to recover monetary damages if a state official violated said inured person's constitutional rights. Ziglar v. Abbasi, 582 U.S. 120, 130 (2017). Monetary damages stemming from a § 1983 claim are, however, only available against a state official sued in their individual capacity. See Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997).

Defendants' newest Motion to Dismiss seeks the dismissal of Plaintiffs' individual capacity claims for monetary damages. (See Defs.' Mem. in Support of Mot. to Dismiss [Docket No. 96] at 22–29). In support of their request for dismissal, Defendants argue that Plaintiffs' individual capacity claims should be dismissed because Defendants are entitled to qualified immunity. (Id.). Defendants argue in the alternative that even if the Court determines that they are not entitled to qualified immunity, the individual capacity claim against Defendant Harpstead should be dismissed because Plaintiffs have failed to plausibly allege her personal involvement in the underlying constitutional violation alleged. (Id.).

The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent

14

or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 343 (1986). To overcome the defense of qualified immunity, a plaintiff must show that: (1) the facts demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. <u>Parrish v. Ball</u>, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted).[10]

In support of their assertion that they are entitled to qualified immunity, Defendants unpersuasively argue that although there is a Minnesota Supreme Court case establishing that civil committees at the MSOP have a clearly established right to be transferred to CPS within a "reasonable time" following the receipt of a CAP transfer order, Defendants here did not violated any clearly established constitutional right because, at the time the alleged constitutional violations underlying the present case occurred, no controlling precedent had articulated what constitutes a "reasonable time." (<u>See</u> Defs.' Mem. in Support of Mot. to Dismiss [Docket No. 96] at 25–26). Put differently, Defendants assert that "[b]ecause there is no controlling or persuasive authority that establishes what circumstances surrounding a transfer delay would result in a constitutional violation—or that holds similar delays to Plaintiffs' alleged delays are unconstitutional—the Court should grant" Defendants qualified immunity from damages in their individual capacities. (<u>Id.</u> at 27). On the record now before it, the Court finds that Defendants have failed to demonstrate a likelihood of success on the merits of their qualified immunity argument.

The parties' discussion of the qualified immunity issue here involves their differing interpretation of <u>McDeid v. Johnston</u>, 984 N.W.2d 864 (Minn. 2023). In <u>McDeid</u>, the Minnesota Supreme Court reversed the Minnesota Court of Appeals' decision that qualified immunity shielded a Minnesota state official from two MSOP patients' claim that it was a violation of their due process

---

[10] The Court need not here address the first prong regarding whether Plaintiffs have pled facts demonstrating the deprivation of a constitutional right. As discussed above, Judge Tunheim has already concluded that Plaintiffs' procedural due process claim at Count II sufficiently pleads a claim upon which relief may be granted. (<u>See</u> Order [Docket No. 73] at 9–14). Thus, for the purposes of the present Motion, the Court will assume that Plaintiffs have alleged facts demonstrating the deprivation of a constitutional right.

rights for the state official to delay their transfer to the CPS after receiving valid CAP transfer orders. Id. The Court reasoned that its precedent "and analogous Eighth Circuit cases . . . clearly established that compliance with a CAP transfer order must occur within a reasonable time." Id. at 879.[11] The Court noted that "[w]hat amount of time is reasonable in any given set of circumstances is an issue of fact to be determined by the district court." Id. at 868.

The parties have differing interpretations of McDeid. As discussed above, Defendants interpret McDeid as follows: Plaintiffs' right to be transferred to CPS within a reasonable time following the final, favorable decision of the CAP is not clearly established because McDeid failed to articulate what set of circumstances constitute a "reasonable time." (See Defs.' Mem. in Support of Mot. to Dismiss [Docket No. 96] at 25–26).[12] Conversely, Plaintiffs interpret McDeid as holding that (1) the constitutional right they assert in the present case was clearly established at the time they were each approved for transfer to CPS, (2) a defendant is not entitled to qualified immunity in the face of a procedural due process claim based on said constitutional right, and (3) the issue of what constitutes a "reasonable time" is a question of fact which precludes granting a defendant the protection of qualified immunity. (Plfs.' Mem. in Opposition to Defs.' Mot. to Dismiss [Docket No. 101] at 6–11).[13]

---

[11] Specifically, the McDeid Court concluded "that the right to transfer to CPS within a reasonable time of the CAP transfer orders was clearly established" as of at least September 21, 2017. Id. at 868, 870. Each of the Plaintiffs in the present case was approved for transfer to CPS after September 21, 2017. (See Amended Compl. [Docket No. 77] ¶¶ 3–8).

[12] Defendants' argument that this entitles them to qualified immunity at the motion to dismiss stage appears to conflict with Judge Tunheim's Order which provided that "any factual issues about the reasonableness of [Defendants'] delays are determinations ill-suited for the motion to dismiss stage." (See Order [Docket No. 73] at 15).

[13] In part, Plaintiffs' interpretation of McDeid appears to align which the McDeid Court's assertion, echoed by Judge Tunheim, that the amount of time which is reasonable in any given circumstance is an issue of fact. However, the issue is not entirely settled because the McDeid Court did not address the issue of whether the plaintiffs there had adequately pleaded a § 1983 claim. See McDeid v. Johnston, 984 N.W.2d 864 (Minn. 2023). In deciding McDeid, the Minnesota Supreme Court, like the Minnesota Court of Appeals, assumed that plaintiffs' § 1983 claim had been sufficiently plead. Id. at 871. On remand, the lower court was directed to address "whether the State Officials' clear obligation to transfer" plaintiffs "to CPS within a reasonable time following a CAP transfer order gives rise to a federal due process right and accordingly, whether the State Officials' failure to do so . . . is a violation of" plaintiffs' "federal constitutional rights sufficient to support a section 1983 claim." Id. at 879.

For the purposes of the present Motion, however, the Court need not decide the proper interpretation of <u>McDeid</u> or even reach an ultimate conclusion on the issue of qualified immunity in the present case. It is sufficient to state that Defendants have failed to satisfactorily demonstrate a likelihood of success on the merits of their qualified immunity argument. This is not to say that Defendants will not ultimately prevail on the issue of qualified immunity; Defendants have simply failed to demonstrate more than a mere possibility that they will prevail on the issue of qualified immunity.

Defendants also argue that Plaintiffs have failed to allege sufficient facts to demonstrate Defendant Harpstead's personal involvement in any alleged constitutional violation. (Defs.' Mem. in Support of Mot. to Dismiss [Docket No. 96] at 28–29).

A plaintiff asserting a § 1983 claim, such as plaintiffs in the present case, must plead facts sufficient to demonstrate that each individual defendant was directly and personally involved in an alleged constitutional violation. <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985); <u>Clemmons v. Armontrout</u>, 477 F.3d 962, 967 (8th Cir. 2007).[14] Personal involvement is not, however, "limited to direct participation by the supervisor in the challenged conduct, but may also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." <u>Hayut v.</u>

---

[14] For relief pursuant to 42 U.S.C. § 1983, "a plaintiff must prove (1) violation of a [federal] constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." <u>McDonald v. City of St. Paul</u>, 679 F.3d 698, 704 (8th Cir. 2012) (quoting <u>Shrum ex rel Kelly v. Kluck</u>, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). Vicariously liability does not exist in actions brought pursuant to 42 U.S.C. § 1983, <u>Beard v. Lockhart</u>, 716 F.2d 544, 545 (8th Cir. 1983), and the doctrine of respondeat superior does not apply to actions under Section 1983. <u>Monnell v. Dep't of Soc. Servs.</u>, 436 U.S. 659, 691 (1978).

State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003). See Sturgeon v. Faughn, 36 F.4th 804,

809 (8th Cir. 2022); Davis v. Buchanan Cnty., 11 F.4th 604, 624 (8th Cir. 2021).

On the record now before the Court, the undersigned concludes that Defendants have failed

to demonstrate a likelihood of success on the merits of their argument that Plaintiffs failed to allege

sufficient facts to demonstrate Defendant Harpstead's personal involvement in any alleged

constitutional violation. In their Amended Complaint, Plaintiffs allege facts which, when construed

in the light most favorable to Plaintiffs,[15] demonstrate that Defendant Harpstead knew about valid

CAP transfer orders; knew about the consistent decision not to comply with the valid CAP transfer

orders; agreed with the ongoing decision not to comply with the valid CAP transfer orders; and failed

to take any action to comply with the valid CAP transfer orders, even in the face of contempt

proceedings regarding those same CAP transfer orders. (See, e.g., Amended Compl. [Docket No. 77]

¶¶ 9–10, 24, 37–38). Plaintiffs further allege that Defendant Harpstead declined to take certain

specified actions which would have permitted Plaintiffs to be transferred to CPS pursuant to their

valid CAP transfer orders. (Id.).

Although it is hypothetically possible that Defendants will ultimately prevail on their

argument that Plaintiffs failed to adequately allege Defendant Harpstead's personal involvement in

any alleged constitutional violation, the Court finds that Defendants have not, on the present record,

demonstrated more than a mere possibility they will succeed on this argument.

---

[15] In addressing a motion to dismiss, such as Defendants' second Motion to Dismiss, Courts accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. See, e.g., Varga v. U.S. Nat'l Bank Ass'n, 764 F.3d 833, 838 (8th Cir. 2014); Riley v. St. Louis County Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (cleaned up).

For these reasons, the Court finds that Defendants have failed to adequately demonstrate a likelihood of success on the merits of their request to dismiss Plaintiffs' individual capacity claims for monetary damages.

### B. Hardship or Inequity to Defendants and Prejudice to the Plaintiffs

Defendants assert that they would "likely suffer significant hardships if discovery" is not stayed in the present case. (Defs.' Mem. [Docket No. 90] at 4–5, 8–9). Defendants first argue that permitting discovery before resolving the qualified immunity issue would prejudice them because qualified immunity is intended to protect them, in their individual capacities, from suit, including engaging in the discovery process. (Id.). Defendants next generically assert that if there is no stay in discovery, they will suffer the "significant, self-evident burdens and costs associated with responding to interrogatories, document requests, requests for admission, and whatever other discovery Plaintiffs may seek, relating to claims that are may [sic] be (and are likely to be) dismissed." (Id. at 8).

The Court finds Defendants argument here to be unpersuasive. As a threshold matter, Defendants arguments all ostensibly appear to be predicated on their belief that their second Motion to Dismiss will result in the dismissal of the present action in its entirety. As discussed above, however, Judge Tunheim has already concluded that Plaintiffs have adequately pleaded a procedural due process claim. (See Order [Docket No. 73]). Thus, at a minimum at least one claim will survive Defendants' second Motion to Dismiss. Furthermore, the persuasiveness of Defendants' argument that all of Plaintiffs' other claims will be dismissed is diminished for all the same reasons the Court has concluded that Defendants have failed to demonstrate a likelihood of success on the merits of their motion to dismiss.

The Court also finds unpersuasive Defendants' generic assertion that, absent a stay, they will suffer the "significant, self-evident burdens and costs associated with responding to interrogatories, document requests, requests for admission, and whatever other discovery Plaintiffs may seek, relating

to claims that are may [sic] be (and are likely to be) dismissed." In their written materials, Defendants failed to highlight any specific discovery requests served upon them or articulate how responding to any specific discovery requests will unduly prejudice them. Courts have consistently agreed that the expenditure of cost inherent to litigation is an insufficient basis upon which to stay discovery, absent some "particular facts or circumstances that make responding to discovery . . . unusually burdensome or prejudicial beyond the usual case[.]" TE Connectivity Networks Inc., 2013 WL 4487505, at *2. See Wild v. Rockwell Labs, Ltd., No. 4:19-cv-919 (W/RK), 2020 WL 1892307, at *2 (W.D. Mo. Apr. 16, 2020); Am. Med. Ass'n v. Stenehjem, No. 1:19-cv-125, 2021 WL 4165378, at *3 (D.N.D. Sept. 13, 2021). Defendants have failed to highlight any specific discovery request, and consequently, they have failed to demonstrate any particular facts or circumstances which make responding to said discovery requests unduly burdensome or prejudicial.

Although Defendants' written materials did not identify any discovery requests which had been served upon them, Plaintiffs' counsel, at the Motions Hearing, asserted that Plaintiffs had served upon Defendants six interrogatories, six request for production, and two or three[16] notices of deposition. (January 8, 2024, Motions Hearing, Digital Record at 1:33 p.m. – 1:35 p.m., 1:42 p.m. – 1:46 p.m., 1:50 p.m. – 1:53 p.m., 1:59 p.m. – 2:01 p.m.).[17] Although Defendants acknowledged that the discovery requests had been served upon them, Defendants did not highlight any specific, articulable undue prejudice they would suffer in responding to the interrogatories or requests for

---

[16] At the Motions Hearing, Plaintiffs' counsel asserted that two notices of deposition had been served upon Defendants; however, Defendants asserted that there had been three notices of deposition from Plaintiffs—one deposition for each Defendant and one Rule 30(b)(6) deposition. (January 8, 2024, Motions Hearing, Digital Record at 1:33 p.m. – 1:35 p.m., 1:43 p.m. – 1:44 p.m.; 1:59 p.m. – 2:00 p.m.). The Court need not resolve this conflict because whether it is two or three depositions does not alter the Court's present analysis.

[17] Plaintiffs' counsel further noted that all of the written discovery requests relate to Plaintiffs' procedural due process claim, as well as, their other claims. (Id.). Plaintiffs' counsel proffered that he believed the depositions could be completed in approximately one day. (Id.). Plaintiffs' counsel further represented to the Court that the six interrogatories and six requests for production served upon Defendants constituted the totality of the written discovery Plaintiffs will seek in the present case. (Id.). In other words, even if Plaintiffs' individual capacity claims for monetary damages survive Defendants' Motion to Dismiss, Plaintiffs will not seek to serve a second round of written discovery, (Id.); thus, Plaintiffs are judicially estopped from seeking written discovery beyond the written discovery already served.

production beyond the burden and costs commensurate with litigation. (See Id.). Similarly, Defendants failed to proffer any specific objection they had to the interrogatories and requests for production served upon them. (See Id.). Because Defendants have failed to highlight any specific discovery dispute or objection arising out of the interrogatories and request for production served upon them, the hypothetical potential of such a dispute arising is too speculative to support a stay of discovery in the present case. See Wild v. Rockwell Labs, Ltd., No. 4:19-cv-919 (W/RK), 2020 WL 1892307, at *2 (W.D. Mo. Apr. 16, 2020); Ferrari v. Best Buy Co., No. 14-cv-2956 (MJD/FLN), 2014 WL 11498023, at *1 (D. Minn. Dec. 4, 2014).[18] If during the course of discovery any such dispute arises, Defendants may address any specific objections they may have in their responses to said discovery requests. Ferrari v. Best Buy Co., No. 14-cv-2956 (MJD/FLN), 2014 WL 11498023, at *1 (D. Minn. Dec. 4, 2014).

At the Motions Hearing, Defendants did identify specific issues which could arise if the depositions noticed by Plaintiffs are permitted to go forward at this time. (January 8, 2024, Motions Hearing, Digital Record at 1:33 p.m. – 1:35 p.m., 1:59 p.m. – 2:01 p.m.). Defendants first noted that if the depositions occur prior to the resolution of the issue of qualified immunity, it could lead to multiple depositions of each Defendant because, according to Defendants, questions related only to individual capacity claims would not be appropriate until after the resolution of the qualified immunity issue. (Id.). Defendants asserted that they intend to argue that the deposition of Defendant Harpstead, in her capacity as the Commissioner of the Department of Human Services, is improper, and Plaintiffs' counterargument is that such a deposition is proper because she is a named defendant

---

[18] During the Motions Hearing, Defendants' counsel noted that Plaintiffs' requests for production were addressed to all Defendants, as opposed to being addressed to the Department of Human Services directly, and counsel implied that responding to said request for production could potentially lead to a dispute regarding whether Defendants were required to respond in their individual capacities. Here again, this is speculative in nature. Although counsel implied that an issue may arise regarding whether Defendants have to respond to request for production in their individual capacities, Defendants have not identified any responsive documents which they possess in only their individual capacities.

sued in her individual capacity. (Id.). Thus, according to Defendants, the depositions cannot proceed until after the issue of qualified immunity is resolved. (See Id.).

Defendants also argue that their alleged entitlement to qualified immunity alone warrants a stay of discovery pending the Court's resolution of the qualified immunity issue because it would be unduly prejudicial to subject them to the rigors of the discovery process before resolving the issue of qualified immunity. The Court finds this argument to be unpersuasive.

Defendants' qualified-immunity-related argument is unpersuasive as a basis to stay discovery in the present matter because Judge Tunheim has already determined that Plaintiffs' procedural due process claim will proceed beyond the motion to dismiss phase, (Order [Docket No. 73]), and Plaintiffs' counsel has represented to the Court that all presently served written discovery—which represents the entirety of Plaintiffs' written discovery in the present case— relates to Plaintiffs' procedural due process claim, (January 8, 2024, Motions Hearing, Digital Record at 1:42 p.m. – 1:44 p.m.).[19] Thus, regardless of the outcome of Defendants' qualified immunity argument, Plaintiffs' written discovery will remain necessary. Moreover, the persuasiveness of Defendants' argument here is further diminished by the Court's above finding that Defendants have failed to demonstrate a likelihood that they will succeed on the merits of their qualified immunity argument.[20]

---

[19] The only potential, limited exception is the issue of deposition questions which related only to Plaintiffs' individual capacity claims. Any potential prejudice associated with this issue is easily alleviated by permitting written discovery and staying the depositions until the ultimate resolution of the qualified immunity issue. As discussed above, Plaintiffs' counsel averred that the noticed depositions would take approximately one day, so the Court is confident that the parties will be able to efficiently complete these depositions after the resolution of the issue of qualified immunity.

[20] Additionally, each of the cases upon which Defendants rely in support of their argument that "multiple courts have found that such a stay [of discovery] is well-warranted when a defendant asserts a qualified immunity defense" is materially distinguishable from the present case. (See Defs.' Mem. [Docket No. 90] at 5) (citing Ballard v. Heineman, 548 F.3d 1132, 1136 (8th Cir. 2008); Hughbanks v. Fluke, No. 4:21-cv-04167 (KES), 2023 WL 1927786, at *3 (D.S.D Feb. 10, 2023); Payton v. City of St. Louis, No. 4:20-cv-861 (SEP), 2021 WL 1222427, at *5 (E.D. Mo. Mar. 31, 2021); Mallak v. Aitkin Cnty., No. 13-cv-2119 (DWF/LIB) Order [Docket No. 280] at n.6 (D. Minn. Oct. 14, 2015)). For example, in Ballard, Hughbanks, and Payton, the dispositive motions in which the respective defendants asserted the qualified immunity defense had the potential, if granted, to resolve all the claims against the respective defendants. See Ballard, 548 F.3d at 1135–37 (affirming Ballard v. Heineman, No. 4:7-cv-3122, 2007 WL 4057662, at *1 (D. Neb. Nov. 15, 2007), in which the district court granted defendants' dispositive motions and dismissed the plaintiff's amended complaint in its entirety); Hughbanks v. Fluke, No. 4:21-cv-04167 (KES), Defendants' Memorandum [Docket No. 172] at 82–83 (D.S.D July 19, 2023) (providing that the dispositive motion in which the defendants asserted their qualified

On the record now before it, the Court finds unpersuasive Defendants' argument that a stay of discovery is warranted because they will be unduly prejudiced by having to respond to Plaintiffs' interrogatories or requests for production. However, the Court concludes that Defendants have demonstrated that they may be unduly prejudiced if the noticed depositions are permitted to proceed before the resolution of Defendants' second Motion to Dismiss.

On the other hand, there is at least some undue prejudice on Plaintiffs if all discovery is stayed in the present case. Such a stay would be unduly prejudicial to Plaintiffs because the stay sought by Defendants is indeterminate in duration. Although Defendants' Motion to Dismiss has been filed, oral arguments on said Motion are not scheduled to occur until March 5, 2024, and the Court is without basis upon which to reasonably predict the length of time it will take for the Court to issue a decision on said Motion. Moreover, at the Motions Hearing, Defendants acknowledged that if Judge Tunheim denies their request for qualified immunity, they will appeal the decision to the Eighth Circuit Court of Appeals leading to an appellate process which could potentially take a year or more to resolve. (January 8, 2024, Motions Hearing, Digital Record at 1:37 p.m. – 1:42 p.m.). Plaintiffs allege that they are entitled to be transferred to CPS pursuant to valid CAP transfer orders; requiring Plaintiffs to wait years without even beginning the discovery process needed to resolve the issue would result in undue prejudice to Plaintiffs.

---

immunity defense sought the dismissal of plaintiff's complaint in its entirety); Payton, 2021 WL 1222427, at *1 (noting that defendants moved for summary judgment on all counts). These circumstances do not exist in the present case. As discussed above, Judge Tunheim has already determined that Plaintiffs' procedural due process claim sufficiently pleads a claim upon which relief may be granted. The Mallak case cited by Defendants is even further distinguishable from the present case. At the time of the Mallak decision, discovery in that case had been ongoing for more than a year. The Mallak Court did not grant a stay of discovery based on the defense of qualified immunity; rather, the Court noted that it would not compel the defendants to respond to outstanding discovery requests while the defendants' interlocutory appeal of the Court's Order denying their motion for qualified immunity was pending. See Mallak v. Aitkin Cnty., No. 13-cv-2119 (DWF/LIB) Order [Docket No. 280] at 6–7 (D. Minn. Oct. 14, 2015).

For all the reasons discussed above, the Court finds that the balance of prejudice to the parties weighs in favor of denying Defendants' request to all stay discovery pending the resolution of the resolution of their motion to dismiss.

### C.  Conservation Judicial Resources

In determining whether a stay of discovery until the resolution of a pending dispositive motion would conserve judicial resources, a court examines the breadth of any pending discovery and whether the pending dispositive motion has the potential to resolve the litigation. See TE Connectivity Networks Inc. v. All Systems Broadband, Inc., No. 13-cv-1356 (ADM/FLN), 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013); Dixon v. Edward D. Jones & Co., L.P., No. 4:22-cv-00284 (SEP), 2022 WL 4245423, at *4 (E.D. Mo. Sept. 15, 2022).

At the Motions Hearing, Defendants argued that a stay of discovery was warranted because if this Court denies their Motion to Dismiss on the issue of qualified immunity, then Defendants will likely appeal that denial thereby, according to Defendants, depriving this Court of the jurisdiction to resolve any discovery disputes which arise. (January 8, 2024, Motions Hearing, Digital Record at 1:37 p.m. – 1:42 p.m.). The Court finds this argument to be unpersuasive. The prospect of any possible appeal is entirely speculative at this time and does not weigh in favor of staying discovery in the present case. See Battenfeld Techs., Inc. v. Birchwood Lab'ys, Inc., No. 2:11-cv-4099 (NKL), 2011 WL 4088901, at *5 (W.D. Mo. Sept. 14, 2011). Other than pure speculation there is no basis in the present record to conclude that such an appeal will even be necessary or that the Eighth Circuit Court of Appeals will even accept such an appeal if it does arise.

Furthermore, even if Defendants' hypothetical interlocutory appeal comes to fruition, the Court cannot now speculate as to the breadth of such appeal. If the Eighth Circuit Court of Appeals accepts the hypothetical appeal on only the issue of whether the alleged constitutional right was clearly established, then that appeal may not divest the Court of its jurisdiction over Plaintiffs'

remaining claims which are not affected by this issue. See Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs, No. 17-cv-5155 (SRN/LIB), 2021 WL 1400069, at *2 (D. Minn. Apr. 14, 2021) (explaining that the "jurisdictional transfer principle" applicable to an interlocutory appeal of an order of this Court "does not divest the district court of all jurisdiction—but rather, only jurisdiction over the matters appealed")

Additionally, on the record now before the Court, there is no indication that a stay of discovery in the present case will result in the conservation of judicial resources in any appreciable manner. As discussed above, Plaintiffs have served written discovery upon Defendants, but there is no indication in the record that any discovery dispute has arisen regarding this written discovery. Any assertion that such a dispute may arise is entirely speculative and cannot form the basis for concluding that a stay of discovery would conserve judicial resources. See, e.g., Wild, 2020 WL 1892307, at *2; Ferrari, 2014 WL 11498023, at *1. Moreover, as discussed above, there is no indication on the record now before the Court that Defendants' second Motion to Dismiss will resolve all claims against any defendant, and therefore, any potential discovery dispute which does arise regarding the already served written discovery would need to be addressed regardless of the resolution of Defendants' Motion to Dismiss.

For all these reasons, the Court finds that the consideration of this factor weighs in favor of denying Defendants' request to stay all discovery in the present case.

**D. On Balance**

Upon consideration of the relevant factors, as well as, the specific facts and circumstances of the present case, the Court concludes that the relevant factors weigh in favor of denying Defendants' request to stay all discovery in the present case. The Court also concludes, however, that the circumstances of the present case do warrant staying the depositions in the present case until a ruling has issued on Defendants' second Motion to Dismiss.

III.   **Conclusion**

Therefore, for the foregoing reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.  Defendants' Motion to Stay Discovery, [Docket No. 88], is **GRANTED in part** and **DENIED in part**, as set forth herein;

2.  As soon as practicable and in any event by no later than thirty (30) days from the date of this Order, Defendants shall respond to the interrogatories and requests for production which Plaintiffs previously served upon Defendants; and

3.  The depositions noticed by Plaintiffs in the present case are stayed pending the District Court's disposition of Defendants' second Motion to Dismiss.


Dated: February 7, 2024                          s/Leo I. Brisbois
                                                 Hon. Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE