## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES JOHN RUD, BRIAN KEITH HAUSFELD, JOSHUA ADAM GARDNER, ANDREW GARY MALLAN, DWANE DAVID PETERSON, and LYNELL DUPREE ALEXANDER, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> NANCY JOHNSTON, *Executive Director, Minnesota Sex Offender Program, in her individual and official capacity*, and JODI HARPSTEAD, *Department of Human Services Commissioner, in her individual and official capacity*, <br><br> Defendants. | Civil No. 23-486 (JRT/LIB) <br><br> **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Abou Amara, Jr., Anthony Stauber, Daniel E. Gustafson, David A. Goodwin, Joseph Nelson, and Matt Jacobs, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; Hannah L. Scheidecker, **FREMSTAD LAW**, 3003 Thirty-Second Avenue South, Suite 240, P.O. 3143, Fargo, ND 58103, for Plaintiffs.

Aaron Winter, Emily Beth Anderson, and Jacqueline Clayton, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1400, Saint Paul, MN 55101, for Defendants.

Plaintiffs John James Rud, Brian Keith Hausfeld, Joshua Adam Gardner, Dwane David Peterson, Lynell Dupree Alexander, and Andrew Gary Mallan filed an Amended Complaint on behalf of themselves and others civilly committed to the Minnesota Sex

Offender Program ("MSOP") who have been approved for transfer to the lower-security Community Preparation Services ("CPS") MSOP facility but who have not yet been transferred and individuals whose transfers were delayed.  Plaintiffs allege that by failing to timely effectuate the Plaintiffs' valid transfer orders to CPS, Defendants Nancy Johnston, the Executive Director of the MSOP, and Jodi Harpstead, the Commissioner of the Department of Human Services ("DHS"), in their individual and official capacities, have violated the Plaintiffs' substantive and procedural due process rights.  The Court previously dismissed all of Plaintiffs' claims against the Defendants in their official capacities except for a procedural due process claim asserting that Defendants deprived the Plaintiffs of an interest in being transferred to a less-restrictive environment after receiving a transfer order without any procedure.  The Court permitted Plaintiffs to amend their complaint to add individual capacity damages claims against Defendants.

Defendants have now moved to dismiss the Amended Complaint.  Because the unreasonableness of each Plaintiffs' transfer time is not so clear that the MSOP should be denied the opportunity to respond, the Court will dismiss the Plaintiffs' renewed request for a peremptory writ of mandamus.  Because Defendants are entitled to qualified immunity, the Court will dismiss their individual capacity damages claims against Defendants.  Under the law-of-the-case doctrine, the Court will maintain its previous rulings on the claims asserted against Defendants in their official capacities.  Accordingly,

only the procedural due process claim asserted against Defendants in their official capacities may proceed.

**BACKGROUND**

## I.   FACTS

The facts of this case have been comprehensively addressed in the Court's prior orders. *See Rud v. Johnston*, No. 23-486, 2023 WL 6318615, at *1–2 (D. Minn. Sept. 28, 2023); *Rud v. Johnston*, No. 23-486, 2023 WL 2600206, at *1–3 (D. Minn. Mar. 22, 2023). Because the facts alleged in the Amended Complaint remain largely the same, the Court will only summarize facts relevant to the current motion.

Plaintiffs are individuals who have been civilly committed to the MSOP pursuant to the Minnesota Commitment and Treatment Act, Minn. Stat. §§ 253D.01–.36. (Am. Compl. ¶¶ 3–8, 13, Oct. 30, 2023, Docket No. 77.) MSOP patients are committed for an indeterminate period of time under Minn. Stat. § 253D.07, subd. 4, during which they are considered within the custody of DHS. (*Id.* ¶¶ 3, 13.) MSOP's goal is to treat and safely reintegrate committed individuals back into the community, which requires MSOP to enable patients to progress toward "rendering further supervision unnecessary." (*Id.* ¶ 14.) Minn. Stat. § 253B.03, subd. 7. Treatment of MSOP patients is structured into three phases, each of which must be completed to be eligible for discharge. (*Id.* ¶¶ 16, 19.) *See Rud*, 2023 WL 6318615, at *1 n.1; *Rud*, 2023 WL 2600206, at *1–2.

As MSOP patients progress, they can be become eligible for transfer to the Community Preparation Services ("CPS") facility. Transfer to CPS is statutorily designated

as a "reduction in custody," and the CPS facility is "designed to assist civilly committed sex offenders in developing the appropriate skills and resources necessary for an eventual successful reintegration into a community."  (Am. Compl. ¶ 18 (quoting Minn. Stat. §§ 246B.01, subd. 2a; 253D.27, subd. 1(b)).)  The CPS facility is outside of a secured perimeter which provides patients more liberties than at the secure facility in St. Peter and high-security facility in Moose Lake, but the CPS facility has limited capacity.  (*Id.* ¶¶ 17–19.)  Although Minnesota Statutes governing the MSOP do not require that MSOP patients reside in CPS to be eligible for provisional discharge or discharge from the MSOP, Plaintiffs allege that without transfer to CPS, completing treatment is virtually impossible.  (*Id.* ¶ 19.)

All the named Plaintiffs have petitioned and been approved by the Special Review Board and the Commitment Appeal Panel ("CAP") for transfer from Moose Lake to CPS. (*Id.* ¶¶ 3–8.)  Rud, Hausfeld, Gardner, and Alexander have been transferred but only after waiting approximately seven to ten months.  (*Id.* ¶¶ 3–5, 7; Letter to District Judge, Feb. 6, 2024, Docket No. 117; Letter to District Judge, Feb. 27, 2024, Docket No. 125.)  Peterson and Mallan are still waiting to be transferred even though their transfer orders were approved on October 16 and 25, 2023, respectively.  (Am. Compl. ¶¶ 6, 8, 31, 33.)  As of January 2024, there were 16 patients on the waitlist to be transferred to CPS.  (Decl. Nancy Johnston ("Johnston Decl. II") ¶ 6, Jan. 24, 2024, Docket No. 113.)

-4-

## II.   PROCEDURAL HISTORY

As with the factual history, the Court does not find it necessary to repeat the extensive procedural history of this case, so the Court will only summarize the relevant history here.  *See Rud*, 2023 WL 6318615, at *2–3; *Rud*, 2023 WL 2600206, at *3.

Plaintiffs Rud and Hausfeld initiated this action in Minnesota state court and Defendants removed it to this Court.  (Notice of Removal at 1, Mar. 1, 2023, Docket No. 1.)  The original complaint brought claims against Defendants in their official capacities for procedural and substantive due process violations and requested a writ of mandamus. (*See generally* Notice of Removal, Ex. 1 ("Compl.").)

Defendants filed a motion to dismiss Plaintiffs' original complaint.  (Defs.' Mot. Dismiss, Mar. 8, 2023, Docket No. 21.)  The Court dismissed the Plaintiffs' complaint except for the procedural due process claim asserting that Defendants deprived Plaintiffs of their interest in being transferred to a less-restrictive environment after receiving a CAP transfer order without any procedure.  *Rud*, 2023 WL 6318615, at *4–6, 13.  The Court granted Plaintiffs leave to amend their complaint to add individual capacity damages claims against Defendants.  *Id.*

The Amended Complaint asserts functionally the same substantive and procedural due process claims but adds new named plaintiffs and adds claims against Defendants in their individual capacities.  (*See generally* Am. Compl.)  Plaintiffs also renew their request for a writ of mandamus.  (*Id.*)  Plaintiffs Gardner and Alexander also filed a Motion for Preliminary Injunction and Evidentiary Hearing.  (Mot. Prelim. Inj., Jan. 3, 2024, Docket

No. 102.)  But because the MSOP transferred Gardner and Alexander to CPS, the Court

denied their motion as moot.  (Order, Feb. 27, 2024, Docket No. 124.)

Defendants have filed a Motion to Dismiss the Amended Complaint, re-asserting

previous arguments from their first motion to dismiss and arguing that Plaintiffs' renewed

request for a writ and individual capacity claims fail.  (Defs.' Mot. Dismiss, Dec. 1, 2023,

Docket No. 94; Defs.' Mem. Supp. Mot. Dismiss, Dec. 1, 2023, Docket No. 96.)

## DISCUSSION

I.   **STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

Court considers all facts alleged in the complaint as true to determine if the complaint

states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to

the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552

F.3d 659, 665 (8th Cir. 2009).  But the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A complaint need not have "detailed factual allegations" but must include more than

conclusory statements or "a formulaic recitation of the elements" to meet the plausibility

standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At the motion to dismiss

stage, the Court may consider the allegations in the Complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

## II.   WRIT OF MANDAMUS

The putative Awaiting Transfer Class brings a renewed request for a peremptory writ of mandamus pursuant to Minn. Stat. § 586.[1]  Courts may issue a writ of mandamus to compel a tribunal, corporation, board, or person to perform an act or official duty imposed by law.  Minn. Stat. § 586.01.  A writ may be either alternative or peremptory. Minn. Stat. § 586.03.  An alternative writ provides the defendant an opportunity to show cause for why they have not complied with an official duty imposed by law before the writ issues.  *Id.*  In contrast, a peremptory writ does not allow the defendant to show cause for their failure to comply.  *Id.*  A peremptory writ may only issue when "the right to require the performance of the act is clear" and "it is apparent that no valid excuse for nonperformance can be given."  Minn. Stat. § 586.04.

### A.   Jurisdiction

As a threshold matter, the Court will address the Defendants' argument that it lacks jurisdiction to issue the requested writ of mandamus.  Under Minnesota law, "[t]he authority to issue a writ of mandamus is statutory."  *Mendota Golf, LLP v. City of Mendota*

---

[1] Because Plaintiffs Gardner and Alexander have been transferred to CPS since Plaintiffs filed the Amended Complaint, the Court will dismiss the writ of mandamus claim as it applies to Gardner and Alexander.

*Heights*, 708 N.W.2d 162, 171 (Minn. 2006) (quoting *State v. Wilson*, 632 N.W.2d 225, 227 (Minn. 2001)).   Minn. Stat. § 586.11 provides that "[t]he district court has exclusive original jurisdiction in all cases of mandamus," aside from exceptions that do not apply to this case.  The language of the statute does not limit the jurisdiction specifically to state district courts as the Defendants suggest.  *Contra Chairse v. Dep't of Hum. Servs.*, No. 23-355, 2023 WL 5984251, at *1, 9 (D. Minn. Sept. 14, 2023) (expressing doubt that the court could issue a writ under Minnesota law).  In the Court's view, Minn. Stat. § 586.11 pertains to mandamus petitions that are directed at state courts, not federal ones, such that the term "exclusive" is meant to limit jurisdiction in those cases to the state district court but is silent as to the effect on federal courts' jurisdiction.   Plus, federal courts have considered writs of mandamus requests under Minnesota law, *see, e.g.*, *Kaibel v. Mun. Bldg. Comm'n*, 829 F. Supp. 2d 779, 786–787 (D. Minn. 2011), which makes sense because a state statute cannot deprive a federal court of jurisdiction.  *Wong v. Minn. Dep't of Hum. Servs.*, 820 F.3d 922, 931 (8th Cir. 2016).   And in any event, the Court may exercise supplemental jurisdiction over the writ of mandamus request pursuant to 28 U.S.C. § 1367.  As such, the Court has jurisdiction to issue the requested writ of mandamus.

### B.    Peremptory Writ

Mandamus is an extraordinary remedy that is available only to compel a duty clearly required by law.  Minn. Stat. § 586.01; *see also Day v. Wright Cnty.*, 391 N.W.2d 32, 34 (Minn. Ct. App. 1986) ("Mandamus will issue only when the petitioner has shown the existence of a legal right to the act demanded which is so clear and complete as not

to admit any reasonable controversy."). Courts may issue mandamus relief, peremptory or alternative, where: (1) an official fails to exercise "a duty clearly imposed by law"; (2) as a result, the petitioner "suffered a public wrong"; and (3) no adequate alternative legal remedy exists. *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004). Even if the Plaintiffs meet the threshold prongs that make mandamus relief appropriate, they still must show that a peremptory writ is appropriate.

### 1. Official Duty Clearly Imposed by Law

The first requirement to issue a writ of mandamus is that a party has not complied with a clear, official duty imposed by law. Minn. Stat. § 586.01. In *McDeid v. Johnston*, the Minnesota Supreme Court concluded that CAP transfer orders are "mandatory" under Minnesota law and that the MSOP staff do not have discretion to ignore them. 984 N.W.2d 864, 876–77 (Minn. 2023). Not only are CAP transfer orders "mandatory," but also MSOP officials must perform that mandated act within a reasonable time. *Id.* at 878–79. As a result, the Court finds the MSOP's official duty under Minnesota law to effectuate CAP transfer orders within a reasonable time clearly established.

Here, the parties primarily dispute whether Defendants failed to exercise the official duty to effectuate CAP transfer orders within a reasonable time.[2] The Minnesota

---

[2] The Defendants also argue they have not failed to exercise an official duty because they are constricted by their limited funding. But the Minnesota Supreme Court seemingly rejected Defendants' funding argument, which this Court finds persuasive such that it will not redo the analysis. *McDeid*, 984 N.W.2d at 876 n.5.

Supreme Court declined to define a reasonable time, *id.* at 877 n.6, instead reserving that decision for the district court, *id.* at 868 ("What amount of time is reasonable in any given set of circumstances is an issue of fact to be determined by the district court."). The court further noted that the fact-intensive nature of deciding what is reasonable makes it "generally inappropriate for disposition on a motion to dismiss." *Id.* at 877 n.6.

Even without the definition of reasonableness, the Court finds this element satisfied because MSOP officials do have a clear duty. MSOP officials must effectuate valid CAP transfer orders and they must do so in a reasonable amount of time. Just because determining if there has been a breach of this duty is fact-intensive does not negate that the duty exists.

### 2.  Injured by a Public Wrong

The Court must next consider whether Plaintiffs have shown that they have "suffered a public wrong" that was "specifically injurious" to them because of the MSOP's noncompliance with CAP transfer orders. *N. States Power Co.*, 684 N.W.2d at 491. Minnesota caselaw provides little instruction on the second prong of the mandamus analysis, but it is not challenged here, and the Court finds it is satisfied.

### 3.  Adequate Alternative Legal Remedy

The final element is whether an adequate alternative legal remedy is available. *Id.* Defendants assert that contempt proceedings and injunctive relief are adequate alternative remedies. The Court disagrees.

Contempt proceedings and injunctive relief are not adequate alternative legal remedies. Both add additional time that a Plaintiff waits to be transferred and require Plaintiffs, most of whom are indigent, to bring additional proceedings just to enforce their rights. For example, it took one MSOP patient almost six months to even get a contempt hearing. (Decl. Daniel E. Gustafson ¶ 2, Ex. A at 2–3, Jan. 3, 2024, Docket No. 105.) These forms of relief are also inherently individualized. It would be inefficient to require each Plaintiff to bring an individual proceeding, especially considering the fact that the delay appears to be systemic issue. Thus, contempt and injunctive proceedings are not an adequate alternative legal remedy.

### 4. Peremptory Writ as Applied to Plaintiffs

The Court finds that Plaintiffs have sufficiently alleged that a mandamus is appropriate. But because Plaintiffs specifically ask the Court for a peremptory writ, they must also show that "the right to require the performance of the act is clear, and it is apparent that no valid excuse for nonperformance can be given," such that the Defendants should not be provided the opportunity to show cause. Minn. Stat. § 586.04; *Mendota Golf, LLP*, 708 N.W.2d at 171 n.5.

Though it is clear that Plaintiffs have a right to be transferred to CPS within a reasonable time, the definition of "reasonable time" is far from clear. There are several dozen Plaintiffs involved in this action. It is not yet established that each of their transfers was delayed for an unreasonable amount of time, as that is a highly fact-intensive inquiry. The MSOP should have the opportunity to answer the petition and show cause for not

transferring earlier—especially because they have cited various reasons for not transferring patients in the past, such as a lack of funding, beds, and staffing. (*See generally* Decl. Nancy Johnston, Mar. 13, 2023, Docket No. 29; Johnston Decl. II.) Because the unreasonableness of each Plaintiffs' transfer time is not so clear that the MSOP should be denied the opportunity to respond, it would be inappropriate to issue a peremptory writ. Accordingly, the Court will dismiss the Plaintiffs' renewed request for a writ of mandamus.

## III. INDIVIDUAL CAPACITY CLAIMS

Plaintiffs bring procedural due process and substantive due process claims against Defendants in their individual capacities under 42 U.S.C. § 1983. The Defendants seek dismissal on qualified immunity grounds or, in the alternative, because the Plaintiffs failed to allege sufficient personal involvement of Defendant Harpstead. As the Defendants are entitled to qualified immunity, the Court need not determine whether Plaintiffs sufficiently alleged Harpstead's personal involvement.

Qualified or "good faith" immunity shields government officials from damages liability under 42 U.S.C. § 1983 so long as they did not violate "clearly established constitutional rights of which a reasonable official would have known." *Murphy v. State of Ark.*, 127 F.3d 750, 755 (8th Cir. 1997); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Courts assess qualified immunity through an "objective legal reasonableness" lens "in light of the legal rules that were clearly established" at the time the official acted. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations omitted). In determining

-12-

whether qualified immunity applies, courts consider "(1) whether the facts alleged or shown … establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that [their] actions were unlawful." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

First, Plaintiffs have alleged a violation of a constitutional right.  Under *McDeid*, MSOP patients have a protected liberty interest in the timely effectuation of their transfer orders.  984 N.W.2d at 876–79.  And the Court previously determined that Plaintiffs plausibly alleged a protected liberty and property interest in transfer to CPS within a reasonable time, and that Defendants deprived them of that interest without any procedural protections.  *Rud*, 2023 WL 6318615 at *5–6.  Because Plaintiffs have adequately pleaded a constitutional violation, this factor is satisfied.  Thus, the only remaining question is whether the constitutional right to timely transfer to CPS was clearly established.

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Murphy*, 127 F.3d at 755 (quoting *Anderson*, 483 U.S. at 640).  A legal principle is clearly established when it is "dictated by controlling authority or a robust consensus of cases of persuasive authority.  It is not enough that the rule is suggested by then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up).  Rather,

"existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

What constitutes an unreasonable delay in the effectuation of a CAP transfer order that rises to the level of a due process violation is still not clearly established. While *McDeid* recognized that the right to be transferred within a reasonable time is clearly established, the Minnesota Supreme Court declined to express an opinion on what constitutes unreasonable delay. 984 N.W.2d at 877 n.6. Without clarity as to what constitutes an unreasonable delay in the effectuation of a CAP transfer order, Defendants did not violate a clearly established right. As it would be impossible for Defendants to be on notice of an unreasonable delay, they are entitled to qualified immunity. Accordingly, the Court will dismiss the Plaintiffs' damages claims against Defendants in their individual capacities.

## IV.    LAW OF THE CASE

Although not in dispute, the Court will ensure clarity by reminding the parties that its prior order still stands on the official capacity claims. The law of the case doctrine establishes that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Maxfield v. Cintas Corp., No. 2*, 487 F.3d 1132, 1134–35 (8th Cir. 2007) (quoting *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986)). The goal of the doctrine is to avoid relitigating settled issues. *Little Earth of the United Tribes*, 807 F.2d at 1441.

The Court recognizes some word choice changes in the Amended Complaint, but the Court considers these small changes to apply only to the newly added individual capacity claims. And because the Court will dismiss those claims on qualified immunity grounds, it need not consider how those slight changes may impact any substantive analysis.

## CONCLUSION

Because the unreasonableness of each Plaintiffs' transfer time is not so clear that the MSOP should be denied the opportunity to respond, the Court will dismiss without prejudice the Plaintiffs' renewed request for a peremptory writ of mandamus. The Court will require the parties to meet and confer concerning what a reasonable transfer time might be and what factors might be considered in determining reasonableness in this context. Because this issue continues to stand in the way of resolving these claims, it is time to more fully consider what makes a transfer time reasonable or unreasonable.

Because the Defendants are entitled to qualified immunity, the Court will dismiss the Plaintiffs' individual capacity damages claims. Under law-of-the-case, the Court will maintain its previous rulings on the official capacity claims asserted against the Defendants. Accordingly, only the procedural due process claim asserted against the Defendants in their official capacities may proceed.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 94] is **GRANTED in part** and **DENIED in part** as follows:

1. Count I is **DISMISSED** without prejudice;

2. Defendants' Motion to Dismiss is **DENIED** as to Count II against Defendants in their official capacities;

3. Count III and Count IV against Defendants in their official capacities are **DISMISSED** with prejudice; and

4. Count II, Count III, and Count IV against Defendants in their individual capacities are **DISMISSED** with prejudice.

DATED:  May 23, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge